**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF TENNESSEE**

|  |  |
|---|---|
| MICHELLE TORRES, ROBBIE JOHNSON-LOVEDAY, AMANDA CAMERON, and BETHANY EDMOND on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>W. DOUGLAS COLLINS, in his official capacity as Hamblen County General Sessions Judge,<br><br>TERESA WEST, in her official capacity as Hamblen County General Sessions Circuit Court Clerk,<br><br>KATIE WEST MOORE, NANCY PHILLIPS, and KATHY ROBERTSON, in their official capacities as Judicial Commissioners of Hamblen County General Sessions Court,<br><br>and<br><br>ESCO R. JARNAGIN, in his official capacity as Hamblen County Sheriff,<br><br>Defendants. | Case No. 2:20-cv-00026<br><br>(Class Action) |

## CLASS ACTION COMPLAINT

### I.    Introduction

1.      Hamblen County operates a two-tier system of pretrial justice. In Hamblen County,

people arrested for a criminal offense who can pay their money bail[1] are released from jail

---

[1] Throughout this Complaint, the terms "money bail" and "secured financial condition of release" are used interchangeably, and mean the same thing: a sum of money that an individual detained pretrial must pay before she is released from jail.

1

immediately. Those who cannot pay remain in jail for weeks before they have any opportunity to contest their pretrial detention or explain that they cannot pay. How quickly—or whether—a person is released from jail depends on her access to money. As a consequence, the Hamblen County Jail operates at over 150 percent capacity, and some of the poorest residents of Hamblen County are kept unclothed, shackled to walls and door handles, or forced to sleep in storage closets, simply because they are unable to pay for their release.

2. Plaintiffs Michelle Torres, Robbie Johnson-Loveday, Amanda Cameron, and Bethany Edmond (collectively, "Named Plaintiffs") are currently incarcerated at the Hamblen County Jail solely because they are too poor to pay money bail. Defendants informed Named Plaintiffs that they are eligible for immediate release, but that they must first pay $75,000, $6,000, $30,000, and $1,500, respectively, as financial conditions of pretrial release. In no case did Defendants consider their ability to pay or determine that pretrial detention serves any government interest at the time the money bail amount was set.

3. Defendants are responsible for discriminatory practices that strip people of their fundamental constitutional rights to pretrial liberty and to freedom from being jailed solely because of their poverty. Moreover, Defendants' policies and practices that detain presumptively innocent people prior to trial lack even the most basic procedural protections: a timely individualized hearing, notice of the issues to be determined, the opportunity to present and confront evidence and make arguments at a hearing with counsel, and findings on the record by clear and convincing evidence that the constitutional standard for pretrial detention has been met. Defendants do not provide any process for incarcerated individuals to contest their jailing until days or weeks have passed. Wealthier individuals who can pay money bail are released immediately. Those unable to pay remain in the jail, at significant cost to taxpayers.

4.     Defendants violate Plaintiffs' rights to equal protection, substantive and procedural due process, and representation by counsel.

5.     Defendants' unconstitutional policies and practices result in widespread pretrial detention based on poverty. Of the more than 400 people locked in Hamblen County Jail on any given day in 2019, an average of approximately 50 percent were awaiting trial.

6.     Wealth-based pretrial detention exacts a heavy human toll.  The standard use of financial conditions of release in a county where one in five people live in poverty[2] has resulted in a human rights catastrophe in the largely underground Hamblen County Jail.  Detainees, shackled at the ankles, overflow from mold- and mildew-infested cells and some sleep nearly naked on the concrete jail floor. Many human beings are chained to benches, door handles, poles, and their own wheelchairs. Medical care is extremely limited.  The jail's disregard for the humanity of those confined there is illustrated by a sign posted on the door that states the hours during which "the jail will be on lockdown for feeding." *See* Declaration of Ethel Rhodes, Assistant Public Defender for Tennessee's Third Judicial District (Rhodes Decl.), Ex. A ¶ 13.

7.     In Defendant Sheriff Jarnagin's own words, the Hamblen County Jail is a "cesspool of a dungeon," where people are forced to live in "horrible conditions."[3] These conditions flow directly from Defendants' unconstitutional pretrial-detention practices.

8.     The medical and mental health emergency at the jail is a result of Defendants' wealth-based detention practices. If Defendants employed constitutional bail practices, there would be no jail overcrowding in Hamblen County.

---

[2] *See* U.S. Census Bureau, American FactFinder, Poverty Status in the Past 12 Months: 2013-2017 American Community Survey 5-Year Estimates, Table at 1 (Hamblen County, TN), https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=CF.
[3] Richard A. Oppel Jr., *'A Cesspool of a Dungeon': The Surging Population in Rural Jails*, N.Y. TIMES (Dec. 13, 2019), https://www.nytimes.com/2019/12/13/us/rural-jails.html.

9.     Named Plaintiffs bring this lawsuit on behalf of themselves and as representatives of the class of individuals that includes all people who are or will be arrested and charged with criminal offenses and who are or will be detained in the Hamblen County Jail because of Defendants' bail practices. Each Named Plaintiff is already suffering unlawful pretrial incarceration due to Defendants' actions.

10.     On behalf of themselves and all others similarly situated, Named Plaintiffs seek a declaration that Defendants' policies and practices violate Plaintiffs' rights to equal protection, substantive due process, procedural due process, and representation by counsel. Plaintiffs further request that the Court issue appropriate injunctive and declaratory relief that will ensure that individuals in Hamblen County do not remain in jail prior to trial solely because of their poverty, and without the substantive findings and procedural safeguards that the Constitution requires before the government may deprive an individual of pretrial liberty.

11.     Plaintiffs further ask that this Court grant their Motions for Temporary Restraining Order and Class-wide Preliminary Injunction and order Defendant Sheriff to cease enforcing unlawful orders to pay financial conditions of pretrial release against Plaintiffs unless Defendants Judge Collins, Judicial Commissioners, and Clerk West issue new conditions of release after affording Plaintiffs constitutionally compliant bail hearings.

## II.     Jurisdiction and Venue

12.     This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. § 2201, *et seq.*, and the Fourteenth and Sixth Amendments to the United States Constitution. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 2201 (Declaratory Judgment Act).

13.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391.

## III.   Parties

14.     **Plaintiff Michelle Torres** is a 50-year-old woman. She has been incarcerated in the Hamblen County Jail for nearly three days solely because she cannot afford to pay the $75,000 money bail.

15.     **Plaintiff Robbie Johnson-Loveday** is a 49-year-old woman. She has been incarcerated in the Hamblen County Jail for nearly six days solely because she cannot afford to pay the $6,000 money bail.

16.     **Plaintiff Amanda Cameron** is a 36-year-old woman. She has been incarcerated in the Hamblen County Jail for more than two days solely because she cannot afford to pay the $30,000 money bail.

17.     **Plaintiff Bethany Edmond**, is a 36-year-old homeless woman. She has been incarcerated in the Hamblen County Jail for five days solely because she cannot afford to pay the $1,500 money bail.

18.     **Defendant Sheriff Esco Jarnagin** is the head of the Hamblen County Sheriff's Office and keeper of the Hamblen County Jail. Sheriff Jarnagin has custody over the individuals in the Jail during their booking and for the duration of their pretrial detention. The Sheriff's Office enforces secured financial conditions of release by detaining people who have been arrested and cannot pay the secured money bail required by the General Sessions Court. Sheriff Esco Jarnagin is sued in his official capacity for injunctive and declaratory relief.

19.     **Defendant Doug Collins** is the Judge of the General Sessions Court in Hamblen County, which has jurisdiction over bail proceedings. Judge Collins, in his official capacity,

5

conducts initial-appearance hearings and is responsible for determining release conditions. *See* 9 Tenn. Prac. Crim. Prac. & Procedure § 3:2; Tenn. Code Ann. § 40-4-101(6). When a person is charged with a bailable offense, Judge Collins is authorized either to release that person on her own recognizance pursuant to Tenn. Code Ann. §§ 40-11-115, or to admit that person to bail pursuant to Tenn. Code Ann. §§ 40-11-117, - 118, and -122. Judge Collins retains authority to determine the conditions of bail "at any time prior to or at the time the defendant is bound over to the grand jury." Tenn. Code Ann. § 40-11-104. Judge Collins has a practice of requiring unattainable release conditions without any substantive findings or procedural safeguards, let alone the constitutionally required ones.

20.     Judge Collins has supervisory authority over judicial commissioners in Hamblen County. *Cf.* Tenn. Code Ann. § 40-1-111(a)(1)(B)(iii). Alongside the other General Sessions judge in Hamblen County (who generally does not hear criminal matters), Judge Collins has authority to appoint and remove judicial commissioners of the court. Tenn. Code Ann. § 40-5-204. Additionally, under state law, Judge Collins maintains supervisory authority over the judicial commissioners, including over how they determine conditions of release in the first instance. Tenn. Code Ann. § 40-1-111(a)(1)(A)(iv). Judge Collins is sued in his official capacity for declaratory relief.

21.     **Defendant Katie West Moore, Nancy Phillips, and Kathy Robertson** (collectively, "Judicial Commissioners") are judicial commissioners, whose duties include making probable cause and money bail determinations. Tenn. Code Ann. § 40-5-201(b). Judicial commissioners are authorized to make these bail determinations at the time of booking and at the initial appearance. Tenn. Code Ann. § 40-11-105(a). When determining financial conditions of release, Defendant Judicial Commissioners do not provide any notice or opportunity to be heard,

any opportunity to present or challenge evidence, or any findings by any legal or evidentiary standard concerning arrestees' ability to pay money bail or the necessity of pretrial detention, or an explanation of the reasons for their pretrial release and detention decisions on the record. They also do not provide counsel at or before the proceeding. The Judicial Commissioners are sued in their official capacities for declaratory relief.

22.     **Defendant Teresa West** is the Circuit Court Clerk of the General Sessions Court in Hamblen County. As clerk, she is authorized to make pretrial release determinations when a judge is not present in court and the clerk reasonably believes he will not be present within three hours after the defendant is committed to jail. Tenn. Code Ann. § 40-11-105(a). Tenn. Code Ann. § 40-11-105(b) sets forth the maximum amounts of money bail that a clerk may set given the bailable offense. Clerk West is sued in her official capacity for declaratory relief.

## IV.    <u>Relevant Non-Party</u>

23.     **John Dugger** is the Criminal Court Judge for the Circuit Court for the Third Judicial District, which encompasses Greene, Hamblen, Hancock, and Hawkins Counties.  He sits in Hamblen County three terms a year.  Judge Dugger presides over all Third District jury trials in criminal cases.  In addition, all grand jury proceedings take place in the Circuit Court.  Grand jury proceedings take place six times a year in Hamblen County.

## V.    <u>Statement of Facts</u>

### A. **The Named Plaintiffs Are in Jail Because They Cannot Pay the Monetary Amount Required For Their Pretrial Release**

24.     Plaintiff Michelle Torres is a 50-year-old woman who is currently detained in the Hamblen County Jail. She would be able to leave the jail if she could pay a $75,000 money bail.

7

25.     On February 14, 2020, Ms. Torres was arrested on various drug charges and brought to the Hamblen County Jail late in the evening. She was not booked until the following morning.

26.     At booking, a guard at the jail told her that she would have to pay a $75,000 money bail to be released. Ms. Torres has no idea how her money bail amount was determined, or why she has to pay that sum of money in order to be released.

27.     Ms. Torres has not been before a judge or judicial commissioner. She has not told when she will have her initial appearance.

28.     During previous incarceration terms in the Hamblen County Jail, Ms. Torres has had initial appearances. During those initial appearances, she recalls not being given the opportunity to ask for an alternative condition of release or a lower money bail amount.

29.     Neither Ms. Torres nor anyone else in her life could afford to pay the money bail or even lesser amount to a bondsman. She is unemployed and her disability check was cut off several months ago and has not yet been reinstated. She would be homeless if she were not able to stay at a friend's house.  She struggles to meet the basic necessities of life.

30.     Ms. Torres is suffering at the Hamblen County Jail. She has serious medical issues including cancer. At the jail, she does not expect to receive adequate medical care. The jail is also not providing her with a liquid diet, as prescribed for her stomach cancer treatment. Ms. Torres is in an extraordinary amount of pain and discomfort.

31.     Ms. Torres is sleeping on the jail floor in an overcrowded pod, on a plastic cover with a very thin strip of filling in it. She has no pillow.

32.     Plaintiff Robbie Johnson-Loveday is a 49-year-old woman who is currently detained in the Hamblen County jail. She would be able to leave the jail if she could pay a $6,000 money bail.

33.     On February 11, 2020, Ms. Johnson-Loveday was arrested on misdemeanor charges related to driving under the influence and brought to the Hamblen County jail between 6 and 7 PM. She was not booked until the following evening on February 12, 2020.

34.     At booking, a corrections officer told Ms. Johnson-Loveday that her money bail was set at $6,000.

35.     On February 14, 2020, Ms. Johnson-Loveday had an initial appearance with a Judicial Commissioner via video conference from a room in the jail. She did not have a lawyer during the proceeding.

36.     The commissioner told Ms. Johnson-Loveday her charges and that she would need to pay her money bail in order to be released from jail.

37.     The proceeding before the commissioner lasted less than two minutes. The commissioner did not ask Ms. Johnson-Loveday any questions about how much she should afford to pay, whether she had a job, or anything else about her financial resources.

38.     Ms. Johnson-Loveday lives with her husband in a mobile home in Jefferson County, Tennessee.

39.     Ms. Johnson-Loveday is indigent. She and her husband have no disposable income after paying their bills and child and spousal support, and buying food and other basic necessities.

40.     Ms. Johnson-Loveday works at a book factory through a temporary staffing company, making $8.10 per hour. If she stays in jail because she cannot pay the $6,000 money

bail, she will lose her job, which she has had for ten months. Losing her job would cause her financial ruin.

41.     At the jail, Ms. Johnson-Loveday is sleeping on a very thin mat placed on the floor in a very overcrowded pod. Because she is disabled and only has one hand, it is very difficult for her to get up from the floor.

42.     Ms. Johnson-Loveday is not receiving her daily medication while in jail and is feeling unwell and cold as a result.

43.     Ms. Johnson-Loveday's preliminary hearing in General Sessions Court is not until March 3, 2020—21 days after she was taken into custody.

44.     Plaintiff Amanda Cameron is a 36-year-old woman who is currently detained in the Hamblen County Jail. She would be able to leave the jail if she could pay a $30,000 money bail.

45.     On February 15, 2020, Ms. Cameron was arrested on various drug charges and brought to the Hamblen County Jail. She was not booked for several hours.

46.     At booking, a guard told her that she would have to pay $30,000 money bail to be released. Ms. Cameron does not know why her money bail was set at this amount.

47.     Ms. Cameron has not been before a judge or judicial commissioner. She was also not told when she would have her initial appearance.

48.     Ms. Cameron cannot afford to pay $30,000 for her release. She also cannot afford to pay a lesser amount to a bondsman. No one in her family would be able to scrape together enough money to get her out of jail.

49.     Ms. Cameron is the sole caregiver to her one-year-old daughter. Her only income is from occasional jobs she gets to make flower arrangements, amounting to about $300 per week. She relies on food stamps to feed herself and her daughter.

50. Being in the jail has taken a significant toll on Ms. Cameron's physical and mental health. She is agonizing over and anxious about being separated from her daughter. She also worried that she will not have access to any of her daily medications while in jail. Without these medications, she is in pain and at risk of having seizures.

51. Ms. Cameron sleeps on the floor of the jail in a very overcrowded cell, on top of a thin strip of foam, without a pillow.

52. Plaintiff Bethany Edmond is a 36-year-old woman who is currently detained in the Hamblen County jail. She would be able to leave the jail if she could pay a $1,500 money bail.

53. On February 12, 2020, in the morning, Ms. Edmond was arrested on misdemeanor charges for alleged drug possession and littering, and brought to the Hamblen County Jail. She was not booked until the early morning of the following day, February 13, 2020.

54. Prior to booking, a jail guard told Ms. Edmond that her money bail was set at $1,500.

55. On February 14, 2020, Ms. Edmond had an initial appearance with a Judicial Commissioner via video conference from a room in the jail. She did not have a lawyer during the proceeding.

56. The commissioner read Ms. Edmond her charges and told her when her next court date would be. The commissioner did not ask Ms. Edmond if she would be able to afford her bond.

57. The proceeding before the commissioner lasted less than two minutes. The commissioner did not ask Ms. Edmond any questions about her financial resources.

58. Ms. Edmond is homeless. She and her husband live in a tent. Both she and her husband have no money at all and no assets. At the time of her arrest, she recalls having only 36 cents in her pocket.

59.     Ms. Edmond has been unemployed for over a year, but she was scheduled to begin orientation for a job at Koch Foods the week of her arrest and start working the following week. She fears that she will no longer have that job opportunity when she is released from jail.

60.     Ms. Edmond is devastated that she cannot see her two children while in jail — she normally sees them every day.

61.     Ms. Edmond is currently in tremendous pain because she has not received any of her prescribed medications since entering the jail. Because of this discomfort, she is not able to sleep or eat.

62.     Ms. Edmond sleeps on a thin mat on the floor of the jail without a pillow. Her pod is severely overcrowded, and there is mold growing in it.

**B.     Because Defendants Do Not Provide a Constitutional Pretrial Release Process People Are Incarcerated Solely Due to Their Poverty**

63.     As a matter of practice, Defendants require secured financial conditions of pretrial release for almost all people arrested in Hamblen County.

The Pretrial Release and Detention Process in Hamblen County

64.     When an arrest warrant is issued prior to arrest, a police officer presents an affidavit of complaint to the clerk or deputy clerk, who finds probable cause and signs off on the arrest. After the warrant is approved, a judicial commissioner, Judge Collins, or Clerk West sets a financial condition of release on the warrant.

65.     In the case of warrantless arrests, after an individual is arrested and booked into the Hamblen County Jail, the arresting officer procures from the Clerk's office a post-arrest warrant on which a financial condition of pretrial release is affixed using the same procedure as for a pre-arrest warrant. Thus, all people arrested in Hamblen County have their conditions of release

initially determined—in their absence—by either Defendant Judge Collins, one of the Defendant Judicial Commissioners, or Defendant Clerk West (collectively, "initial bail-setters").

66.     The initial bail-setters impose financial conditions of release without regard to the individual's ability to pay secured money bail, their ties to the community, or other constitutionally relevant factors. Despite lacking any knowledge of an individual's financial circumstances, the initial bail-setters have a practice of requiring monetary conditions of release in the vast majority of cases. Thus, the initial bail-setters determine an amount of money bail based only on the charges on which the arrested person has been booked and the nature of the allegations in the probable cause statement, and, when available, any prior convictions and jail-bookings in Hamblen County.

67.     For people who cannot pay, the money bail order written on their warrant operates as a *de facto* detention order because they cannot obtain the amount of money required for their release.

68.     Individuals who cannot pay the amount of money bail required for their release remain in jail and await their "initial appearance."[4] In Hamblen County, a judicial commissioner or Judge Collins conducts the initial appearance, typically by video conference between the judicial officer in chambers and the arrested person in a converted bathroom in the jail. Initial appearances take place only on Mondays, Wednesdays, and Fridays. Initial appearances are very brief proceedings at which the judicial officer informs arrested persons of the charges against them, their conditions of release, and their next court date. Indigent individuals are not represented by counsel at these proceedings and have no opportunity to raise any challenge to their ongoing pretrial detention.

---

[4] This proceeding is sometimes referred to as an "arraignment" or "video arraignment" even though it does not take place in criminal court. *See* 9 Tenn. Prac. Crim. Prac. & Procedure § 3:2 (differentiating between an "initial appearance" before a magistrate and an "arraignment" before the criminal court following an indictment).

69.     At the initial appearance, Judicial Commissioners and Judge Collins reaffirm the *de facto* detention orders set at the warrant stage without making any finding that pretrial detention is required to serve a compelling government interest, as is constitutionally required.  And they do so without any meaningful process, let alone the detailed procedures required by the Due Process Clause, including: a timely individualized hearing; notice of the issues to be determined; representation by counsel; the opportunity to present and confront evidence and make arguments; findings on the record explaining the basis for any condition of release imposed and the evidence relied on; and, if such conditions will result in pretrial detention, a finding by clear and convincing evidence that pretrial incarceration is necessary because no alternative conditions or combination of conditions would reasonably ensure the individual's future court appearance or the safety of the community.  As a result, the monetary conditions of release affixed at the warrant stage remain after the initial appearance and, because the arrestee cannot afford to pay, continue to function as *de facto* orders of pretrial detention.

70.     Defendant Judicial Commissioners and Judge Collins do not provide at the initial appearance an opportunity to contest conditions of pretrial release, including money bail, and refuse to hear requests from arrestees to change the conditions. If individuals attempt to request a change to their conditions of release, they are not able to. Rather, they must wait for a public defender to be appointed and to contact them, and then to request that their attorney file a motion for review of their pretrial-release conditions. At the initial appearance, detainees are permitted to speak only to inform the court whether they plan to retain counsel or would like a public defender to be appointed to represent them.

71.     If an individual requests and is appointed a public defender, the Clerk notifies the Hamblen County Public Defender Office of the appointment. This process can take several days.

Although an individual may know she was approved for a public defender if informed by the Judicial Commissioner or Judge Collins at the initial appearance, she typically will not know who her public defender is until her first appearance in General Sessions court.

72.     After the initial appearance, individuals who cannot pay their financial conditions of release remain detained while awaiting their first appearance before Judge Collins in General Sessions Court. This preliminary hearing occurs as many as 14 business days from the initial appearance. This hearing is typically the first opportunity for indigent defendants to meet their court-appointed counsel. Because there is no mechanism in Hamblen County to request review of conditions of release until an individual meets with counsel, the preliminary hearing is also typically the first opportunity for defendants to attempt to challenge a *de facto* order of pretrial detention.

73.     Even when—at or after the preliminary hearing—defense counsel seeks to modify the bail amount initially imposed at the warrant stage, Defendant Collins refuses to consider constitutionally required factors, including ability to pay, or to provide the substantive findings and procedural safeguards required by the Constitution.

74.     Defendants Judge Collins and Judicial Commissioners routinely require money bail in amounts unattainable to the either class members or the average resident of Hamblen County, one-fifth of whom live below the poverty line.[5]

75.     Judge Dugger, the Criminal Court Judge for the Circuit Court for the Third Judicial Circuit, sits in Hamblen County itself only three terms a year, and grand juries are convened only six times a year. As a result, individuals subject to *de facto* pretrial detention due to inability to pay will typically wait months before their case has been indicted by a grand jury.

---

[5] *See* U.S. Census Bureau, *supra* note 2.

76.     Individuals who have not yet been indicted by the grand jury are not entitled to discovery in their case as a matter of local practice and state law. Those who cannot purchase their release are routinely desperate to resolve their cases in order to escape the inhumane and dangerous conditions at the Hamblen County Jail. Thus, the vast majority of pretrial detainees in General Sessions court in Hamblen County will plead guilty before their public defender has received any information about their case, done any investigation, received exculpatory evidence, or been able to evaluate the legal and factual defenses available.

77.     As a result of Defendants' policies and practices, indigent individuals are subject to extended periods of wealth-based pretrial detention before being provided the hearing on their conditions of release that federal law requires.

**C.  Hamblen County's Unconstitutional Pretrial Policies and Practices Harm Individuals and Communities.**

78.     Due to Defendants' unconstitutional policies and practices, presumptively innocent individuals are detained in Hamblen County every day solely because they are too poor to pay the monetary release conditions imposed without any hearing, let alone a hearing that meets constitutional standards.

79.     Pretrial incarceration harms individuals' lives beyond their loss of liberty and the degrading and life-threatening conditions they endure in jail. Other consequences of pretrial incarceration include loss of income because individuals often lose their jobs while detained; loss of housing and missed payments on utilities and other bills because individuals cannot make rent and other payments when jailed; loss of physical and/or legal custody of children; an increase in mental illness because conditions in jail can put an individual under extreme stress and restrict access to needed medications, exacerbating or even causing further trauma and mental illness; a high likelihood of assault, including sexual assault, especially in the first few days of incarceration;

16

exposure to communicable diseases; inability to exercise; deprivation of sunlight and fresh air; and forcible separation from children and family.

80.     In addition, being detained pretrial has a significant impact on the legal outcome of a person's case. Detained individuals are more likely to plead guilty just to shorten their jail time, even if they are innocent.[6] They have a harder time preparing a defense, gathering evidence and witnesses, and meeting with their lawyers. Studies show that those detained pretrial face worse outcomes at trial and sentencing than those released pretrial, even when charged with the same offense and controlling for all other factors.[7] Controlling for other factors, a person who is detained pretrial is 13 percent more likely to be convicted and 25 percent more likely to plead guilty than a person who is not detained.[8] And those detained pretrial are more likely to receive longer jail sentences.[9]   A person's pretrial detention thus has an irreparable impact on the outcome of a criminal case, and on the person's life for years afterward.

81.     Thus, Defendants' practice of issuing *de facto* detention orders by requiring unattainable monetary conditions of pretrial release without substantive findings or procedural

---

[6]  *See* Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* 15, 18–19 (May 2, 2016), https://goo.gl/OW5OzL ("Criminal defendants assessed bail amounts appear frequently unable to produce the required bail amounts, and receive guilty outcomes as a result.  Entered guilty pleas by defendants unwilling to wait months prior to trial and unable to finance bail likely contribute to this result.").

[7]  *See* Christopher Lowenkamp et al., Investigating the Impact of Pretrial Detention on Sentencing Outcomes, Laura and John Arnold Foundation 12, 14 (2013), https://university.pretrial.org/viewdocument/investigating-the-im (those detained for the entire pretrial period are more likely to be sentenced to jail and prison—and receive longer sentences—than those who are released at some point before trial or case disposition); Megan T. Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes*, 34 J.L. Econ. & Org. 511, 535-36 (2018) ("Pretrial detention leads to an expected increase of 124 days in the maximum days of the incarceration sentence, a 42% increase over the mean.").

[8]  *See* Stevenson, *supra* note 7, at 18; *see also* Gupta, et al., *supra* note 6, at 19 (finding a 12 percent increase in the likelihood of conviction using the same data).

[9]  *See* Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stan. L. Rev. 711, 786-87 (2017).

safeguards results in devastating life consequences to individuals based solely on their access to cash. To take one extreme example, a man died this past summer at the Hamblen County Jail while waiting to be booked.[10]

82. Wealth-based pretrial detention also makes the community less safe. First, wealth-based detention unnecessarily jails those who could be released safely into the community. Several studies have shown that just two or three days in pretrial detention increases the likelihood that an individual will commit a crime in the future, and increases the future risk level of even low-risk defendants.[11] People who are detained for a few days following arrest are also more likely to miss court dates in the future, all because of the destabilizing effects of short periods in jail.[12] In other words, detention based on poverty for just a few days increases recidivism. Second, wealth-based pretrial systems release individuals based only on their ability to pay and without any assessment of their risk of flight or dangerousness. Consequently, if the government believed that certain individuals needed monitoring or supervision to mitigate their risk of flight or dangerousness, they would receive neither if released by paying money bail.

---

[10] Travis Dorman, *Man Dies While Waiting to Be Booked into Hamblen County Jail*, Knoxville News Sentinel (Aug. 12, 2019), https://www.knoxnews.com/story/news/local/2019/08/12/man-dies-while-waiting-booked-into-hamblen-county-jail/1993060001/.

[11] *See* Department of Justice, National Institute of Corrections, *Fundamentals of Bail*, 15-16 (2014), https://goo.gl/jr7sMg ("[D]efendants rated low risk and detained pretrial for longer than one day before their pretrial release are more likely to commit a new crime once they are released, demonstrating that length of time until pretrial release has a direct impact on public safety."); CHRISTOPHER T. LOWENKAMP ET AL., *supra* note 7 (studying 153,407 defendants and finding that "when held 2–3 days, low risk defendants are almost 40 percent more likely to commit new crimes before trial than equivalent defendants held no more than 24 hours"); Paul Heaton et al., *supra* note 9, at 768 ("While pretrial detention clearly exerts a protective effect in the short run, for misdemeanor defendants it may ultimately service to compromise public safety," and finding that in a representative group of 10,000 misdemeanor offenders, pretrial detention would cause an additional 600 misdemeanors and 400 felonies compared to if the same group had been released pretrial).

[12] *See also* Gupta et al., *supra* note 6, at 19.

83.     Other jurisdictions around the country do not detain people pretrial based on their access to cash.   Instead of relying on money, these jurisdictions release arrestees with unsecured financial conditions, non-financial conditions, and pretrial supervision practices and procedures that can help increase court attendance and public safety without requiring detention. Such non-monetary conditions of release include, but are not limited to: unsecured bonds, reporting obligations, phone and text message reminders of court dates, rides to court for those without transportation or a stable address, substance abuse treatment, mental health treatment, counseling, alcohol monitoring devices, stay-away orders, or, in extreme cases of particular individualized risk, electronic monitoring, curfew, and home confinement.

84.     Jurisdictions that rely on non-monetary conditions of release do not sacrifice public safety or court attendance; they enhance it.   For example, the agency in charge of pretrial supervision in Washington, D.C., found that "[t]he high nonfinancial release rate has been accomplished without sacrificing the safety of the public or the appearance of people in court."[13] Specifically, "Agency data show that 90 percent of released people make all court appearances and that 91 percent complete the pretrial release period without any new arrests."[14]

85.     The federal system also prohibits wealth-based detention, expressly preventing a judicial officer from imposing a financial condition of release that results in pretrial detention. 18 U.S.C. § 3142(c)(3). It further creates a requirement that an arrested person be released upon personal recognizance or execution of an unsecured appearance bond unless findings are made by a judicial officer that other conditions are necessary to assure appearance and public safety. 18 U.S.C. § 3142(b).  Although pretrial detention is permitted, it may be imposed only after a hearing

---

[13] PRETRIAL JUSTICE INSTITUTE, THE PRETRIAL SERVICES AGENCY FOR THE DISTRICT OF COLUMBIA: LESSONS FROM FIVE DECADES OF INNOVATION AND GROWTH 2 (2018), https://perma.cc/8KAD-TY5H.

[14] *Id.*

19

with rigorous procedural protections, including the right to be represented by counsel; the opportunity to testify, present witnesses, and cross-examine witnesses; and a requirement that any pretrial detention order be based on a finding on the record that no conditions would ensure the person's appearance and the safety of the community. 18 U.S.C. § 3142 (f). The federal practice has not harmed court appearance rates or public safety.[15]

86.     Pretrial detention based solely on wealth is consistently more expensive to administer than effective pretrial release programs.[16] Without relying on a person's ability to afford cash bail, pretrial release programs can save taxpayer expense while maintaining high public safety and court appearance rates associated with wealth-based practices like Defendants', which rely solely on access to money.

### D. Defendants' Wealth-Based Detention Practices Have Resulted in Deplorable Conditions in the Hamblen County Jail.

87.     The Hamblen County Jail is urgently overcrowded. Although it is certified for 255 individuals,[17] in December 2019, the most recent month for which data are available, 384 people were detained in the jail on a given day.[18]  This means the Jail was operating at 150.6 percent

---

[15] *See* Thomas H. Cohen, *Pretrial Release and Misconduct in Federal District Courts, 2008-2010*, Bureau of Justice Statistics Special Report 13 (Nov. 2012), https://goo.gl/hN99E7 (finding from 2008 to 2010, only 1 percent of federal defendants released pretrial failed to make court appearances and 4 percent were arrested for new offenses).

[16] *See, e.g.,* PRETRIAL JUSTICE INSTITUTE, PRETRIAL JUSTICE: HOW MUCH DOES IT COST? (2017), https://goo.gl/0lLtLM ("It has been estimated that implementing validated, evidence-based risk assessment to guide pretrial release decisions could yield $78 billion in savings and benefits, nationally."); UNITED STATES COURT, SUPERVISION COSTS SIGNIFICANTLY LESS THAN INCARCERATION IN FEDERAL SYSTEM (2013), https://goo.gl/dJpDrn (In 2012, "[p]retrial detention for a defendant was nearly 10 times more expensive than the cost of supervision of a defendant by a pretrial services officer in the federal system").

[17] Sheriff's Department and Jail, www.hamblencountytn.gov/sheriffs-department-and-jail/.

[18] TENN. DEP'T OF CORR., TENNESSEE JAIL SUMMARY REPORT (Dec. 2019), https://www.tn.gov/content/dam/tn/correction/documents/JailDecember2019.pdf.

capacity. The situation has been even worse in other months. In July and August 2019, the Jail detained more than 450 on a given day.[19]

88.     This overcrowding is inhumane. Rather than beds, many individuals sleep chained to benches, door handles, poles, and their own wheelchairs. Converted storage closets are used as ersatz housing units, where detained people sleep shoulder-to-shoulder on mattresses on the floor. They lack adequate clothing—often less than enough to be fully covered. Detainees, packed into small unsanitary spaces, suffer from poor ventilation and face high risks of getting sick from the mold and mildew in the jail, which is not adequately cleaned because of the severe overcrowding. Lacking a dedicated meeting space, lawyers must speak to their clients in a converted supply closet. The conditions in the Hamblen County Jail therefore make it difficult for detainees to mount an effective legal defense.

---

[19] TENN. DEP'T OF CORR., TENNESSEE JAIL SUMMARY REPORT (July 2019), https://www.tn.gov/content/dam/tn/correction/documents/JailJuly2019.pdf; Tenn. Dep't of Corr., TENNESSEE JAIL SUMMARY REPORT (Aug. 2019), https://www.tn.gov/content/dam/tn/correction/documents/JailAugust2019.pdf.



*Source: New York Times*



*Source: New York Times*

89.     From 2010 to present, the Tennessee Corrections Institute—the state government body responsible for establishing minimum standards for jails—has recommended the Hamblen County Jail for non-certification for failure to comply with its minimum standards.[20]

90.     Defendant Sheriff Jarnagin has acknowledged that the jail fails to meet the minimum standards required by the TCI.[21] He notes: "We're trying to keep the jail clean but it's difficult to keep a cell block clean when you've got six beds and you've got 35 inmates in there."[22]

91.     The extreme overcrowding in the jail is a direct consequence of Defendants' use of money bail to order the *de facto* detention of people accused of crimes. Few can afford to pay for their freedom, as one out of every five people in Hamblen County lives in poverty.[23] Only 4.5 percent of the population over the age of 16 worked full-time year-round in 2017, the last year for which data is available.[24] Over 26 percent of this population did not work at all in 2017.[25]

92.     Fifty percent of the population of the Hamblen County jail is detained pretrial. The vast majority of that detained pretrial population is there solely because they cannot afford to pay for their release. Many pretrial detainees in the Hamblen County Jail are not only detained pretrial but also pre-indictment. Because grand juries convene only three times a year in Hamblen County,

---

[20] Memorandum Opinion and Order, *Zackery Beck v. Hamblen County, TN and Esco Jarnagin*, No. 2:17-CV-178-TRM (E.D. Tenn. Apr. 12, 2019) 2 (2010-17); TENN. DEP'T OF CORR., TENNESSEE JAIL SUMMARY REPORT (September 2018), https://www.tn.gov/content/dam/tn/correction/documents/JailSeptember2018.pdf; TENN. DEP'T OF CORR., TENNESSEE JAIL SUMMARY REPORT (August 2019), https://www.tn.gov/content/dam/tn/correction/documents/JailAugust2019.pdf; *see also* Tenn. Code Ann. § 41-4-140(b)(1).
[21] *See* Amanda Garcia, *Concerns grow about overcrowding at Hamblen County Jail*, WATE.COM, (Aug. 10, 2018), https://www.wate.com/news/local-news/concerns-grow-about-overcrowding-at-hamblen-county-jail/.
[22] *Id.*
[23] *See* U.S. Census Bureau, *supra* note 2.
[24] *Id.*
[25] *Id.*

this period can last for months, during which they do not receive discovery and cannot meaningfully assess the strength of their case for trial.

93.     To escape prolonged detention in the Hamblen County Jail and the outrageous conditions there, most pretrial detainees choose to plead guilty before their case has even been indicted by a grand jury or they have received discovery.

## VI.     <u>Class Action Allegations</u>

94.     Named Plaintiffs bring the Claims in this action, on behalf of themselves and all others similarly situated, as a class action under Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(2).

95.      Under Federal Rule of Civil Procedure 23(a), certification of a class is appropriate where: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

96.     Plaintiffs request that the Court certify a class composed of all people who are or will be arrested and charged with criminal offenses and who are or will be detained in the Hamblen County Jail because of Defendants' bail practices

A.  <u>Rule 23(a)</u>

97.     ***Numerosity.*** The precise size of the Class is unknown by Plaintiff because it is forward-looking, but it is substantial, given that hundreds of arrests are each made every year in the Hamblen County District Court.  Joinder of these unknown future members is impracticable.

98.     Many of the class members are low-income individuals who will likely lack financial resources to bring an independent action or to be joined in this action. Joinder of every member of the class would be impracticable.

99.     ***Commonality.*** The relief sought is common to all class members. Named Plaintiffs seek relief from Defendants' money bail policies, practices, and procedures, which violate the rights of the Class members. Named Plaintiffs also seek relief declaring that Defendants' policies, practices, and procedures regarding the setting of bail violate the Class members' constitutional rights.

100.    Among the most important, but not the only, common questions of fact are:

a. Whether Defendants impose monetary conditions of release that result in detention without consideration of class members' ability to pay;

b. Whether Defendants require pretrial conditions of release that result in detention without any substantive findings that detention is necessary;

c. Whether, when, and how Defendants determine what conditions of pretrial release should be and whether, for example, Defendants provide a timely individualized hearing; notice of the issues to be determined; representation by counsel; the opportunity to present and confront evidence and make arguments; findings on the record explaining the basis for any condition of release imposed and the evidence relied on; and, if such conditions will result in pretrial detention, a finding by clear and convincing evidence that pretrial detention is necessary because no alternative conditions or combination of conditions would reasonably ensure the individual's future court appearance and the safety of the community; and

d. How long individuals arrested must wait in jail after arrest before they have an opportunity to challenge pretrial release conditions, raise their inability to pay for their release or to request alternative, non-financial conditions.

101.    Among the most important common question of law are:

a. Whether Defendants' detention of poor arrestees without the substantive findings the Constitution requires before a presumptively innocent person may be ordered Whether requiring an individual to pay money to secure release from pretrial detention without an inquiry into or findings concerning the individual's ability to pay the amount required, and without meaningful consideration of and findings

concerning less restrictive alternative conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection clauses;

b. Whether it is lawful to impose a secured financial condition of release that operates as a *de facto* order of pretrial detention because of a person's inability to pay without complying with the procedural safeguards, applying the correct legal standard, and making the substantive findings required for an order of preventive pretrial detention; and

c. Whether setting of pretrial release conditions without affording an individual counsel violates the Sixth Amendment and the Fourteenth Amendment's Due Process Clause.

102. ***Typicality.*** Named Plaintiffs' claims are typical of the claims of the other members of the Class, and they have the same interests in this case as all other Class members that they represent. Each of them suffers injuries from the failure of Defendants to comply with the Constitution: they are each confined in jail because they could not pay their secured monetary bond amount. Resolution of the constitutionality of Defendants' money bail practices will determine the claims of Named Plaintiffs and every other Class member.

103. If Named Plaintiffs succeed in the claim that Defendants' policies and practices concerning wealth-based detention violate their constitutional rights, that ruling likewise will benefit every other member of the Class.

104. ***Adequacy.*** Named Plaintiffs will fairly and adequately represent the interests of the proposed Class they seek to represent.

105. Named Plaintiffs have no interests separate from or in conflict with those of the proposed Class they seek to represent as a whole and Named Plaintiffs seek no relief other than the declaratory and injunctive relief, which is sought on behalf of the entire proposed Class they seek to represent.

106. ***Class Counsel.*** Named Plaintiffs are represented by attorneys from Civil Rights Corps and the Institute for Constitutional Advocacy and Protection, who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendants' practices and the relevant constitutional and statutory law. Counsel have the resources, expertise, and experience to prosecute this action.

B. Rule 23(b)(2)

107. Class certification is appropriate because Defendants have acted in the same unconstitutional manner with respect to all class members: Defendants require all arrestees to pay for their release. Those who can pay are released and those who cannot are detained.

108. The Class therefore seeks declaratory and injunctive relief that Defendants violate the Named Plaintiffs' and Class members' rights under the Fourteenth and Sixth Amendments by requiring secured financial conditions of release without prompt and individualized release hearings that provide appropriate substantive findings and adequate procedural protections. Because the putative Class challenges Defendants' practices as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the Class, Rule 23(b)(2) certification is appropriate and necessary.

C. Rule 23(g)

109. Federal Rule of Civil Procedure 23(g) requires that the court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1). Class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

110. For reasons set forth in the contemporaneously filed Memorandum in Support of Motion for Class Certification, undersigned counsel meet the factors the court must consider under Rule 23(g): (1) "the work counsel has done in identifying or investigating potential claims in the

28

action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."

## VII.    Claims for Relief

### COUNT I

### Defendants Violate Plaintiffs'[26] Fourteenth Amendment Rights to Equal Protection and Due Process through a Policy and Practice that Jails Individuals Prior to Trial Based on their Access to Money

111.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

112.    Plaintiffs have a right to be free from wealth-based detention. The Fourteenth Amendment's Equal Protection and Due Process Clauses forbid the government to detain individuals prior to trial based solely on lack of access to money.  The constitutional principles that forbid jailing a convicted defendant solely because the person is unable to make a payment, *see, e.g.*, *Bearden v. Georgia*, 461 U.S. 660, 672 (1983) (invalidating state practice of automatically revoking probation for failure to pay a fine or restitution, without considering probationer's ability to pay or whether other alternative measures meet state's interest in punishment and deterrence), apply with even greater force to an arrestee who is presumed innocent.

### COUNT II

### Defendants Violate Plaintiffs' Fundamental Fourteenth Amendment Due Process Right to Pretrial Liberty

113.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

---

[26] For each claim, the term "Plaintiffs" refers to both the Named Plaintiffs and members of the proposed class, unless otherwise specified.

114.    Freedom from imprisonment lies at the heart of the liberty that the Due Process Clause protects. *See, e.g., Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action."). Pretrial detention infringes upon this right and may only be required if it is narrowly focused to serve compelling government interests.

115.    The state's interest at the pretrial stage is limited to ensuring the accused will appear for trial and protecting the public from danger associated specifically with that individual's release.

116.    Here, Plaintiffs have been detained on *de facto* detention orders and deprived of pretrial liberty through imposition of unattainable financial conditions without any court considering Plaintiffs' likelihood of appearing at future court appearances and whether Plaintiffs pose any danger to the community, and without any court making a substantive finding that no alternatives to such *de facto* pretrial detention would serve the government's interests.

## COUNT III

### Defendants Violate Plaintiffs' Fourteenth Amendment Right to Procedural Due Process

117.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

118.    Procedurally, orders of pretrial detention may be entered only after rigorous procedures have been met. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319 (1976). These procedures include, but are not necessarily limited to: a timely individualized hearing; notice of the issues to be determined; representation by counsel; the opportunity to present and confront evidence and make arguments; findings on the record explaining the basis for any condition of release imposed and the evidence relied on; and, if such conditions will result in pretrial detention, a finding by clear and convincing evidence that pretrial incarceration is necessary because no alternative

conditions or combination of conditions would reasonably ensure the individual's future court appearance and the safety of the community. Procedural due process requires procedures sufficient to protect Plaintiffs' substantive rights to pretrial liberty and against wealth-based detention.

119.    Here, Plaintiffs were provided none of these constitutionally required procedures before being detained because they could not pay.

**COUNT IV**

**Defendants Violate Plaintiffs' Sixth Amendment Right to Counsel
by Not Providing Them with Counsel at Proceedings Resulting in Pretrial Detention**

120.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

121.    The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel at each post-attachment critical stage of the criminal process. *See, e.g.*, *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) ("The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding. . . . The constitutional guarantee applies to pretrial critical stages . . . ."). Bail determinations are post-attachment critical stages for which counsel must be provided.

122.    Defendants' failure to provide counsel at hearings that result in pretrial detention that prejudices both Plaintiffs' immediate liberty interests and the ultimate outcomes of their cases.

123.    Defendants violate the Sixth Amendment by conducting critical pretrial release and detention proceedings without providing counsel.

**VIII.    <u>Prayer for Relief</u>**

124.    WHEREFORE, Plaintiffs respectfully request the following relief:

a.    Certification of a class under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Named Plaintiffs;

b.     A declaration that Defendants violate Named Plaintiffs' and Class members' rights under the Fourteenth Amendment by requiring secured financial conditions of release without inquiry into or findings concerning their ability to pay, or meaningful consideration of and findings concerning whether alternative non-financial conditions of release serve the government's interests;

c.     A declaration that Defendants violate Named Plaintiffs' and Class members' due-process rights by imposing financial conditions of release that result in detention without conducting a prompt individualized release hearing with adequate procedural safeguards including the following:

●     Notice to the individual arrested of the critical factual and legal issues at stake in the proceeding;

●     If a financial condition of release is being considered, a determination of each individual's ability to pay money bail and the amount of money they can afford;

●     An opportunity for the individual arrested to be heard concerning their ability to afford money bail and what nonmonetary release conditions, if any, are necessary.

●     An opportunity for the individual arrested to present evidence, contest the government's evidence, and to make arguments concerning the imposition of conditions of release;

●     The provision of counsel if the individual is unable to afford counsel;

●     Before imposing pretrial detention, substantive findings on the record by clear and convincing evidence, including the evidence relied on and reasons for such findings, that detention is necessary because no less restrictive alternatives to detention address the state's compelling interests;

d.     A declaration that Defendants violate Named Plaintiffs' and Class Members' right to counsel under the Sixth Amendment by failing to provide counsel to indigent people at pretrial release and detention hearings;

e.     A temporary restraining order requiring the Sheriff to release Named Plaintiffs unless they are provided the procedures stated above;

f.     An order and judgment preliminarily and permanently enjoining the Sheriff from enforcing financial conditions that result in *de facto* pretrial detention without findings that pretrial detention is necessary to meet a compelling government interest and without the procedural safeguards required for confidence in that substantive outcome;

g.      An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

h.      Such other relief as the Court deems just and appropriate.

Dated:  February 16, 2020

Respectfully submitted,

/s/  Tara Mikkilineni
Tara Mikkilineni (D.C. Bar 997284)*
ImeIme Umana (N.Y. Bar 5751656)*
CIVIL RIGHTS CORPS
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Tel: 202-894-6124
Fax: 202-609-8030
Email: tara@civilrightscorps.org
          imeime@civilrightscorps.org

/s/ Seth Wayne
Seth Wayne (D.C. Bar 888273445)*
Jonathan Backer (D.C. Bar 1613073)*
Mary B. McCord (D.C. Bar 427563)*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION (ICAP)
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
Email: sw1098@georgetown.edu
          jb2845@georgetown.edu

/s/  George T. Lewis
George T. Lewis, III (T.N. Bar 7018)
Matthew G. White (T.N. Bar 30857)*
BAKER DONELSON
265 Brookview Centre Way, Suite 600
Knoxville, TN 37919
Tel: 865-549-7000
Email: blewis@bakerdonelson.com
          mwhite@bakerdonelson.com

Attorneys for Plaintiffs

*Pro Hac Vice application forthcoming.