IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MICHELLE TORRES, *et al.*, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>W. DOUGLAS COLLINS, in his official capacity as Hamblen County General Sessions Judge, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-00026-DCLC-CRW<br><br>(Class Action) |

## **JOINT STIPULATIONS**

**Bail in Hamblen County**

1. When a misdemeanor pretrial arrestee is arrested in Hamblen County, the arresting officer swears off on the warrant before Circuit Court Clerk Teresa West or a deputy clerk, and then both the officer and the clerk sign the warrant.

2. Bail is initially set on arrest warrants by Judge Collins, one of the Judicial Commissioners, or Clerk West.

3. The amount of bail is clearly listed on the warrant, which is given to the arresting officer or to a Hamblen County corrections officer to serve on the pretrial detainee.

4. On the arrest warrant, bail-setters are authorized to issue recognizance releases ("cites"), set non-financial conditions of release, or impose secured financial

1

conditions of release (*i.e.* an amount of "money bail") that the arrestee must pay in order to be released from the jail.

5. Money bail is a condition of release for the majority of arrestees in Hamblen County.

6. The money bail amounts or other conditions of release are generally set when a warrant is sworn to, and the arrestee typically is not present when those conditions are set.

7. When Defendants set money bail, they do not follow any kind of schedule or rubric or guidelines in determining the amount.

8. Bail-setters do not apply any particular burden of proof when determining the amount of money bail set on the warrant.

9. At the time bail is set on an arrest warrant, the bail-setter generally does not know whether the arrestee will be able to pay the set amount.

10. Sometimes Judge Collins and the other Defendants are personally familiar with the arrestees because they have been through the court system on other occasions.

11. At the time bail is set on an arrest warrant, the bail-setter typically does not have information about the arrestee's employment status, financial condition, family ties and relationships, or members of the community who might vouch for the arrestee, unless the bail-setter has past personal knowledge or experience with the arrestee.

12. At the time bail is set on an arrestee's warrant, the bail-setter typically does not make factual findings on the record regarding why bail is set at a particular amount.

13. It is not Judge Collins' intent that arrestees remain in jail when he sets money bail.

14. There are four ways that an arrestee can pay money bail: personal surety, real estate, commercial surety company, or cash.

15. Bonding companies are allowed by law to charge up to 10% of the bond amount.

16. Judge Collins has been told that bonding companies sometimes accept a *de minimus* amount of the money bail that has been set.

17. Sometimes pretrial detainees cannot be released even if they post bond because they have bonds in another county or they have a child support hold.

18. Arrestees who are unable to pay money bail set by Defendants are detained in the jail until the next hearing or until their money bail amount is modified.

19. If a newly arrested individual cannot pay her money bail, typically the first time she will see a judicial official is at the initial appearance.

20. Typically, Defendants hold initial appearances on Mondays, Wednesdays, and Fridays at or around 8:30 AM. If a holiday falls on a Monday, initial appearances are not held on that Monday.

21. Those arrested on a Friday after initial appearances must typically wait until Monday for their initial proceeding. If Monday is a holiday, the arrestee may have to wait until the following Wednesday.

22. For individuals who are detained, the initial appearance generally takes place via video conference between the judge's chambers and the jail.

23. Judge Collins or one of the Defendant Judicial Commissioners presides over initial appearances.

24. Information on the timing and location of initial appearances is not publicly posted.

25. Initial appearances are held in the jail and closed to the general public unless a member of the public requests to observe a particular initial appearance. If such a request is made, the initial appearances are held in open court.

26. Other than the instances where a member of the public has requested to attend an initial appearance and it is thus held in open court, no record is made of what is said at an initial appearance.

27. Before the initial appearance, arrestees are not given notice of what will happen at the proceedings by Judge Collins or the Judicial Commissioners.

28. During an initial appearance, either Judge Collins or a Hamblen County Judicial Commissioner advises the pretrial detainee of his or her charges, bail, and preliminary hearing date, which is usually set within 14 business days of the pretrial detainee's arrest. Additionally, if the pretrial detainee requests court-appointed counsel, he or she is required to fill out an affidavit of indigency. If indigent, the pretrial detainee is appointed counsel through the Public Defenders' office.

29. At the initial appearance, the only documents possessed by the presiding official are the arrest warrant; an affidavit of indigency, if one has been submitted by an arrestee; any criminal history information from Hamblen County in the court's computer; and, if applicable, specialized DUI or domestic assault forms.

30. The court file for an arrestee includes information on whether the arrestee is on probation and whether he has had prior failures to appear. It does not include information about the arrestee's employment history, family ties or relationships, or

members of the community who might vouch for the arrestee. Nor does it include information that may be known by Defendants' past personal knowledge or experience with the arrestee.

31. At the initial appearance, Judge Collins or the Hamblen County Judicial Commissioner presiding over the initial appearance usually does not have information about the arrestee's employment history, family ties and relationships, or members of the community who might vouch for the arrestee, unless he or she has past personal knowledge or experience with the arrestee.

32. At the initial appearance, Judge Collins or the Hamblen County Judicial Commissioner presiding over the initial appearance does not typically make findings on the record regarding the necessity of money bail.

33. At the initial appearance, the presiding official does not make factual findings on the record regarding the person's ability to pay, the necessity of detention, the adequacy of alternative conditions of release, or the necessity for any particular amount of money bail.

34. If an individual cannot pay her money bail after the initial appearance, she will remain detained in the jail until her preliminary hearing or until she or her attorney makes a motion for a bond reduction and her money bail is modified to an amount she can pay.

35. For felony drug charges and theft charges, Judge Collins generally will not consider requests for bond modification at the initial appearance.

36. The initial appearances for Named Plaintiffs Amanda Cameron and Michelle Torres were typical of how Judge Collins conducts initial appearances.

37. While initial appearances are usually very brief, misdemeanor pretrial detainees are not prevented from speaking and often informally request bail reductions.

38. When Judicial Commissioners conduct initial appearances, they are not authorized to modify the bail amount written on the warrant, even if they themselves had initially set bail.

39. If a Judicial Commissioner is overseeing the initial appearance and the arrestee requests a bail modification, the Judicial Commissioner must forward the request to Judge Collins for review. This usually occurs immediately after the initial appearances and Judge Collins will make a decision at that time.

40. In reviewing money bail modification requests brought to him by a Judicial Commissioner, Judge Collins evaluates the request within a few minutes. An additional hearing is not held or deemed necessary by Defendants.

41. When reviewing money bail modification requests brought to him by a Judicial Commissioner, Judge Collins typically does not possess information other than what is in the court file or on the court computer, unless he has past personal knowledge or experience with the arrestee.

42. When reviewing money bail modification requests brought to him by a Judicial Commissioner, Judge Collins does not make any oral or written findings on the record aside from when he modifies the bond and it is written on the mittimus.

43. Judge Collins is able to consider written bail reduction motions in chambers without adding to court time if the attorneys involved agree to the motion.

44. When Judge Collins agrees to consider a motion to modify bail, and a hearing is held, he typically makes no findings on the record about public safety or future court appearances.

45. Preliminary hearings for detainees are set up to 14 business days after their initial appearance.

46. Depending on when weekends and holidays fall, a preliminary hearing could occur 18 or 19 days after an arrestee's initial appearance, although usually, they occur within 14 business days.

47. Individuals who are indigent typically have counsel appointed at the initial appearance, based on an affidavit of indigency filled out while in jail.

48. In Hamblen County, counsel is appointed during initial appearances, after which appointed counsel can learn their clients' cases and backgrounds and argue motions on their behalf once they become aware of their appointment.

49. The presiding judicial official looks at an arrestee's affidavit of indigency and asks follow-up questions on the affidavit, if necessary, when determining whether the arrestee is indigent and therefore qualified for a public defender.

50. Judge Collins has never, in his recollection, denied appointed counsel to someone who is in jail on bail they have not paid.

51. Sometimes, although not most of the time, Judge Collins uses an arrestee's affidavit of indigency to adjust an arrestee's bond without being asked.

52. If the Public Defender's Office has a conflict, a private attorney is appointed to indigent arrestees.

53. There is no official policy of Defendants that prohibits public defenders from going to the jail and being present during initial appearances.

54. Prior to the subject lawsuit being filed, attorneys with the Public Defenders' Office generally did not participate in misdemeanor initial appearances.

55. Prior to the subject lawsuit being filed, public defenders were rarely present in the jail with arrestees during their initial appearances, but now they are usually present during initial appearances.

56. There is no official policy of Defendants' that prohibits public defenders from calling the court to determine whether any new clients have been assigned.

57. Court staff are able to determine and convey public defenders' new appointments each day by looking at the arraignment docket, where the appointments are written down.

58. Public defenders can file motions at any time to reduce bail after they are appointed to represent their clients and are notified or otherwise become aware of their appointment.

59. A bail-modification motion submitted to Judge Collins is not set for a hearing unless the attorney making the motion requests that the Clerk put it on the docket, and there are no guidelines or rules about the timing of bail-modification hearings.

60. Judge Collins has refused to consider bail modification requests from defense attorneys when the prosecutor did not agree with the request.

61. In considering bail modification motions, Judge Collins typically does not make factual findings on the record and he typically does not require the state to show why someone should be detained on a particular bail amount.

62. Judge Collins is unfamiliar with studies regarding the efficacy of money bail and has not conducted or requested that someone conduct a study of the costs associated with more thoroughly investigating the factors set forth in Tenn. Code Ann. § 40-11-118 or conducting more comprehensive bail hearings during initial appearances.

63. Judge Collins has instructed Judicial Commissioners to order alcohol monitoring or a drug monitoring devices for arrestees on DUI second and subsequent charges.

64. Judge Collins, when authorized, may grant financial assistance for arrestees who have monitoring conditions imposed upon them such as an ignition interlock device or alcohol or drug monitoring device. This requires the arrestee to fill out a form requesting financial assistance.

65. It is Judge Collins's understanding that the monetary amounts of the monitoring conditions imposed upon pretrial detainees such as an ignition interlock device or alcohol or drug monitoring devices are always at the discretion of the company and not the Court.

**The Hamblen County Jail**

66. The Hamblen County Jail has beds for 255 individuals.

67. In every month from at least 2009 until February 16, 2020, the jail housed more than 255 people.

68. Any person in the Hamblen County Jail without a bed is provided a pad for sleeping on the concrete floor.

69. The isolation" area of the jail has six beds in six cells and a dayroom area common to each of these six cells. Sometimes as many as 30 to 40 people can be housed in the "isolation" section of the jail.

70. There are at least four female "pods" at the Hamblen County Jail. One contains 8 beds, one contains 16 beds, one contains 20 beds, and one contains 24 beds.

71. The "annex" area of the Hamblen County Jail, which is one of the men's "pods," contains 24 beds.

72. Many things can impact the amount of time between the time of arrest and booking, including but not limited to transporting the arrestee to the hospital to have blood drawn, if the arrestee is impaired, and the number of people being booked in in front of the arrestee.

73. The Hamblen County Jail contracts with Southern Health Partners to have a registered or licensed practitioner nurse on duty at all times.

74. According to Sheriff Jarnagin, eighty (80) to eighty-five percent (85%) of the people incarcerated in the Hamblen County Jail are incarcerated for drug-related offenses.

75. According to Sheriff Jarnagin, citing people for drug offenses instead of arresting and booking them is not a workable solution because the people cited will continue stealing to get money to continue to do drugs, and may end up dying from their drug use.

76. Since this lawsuit was filed by the Plaintiffs, the total number of inmates housed in the Hamblen County Jail has steadily decreased. As an example, the average number of inmates housed in the Hamblen County Jail each day during the month of April

2020 was 207 inmates. More specifically, the Hamblen County Jail had the following number of inmates housed in the jail each day during the month of April:

| DAY | NUMBER OF INMATES |
|---|---|
| 1 | 249 |
| 2 | 239 |
| 3 | 236 |
| 4 | 231 |
| 5 | 232 |
| 6 | 234 |
| 7 | 228 |
| 8 | 218 |
| 9 | 215 |
| 10 | 214 |
| 11 | 217 |
| 12 | 213 |
| 13 | 214 |
| 14 | 212 |
| 15 | 206 |
| 16 | 200 |
| 17 | 199 |
| 18 | 197 |
| 19 | 196 |
| 20 | 193 |

| 21 | 194 |
| 22 | 191 |
| 23 | 196 |
| 24 | 194 |
| 25 | 185 |
| 26 | 183 |
| 27 | 185 |
| 28 | 183 |
| 29 | 185 |
| 30 | 181 |

**The Named Plaintiffs**

77. Plaintiff Michelle Torres is a 50-year-old woman.

78. On Saturday, February 15, 2020, Ms. Torres was arrested for felony Manufacturing, Sale and Delivery of Schedule II Meth and Schedule VI and possession of Schedule II, III, and drug paraphernalia charges and was booked into the Hamblen County Jail.

79. Ms. Torres's money bail was set at a total of $75,000.

80. Ms. Torres was unable to pay her bail and remained detained until her initial appearance on Monday, February 17, 2020.

81. Judge Collins conducted Ms. Torres's initial appearance. At the initial appearance, Judge Collins found that Ms. Torres was indigent for the purposes of

appointment of counsel. Defense counsel did not speak on behalf of Ms. Torres during the proceeding.

82. The Transcript of the February 17, 2020 General Sessions Court Session, *see* ECF No. 71-7, at 11-13, is true, accurate and complete as to the initial appearance of Michelle Torres.

83. Ms. Torres's preliminary hearing was scheduled for March 4, 2020.

84. Ms. Torres remained in the Hamblen County Jail until a third-party organization paid her bail amount on February 24, 2020, at which time she was released.

85. After this lawsuit was filed, Plaintiff Michelle Torres was charged with Theft Under $1,000 in Hamblen County, Tennessee, in violation of T.C.A. 39-14-103 and Forgery, in violation of T.C.A. 39-14-114 on April 14, 2020.

86. Plaintiff Robbie Johnson-Loveday is a 49-year-old woman.

87. On Monday, February 11, 2020, Ms. Johnson-Loveday was arrested on Driving Under the Influence, Second Offense, driving on a revoked license, and violation of implied consent charges and was brought to the Hamblen County Jail.

88. Probable cause was found for a warrant, and Ms. Johnson-Loveday's bail was set at $6,000, with an additional requirement of an alcohol-monitoring bracelet.

89. Ms. Johnson-Loveday's bail and bracelet fee were not paid and she remained detained until her initial appearance on Friday, February 14, 2020.

90. On February 14, 2020, Ms. Johnson-Loveday had an initial appearance with a Judicial Commissioner via video conference from a room in the jail. At the initial appearance, the Judicial Commissioner found that Ms. Johnson-Loveday was indigent for

the purposes of appointment of counsel, but did not modify her bail amount. Ms. Johnson-Loveday was not represented by counsel during the proceeding.

91. Ms. Johnson-Loveday's preliminary hearing was scheduled for March 3, 2020.

92. Ms. Johnson-Loveday remained in the Hamblen County Jail until a third-party organization paid her money bail and a different third party paid her bracelet fee. She was released on February 25, 2020.

93. Plaintiff Amanda Cameron is a 36-year-old woman.

94. On Saturday, February 15, 2020, Ms. Cameron was arrested on Schedule II, III, and IV drug charges along with a drug paraphernalia charge and a theft charge and was booked into the Hamblen County Jail.

95. Ms. Cameron's money bail was set for a total of $32,000.

96. Ms. Cameron's bail was not paid and she remained detained until her initial appearance on Monday, February 17, 2020.

97. Judge Collins conducted Ms. Cameron's initial appearance. At the initial appearance, Judge Collins found that Ms. Cameron was indigent for the purposes of appointment of counsel. Defense counsel did not speak on behalf of Ms. Cameron during the proceeding.

98. The Transcript of the February 17, 2020 General Sessions Court Session, *see* ECF No. 71-7, at 5-7, is true, accurate and complete as to the initial appearance of Amanda Cameron.

99. Ms. Cameron's preliminary hearing was scheduled for March 4, 2020.

100. Ms. Cameron remained in the Hamblen County Jail until a third-party organization paid her bail amount on February 24, 2020, at which time she was released.

101. After this lawsuit was filed, Plaintiff Amanda Cameron was charged with Possession of Schedule V drugs on March 5, 2020 in Hamblen County, Tennessee, in violation of TCA 39-17-413 and was arraigned on these charges on March 6, 2020 where she was given a "cite" bond.

102. After this lawsuit was filed, Plaintiff Amanda Cameron was charged with Theft of Property over $1,000 on April 8, 2020 in Hamblen County, Tennessee and was given a $1,000 bond.

103. After this lawsuit was filed, Plaintiff Amanda Cameron was charged with Theft of Property Under $1,000 and Criminal Trespass on April 15, 2020 in Hamblen County, Tennessee and was given a $1,000 bond.

104. After this lawsuit was filed, Plaintiff Amanda Cameron was charged with Possession of Schedule II, IV, and V drugs on April 21, 2020 in Hamblen County, Tennessee, in violation of TCA 39-17-407, 39-17-411, and 39-17-413, and was held without bond.

105. A Violation of Probation warrant was issued for Amanda Cameron on April 23, 2020.

106. Plaintiff Bethany Edmond is a 36-year-old woman.

107. On Wednesday, February 12, 2020, Ms. Edmond was arrested for possession of Schedule III and V drugs and aggravated criminal littering and was booked into the Hamblen County Jail.

108. After her arrest, Ms. Edmond's money bail was set at a total of $1,500.

109. Ms. Edmond's bail amount was not paid and she remained detained until her initial appearance on Friday, February 14, 2020.

110. On February 14, 2020, Ms. Edmond had an initial appearance with a Judicial Commissioner via video conference from a room in the jail. At the initial appearance, the Judicial Commissioner found that Ms. Edmond was indigent for the purposes of appointment of counsel, but did not modify her bail amount. Defense counsel did not speak on behalf of Ms. Edmond during the proceeding.

111. Ms. Edmond remained in the Hamblen County Jail until a third-party organization paid her bail amount on February 24, 2020, at which time she was released.

112. A Violation of Probation warrant was issued for Bethany Edmond on April 23, 2020.