# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MICHELLE TORRES, *et al.*, on behalf of themselves and those similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>W. DOUGLAS COLLINS, in his official capacity as Hamblen County General Sessions Judge, *et al.*,<br><br>        Defendants. | Case No. 2:20-cv-00026-DCLC-CRW |

## SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Michelle Torres, Bethany Edmond, Robbie Johnson-Loveday, and Amanda Cameron respectfully submit this supplemental brief in support of their Motion for Class-Wide Preliminary Injunction (ECF No. 5) pursuant to Local Rule 7.1(d) to provide this Court with new information regarding the presence of COVID-19 in the Hamblen County Jail. As of July 1, 2020, seventeen inmates and three corrections officers at the Hamblen County Jail have tested positive for COVID-19.[1] Hamblen County has been identified by the Tennessee Health Commissioner as a "hot spot" for new cases,[2] and the jail is now the largest cluster of COVID-19 cases in the county. The May 2020 summary of the jail population from the Tennessee Department of Corrections shows that as of May 31, there were 237 people detained in the Hamblen County Jail, 133 of whom are detained pretrial.[3] Hamblen County is now facing an unprecedented public-health disaster, and the presence of COVID-19 in the County Jail presents a heightened and irreparable risk of harm to all people detained within it. As the novel coronavirus that causes COVID-19 has spread across the globe, approximately 2.6 million people in the United States have been infected and almost 130,000 have died,[4] including more than 600 in Tennessee.[5]

---

[1] Robert Moore, *More Positive Cases Reported in the Hamblen County Jail*, Citizen Tribune, June 29, 2020, https://www.citizentribune.com/news/coronavirus_news/more-positive-cases-reported-in-the-hamblen-county-jail/article_082665a2-ba28-11ea-a8aa-3f285341b84b.html.

[2] *Id*.

[3] Tennessee Department of Correction, Tennessee Jail Summary Report May 2020 1, *available at* https://www.tn.gov/content/dam/tn/correction/documents/JailMay2020.pdf.

[4] Centers for Disease Control and Prevention, Cases and Deaths in the U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/us-cases-deaths.html (last visited July 1, 2020).

[5] Tennessee Department of Health, Coronavirus Disease (COVID-19), https://www.tn.gov/health/cedep/ncov.html (last visited July 1, 2020).

Numerous members of the putative class (hereinafter "Class Members") are in the Hamblen County Jail because they are too poor to pay their assigned money bail; they are presumed innocent, and no judge has found that detention is necessary to protect the community from danger or ensure their appearance in court. Defendants continue to violate class members' equal protection and due process rights. And now, in the face of active spread of the deadly virus in the Jail, Defendants' unconstitutional bail practices also threaten Class Members' lives.[6]

Class Members are now facing imminent risk of infection and death. Social distancing measures necessary to avoid a highly contagious respiratory illness are impossible in a jail designed for communal living—including dormitory-style housing in which 24-30 inmates share a "pod." *See* Parties' Joint Stipulations, ¶¶ 69-71, ECF No. 78-1 (inmates at the Hamblen County Jail are housed in pods containing 16-24 beds, and the "isolation" area may include as many as 40 people); Ex. 1, Letter to Policymakers, Judicial Officers, Sheriffs, Wardens, and Parole Boards from Carlos Franco Paredes, M.D., M.P.H. ("The number of private rooms in a typical jail, prison, or juvenile detention facility is insufficient to comply with the recommended airborne/droplet isolation guidelines."). Now that COVID-19 has entered the Jail, it will likely spread quickly, as it has in other jails around the country. *See generally id.* For example, despite attempted quarantines, Cook County Jail in Chicago went from two diagnoses to over 100, including a dozen employees, in one week; at Rikers Island, in New York City, the numbers jumped from two

---

[6] Plaintiff's Motion for Class Certification (ECF No. 2) remains pending. Although this is a prototypical case for which the class-action vehicle was created, the Court need not rule on Plaintiffs' class-certification motion or formally certify a class in order to issue preliminary injunctive relief. *See, e.g.*, *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012) ("Simply put, there is nothing improper about a preliminary injunction preceding a ruling on class certification.").

2

positive tests to 253 in twelve days.[7] As of May 6, at least seven inmates had died of COVID in Cook County[8], and, as of June 16, at least six had died in New York.[9]

Absent swift intervention, Hamblen County is likely on a similar trajectory. Even without any heightened risk factors, inmates face a serious risk of becoming very ill or dying. Adults over the age of 60 and people who have serious chronic medical conditions like heart disease, diabetes, and lung disease are at greatest risk of death,[10] but enormous numbers of younger, healthy people are landing in intensive care units, frequently with life-threatening complications. Class members' extraordinary harms absent emergency relief are great and particularized.[11]

---

[7] Christina Carrega, *Shampoo, Watery Soap to Disinfect: Conditions on Rikers Island During COVID-19 Unsafe, Some Inmates Say*, ABC News, March 29, 2020, https://abcnews.go.com/Health/shampoo-watery-soap-disinfect-conditions-rikers-island-covid/story?id=69767859; Timothy Williams et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times, March 30, 2020, https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html?action=click&module=Top%20Stories&pgtype=Homepage.

[8] Matthew Hendrickson, *Man Awaiting Trial in Bar Fight 7th Cook County Jail Detainee to Die from Coronavirus Complications*, Chicago Sun-Times, May 6, 2020, https://chicago.suntimes.com/coronavirus/2020/5/6/21249680/arlington-heights-charged-bar-fight-cook-county-jail-detainee-die-coronavirus-related-illness.

[9] Jan Ransom, *Virus Raged at City Jails, Leaving 1,259 Guards Infected and 6 Dead*, N.Y. Times, May 20, 2020 (updated June 16, 2020), https://www.nytimes.com/2020/05/20/nyregion/rikers-coronavirus-nyc.html.

[10] *See* Centers for Disease Control and Prevention, People Who Need to Take Extra Precautions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last accessed July 1, 2020).

[11] Julie Bosman & Sarah Mervosh, *As Virus Surges, Younger People Account for 'Disturbing' Number of Cases*, N.Y. Times, June 27, 2020, https://www.nytimes.com/2020/06/25/us/coronavirus-cases-young-people.html; Lisa Lockerd Maragakis, M.D., M.P.H., *Caronavirus and COVID-19: Younger Adults Are at Risk, Too*, Johns Hopkins Medicine, Apr. 19, 2020, https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/coronavirus-and-covid-19-younger-adults-are-at-risk-too.

Under these circumstances, courts around the country have found that the risk to inmates of exposure to COVID-19 constitutes irreparable harm warranting emergency injunctive relief. *See, e.g., Basank v. Decker*, No. 20 CIV. 2518 (AT), 2020 WL 1481503, at *4 (S.D.N.Y. Mar. 26, 2020) (temporary restraining order was justified to release alien detainees in Immigration and Customs Enforcement (ICE) custody from county jails where COVID-19 cases were identified); *Thakker v. Doll*, No. 1:20-CV-480, 2020 WL 1671563, at *4 (M.D. Pa. Mar. 31, 2020) ("Based upon the nature of the virus, the allegations of current conditions in the prisons, and Petitioners' specific medical concerns . . . we therefore find that Petitioners face a very real risk of serious, lasting illness or death. There can be no injury more irreparable."); *Mays v. Dart*, No. 20 C 2134, 2020 WL 1812381, at *13 (N.D. Ill. Apr. 9, 2020) (issuing a temporary restraining order "because the risk of harm to plaintiffs is a grave threat to their health and possibly their lives, they have shown a risk of harm for which 'it is not practicable to calculate damages' and therefore has no adequate remedy at law"); *Ahlman v. Barnes*, No. SACV20835JGBSHKX, 2020 WL 2754938, at *13 (C.D. Cal. May 26, 2020) ("There are at least 369 cases of COVID-19 in the Jail. Without additional measures to abate the spread, more inmates will contract the disease. Undoubtedly some will die. Certainly, there is no greater irreparable harm than death." (internal quotations omitted); *Coreas v. Bounds*, No. CV TDC-20-0780, 2020 WL 2201850, at *2 (D. Md. Apr. 30, 2020) (granting motion for release upon finding irreparable harm to Petitioner after nurse at the jail tested positive for COVID-19).

In ordinary times, Defendants' daily violation of constitutional principles has immediate devastating consequences for Class Members: removing people from their homes and communities for even a few days leads to lost housing and jobs, destabilized families and communities,

4

increased poverty, and negative criminal case outcomes.[12] Now, it also contributes to an unprecedented and potentially catastrophic personal and public-health risk. While this suit does not claim that constitutional procedures would necessarily result in the release of any individual Class Member, currently Class Members are detained, without any findings that such detention is necessary to serve the government's interests in public safety or ensuring court appearances, and each Class Member faces an extended period of unconstitutional detention even as the Jail has become the site of a COVID-19 outbreak. The relief sought in Plaintiffs' Motion for Class-Wide Preliminary Injunction can prevent this irreparable harm: Individuals who are in jail solely because they cannot afford imposed money bail should be released unless and until they are given a constitutionally compliant hearing.

---

[12] Pls.' Mem. in Supp. of Preliminary Injunction, ECF No. 26, at 34-36.

Respectfully submitted,

/s/ Tara Mikkilineni
Tara Mikkilineni (D.C. Bar 997284)
(admitted *pro hac vice*)
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Tel: 202-894-6124
Fax: 202-609-8030
Email: tara@civilrightscorps.org

/s/ Seth Wayne
Seth Wayne (D.C. Bar 888273445)
(admitted *pro hac vice*)
Jonathan Backer (D.C. Bar 1613073)
(admitted *pro hac vice*)
Mary B. McCord (D.C. Bar 427563)
(admitted *pro hac vice*)
Institute For Constitutional Advocacy and Protection (ICAP)
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
Email: sw1098@georgetown.edu
jb2845@georgetown.edu

/s/ George T. Lewis
George T. Lewis, III (T.N. Bar 7018)
Matthew G. White (T.N. Bar 30857)
(admitted *pro hac vice*)
Baker Donelson
265 Brookview Centre Way, Suite 600
Knoxville, TN 37919
Tel: 865-549-7000
Email: blewis@bakerdonelson.com
mwhite@bakerdonelson.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of July, 2020 I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Eastern District of Tennessee, using the electronic case filing system of the Court. This filing will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Tara Mikkilineni