# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

MICHELLE TORRES, *et al.*, on behalf of themselves and those similarly situated,

Plaintiffs,

v.

W. DOUGLAS COLLINS, in his official capacity as Hamblen County General Sessions Judge, *et al.*,

Defendants.

Case No. 2:20-cv-00026-DCLC-CRW

(Class Action)

## MOTION TO QUASH DEFENDANTS' SUBPOENAS DUCES TECUM

Plaintiffs Michelle Torres, Bethany Edmond, Amanda Cameron, and Robbie Johnson-Loveday respectfully move this court to quash the subpoenas duces tecum issued by Defendants against the Third Judicial District Public Defender's Office and seven attorneys with that office (collectively, "public defenders"), seeking communications between those attorneys and counsel for Plaintiffs. The documents sought in these subpoenas are not subject to disclosure for four reasons. First, all communications with public defender Willie Santana are not discoverable under Rule 26 because he has been retained by counsel as an expert with specialized knowledge of the Hamblen County legal system, whom Plaintiffs do not expect to call as a witness at trial. Second, all communications that have taken place since Plaintiffs' counsel entered into an attorney-client relationship with the named Plaintiffs are subject to the common interest privilege, because these communications reflect the shared goal of public defenders and Plaintiffs' counsel of ending the unconstitutional pretrial detention of their clients—indigent criminal defendants in Hamblen County—particularly as there is substantial overlap between public defender clients and members

of the Plaintiff class. Third, many of the communications constitute attorney work product, as they were prepared by attorneys in the course of representing their clients and in preparation for litigation or trial. The communications include work product both of public defenders with respect to their clients, and Plaintiffs' attorneys with respect to Plaintiffs. Finally, even if no privilege were to apply, the subpoenas are overly broad and are not limited to information relevant to his case. For these reasons and those that follow, Plaintiffs respectfully request that this Court quash Defendants' subpoenas duces tecum.

## BACKGROUND

This litigation, brought by the above-listed named Plaintiffs, challenges the unlawful pretrial detention of arrestees in Hamblen County based on unconstitutional money bail under the Sixth and Fourteenth Amendments. Plaintiffs represent a class of similarly situated individuals who are detained in the Hamblen County Jail based on pretrial detention orders issued without a constitutionally compliant individualized hearing. ECF No. 116. On November 30, 2020, this Court found that Plaintiffs were likely to succeed on the merits of their claims and issued a preliminary injunction against Defendant Sheriff Esco Jarnagin. ECF No. 90. Defendants are aware that Plaintiffs' counsel have communicated with public defenders in Hamblen County on a regular basis both before this lawsuit was filed in anticipation of litigation, and during the course of this litigation in preparation for trial. These communications consist of discussions of public defenders' observations, opinions, and conclusions regarding the Hamblen County courts; information related to public defenders' representation of their clients and Plaintiffs' counsel's representation of named Plaintiffs and the Plaintiff class (including the representation of shared clients); communications related to preparation of documents for this litigation; and communications unrelated to this litigation.

2

On January 26, 2021 Defendants issued a 76-page set of interrogatories and requests for production from Plaintiffs.  Defs. First Set of Interrogatories and Requests for Production, Ex. 1.[1] Inclusive among these were requests directed toward each of the named Plaintiffs for: (1) "All documents relating to any conversation or communication between you and any person that relate to the claims or allegations set forth in Plaintiff's [sic] Complaint;" (2) All documents relating to any communication by Plaintiff, or any person acting on Plaintiff's behalf, with any witness who has knowledge of discoverable matters, concerning the subject matter of this lawsuit . . . ."; and (3) "[A]ny and all documents or tangible things obtained from the Public Defender's Office in Morristown, Tennessee related to the subject matter of your lawsuit . . . ."  *Id.* at 13-14, 32-33, 51-52, 70-71.  On March 15, 2021 and March 25, 2021 Plaintiffs responded to Defendants' requests, objecting and identifying that several of the sought documents were privileged, "including but not limited to those protected by the attorney-client, work product and common-interest privileges," and that the request sought "information protected by . . . Federal Rule of Civil Procedure 26(b)(4)(D)."  Plaintiffs Michelle Torres' Responses to Defendants' First Set of Requests for Production, Ex. 2 at 8, 11.[2]  On April 27, 2021, Plaintiffs produced a privilege log, which upon Defendants' request was amended to include additional information.  The amended privilege log was produced on May 13, 2021.  Plaintiffs' Privilege Log, Ex. 3.  The privilege log specifically listed communications between Plaintiffs' attorneys and public defenders, and identified relevant applicable privileges.

Evidently unsatisfied with Plaintiffs' assertion of privilege over Plaintiffs' attorneys' communications with public defenders, rather than confer with Plaintiffs or seek relief in this

---

[1] Pursuant to Local Rule 5.3, only the relevant excerpts of this request and Plaintiffs' response are included in the respective exhibits.

[2] Plaintiffs articulated an identical exception for each of the other named Plaintiffs.

Court, Defendants served the Public Defender's Office and its attorneys with eight subpoenas duces tecum. The subpoenas seek text messages, e-mails, and any other communications between public defenders and Plaintiffs' counsel between December 13, 2019, and the date of production. Defendants' Subpoenas, Exs. 4-11. In so doing, Defendants apparently intend to make an end-run around Plaintiffs to obtain documents reflecting communications between attorneys who share clients and litigation goals—communications they know Plaintiffs assert are privileged. Plaintiffs now move to quash those subpoenas because they seek documents that are not discoverable, and that are protected by the same privileges stated in Plaintiffs' response to Defendants' requests for production.

## LAW AND ARGUMENT

Federal Rule of Civil Procedure 45 governs the use of subpoenas. The Rule provides that a court *must* quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(i). The documents sought by Defendants' subpoenas reflect non-discoverable and privileged conversations between Plaintiffs' counsel and attorneys with the Public Defender's Office. Because they are asserting a "personal right or privilege with regard to the documents sought," Plaintiffs have standing to challenge these subpoenas even though the subpoenas are not directed at Plaintiffs. *Mann v. Univ. of Cincinnati*, Nos. 95-3195; 95-3292, 1997 U.S. App. LEXIS 12482, at \*13 (6th Cir. May 27, 1997) (internal quotation marks and citation omitted); *see also*, *e.g.*, *Hunter v. Shield*, No. 2:18-cv-1097, 2020 U.S. Dist. LEXIS 206525, at \*36 (S.D. Ohio Nov. 4, 2020) (party asserting personal right or privilege in documents has standing to challenge subpoena).

4

### A. Consulting Expert Communications Are Not Subject to Disclosure

First, communications between Plaintiffs' counsel and attorney Willie Santana are exempt from disclosure under Rule 26 because Santana is an expert consulted by Plaintiffs' counsel for trial preparation who Plaintiffs do not intend to call as a witness. "[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (quoting *Barrington v. Mortage It, Inc.*, No. 07-61304-CIV 2007 U.S. Dist. LEXIS 90555, at *3 (S.D. Fla. Dec. 10, 2007)). Rule 26 prohibits parties from discovering, "by interrogatories or deposition," "facts known or opinions held" by "expert[s] employed only for trial preparation." Fed. R. Civ. P. 26(b)(4)(D); *see also* Fed. R. Civ. P. 26 advisory committee notes to the 1970 amendment ("[T]he subdivision precludes discovery against experts who were informally consulted in preparation for trial"). Although Plaintiffs here have sought discovery by subpoena rather than interrogatory or deposition, numerous courts across the country have held that the protections in Rule 26(b)(4)(D) extend to subpoenas and requests for production. *See Kurlander v. Kroenke Arena Co., LLC*, No. 16-cv-02754-WYD-NYW, 2017 U.S. Dist. LEXIS 113145, at *19 (D. Colo. July 20, 2017) (collecting cases). As the court stated in *Kurlander*, "[t]o hold otherwise risks that parties will circumvent the protections of Rule 26(b)(4)(D) by simply using a different discovery mechanism than those described in the Rule." *Id.*

Santana is undeniably an expert on the issues raised in this lawsuit. As a licensed attorney, veteran public defender in Hamblen County, and former Tennessee prosecutor, Declaration of Tara Mikkilineni, Ex. 12, ¶ 4 (Mikkilineni Decl.), he has specialized knowledge of the Hamblen County legal system, the Hamblen County Jail, local bail practices, and Tennessee law. His expertise on these topics—his observations, opinions, and conclusions—have been the subject of Plaintiffs'

5

counsel's communications with him.  Mikkilineni Decl. ¶ 4. Santana's knowledge related to the issues in this case are based on both his own first-hand observations, and also information "observed, gathered, and preserved by others[,]" including other defense attorneys in Hamblen County.  *Pedigo v. UNUM Life Ins. Co. of America*, 145 F.3d 804, 807-08 (6th Cir. 1998).  Even in describing his own observations, he necessarily draws on "specialized knowledge" as a trained and experienced attorney, which elevates the ordinary first-hand knowledge of a lay witness to expert-level opinions or conclusions.  *See, e.g.*, *Genesco v. Visa*, 296 F.R.D. 559, 581 (M.D. Tenn. 2014); *SPV-LS, LLC Transamerica Life Ins. Co. v. Berman*, CIV 14-4092, 2017 U.S. Dist. LEXIS 33213, at *25–27 (D.S.D. Mar. 6, 2017) (holding that an attorney consulted because of his "experience[] litigating" similar cases was non-testifying expert).  Prior to the initiation of this litigation, Santana agreed to provide facts, opinions, and conclusions regarding the Hamblen County legal system and Tennessee law to Plaintiffs' counsel.  Mikkilineni Decl. ¶ 5.  Plaintiffs do not intend to call Santana as a witness at trial.  Mikkilineni Decl. ¶ 6.  Accordingly, Platintiffs' counsel's communications with Santana fall within the protections of Rule 26(b)(4)(D).

Under the Rule, communications between Santana and Plaintiffs' counsel are not discoverable unless Defendants have shown "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."[3]  Fed. R. Civ. P. 26(b)(4)(D)(ii);[4] *see also, e.g.*, *McBeath v. Tucson Tamale Co.*, No. CV-16-00462-TUC-

---

[3] The other exception, which allows discovery from consulting witnesses as provided in Rule 35(b), applies only to mental or physical examinations and is inapplicable here.

[4] If it were determined that Santana was not formally retained by Plaintiffs' counsel, but is instead "an expert informally consulted in anticipation of litigation or to prepare for trial, but not retained or specially employed[,]" then "[n]o discovery may be had" of his communications with Plaintiffs. *Westchester Surplus Lines Ins. Co. v. Clancy & Theys Constr. Co.*, No. 5:12-CV-636-BO, 2013 U.S. Dist. LEXIS 196601, at *7 (E.D.N.C. Sep. 20, 2013); *see also USM Corp. v. Am. Aerosols*, 631 F.2d 420, 424-25 (6th Cir. 1980); *Ager v. Jane C. Stormont Hospital & Training School for Nurses*, 622 F.2d 496, 500-01 (10th Cir. 1980).

6

DCB (BPV), 2017 U.S. Dist. LEXIS 113712, at *15 (D. Ariz. July 20, 2017) ("Rule 26(b)(4)(D) creates a safe harbor whereby facts and opinions of non-testifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances." (citations omitted)). Defendants bear the burden of establishing that exceptional circumstances warrant discovery. *See, e.g.*, *United States ex rel. Scott v. Humana Inc.*, No. 3:18-CV-61-JRW-CHL, 2019 U.S. Dist. LEXIS 223906, at *21 (W.D. Ky. Dec. 18, 2019) ("A party seeking discovery of facts or opinions held by a non-testifying consulting expert bears the burden of showing exceptional circumstances." (citing *Genesco*, 296 F.R.D. at 580)). "Courts have interpreted exceptional circumstances to mean that the party cannot obtain equivalent information from another source." *Id.* In particular, there are not exceptional circumstances if the "party could obtain the same information by using their own experts[.]" *Id.*

Defendants cannot make such a showing. While Defendants have not articulated what information they hope to obtain from Santana, the allegations in this case—and the only relevant facts—relate to bail practices and procedures in the Hamblen County courts and the Hamblen County Jail.[5] As Defendants are officials with responsibility for the Hamblen County courts and Hamblen County Jail, they have equal or greater access to information possessed by Santana. Defendants are also able to hire their own expert to provide opinions and conclusions regarding bail practices in Hamblen County and conditions in the Hamblen County Jail. Defendants have ample ways to obtain equivalent information to that possessed by Santana from their own observation and recollection, and by reviewing documents in their possession. Indeed, many of

---

[5] The particular circumstances of each of the named Plaintiffs may also be relevant, but Santana has no specific knowledge related to any of the named Plaintiffs beyond that already possessed by Defendants. Even if he did, such communications would fall within the common interest privilege, as articulated in Section B, *infra*.

the challenged practices have been stipulated to by the parties. ECF No. 78. Accordingly, Defendants are not entitled to discovery from Plaintiffs' consulting expert.

### B. Plaintiffs' Counsel and Public Defenders' Communications Fall Within the Common Interest Privilege

Second, communications between Plaintiffs' counsel and public defenders are protected by the "common interest" privilege. The common interest privilege expands the scope of the attorney-client privilege when "two or more clients with a common interest in a matter are represented by separate lawyers and agree to exchange information concerning the matter." *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998). "The common interest doctrine encourages parties working with a common purpose to benefit from the guidance of counsel, and thus avoid pitfalls that otherwise might impair their progress toward their shared objective." *Broessel v. Triad Guar. Ins.*, 238 F.R.D. 215, 220 (W.D. Ky. 2006) (quoting Edna Selan Epstein, <u>The Attorney-Client Privilege and the Work-Product Doctrine</u>, American Bar Association Section of Litigation at 196 (4th ed. 2001)).

Although originally applied in situations where lawyers represented clients in the same matter, the common interest privilege does not require that the two parties in question be involved in a single case. *Id.*; *see also Cooey v. Strickland,* 269 F.R.D. 643, 652 (S.D. Ohio 2010) ("[I]t is possible for two or more parties to share a common interest without becoming parties to the same litigation."); *Miami Valley Fair Hous. Ctr. Inc. v. Metro Dev. LLC*, No. 2-16-cv-607, 217 U.S. Dist. LEXIS 226869, at *7 (S.D. Ohio May 16, 2017) (same). The "common interest" shared by the parties that defines the privilege may be "legal, factual, or strategic," *Reed*, 134 F.3d at 357, and need not be identical, so long as the parties are working toward a "mutually beneficial goal." *Cooey*, 269 F.R.D. at 652; *Burkhead & Scott v. City of Hopkinsville*, No. 5:12-CV-00198-TBR, 2014 WL 6751205, at *4 (W.D. Ky. Dec. 1, 2014). The common interest privilege extends

protection to all communications made between attorneys in furtherance of the shared goal, *Cooey*, 269 F.R.D. at 652-53 ("[I]t is not necessary that parties be in agreement on every point; a communication is privileged as long as it deals with a matter on which parties have agreed to work toward a mutually beneficial goal, even if parties are in conflict on some points."), when it is in service of actual or anticipated litigation.[6] *Adkisson v. Jacobs Eng'g Grp.*, No. 3:13-CV-505-TAV-HBG, 2021 WL 149841, at \*3 (E.D. Tenn. Jan. 15, 2021).

The shared goal need not be strictly defined. *Cooey* is instructive. In that case, plaintiffs brought constitutional claims against various government actors, ranging from the state governor to members of prison execution teams, to challenge Ohio's lethal injection policies and procedures, requesting information and documents relating to its execution policy. 269 F.R.D. at 646. The defendants claimed the protection of the common interest privilege in declining to disclose, among other things, emails relating to various defendants' legal representation. *Id.* at 652-53. In holding that the common interest privilege applied, the court found that the attorneys for various government entities were jointly cooperating in furtherance of the broader goal of assessing Ohio's execution policies and procedures. *Id.* at 653; *see also Burkhead & Scott*, 2014 WL 6751205, at \*5 (privilege applied because city and solid waste authority shared common goal of providing solid waste services and ensuring that solid waste ordinances were upheld).

Here, both Plaintiffs' counsel and public defenders represent clients who have criminal cases in the Hamblen County General Sessions Court. There is substantial overlap between public defender clients, named Plaintiffs, and members of the Plaintiff class. For example, three of the four named Plaintiffs were represented by a public defender in the underlying criminal case that

---

[6] The court in *Broessel* noted that "[u]nlike the joint defense privilege, the common interest does not require or imply that an actual suit is or ever will be pending." 238 F.R.D. at 220. But that is of no import here, as Plaintiffs clearly both anticipated and then brought the current litigation.

gave rise to this litigation. Indeed, several of the text messages identified in the privilege log pertain to conversations about shared clients represented by both Plaintiffs' counsel and public defenders.[7] Although Plaintiffs' counsel and public defenders do not represent the same clients in the same *matter* (Plaintiffs' counsel represent the named Plaintiffs and the Plaintiff class in this civil litigation, while public defenders represent clients in their criminal cases), they share the identical and mutually beneficial goal of ensuring that their clients are not subjected to unconstitutional pretrial detention. That is both the purpose of this litigation, and a core function of a criminal defense attorney in a criminal litigation. *See, e.g.*, Am. Bar Ass'n, Criminal Justice Standards for the Defense Function, Standard 4-1.2 (among the "primary duties that defense counsel owe to their clients, to the administration of justice, and as officers of the court" is "to ensure that constitutional and other legal rights of their clients are protected").

In furtherance of that shared goal, public defenders and Plaintiffs' counsel "agree[d] to exchange information concerning the matter," *Reed*, 134 F.3d at 357, and "agreed to take a joint approach in the matter at issue." *Cooey*, 269 F.R.D. at 652. All communications between public defenders and Plaintiffs' attorneys that relate to the named Plaintiffs or members of the class have been in furtherance of their mutually shared goal of ensuring that arrestees' constitutional rights are protected in Hamblen County. The communications sought by Defendants' subpoenas would accordingly intrude on the confidentiality of both public defenders' representation of their clients, and Plaintiffs' counsel's representation of Plaintiffs and the other members of the Plaintiff class.[8]

---

[7] Plaintiffs' Privilege Log, Ex. 3, File Numbers 32588.1, 3431.1, 34032.1, 34033.1, 34034.1, 34035.1, 34036.1, & 34037.1.

[8] On the other hand, any communications that Defendants seek that are *unrelated* to this lawsuit and Plaintiffs' claims are improperly sought, as their only purpose would be to seek to harass or embarrass public defenders and Plaintiffs' counsel. *See, e.g., Klingeman v. Dechristofaro*, No. 4:09-CV-528, 2010 U.S Dist. LEXIS 98025, at *11 (N.D. Ohio Sep. 8, 2010) (quashing

Based on the common legal interest shared by public defenders and Plaintiffs' attorneys in furtherance of the representation of their respective clients, this Court must quash Defendants' subpoenas.

### C. Communications by Plaintiffs' Counsel and Public Defenders are Non-Discoverable Attorney Work Product

Third, the subpoenas should be quashed because they seek to reveal attorney work product of both Plaintiffs' counsel and public defenders. The Rules prohibit the disclosure of "documents and tangible things" that were "prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative" unless there has been "a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Even where a showing of substantial need and undue hardship is made, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *Id.*

Many of the communications sought by Defendants fall within the foregoing rule, and are not subject to disclosure because Defendants have not shown either a substantial need or undue hardship.[9] Even if such a showing were made, the broad language of the subpoenas would necessarily capture communications that do not include objective facts, but also attorneys' opinions and mental impressions that are categorically excluded from discovery.

---

subpoena where "the only purpose such records could serve is to harass or embarrass the individual to whom they relate"); *see also* Section D *infra*.

[9] In addition to the communications described in Plaintiffs' privilege log as being subject to the work product privilege, the communications between Plaintiffs' counsel and Willie Santana are also subject to the work product privilege; those communications have not been logged because Mr. Santana is also a consulting expert for Plaintiffs. *See Genesco*, 302 F.R.D. at 191.

First, the relevant communications sought by Defendants, including emails and text messages, are "documents [or] tangible things" under Rule 26. *See, e.g.*, *Bard v. Brown Cnty.*, No. 1:15-cv-00643, 2017 WL 3129802, at \*4, \*6 (S.D. Ohio Jul. 21 2017); *Gruenbaum v. Werner Enters.*, 270 F.R.D. 298, 306 (S.D. Ohio 2010); *Johnson v. Bay West Paper Corp.*, No. C-1-04-91, 2005 WL 8161943, at \*3 (S.D. Ohio Oct. 21, 2005). Beyond the emails and texts messages, Defendants also seek to discover attachments to the documents that include draft declarations prepared by counsel for use in this litigation. Plaintiffs' Privilege Log, Ex. 3 at 2-3.

Second, the relevant correspondence between public defenders and Plaintiffs was created "in anticipation of litigation." In the Sixth Circuit, this requirement is met if it was "created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose," and "that subjective anticipation of litigation was objectively reasonable." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). As is evident, Plaintiffs' counsel's communications directed toward public defenders *about the subject matter of this lawsuit* were prepared because of the reasonable anticipation—or ongoing prosecution—of this litigation. Similarly, public defenders continuously represent clients in criminal litigation. Public defenders' communications with Plaintiffs' counsel about this lawsuit and bail practices in Hamblen County General Sessions Court were created relative to ongoing and future criminal litigation involving their clients.

Third, Plaintiffs' counsel's correspondence with public defenders was created "by the party or its representative" on both sides of the conversation. All relevant communications sought by

Case 2:20-cv-00026-DCLC-CRW    Document 119    Filed 05/19/21    Page 12 of 16
PageID #: 2350

Defendants were made by attorneys relative to the representation of their clients in ongoing or anticipated litigation.[10]

Nor has there been a waiver of the privilege by communication between Plaintiffs' counsel and public defenders because, unlike attorney-client privilege, work product protections are waived only if disclosure is to an "adversary[.]" *Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp. (in re Columbia/HCA Healthcare Corp. Billing Practices Litig.)*, 293 F.3d 289, 306 (6th Cir. 2002); *see also id.* at 306 n.28 ("work product protection differs slightly from waiver of attorney-client privilege in that the original disclosure must be to an 'adversary' in order to find initial waiver." (citing *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997)); *First Horizon Nat'l Corp. v. Hous. Cas. Co.*, No. 2-15-cv-2235-SHL-DKV, 2016 U.S. Dist. LEXIS 142332, at *32 (W.D. Tenn. Oct. 5, 2016) (recognizing that Sixth Circuit adopted rule that work product protections are waived only if initial disclosure is to an "adversary"). Public defenders are not adversaries to Plaintiffs. Indeed, as with the "common interest" doctrine as applied to the attorney-client relationship, the common interest between

---

[10] Moreover, even if it were determined that public defenders' communications *did not* implicate the representation of their clients, their correspondence would be protected by Plaintiffs' counsel's privilege because of public defenders' role as consultants to Plaintiffs' counsel— similar to Santana's role as a consulting expert. Rule 26(b)(3)(A) lists a non-exhaustive set of "party representatives" to whom the work product privilege applies which includes both a party's attorney and consultants. Consultants need not be formally engaged by a client or her attorneys, so long as they draw on some form of expertise to assist with the anticipated litigation. *See Bard*, 2017 WL 3129802, at *4. In *Bard*, a non-party actor was determined to be a "litigation consultant" for the plaintiffs and granted work-product protection for his communications with the plaintiffs' attorneys because of his "education, background, training, and experience" as a police officer in the local area. *Id.* Similarly, public defenders have assisted Plaintiffs' attorneys in a consulting role because of their legal education and expertise with bail practices in Hamblen County. As in *Bard*, the communications by Plaintiffs' counsel toward public defenders and vice-versa fall within the scope of the consultant work product privilege, and may not be produced unless there has been a showing of substantial need.

Plaintiffs' counsel and public defenders allows disclosure of work product without waiver of its confidentiality. *Miami Valley*, 2017 U.S. Dist. LEXIS 226869, at *7.

Finally, there has been no showing of substantial need for any fact-based content stated by either Plaintiffs' attorneys or public defenders. As discussed above, the essential facts relevant to this lawsuit relate to the practices and procedures in Hamblen County courts and the Hamblen County Jail. Defendants—who are Hamblen County officials and are familiar with these practices—have no need for Plaintiffs' counsel's or public defenders' communications to show what happens in Hamblen County courts or jail. *Cf. Johnson*, 2005 WL 8161943, at *2 (no "substantial need" to discover notes documenting information from interviews where there was another source of information about the interviews). This is particularly true because Defendants have already stipulated to facts about their practices. ECF No. 78. Moreover, any correspondence Defendants seek that does *not* communicate objective facts about bail practices in Hamblen County—but instead contains Plaintiffs' counsel or public defenders' opinions or mental impressions—are wholly excluded from discovery under Rule 26.[11]

### D.     Overly Broad

Finally, even if no privilege were to apply, the subpoenas would need to be modified because they are overly broad. "A subpoena issued under Rule 45 is subject to the general relevancy standard applicable to discovery under Rule 26(b)(1)." *Vamplew v. Wayne State Univ. Bd. of Governors*, No. 12-14561, 2013 U.S. Dist. LEXIS 86678, at *2 (E.D. Mich. June 20, 2013) (quoting *Syposs v. U.S.A.*, 181 F.R.D. 223, 226 (W.D.N.Y. 1998)) (internal quotation omitted). Therefore, a "court must consider whether the subpoenas' requests are 'overly broad or seek[]

---

[11] If this Court were to find that there is a "substantial need" for the factual information in the sought communications, Plaintiffs would request *in camera* review to exclude communications that include attorney "opinion" work product.

irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production.'" *Callidus Capital Corp. v. FCA Grp.*, No. 14-10484, 2018 U.S. Dist. LEXIS 53715, at *9 (E.D. Mich. Mar. 30, 2018) (quoting *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003).

Defendants' subpoenas seek to discover *all* communications between public defenders and Plaintiffs' counsel, without qualifications that such communications must be relevant to the claims or defenses in this litigation. The party seeking discovery has the burden to demonstrate the sought documents' relevancy. *Transcor*, 212 F.R.D. at 591. Defendants cannot meet that burden as to communications that do not relate to the allegations in the complaint or potential defenses. Accordingly, even if Defendants could discover portions of the communications they seek—which for the reasons set forth above, they cannot—the subpoenas would need to be modified to include only relevant communications.

## CONCLUSION

For the reasons set forth in this motion, Plaintiffs respectfully request that Defendants' subpoenas duces tecum issued to the public defenders be quashed.

DATED: May 19, 2021                                Respectfully Submitted,

/s/ Tara Mikkilineni

Tara Mikkilineni (D.C. Bar 997284)
(admitted *pro hac vice*)
Ellora Thadaney Israni (C.A. Bar 331877)*
(admitted *pro hac vice*)
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Tel: 202-894-6124
Fax: 202-609-8030
Email: tara@civilrightscorps.org
        ellora@civilrightscorps.org

*\* Admitted to practice in California. Not
admitted in the District of Columbia; practice
limited pursuant to D.C. App. R. 49(c)(8),
with supervision by Ryan Downer.*

/s/ Seth Wayne

Seth Wayne (D.C. Bar 888273445)
(admitted *pro hac vice*)
Jonathan Backer (D.C. Bar 1613073)
(admitted *pro hac vice*)
Mary B. McCord (D.C. Bar 427563)
(admitted *pro hac vice*)
Institute for Constitutional Advocacy
and Protection (ICAP)
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
Email: sw1098@georgetown.edu
        jb2845@georgetown.edu

/s/ George T. Lewis

George T. Lewis, III (T.N. Bar 7018)
Matthew G. White (T.N. Bar 30857)
(admitted *pro hac vice*)
Baker Donelson
265 Brookview Centre Way, Suite 600
Knoxville, TN 37919
Tel: 865-549-7000
Email: blewis@bakerdonelson.com
        mwhite@bakerdonelson.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of May, 2021, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Eastern District of Tennessee, using the electronic case filing system of the Court. This filing will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Seth Wayne