# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| **MICHELLE TORRES, ROBBIE JOHNSON-LOVEDAY, AMANDA CAMERON and BETHANY EDMOND** on behalf of themselves and those similarly situated, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-26 |
| | ) | |
| **W. DOUGLAS COLLINS, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO QUASH DEFENDANTS' SUBPOENAS DUCES TECUM, OR, ALTERNATIVELY, MOTION TO COMPEL PRODUCTION OF DOCUMENT-BY-DOCUMENT PRIVILEGE LOG, OR, ALTERNATIVELY, MOTION FOR *IN CAMERA* REVIEW OF THE DOCUMENTS REQUESTED IN DEFENDANTS' SUBPOENAS DUCES TECUM**

---

COME Defendants W. Douglas Collins, in his official capacity as Hamblen County General Sessions Judge, Teresa West, in her official capacity as Hamblen County General Sessions and Circuit Court Clerk, Katie West Moore, Nancy Phillips, and Kathy Robertson, in their official capacities as Judicial Commissioners of Hamblen County General Sessions Court and Esco R. Jarnagin, in his official capacity as Hamblen County Sheriff (collectively, the "Defendants"), by and through counsel, and submit this Response in Opposition to Plaintiffs' Motion To Quash Defendants' Subpoenas Duces Tecum, or, alternatively, Motion to Compel Production of Document-by Document Privilege Log, or, alternatively, Motion for *In Camera* Review of the Documents Requested in Defendants' Subpoenas Duces Tecum.

1

## I.     Overview

On January 26, 2021, the Defendants sent a First Set of Interrogatories and Requests for Production of Documents to each of the named Plaintiffs, along with a two-page Medical Authorization. [Defendants' First Set of Interrogatories and Request for Production of Documents Propounded to Plaintiff Michelle Torres, attached hereto as **Exhibit A**].[1] Plaintiffs Michelle Torres and Robbie Johnson Loveday thereafter responded to discovery on March 15, 2021, while Plaintiffs Amanda Cameron and Bethany Edmond responded on March 25, 2021. [Counsel E-Mails, attached hereto as collective **Exhibit B**].

Plaintiffs were each asked to "[i]dentify each person you believe to have knowledge of the facts concerning the claims at issue in this action and describe the general subject matter of the knowledge you believe each person so identified to possess." [*See* **Exhibit A**, No. 3, page 5]. In response, Plaintiffs each made several objections and then provided that "[e]mployees of the Hamblen County Public Defender's office are believed to have knowledge of bail practices in the Hamblen County General Sessions Court and the conditions in the Hamblen County jail." [*See* Michelle Torres' Response to Interrogatory No. 3, attached hereto as **Exhibit C**].[2] That response is consistent with prior filings made by the Plaintiffs in this matter in which they have relied on and filed numerous declarations from attorney Ethel Rhodes who is an employee of the Hamblen County Public Defender's office.  *See e.g.*, Doc. 119, PageID #2351, n. 10; Doc. 6-8; Doc. 26-7; Doc. 70-2; Doc. 71-6. More specifically, Plaintiffs specifically identified public defender Ethel Rhodes as someone likely to have discoverable information in their Initial Disclosures. [*See* Initial Disclosures Excerpt, attached hereto as **Exhibit L**].

Plaintiffs were also asked to "identify all individuals within Hamblen County, Tennessee

---

[1] The interrogatories and requests for production sent to each named Plaintiff were identical.
[2] Each of the named Plaintiffs identified the same individuals in response to Interrogatory No. 3.

with whom you communicated regarding the allegations in your Complaint for the last five years. Please state the dates said communication took place, the place of said communication, the nature of said communication, and with whom the communication was had." [*See* **Exhibit A**, No. 5, page 5]. In response, Plaintiffs again listed several objections, including that the interrogatory sought information that was protected by attorney-client privilege, common-interest, privilege, and information constituting attorney work product, as well as information protected by Fed. R. Civ. P. 26(b)(4)(D).  [*See* Michelle Torres' Response to Interrogatory No. 5, attached hereto as **Exhibit D**].[3] Each of the Plaintiffs then provided:

> Plaintiff's attorneys have been in regular communication with employees of the Hamblen County Public Defender's Office since May 15, 2019. Plaintiff's counsel Tara Mikkilineni was asked to consult with the Public Defender's office on conducting a training for the public defenders on issues related to bail. Since July 2019, plaintiffs' counsel have been in ongoing communication with employees of the Public Defenders' office and those communications have been in the furtherance of litigation.

*Id*.

Plaintiffs were also asked to produce "[a]ll documents relating to any conversation or communication between you and any person that relate to the claims or allegations set forth in Plaintiffs' Complaint." [*See* **Exhibit A**, No. 8, page 11].  Plaintiffs each objected and provided "this request seeks privileged documents, including but not limited to those protected by attorney-client privilege and/or work-product doctrine." [*See* Plaintiff Michelle Torres Response to RFPD No. 8, attached hereto as **Exhibit E**].[4]

Additionally, Defendants asked Plaintiffs to produce "[a]ll documents relating to any communication by Plaintiff, or any person acting on Plaintiff's behalf, with any witness who has knowledge of discoverable matters, concerning the subject matter of this lawsuit, the damages

---

[3] Each of the named Plaintiffs' responses to Interrogatory No. 5 were identical.
[4] Each of the named Plaintiffs' responses to RFPD No. 8 were identical.

sought in this lawsuit . . . the allegations contained in Plaintiff's Complaint . . . and the defenses asserted by [the Defendants]. [**Exhibit A**, No. 9, page 11]. Plaintiffs each objected again and provided:

> This request calls for privileged documents, including but not limited to those protected by the attorney-client, work product and common-interest privileges, and will interpret it not to do so. Plaintiff also objects that this request seeks attorney-client work product insofar as it seeks to prematurely obtain the identification of and opinion(s) of Plaintiff's expert witnesses. Furthermore, Plaintiff objects that this request seeks information protected by Federal Rule of Civil Procedure 26(b)(4)(D).

[*See* Michelle Torres' Response to RFPD No. 9, attached hereto as **Exhibit F**].[5]

Plaintiffs were also asked to produce "any and all documents or tangible things obtained from the Public Defender's Office in Morristown, Tennessee related to the subject matter of your lawsuit . . . the damages sought . . . the allegations contained in Plaintiff's Complaint . . . and the defenses asserted by [the Defendants]." [**Exhibit A**, No. 14, pages 12-13]. Plaintiffs each objected and provided that "this request seeks privileged information – in particular, information protected by the common-interest privilege and the work-product doctrine. Furthermore, Plaintiff objects that this request seeks information protected by Federal Rule of Civil Procedure 26(b)(4)(D)." [*See* Plaintiff Michelle Torres' Response to RFPD No. 14, attached hereto as **Exhibit G**].[6]

Importantly, despite responding to discovery on March 15 and March 25, 2021 and asserting that various communications and documents were privileged, Plaintiffs did not attempt to produce a privilege log with their responses. [*See* **Exhibit B**]. Instead, Plaintiffs waited until April 27, 2021, or more than a month after responding to discovery, to finally produce a privilege log. [Initial Privilege Log, attached hereto as **Exhibit H**]. The only privileges listed on

---

[5] Each of the named Plaintiffs included the above-quoted information in response to RFPD No. 9.
[6] Each of the named Plaintiffs' responses to RFPD No. 14 were identical.

the initial privilege log were common interest privilege and work product. *Id*. Because the initial privilege log was woefully deficient in multiple ways, Defendants asked Plaintiffs to produce a more detailed privilege log. [*See* Defendants' Letter to Plaintiffs, attached hereto as **Exhibit I**]. Plaintiffs' updated privilege log was thereafter produced to Defendants on May 13, 2021. [Doc. 119-3]. Again, the only privileges listed on the updated privilege log are common interest privilege and work product. *Id*. Further, several additional communications not included on Plaintiffs' initial privilege log were included in Plaintiffs' updated privilege log on May 13, 2021. [Doc. 119-3, Page ID# 2368, File# 28631.1, 28632.1; Page ID# 2370, File #32588.1, 34031.1, 34032.1, 34033.1, 34034.1; Page ID# 2371, File # 34035.1, 34036.1, 34037.1]. All of the additional communications that were included for the first time on the updated privilege log of May 13, 2021 occurred long before the first privilege log was produced by the Plaintiffs on April 27, 2021 and should have been included on the initial privilege log.

Because their updated privilege log of May 13, 2021 continues to be woefully deficient, Defendants sent another letter to Plaintiffs asking for additional information. [Defendants' Second Letter to Plaintiffs, attached hereto as **Exhibit J**]. Specifically, Defendants noted that Plaintiffs' updated privilege log "provide[d] several files with descriptions such as 'Text messages regarding . . . ' and 'Emails regarding . . ..' These broad descriptions do not sufficiently identify the documents you are withholding." *Id*. Accordingly, Defendants asked Plaintiffs to "please identify <u>each</u> text message and <u>each</u> e-mail that you are withholding due to privilege, including the time and date of creation for each of these messages and the identities of the person who sent each message and the person(s) who received each message." *Id*. Furthermore, Defendants asked Plaintiffs to identify the number of pages for each of the e-mails listed in the updated privilege log. *Id*.

Plaintiffs responded by letter on May 18, 2021, and refused to provide any further information and instead informed for the first time that "Hamblen County Public Defender Willie Santana is an expert consulted in preparation for trial, whom Plaintiffs do not plan to call as a witness." [Plaintiff's Letter to Defendants, attached hereto as **Exhibit K**]. In short, while all of the public defenders from the Hamblen County Public Defender's Office have been identified by the Plaintiffs as witnesses with knowledge regarding the bail practices in the Hamblen County General Sessions Court and the conditions in the Hamblen County jail, the Plaintiffs have now allegedly retained Public Defender Willie Santana as a non-testifying expert consultant in an attempt to thwart Defendants' efforts to obtain legitimate discovery from a fact witness in this matter.

Prior to being advised that the Plaintiffs had allegedly retained Mr. Santana as a non-testifying expert consultant on May 18, Defendants served Subpoenas Duces Tecum on each Hamblen County Public Defender and to the Hamblen County Public Defender's Office seeking written communications, including e-mails and text messages, between representatives of the Third Judicial District Public Defender's Office and representatives and agents of Civil Rights Corp. and/or the Institute for Constitutional Advocacy and Protection ("ICAP"). [*See* Docs. 119-4, 119-5, 119-6, 119-7, 119-8, 119-9, 119-10, 119-11]. All of these subpoenas were based on the disclosures made by the Plaintiffs that the public defenders from the Hamblen County Public Defender's Office had knowledge regarding the bail practices in Hamblen County General Sessions Court and the conditions in the Hamblen County jail and the fact that the privilege log identified substantial communications between counsel for the Plaintiffs and representatives of the Hamblen County Public Defender's Office.

Plaintiffs have now filed a Motion to Quash these same subpoenas, claiming that the

documents sought in the subpoenas are not subject to disclosure because (1) "[C]ommunications with public defender Willie Santana are not discoverable under Rule 26 because he has been retained by counsel as an expert with specialized knowledge of the Hamblen County legal system, whom Plaintiffs do not expect to call as a witness at trial;" (2) An alleged common interest privilege "because these communications reflect the shared goal of public defenders and Plaintiffs' counsel of ending the unconstitutional pretrial detention of their clients;" (3) "[M]any of the communications" allegedly constitute attorney work product; and (4) The subpoenas are allegedly overbroad and not limited to information relevant to this case. [Doc. 119, Page ID# 2339-40].

Attached to Plaintiffs' Motion to Quash is the Declaration of Plaintiffs' counsel Tara Mikkilineni. [Doc. 119-12]. Of note, this Declaration provides:

> 3.    In May 2019, my co-counsel at the Tennessee firm Baker Donelson referred Willie Santana, a public defender in the Hamblen County Public Defender's office, to me in order to consult on issues related to bail and pretrial release in the Hamblen County courts. In July 2019, I visited the Hamblen County Public Defender's office, observed the proceedings in General Sessions court, was shown the Hamblen County Jail, and discussed with several public defenders the bail-setting practices of the General Sessions judge and judicial commissioners. At that time, I determined that, based on what I had observed in court and heard from the public defenders about the practices of the bail-setters in Hamblen County, that further investigation in support of potential litigation was necessary.

> 4.    Since May 2019, I and the other Plaintiffs' attorneys have regularly communicated with Willie Santana about the bail-setting norms and practices in General Sessions court. The observations, opinions and conclusions of Mr. Santana, who is not only a public defender but also a former Tennessee prosecutor, are essential to our understanding of what kind of process and legal standards are being applied in the General Sessions court to making bail determinations for arrestees. His observations, opinions and conclusions have been especially critical because General Sessions courts in Tennessee are not courts of record, and initial appearances were conducted in a closed room inside the Hamblen County jail. Thus, until we filed our lawsuit in February 2020, we could not review transcripts or audio of bail determinations or watch initial appearances ourselves.

7

5. Once we determined federal litigation was necessary to address the bail practices of the General Sessions court judge and the judicial commissioners, Mr. Santana agreed to serve as an informal consulting expert to provide facts, opinions, and conclusions regarding the Hamblen County courts and Tennessee law to the Plaintiffs' litigation team, including my team from Civil Rights Corps, lawyers from the Institute of Constitutional Advocacy and Protection at Georgetown Law School, and the law firm of Baker Donelson. Mr. Santana has done so on an ongoing basis since May 2019 through the present.

[Doc. 119-12, Page ID# 2420-21].

## II.    Law and Argument

Plaintiffs seek to quash Defendants' Subpoenas Duces Tecum and claim that the documents Defendants seek in their subpoenas are protected by the same privileges stated in Plaintiffs' response to Defendants' requests for production. [Doc. 119, Page ID# 2342]. Defendants dispute that communications from attorney Willie Santana are not discoverable, given that he is a fact witness with knowledge of bail practices in Hamblen County General Sessions Court, just like the other public defenders in Hamblen County. Defendants also dispute that all of the communications requested in the subpoenas are shielded due to the common interest privilege or work product protections. Additionally, neither Defendants nor this Honorable Court can attempt to evaluate how many documents are being withheld from the Defendants due to alleged privilege, whether all of the documents being withheld are actually privileged, and/or whether such privilege(s) have been waived based on Plaintiffs' woefully deficient privilege logs. [*See* Doc. 119-3].

**A. Like the other public defenders in Hamblen County, attorney Willie Santana is a fact witness and – at the very best - it is unclear whether and when Mr. Santana became Plaintiffs' "expert consultant" and which communications between Santana and Plaintiffs' counsel may be shielded pursuant to Fed. R. Civ. P. 26(b)(4)(D) based on Plaintiffs' answers to discovery and woefully deficient privilege log.**

Plaintiffs claim in conclusory fashion that "communications between Plaintiffs' counsel and

attorney Willie Santana are exempt from disclosure under Rule 26 because Santana is an expert consulted by Plaintiffs' counsel for trial preparation who Plaintiffs do not intend to call as a witness." [Doc. 119, Page ID# 2343].

As an initial matter, it should be noted that Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure provides that when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must expressly make the claim and must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

When responding to discovery, Plaintiffs asserted that various communications and documents were privileged, but they still have not described "the nature of the documents, communications, or tangible things not produced or disclosed," as mandated by Rule 26 of the Federal Rules of Civil Procedure. [*See* **Exhibits C** through **G**]. In fact, Plaintiffs failed to produce a privilege log until more than a month after responding to Defendants' discovery requests. [*See* **Exhibit H**].

Plaintiffs' updated privilege log of May 13, 2021 lists privileged communications beginning on February 26, 2020. [Doc. 119-3, Page ID# 2368].[7]  Notably, although Plaintiffs' counsel Tara Mikkilineni asserts that "[s]ince May 2019, I and the other Plaintiffs' attorneys have regularly communicated with Willie Santana about the bail-setting norms and practices in General Sessions court," Plaintiffs' privilege log lists communications to and from Willie Santana on just five dates, all of which occurred in December 2020. [*See* Doc. 119-3, Page ID#

---

[7] Plaintiffs' assertion of the alleged common interest privilege on their privilege log is discussed in section II.B. *infra*.

9

2368-70].

Specifically, Plaintiffs privilege log lists an e-mail from Plaintiffs' counsel Tara Mikkilineni to Public Defenders Ethel Rhodes and Willie Santana and other Plaintiffs' counsel on December 2, 2020, another e-mail from Plaintiffs' counsel Tara Mikkilineni to Public Defenders Ethel Rhodes and Willie Santana and other Plaintiffs' counsel on December 2, 2020, an e-mail from Plaintiffs' counsel Seth Wayne to Ethel Rhodes and Willie Santana and other Plaintiffs' counsel on December 3, 2020, e-mails from Plaintiffs' counsel Seth Wayne and Willie Santana to Ethel Rhodes and Willie Santana and other Plaintiffs' counsel on December 4, 2020, and another set of e-mails from Plaintiffs' counsel Seth Wayne and Willie Santana to Ethel Rhodes and Willie Santana and other Plaintiffs' counsel on December 4, 2020. [Doc. 119-3, Page ID# 2368, File # 30816.1, Page ID# 2369, File # 28602.1, 28603.1, Page ID# 2370, File # 28611.1, 28612.1]. Plaintiffs assert the common interest privilege for each of these communications. *Id.*

Plaintiffs do not list any communications with Mr. Santana as privileged on their privilege log pursuant to Fed. R. Civ. P. 26(b)(4)(D). [Doc. 119-3]. In fact, Plaintiffs fail to list any communications with Mr. Santana whatsoever prior to December 2020, despite Ms. Mikkilineni having now admitted under oath in her Declaration that she has "regularly communicated with Willie Santana about the bail-setting norms and practices in General Sessions court" since May 2019. [Doc. 119-12].

Furthermore, given that Plaintiffs provided that "[e]mployees of the Hamblen County Public Defender's office are believed to have knowledge of bail practices in the Hamblen County General Sessions Court and the conditions in the Hamblen County jail," Mr. Santana is, in fact, a fact witness who has no greater knowledge about the bail practices in Hamblen County General

Sessions Court and/or the conditions in the Hamblen County jail than any other public defender in the Third Judicial District. [*See* **Exhibit C**]. This is supported by the fact that Mr. Santana is included on Plaintiffs' privilege log on five different dates and the assertion of privilege for each of those entries is "common interest privilege," not privilege due to Fed. R. Civ. P 26(b)(4)(D). [Doc. 119-3, Page ID# 2368, File # 30816.1, Page ID# 2369, File # 28602.1, 28603.1, Page ID# 2370, File # 28611.1, 28612.1]. Moreover, it is unclear when Plaintiffs' allegedly engaged Mr. Santana to be their informal consulting expert and whether this was in the face of counsel's realization that they had failed to include many of the communications that they had with Mr. Santana on the privilege log. Again, when asked to identify the individuals in Hamblen County whom they communicated with regarding the allegations in their Complaint, each Plaintiff provided:

> Plaintiff's attorneys have been in regular communication with employees of the Hamblen County Public Defender's Office since May 15, 2019. Plaintiff's counsel Tara Mikkilineni was asked to consult with the Public Defender's office on conducting a training for the public defenders on issues related to bail. *Since July 2019*, plaintiffs' counsel have been in ongoing communication with employees of the Public Defenders' office and those communications have been in the furtherance of litigation.

[**Exhibit D** (emphasis added)].

Attorney Tara Mikkilineni's Declaration makes no mention of this alleged bail training. [Doc. 119-12]. Instead, she provides that her "co-counsel at the Tennessee firm Baker Donelson referred Willie Santana, a public defender in the Hamblen County Public Defender's office, to [her] in order to consult on issues related to bail and pretrial release in the Hamblen County courts." *Id*. at ¶ 3. Ms. Mikkilineni claims that after visiting the Hamblen County Public Defender's office in July 2019 and observing the proceedings in General Sessions Court and the Hamblen County Jail, she decided that further investigation in support of potential litigation was

11

necessary. *Id.*

Additionally, these Defendants have no knowledge of the type, date, or multitude of communications that have allegedly occurred between Plaintiffs' counsel and Mr. Santana from May 2019 through present day, given that Plaintiffs have failed to identify the vast majority of these communications to the Defendants in any such privilege log.

As noted by Plaintiffs, Federal Rule of Civil Procedure requires that a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]. [Doc. 119, Page ID# 2342 (quoting Fed. R. Civ. P. 45(d)(3)(A)(i))]. Respectfully, neither these Defendants nor this Honorable Court can evaluate whether an exception applies or if there has been a waiver of privileged information, given that Plaintiffs have steadfastly refused to provide Defendants with a detailed description of their communications with Mr. Santana as required by Fed. R. Civ. P. 26(b)(5)(A), other than listing five e-mails with Mr. Santana in December 2020 on their privilege log which are allegedly protected from disclosure by the common interest privilege. [*See* Doc. 119-3, Page ID# 2368, File # 30816.1, Page ID# 2369, File # 28602.1, 28603.1, Page ID# 2370, File # 28611.1, 28612.1].]. In fact, because Plaintiffs have refused to describe the nature and extent of the documents, communications, or tangible things not produced or disclosed relating to attorney Willie Santana, Defendants had no way of knowing until Plaintiffs filed their subject Motion that Plaintiffs had allegedly retained Mr. Santana as a consulting expert beginning in May 2019.

Moreover, if Mr. Santana has been acting as Plaintiffs' consulting expert since May 2019 as Ms. Mikkilineni testified under oath in her Declaration, Mr. Santana has been in violation of his duties as a Public Defender for the Third Judicial District of Tennessee since that same time.

As this Court is likely aware, the office of the district public defender is created wholly

by statute. *See* Tenn. Code Ann. § 8-14-102. The duties of the public defender include (1) representing indigent persons through court appointments in the trial court, (2) advising such persons of their rights to appellate review and perfecting any appeal, including filing motions for a new trial and all essential transcripts and records with the clerk of the appellate court, and (3) handling all appeals by indigent persons represented in the trial court. Tenn. Code Ann. § 8-14-104(a)-(c). Importantly, "[n]o person employed as a full-time assistant district public defender shall be permitted to engage in the practice of law except as the duties of such positions require."[8] Tenn. Code Ann. § 8-14-102(c).

Despite this statutory mandate, Plaintiffs' counsel has asserted that Mr. Santana has "specialized knowledge of the Hamblen County legal system, the Hamblen County jail, local bail practices, and Tennessee law. His expertise on these topics – his observations, opinions, and conclusions – have been the subject of Plaintiffs' counsel's communications with him." [Doc. 119, Page ID# 2343-44 (citing Mikkilineni Decl. at ¶ 4, Doc. 119-12, Page ID# 2421]. Further, Plaintiffs provide that "[p]rior to the initiation of this litigation, Santana agreed to provide facts, opinions, and conclusions regarding the Hamblen County legal system and Tennessee law to Plaintiffs' counsel." [119, Page ID# 2344 (citing Mikkilineni Decl. at ¶ 5, Doc. 119-12, Page ID# 2421]. Accordingly, Mr. Santana has allegedly been providing facts, opinions, and conclusions regarding the Hamblen County legal system and Tennessee law to Plaintiffs' counsel since May 2019, despite the prohibition against engaging in the practice of law except as the duties of the office of district public defender require. *See* Tenn. Code Ann. § 8-14-102(c); *see also* Role of District Attorney General and Public Defender in Proceedings Related to Order of

---

[8] With the exception that attorneys with pending private legal matters at the time of employment with the office of district public defender shall have a reasonable length of time to conclude or transfer such cases in keeping with the standards of professional and ethical conduct. Tenn. Code. Ann. § 8-14-102(c).

13

Protection, 2016 WL 672127, at * 3, Tenn. Op. Atty. Gen. No. 16-06 (Tenn. A.G.) (holding that public defenders and assistant public defenders are prohibited from practicing law outside the scope of their authorized duties and finding that a public defender is prohibited from defending individuals against protective orders in a civil proceeding).

Even if this Court were to find that any and all communications between Plaintiffs' counsel and Mr. Santana are privileged pursuant to Fed. R. Civil Procedure 26(b)(4)(D), exceptional circumstances exist warranting discovery of these communications. Fed. R. Civ. P. 26(b)(4)(D)(ii). First, Plaintiffs assert that the "only relevant facts [contained in the communications] relate to bail practices and procedures in the Hamblen County courts and the Hamblen County Jail." [Doc. 119, Page ID# 2345]. Plaintiffs claim that "Defendants have ample ways to obtain equivalent information to that possessed by Santana from their own observation and recollection, and by reviewing documents in their possession." [Doc. 119, Page ID# 2345]. Yet, communications about the conditions in the Hamblen County jail and the bail practices in Hamblen County by public defenders are relevant and extremely important to these Defendants' defense, given that although the Defendants are aware of the statutes and rules followed by these Defendants for setting and/or modifying bail, the Defendants are *not* aware of how these statutes and rules intersect with the policies and procedures followed by the public defenders for the Third Judicial District. Furthermore, given that Plaintiffs have refused to produce *any* communications with the public defenders due to alleged privilege, exceptional circumstances exist warranting discovery of these communications, especially communications from Mr. Santana, whom Plaintiffs describe as a "veteran public defender."[9] [*See* Doc. 119, Page ID#

---

[9] Upon information and belief, Mr. Santana began working as a public defender for the Third Judicial District in September 2018. Meanwhile, public defender Ethel Rhodes, who has filed multiple declarations in this case and who Plaintiffs have *not* identified as a "consulting expert" has served as an assistant public defender for the Tennessee's Third Judicial District since April, 1996. [Doc. 6-8; Doc. 26-7; Doc. 70-2; Doc. 71-6].

14

2343]. As such, Mr. Santana undoubtably has knowledge as a fact witness related to navigating the Hamblen County legal system, the Hamblen County Jail, and local bail practices as a public defender for the Third Judicial District of Tennessee. Fed. R. Civ. P. 26(b)(4)(D)(ii); [Doc. 119, Page ID# 2346-52]. This would be true even if Mr. Santana had not already been identified by the Plaintiffs as a potential fact witness with knowledge under Rule 26. Further, these communications with Mr. Santana go directly to credibility and could show or demonstrate substantial bias, inappropriate interest and motives, contradiction and prior inconsistent statements and conduct on the part of Mr. Santana's testimony as a fact witness with knowledge of the pertinent issues in this matter under Rule 26 – prior to and irrespective of his retention by the Plaintiffs as a consulting and non-testifying expert under Fed. R. Civ. P. 26(b)(4)(D).

### B. Plaintiffs have not shown that the underlying communications shared between the public Defenders and counsel for Plaintiffs is privileged and thus, the common interest privilege does not shield their communications.

The common interest doctrine expands the coverage of the attorney-client privilege where two or more clients with a common interest in a matter are represented by separate lawyers and agree to exchange information concerning the matter. *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998). "In such instances, a communication of any such client that otherwise would qualify as privileged is privileged as against third parties." *Id*. (quoting *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997) (citing Restatement (Third) of the Law Governing Lawyers §126(1) (Proposed Final Draft No. 1, 1996)).

Under the common interest doctrine, privileged communications can be exchanged without waiving the privilege, provided that the parties have "'an identical legal interest with respect to the subject matter of the communication.'" *Ford Motor Co. v. Michigan Consol Gas Co*., No.

Case 2:20-cv-00026-DCLC-CRW   Document 128   Filed 06/02/21   Page 15 of 23   PageID #: 2484

08-CV-13503, 2013 WL 5435184, at *5 (E.D. Mich. Sept. 27, 2013) (quoting *MTP, Inc. v. Marathon Labels, Inc*., 2006 WL 324435 at * 6 (N.D. Ohio Feb. 9, 2006) (quoting *Libbey Glass, Inc. v. Oneida, Ltd*., 197 F.R.D. 342 (N.D. Ohio 1999)). Further, "[f]or the common-interest doctrine to apply, the underlying shared communication *must be privileged*." *Ford*, 2013 WL 5435184, at *5 (quoting Restatement (Third) of the Law Governing Lawyers § 76) (emphasis in original)).

Here, Plaintiffs have produced a woefully deficient privilege log which does not indicate in any way that the *underlying* communications shared between Plaintiffs' attorneys and the Hamblen County Public Defenders are privileged communications. [*See* **Exhibit K**]. Even if the public defenders for the Third Judicial District have an identical legal interest, which these Defendants dispute,[10] there is no indication that each of the communications listed on the privilege log involve information that was privileged to begin with. *See Ford*, 2013 WL 5435184, at *5 (quoting Restatement (Third) of the Law Governing Lawyers § 76) (emphasis in original)).

This issue is further compounded by the fact that Plaintiffs steadfastly refuse to produce a sufficient privilege log listing each communication separately. [*See* **Exhibit J**, **Exhibit K**]. Courts in this District have held that "to comply with Rule 26, a privilege log should contain the date and time of the document, the type of communication, the author, the addressee(s), identification of the recipients, the privilege asserted, and an explanation of the privilege claimed." *First Horizon Nat'l Corp. v. Houston Casualty Company*, No. 2:15-cv-2235-SHL-dkv,

---

[10] Plaintiffs provide that "both Plaintiffs' counsel and public defenders represent clients who have criminal cases in the Hamblen County General Sessions Court" and assert that "they share the identical and mutually beneficial goal of ensuring that their clients are not subjected to unconstitutional pretrial detention." [Doc. 119, Page ID# 2347-48]. However, the public defenders' ultimate goal is to successfully represent indigent clients against criminal charges, while Plaintiffs' counsel seeks to resolve allegedly unconstitutional bail practices in Hamblen County General Sessions Court.

2016 WL 5867268, at *5 (W.D. Tenn. Oct. 5, 2016) (citing Order Granting in Part and Denying in Part Pls.' Mot. to Compel 3, *Nozinich v. Johnson & Johnson, Inc.*, Case No. 09-2105 (W.D. Tenn. Feb. 22, 2011), ECF No. 61; *see also United States v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2015 WL 10987073, at *11 (E.D. Tenn. Aug. 31, 2015), *report and recommendation adopted*, No. 1:08-CV-251, 2015 WL 10987032 (E.D. Tenn. Sept. 22, 2015)(citation omitted)("To comply with Rule 26, a privilege log should identify each document, the date of said document, the individuals who were parties to the communications, and a sufficient description to enable evaluation of the claim.")). Furthermore, "the log 'must be sufficiently detailed so that the court can judge the propriety of assertion of the privilege.'" *Id.* (citing *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 476 (W.D. Mich. 1997)(citing Fed. R. Civ. P. 26(b)(5)); *see also First Horizon*, 2013 WL 11090763, at *6; *Ypsilanti Cmty. Utilities Auth. v. Meadwestvaco Air Sys. LLC*, No. CIV.A. 07-CV-15280, 2009 WL 3614997, at *4 (E.D. Mich. Oct. 27, 2009)(stating that the log must be specific and "[b]oiler plate descriptions and allegations of protection or privilege will not suffice). In essence, all claims of privilege must be made on a "document by document" basis and "blanket" claims are impermissible. *Clark Const. Grp., Inc. v. City of Memphis*, No. 01-2780 B/AN, 2005 WL 6187896, at *3 (W.D. Tenn. Feb. 9, 2005)(citation omitted)).

Here, Plaintiffs refuse to produce a document-by-document privilege log. [**Exhibit K**]. Instead, they assert the common interest privilege for broad categories of communications including an unknown number of "[t]ext messages regarding conditions at Hamblen County Jail, cases of B. Edmond and other shared potential clients/class members detained on unaffordable bond in Hamblen County." [Doc. 119-3, Page ID# 2369, File# 30821.1]. Based on this entry, for example, it is unclear how many text messages were exchanged as well as how many related to

conditions at the Hamblen County Jail, how many related to B. Edmond, and how many related to other shared potential clients/class members. *Id*. Again, because the underlying communications must be privileged for the common interest privilege to apply, a detailed description of each communication and the privilege(s) asserted should be provided to Defendants so that Defendants and this Honorable Court may evaluate whether such communications are privileged to begin with. *See Ford*, 2013 WL 5435184, at *5 (quoting Restatement (Third) of the Law Governing Lawyers § 76) (emphasis in original)). Without doing so, Defendants cannot determine whether certain communications – such as text messages regarding conditions at the Hamblen County Jail – are privileged communications, whether the privileges asserted have been waived, and/or whether the communications involve non-privileged communications of fact. *See id*; *Navigators Management Co., Inc. v. St. Paul Fire & Marine Ins*., No. 4:06CV1772 SNLJ, 2009 WL 465586, at *3 (E.D. Mo. 2009 (stating that there is no "attorney-client privilege over facts conveyed to [the company] by attorneys which the attorneys learned from an independent source" (citations omitted)).

Accordingly, Defendants' Subpoenas Duces Tecum are not barred by the common interest privilege. Alternatively, a detailed, document-by-document privilege log must be produced to the Defendants in order for Defendants to properly evaluate Plaintiffs' asserted claims of privilege or this Court should conduct an *in camera* review of the documents responsive to the subpoenas to determine which documents are privileged.

### C. Plaintiffs have not shown that the work product privilege applies to every communication made between counsel for the Plaintiffs and the public defenders.

Plaintiffs next claim that the subpoenas should be quashed because they seek to reveal attorney work product. [Doc. 119, Page ID# 2349]. According to Plaintiffs' privilege log, nine

(9) out of the thirty (30) communications listed on the log are allegedly privileged due to "common interest; work product." [Doc. 119-3, Page ID# 2369, File #28615.1, 28603.1, 28605.1, 28606.1, 28607.1; Page ID# 2370, File#28608.1, 28609.1, 28610.1, 28613.1]. Now, for the first time and in direct contrast to their privilege log, Plaintiffs claim that *all* communications between Plaintiffs' counsel and various public defenders are privileged work product. [*See* Doc. 119-3].

Respectfully, Plaintiffs cannot produce such a vague and non-descript privilege log which lists the nature of privilege as "work product" for just nine communications that all relate to the drafting of Ethel Rhodes' declaration and then claim that *every* communication listed on the log – as well as communications that may not be listed - are work product simply because Defendants have engaged in another discovery method from non-parties allowed under the Rules.

Furthermore, Rule 26 of the Federal Rules of Civil Procedure prohibits the disclosure of "documents and tangible things" that were "prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative" unless there has been "a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). The public defenders for the Third Judicial District do not represent Plaintiffs in this civil litigation. Thus, their communications with Plaintiffs' counsel were not "prepared in anticipation of litigation or for trial," given that they are not parties to the subject lawsuit. *See id.*

Additionally, Plaintiffs were asked to produce "any and all documents or tangible things obtained from the Public Defender's Office in Morristown, Tennessee related to the subject

matter of your lawsuit . . . the damages sought . . . the allegations contained in Plaintiff's Complaint . . . and the defenses asserted by [the Defendants]." [**Exhibit A**, No. 14, pages 12-13]. Plaintiffs have refused to produce any communications and have also produced a woefully deficient privilege log which has denied Defendants the opportunity to even evaluate which communications – if any – are privileged. [*See* **Exhibit G**; *see* Doc. 119-3].

Defendants have a right to obtain discovery regarding any nonprivileged matter that is relevant to the party's claim or defense. Fed. R. Civ. P. 26(b)(1). As set forth above, communications about the conditions in the Hamblen County jail and the bail practices in Hamblen County by public defenders are relevant and extremely important to these Defendants' defense, given that although the Defendants are aware of the statutes and rules followed by these Defendants for setting and/or modifying bail, the Defendants are *not* aware of how these statutes and rules intersect with the policies and procedures followed by the public defenders for the Third Judicial District. Moreover, all of these communications go directly to the credibility of crucial witnesses who have been identified by the Plaintiffs throughout discovery and could show or demonstrate substantial bias, inappropriate interest and motives, contradiction and prior inconsistent statements and conduct on the part of these same witnesses.  Furthermore, given that Plaintiffs have refused to produce *any* communications with the public defenders, Defendants are unable without undue hardship to obtain these communications by any other means. Fed. R. Civ. P. 26(b)(3).

In addition, when asked to  "[i]dentify each person you believe to have knowledge of the facts concerning the claims at issue in this action and describe the general subject matter of the knowledge you believe each person so identified to possess," Plaintiffs each provided that "[e]mployees of the Hamblen County Public Defender's office are believed to have knowledge

of bail practices in the Hamblen County General Sessions Court and the conditions in the Hamblen County jail." [*See* Michelle Torres' Response to Interrogatory No. 3, attached hereto as **Exhibit C**].[11]   Plaintiffs also specifically identified Ethel Rhodes as someone likely to have discoverable information in their Initial Disclosures. [**Exhibit L**].   Plaintiffs' attempt to now classify all the public defenders for the Third Judicial District as "consultants" to Plaintiffs' counsel in order to shield Defendants from discovering any relevant information or testimony from them is disingenuous and a complete contradiction of the spirit of Rule 26, especially considering that Ethel Rhodes has filed multiple declarations on behalf of the Plaintiffs in this matter and the Plaintiffs intend to use her testimony in this case. [Doc. 119, Page ID# 2351, n. 10; Doc. 6-8; Doc. 26-7; Doc. 70-2; Doc. 71-6 ]. Moreover, given that public defenders are prohibited from engaging in the practice of law except as the duties of such positions require, each of these consulting public defenders would appear to be in violation of Tenn. Code Ann. § 8-14-102(c) based upon Plaintiffs' claim that "public defenders have assisted Plaintiffs' attorneys in a consulting role because of their legal education and expertise with bail practices in Hamblen County."  *See* Tenn. Code Ann. § 8-14-102(c); [Doc. 119, Page ID# 2351, n.10].   In short, the Plaintiffs are attempting to have their cake and eat it too by relying on the testimony and knowledge of witnesses from the public defenders' office when it is convenient for the Plaintiffs while also preventing the Defendants from obtaining legitimate discovery and developing testimony from these same witnesses.

### D. Absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty and therefore, Plaintiffs have no standing to assert that Defendants' subpoenas are overbroad.

Plaintiffs finally claim that even if no privilege were to apply, the subpoenas would need

---

[11] Again, each of the named Plaintiffs identified the same individuals in response to Interrogatory No. 3.

to be modified because they are overly broad. [Doc. 119, Page ID# 2352]. However, Plaintiffs lack standing to assert this argument on behalf of nonparties. The subpoenas duces tecum were directed to and served on each public defender and the Public Defender's Office for the Third Judicial District. [*See* Docs. 119-4 through 119-11]. Consequently, if the public defenders and/or the Public Defender's Office consider compliance to be onerous or the subpoenas to be overbroad in their document requests so as to seek irrelevant evidence, then they are entirely capable, indeed obligated, to make such arguments by way of their own motions to quash. *See gen. United States v. Elsass*, No. 2:10–CV–336, 2012 WL 1409624 at *3 (S.D. Ohio Apr. 23, 2012)("[A]bsent a claim of privilege a party has no standing to challenge a subpoena to a nonparty.")(collecting cases).

## III. Conclusion

For each and all of the above reasons, Defendants respectfully request that this Honorable Court DENY Plaintiffs' Motion to Quash Defendants' Subpoenas Duces Tecum. Alternatively, Defendants request that this Court Order Plaintiffs to produce a sufficient document-by-document privilege log so that Defendants and this Court can evaluate whether the documents and communications listed are privileged and, if so, whether any waiver has occurred. Alternatively, Defendants request that this Court Order an *in camera* review of the documents requested by Defendants' subpoenas in order to exclude any privileged communications.

RESPECTFULLY SUBMITTED this 2nd day of June, 2021.

TAYLOR & KNIGHT, GP

*/s/ Jonathan Swann Taylor*
Arthur F. Knight, III, BPR # 016178
Jonathan Swann Taylor, BPR # 025094
Hilary L. Magacs, BPR # 036864
Caitlin C. Burchette, BPR # 037026
800 S. Gay Street, Suite 600

Knoxville, TN 37929
Phone: 865- 971-1701
amber@taylorknightlaw.com
*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served via regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Jonathan Swann Taylor*
Jonathan Swann Taylor