# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MICHELLE TORRES, *et al.*, on behalf of themselves and those similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>W. DOUGLAS COLLINS, in his official capacity as Hamblen County General Sessions Judge, *et al.*,<br><br>   Defendants. | Case No. 2:20-cv-00026-DCLC-CRW(Class Action) |

## PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO QUASH DEFENDANTS' SUBPOENAS DUCES TECUM

Plaintiffs, through undersigned counsel, respectfully submit this Reply in support of their Motion to Quash. Defendants' opposition conflates the issues and confuses the privileges Plaintiffs have asserted as the bases for quashing the subpoenas of public defenders in the Third Judicial District Public Defenders' Office. To be clear, there are two categories of privilege at issue: the consultant expert privilege applicable to communications between Plaintiffs' counsel and Willie Santana, and the common-interest and work-product privileges applicable to the public defenders' communications with Plaintiffs' counsel, including communications about their mutual clients and in anticipation of litigation. Defendants raise no real argument that these privileges are inapplicable, instead arguing with respect to the first category that "exceptional circumstances" exist to negate the protections of Fed. R. Civ. P. 26(b)(4)(D); and for the second category, that they are unable to determine whether the privileges apply. They are wrong on both counts. For the reasons articulated below, this Court

1

should quash Defendants' subpoenas duces tecum issued to public defenders in the Third Judicial District.

## I. Communications with Willie Santana are squarely protected within the ambit of Rule 26(b)(4)(D).

Defendants offer no real argument that Plaintiffs' consulting expert, Willie Santana, cannot serve in that role or that communications with such a non-testifying expert are not shielded by privilege. Instead, they complain that, by not logging communications with Mr. Santana, Plaintiffs failed to describe the "the nature of the documents, communications, or tangible things not produced or disclosed," as mandated by Rule 26 of the Federal Rules of Civil Procedure. Defs.' Opp'n Pls.' Mot. Quash 9, ECF No. 128 (quoting Fed. R. Civ. P. 26). However, Plaintiffs are not required to log such communications, because "Rule 26(b)(4)(D) does not require a privilege log, only information that 'describes the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 191 (M.D. Tenn. 2014). Plaintiffs provided such notice on several distinct occasions.

First, in the response to Defendants' First Set of Interrogatories, Plaintiffs explained that "Plaintiff's attorneys have been in regular communication with employees of the Hamblen County Public Defender's Office since May 15, 2019," and that "[s]ince July 2019, plaintiffs' counsel have been in ongoing communication with employees of the Public Defenders' office and those communications have been in the furtherance of litigation." Exhibit A, Robbie Johnson-Loveday's Response to Interrogatory No. 5. Plaintiffs also cited Rule 26(b)(4)(D) in objecting to Defendants' specific request for production of "any and all documents or tangible things obtained from the

2

Public Defender's Office in Morristown, Tennessee related to the subject matter of your lawsuit[,]". Exhibit B, Robbie Johnson Loveday's Response to Requests for Production 9 and 14.

In addition, in recent correspondence concerning these very issues, Plaintiffs stated that "Hamblen County Public Defender Willie Santana is an expert consulted in preparation for trial, whom Plaintiffs do not plan to call as a witness" and that "communications with him are exempt from discovery, as per Federal Rule of Civil Procedure 26(b)(4) . . . and are not listed in Plaintiffs' privilege log." Exhibit C, Email from Ellora Israni to Defendants' Counsel, May 18, 2021.

Finally, Plaintiffs submitted a declaration describing the nature of the communications between Mr. Santana and the Plaintiffs' attorneys; as the declaration states, "Mr. Santana agreed to serve as an informal consulting expert to provide facts, opinions and conclusions regarding the Hamblen County courts and Tennessee law to the Plaintiffs litigation team," including "the bail-setting norms and practices in General Sessions court." Mikkilineni Dec. ¶¶ 4–5, ECF No. 119-12.

These steps were more than sufficient under 26(b)(4)(D) to provide adequate notice and to establish that the privilege attaches to the communications between Mr. Santana and Plaintiffs' Counsel. *See Genesco*, 302 F.R.D. at 191-92 (relying on affidavits of Plaintiffs' counsel in evaluating whether privilege attaches and concluding it would be "impracticable and unnecessary" to require privilege log).[1]

---

[1] Defendants appear to be confused by the fact that certain communications with Mr. Santana also appear in Plaintiffs' privilege log. Defs.' Opp'n 8-9. As stated in the log, and as explained in Plaintiffs' Motion at 8-14, these items are independently protected by the common interest and attorney work-product privileges, and are logged because they are communications that *also* include other public defenders. None of Plaintiffs' counsel's communications with Mr. Santana alone were logged, and they are not discoverable under Rule 26(b)(4)(D). *See* Pls.' Mot. Quash 5-8, ECF No. 119.

3

Defendants also argue without authority that in providing his observations of the bail-setting practices in the Hamblen County General Sessions Court, Mr. Santana engaged in the unauthorized practice of law. Defs.' Opp'n 12-14. This accusation is as bizarre as it is reckless. As Plaintiff's counsel's declaration makes clear, Mr. Santana did not provide legal counsel or legal advice to Plaintiffs or their attorneys concerning this case, nor did he engage in any representation that would conflict with his duties as a public defender. Rather, he provided factual information related to how bail is set by the Court Defendants before, at, and after initial appearances, and the conditions in the Hamblen County Jail—facts he was able to observe as a public defender appearing in General Sessions Court and regularly visiting the Jail. The observations and opinions of Mr. Santana about the subject-matter of this lawsuit are well within the non-testifying expert privilege contemplated by Rule 26(b)(4)(D). *See, e.g., SPV-LS, LLC Transamerica Life Ins. Co. v. Berman*, CIV 14-4092, 2017 U.S. Dist. LEXIS 33213, at *25–27 (D.S.D. Mar. 6, 2017) (holding that an attorney consulted because of his "experience[] litigating" similar cases was non-testifying expert).

Lacking any argument that Mr. Santana's communications are not privileged, Defendants are left to argue that this Court should find that the "exceptional circumstances" exception to Rule 26(b)(4)(D) applies because:

> [C]ommunications about the conditions in the Hamblen County jail and the bail practices in Hamblen County by public defenders are relevant and extremely important to these Defendants' defense, given that although the Defendants are aware of the statutes and rules followed by these Defendants for setting and/or modifying bail, the Defendants are not aware of how these statutes and rules intersect with the policies and procedures followed by the public defenders for the Third Judicial District.

Defs.' Opp'n at 14-15. But the privilege accorded by Rule 26(b)(4)(D) does not, of course, rest on the relevance of the shielded documents; the very purpose of the privilege is to shield certain protected categories of relevant documents from discovery. But in this instance, the subpoenaed

communications are *not* relevant; the public defenders are not a party to this lawsuit, and, importantly, Defendants can articulate no reason why the public defenders' policies and practices would relate to any claim or defense that might be raised.

Even if this Court were to find some nexus between the subpoenaed communications and the issues in this case, Defendants have no argument that the information contained in the communications is otherwise unavailable to them. Facts related to bail-setting in the Hamblen County General Sessions Court and conditions in the Jail are, of course, equally available to the Court Defendants, who *are the bail-setters*, and to Sheriff Jarnagin, who is the administrator of the Hamblen County Jail and the custodian of arrestees detained on bonds set by the Court Defendants. And information about how the bail-setters' policies "intersect with the policies and procedures followed by the public defenders for the Third Judicial District," is discernible through any number of other means, including a request to the Hamblen County Public Defender for documents that relate to the question of the public defenders' policies and practices, rather than their communications with Plaintiffs' counsel.[2] Finally, to the degree that Defendants themselves wish to call Mr. Santana as a witness to testify about his observations, they are free to do so; they are not barred from discovering those observations by the fact that his communications with Plaintiffs' counsel are privileged.[3]

---

[2] Indeed, as plaintiffs noted in their Motion to Quash, many of the policies and practices of the Defendants and the public defenders have now been stipulated to by the parties. ECF No. 78-1.

[3] Defendants also note, correctly, that public defender Ethel Rhodes submitted declarations in support of Plaintiffs and is a fact witness whom Plaintiffs could call at trial. Plaintiffs have not withheld any of Ms. Rhodes' communications on the basis of F.R.C.P. 26(b)(4)(D); all of Ms. Rhodes' withheld communications with Plaintiffs' counsel are contained in the privilege log as they are being withheld on the basis of common-interest and work-product privileges. It is also untrue, per Defendants, that Plaintiffs have withheld all communications with the public defenders; Plaintiffs produced one communication with Ms. Rhodes to Defendants that Plaintiffs determined was not privileged.

5

Defendants are unable to articulate any circumstances, much less the "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means" required by Rule 26(b)(4)(D), *see* Pls.' Mot. 7-8 (justifying the nondisclosure of Mr. Santana's communications).[4]

## II. Plaintiffs' Privilege Log is Sufficient, and the Common Interest and Work Product Privileges Plainly Apply to the Logged Communications.

Defendants also argue without basis that Plaintiffs' privilege log is insufficient. *See, e.g.*, Defs.' Opp'n 9 (stating that Plaintiffs "still have not described 'the nature of the documents, communications, or tangible things not produced or disclosed'" (quoting Fed. R. Civ. P. 26)). The Sixth Circuit has made clear that a privilege log need only make a "minimal showing"—which is "not onerous"—that the asserted privilege is applicable. *In re Search Warrant Executed at L. Offs. of Stephen Garea*, 173 F.3d 429 (6th Cir. 1999) (unpublished). According to case law cited by Defendants themselves, "'to comply with Rule 26, a privilege log should contain the date and time of the document, the type of communication, the author, the addressee(s), identification of the recipients, the privilege asserted, and an explanation of the privilege claimed." Defs.' Opp'n 16 (quoting *First Horizon Nat'l Corp. v. Hous. Cas. Co.*, No. 2:15-cv-2235-SHL-dkv, 2016 WL 5867268, at *5 (W.D. Tenn. Oct. 5, 2016) (internal citation omitted)).

Plaintiffs' privilege log contains precisely such information. The log lists the date and time each document was sent, the author and recipient(s), the nature of the privilege asserted, and a

---

[4] Contra Defendants, Plaintiffs have not classified "all the public defenders for the Third Judicial District as 'consultants.'" Defs.' Opp'n 21. The only communications Plaintiffs have not logged pursuant to Rule 26(b)(4)(D) are those with Mr. Santana. All communications with public defenders other than Mr. Santana are either produced or are identified in the privilege log, and, as discussed *infra*, are subject to the common-interest and work-product privileges. As Plaintiffs noted in their Motion to Quash, however, if it were determined that public defenders' communications are not covered by those privileges, the logged communications would be protected by Plaintiffs' counsel's privilege under Rule 26(B)(3)(A). *See* Pls.' Mot. 13 n.10.

6

description identifying the type of each document (*e.g.*, "email" or "text message") and giving sufficient information to determine that the claimed privilege applies. *See* Pls.' Mot. Ex. 3, ECF No. 119-3. For example, the log identifies several exchanges between Plaintiffs' counsel and named public defenders as "text message(s)" and/or "email(s)" regarding the Named Plaintiffs' cases "and other shared potential client/class members in Hamblen County" as covered by common-interest privilege. *Id.* From this description, and the other information on the log, one can easily ascertain why these exchanges are covered by common-interest privilege: because they are exchanges between attorneys (identified on the log) who are all representing indigent criminal defendants in Hamblen County with an identical and mutually beneficial goal of ensuring that their clients are not subjected to unconstitutional pretrial detention.

By contrast, the Sixth Circuit in *In re Search Warrant* took issue with entries such as "[t]hird party document(s) transmitted by client to counsel for legal advice." 1999 WL 137499, at *1. The log provided by Plaintiffs in this case is starkly different in its level of specificity: It names the specific parties and the type of each document, as well as the nature of the legal issues, for each entry. That is, Plaintiffs have described, in ample detail, "the nature of the documents, communications, or tangible things not produced or disclosed." Fed. R. Civ. P. 26(b)(5)(A)(ii).

Defendants also take issue with Plaintiffs logging email and text message threads as single privilege log entries, and demand that Plaintiffs separate out each individual email or text message on the log. As Plaintiffs have already explained to Defendants, *see* ECF No. 128-11, the law simply does not require this burdensome level of granularity.[5] District courts within this circuit have recently and consistently approved of logs that list email chains as single entries. *See, e.g.*,

---

[5] In their motion, Defendants do not even attempt to address or refute the law that Plaintiffs cited to support this proposition. This is wise, because they cannot: Defendants are demanding more from the Plaintiffs than the law allows them to.

*Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 118, 121 (E.D. Mich. 2019) (approving of a log which listed the author, recipients, date of creation, document type, "e.g., an email chain," the nature of the privilege claims, and a description).

Courts have distinguished cases in which a party must separately list individual emails from "those instances where each and every separate e-mail within a strand is limited to a distinct and identifiable set of individuals, all of whom are clearly within the [privilege]" and a single entry for the thread is thus sufficient. *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005); *see also Muro v. Target Corp.*, 250 F.R.D. 350, 362 (N.D. Ill. 2007), *aff'd* 580 F.3d 485 (7th Cir. 2009) ("respectfully disagree[ing]" that itemization is required, but noting "[t]here is currently no binding authority"). This case is precisely one of "those instances"; the threads listed on Plaintiffs' privilege log are among a limited set of individuals, all of whom are named on the log and are clearly covered by the claimed privilege. And if this is the case for email threads, it is even more so for text message threads—in which even more messages are exchanged, and separation would thus be even more burdensome. Moreover, describing with particularity individual texts without revealing the privileged information contained therein would be nearly impossible.

In *First Horizon*, a case cited by Defendants, the Court compelled the non-movants to separate out a privilege log which "group[ed] thousands of documents created over the course of five years," 2016 WL 5867268, at *4, because the movants demonstrated that separation "would be of material benefit to them in assessing whether the privilege claim is well grounded," *id.* at *6. This conclusion was based in large part on the fact that some of the grouped communications occurred before the case was filed and thus "may have been prepared in the ordinary course of business" and thus may not have been work product. *Id.* The Court contrasted the case at hand

8

with cases in which documents created after litigation had commenced were logged together because these documents, by virtue of their timing, were necessarily created in anticipation of litigation; that is, their privilege was evident without additional logging. That is precisely the case here: Defendants can ascertain from the existing privilege log that the documents are covered by common-interest and/or work-product privilege. All of the documents were created after this litigation was filed or in the days immediately before filing. They are communications between attorneys representing the same clients with a common interest: protecting these clients against unconstitutional detention.[6] And the email and text threads contain small handfuls, not "thousands," of messages exchanged over short date ranges—specified on the log—not "years." *Cf. id.* at *4.

Tellingly, Defendants do *not* dispute, because they cannot, that the common-interest and work-product privileges apply to those communications about conversations about shared clients represented by both Plaintiffs' counsel and public defenders, and to communications about documents prepared "in anticipation of litigation." Pls.' Mot. 8-14. Rather, Defendants' sole basis for contention appears to be that the entries in Plaintiffs' privilege log are not described with enough particularity to determine that the common-interest privilege and work-product privileges apply. But even a cursory look at the privilege log reveals that each set of communications relates either to representation of a Plaintiff or potential plaintiff, or to drafts of Ms. Rhodes' declaration prepared in anticipation of litigation. *See* ECF No. 119-3.

In sum, Plaintiffs' existing privilege log is more than sufficient to allow Defendants and this Court to determine that the privileges claimed do indeed apply. Nevertheless, if the Court

---

[6] Defendants complain that the public defenders have additional interests, i.e., defending their clients' criminal cases, but do not and cannot refute that the public defenders and Plaintiffs' counsel share at least one common, important interest.

9

wishes to conduct an *in camera* review of the privileged documents in order to verify, Plaintiffs would be happy to oblige.

**III.     Plaintiffs Have Standing to Challenge Defendants' Subpoenas on Overbreadth and Relevancy Grounds**

Although the documents requested by Defendants in their subpoenas are all privileged or are nondiscoverable because they fall within the scope of either Rule 26(b)(3)(A) or (b)(4)(D) of the Federal Rules of Civil Procedure, Plaintiffs also challenge the subpoenas as overly broad and as seeking irrelevant information.  Pls.' Mot. 14-15.  In response, Defendants argue that Plaintiffs lack standing to challenge the subpoenas on overbreadth or relevancy grounds.  Defs.' Opp'n 21-22.

Defendants are mistaken.  This Court and others have granted motions to quash based on objections made by litigants that subpoenas do not fall within the scope of discovery.  *See Estate of Barnwell v. Roan County*, No. 3:13-CV-124, 2016 WL 5937982, at *3 (E.D. Tenn. Feb. 26, 2016) (granting defendants' motion to quash third-party subpoenas on the ground that the subpoenas sought irrelevant information); *see also Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253, 256 (observing that although "Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena[,] [c]ourts . . . have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26" and granting a plaintiff's motion to quash on those grounds (internal quotation marks omitted)).

But even if Plaintiffs lack standing to raise their overbreadth and relevancy objections under Rule 45, Rule 26(c) provides an alternative basis for Plaintiffs to object to the subpoenas on those grounds.  *Focus Health Grp., Inc. v. Stamps*, No. 3:19-CV-452-TRM-HGB, 2020 WL 7774906, at *2 (E.D. Tenn. Dec. 30, 2020) ("[W]here a party's standing may fall short to quash a subpoena under Rule 45, Rule 26(c) affords parties the ability to move for a protective order on a

10

third party's behalf." (quoting *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-01124, 2018 WL 4328257, at \*2 (M.D. Tenn. July 16, 2018))); *see also Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240 n.2 (E.D.V.A. 2012) ("[P]laintiffs have standing to challenge subpoenas duces tecum as irrelevant and overbroad under Rule 26, regardless of whether they have standing to bring a motion to quash under Rule 45."). If this Court harbors any concern that a motion to quash is the incorrect vehicle for Plaintiffs to air their relevancy and overbreadth objections, it can and should construe the motion as one for a protective order under Rule 26(c). *Belnavis v. Edwards Masonry, Inc.*, No. 8:13-CV-2580-T-24MAP, 2014 WL 12621586, at \*1 (M.D. Fla. July 24, 2014); *Sirpal v. Wang*, No. WDQ–12–0365, 2012 WL 2880565, at \*4 n.12 (D. Md. July 12, 2012).[7]

Whether this Court evaluates Plaintiffs' overbreadth and relevancy objections under Rule 45 or 26(c), Defendants have not demonstrated that their subpoenas seek information that is within the scope of discovery. According to Defendants, their subpoenas seek information that is relevant to this case because the requested documents will help them assess how the statutes and rules that govern setting and modification of bail "intersect with the policies and procedures followed by the public defenders for the Third Judicial District." Defs.' Opp'n 14, 20. But Defendants' subpoenas seek no information whatsoever about the policies and procedures of the Public Defender's Office. Instead, Defendants' subpoenas seek any and all communications between the Public Defender's Office and Plaintiffs' counsel and are not limited to communications concerning the Office's policies and procedures. *See* ECF Nos. 119-4 to -11. If what Defendants seek is disclosure of the policies and procedures of the Public Defender's Office, they could have subpoenaed relevant

---

[7] It is Plaintiffs understanding that the Public Defender's Office has objected to Defendants' subpoenas along similar grounds to those that Plaintiffs raise. By addressing Plaintiffs' relevance and overbreadth objections either under Rule 45 or 26(c), this Court would conserve judicial resources by obviating the need for the Public Defender's Office to file a motion to quash raising identical concerns.

11

documents directly instead of seeking indiscriminate access to communications between that office and Plaintiffs' counsel. Instead, Defendants' wide-ranging subpoenas appear intended to improperly inquire into the mental impressions of Plaintiffs' counsel and to annoy and harass the Public Defender's Office. This Court therefore should quash Defendants' subpoenas under Rule 45 or forbid discovery of the information they seek under Rule 26(c).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Quash Subpoenas Duces Tecum, and deny Defendants' Motions in the Alternative.

DATED: July 16, 2021

Respectfully Submitted,

/s/ Tara Mikkilineni
Tara Mikkilineni (D.C. Bar 997284)
(admitted *pro hac vice*)
Ellora Thadaney Israni (C.A. Bar 331877)*
(admitted *pro hac vice*)
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Tel: 202-894-6124
Fax: 202-609-8030
Email: tara@civilrightscorps.org
        ellora@civilrightscorps.org

* *Admitted to practice in California. Not admitted in the District of Columbia; practice limited pursuant to D.C. App. R. 49(c)(8), with supervision by Ryan Downer.*

/s/ Seth Wayne
Seth Wayne (D.C. Bar 888273445)
(admitted *pro hac vice*)
Jonathan Backer (D.C. Bar 1613073)
(admitted *pro hac vice*)
Mary B. McCord (D.C. Bar 427563)
(admitted *pro hac vice*)
Institute for Constitutional Advocacy
and Protection (ICAP)
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
Email: sw1098@georgetown.edu
        jb2845@georgetown.edu

/s/ George T. Lewis
George T. Lewis, III (T.N. Bar 7018)
Matthew G. White (T.N. Bar 30857)
(admitted *pro hac vice*)
Baker Donelson
265 Brookview Centre Way, Suite 600
Knoxville, TN 37919
Tel: 865-549-7000

12

Email: blewis@bakerdonelson.com
mwhite@bakerdonelson.com

*Attorneys for Plaintiffs*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of June, 2021, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Eastern District of Tennessee, using the electronic case filing system of the Court. This filing will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Tara Mikkilineni

14