UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| **MICHELLE TORRES, ROBBIE JOHNSON-LOVEDAY, AMANDA CAMERON and BETHANY EDMOND** on behalf of themselves and those similarly situated, <br><br>  Plaintiffs, <br><br> v. <br><br> **W. DOUGLAS COLLINS, et al.,** <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) No. 2:20-cv-26 ) ) ) ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM**

Defendants W. Douglas Collins, in his official capacity as Hamblen County General Sessions Judge, Teresa West, in her official capacity as Hamblen County General Sessions and Circuit Court Clerk, Katie West Moore, Nancy Phillips, and Kathy Robertson, in their official capacities as Judicial Commissioners of Hamblen County General Sessions Court and Esco R. Jarnagin, in his official capacity as Hamblen County Sheriff (collectively, the "Defendants"), by and through undersigned counsel, tender this Memorandum in support of their Motion to Compel Compliance with Subpoena Duces Tecum [Doc. 147] (the "Motion to Compel") pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i).

**INTRODUCTION AND BACKGROUND**

This Motion to Compel has become necessary with the blanket refusal of the Third

1

Judicial District Public Defenders Office (the "Public Defenders Office") to produce any documents in response to the third-party Subpoena Duces Tecum that was duly issued and personally served on the Public Defenders Office through its District Public Defender, Greg W. Eichelman, on July 30, 2021. *See* Subpoena Duces Tecum [Doc. 142].

The Subpoena Duces Tecum requests that the Public Defenders Office produce (1) the personnel files of seven (7) attorneys of the Public Defenders Office who have been identified by both parties as central witnesses with knowledge of the issues involved in this dispute in initial disclosures and interrogatories, (2) training materials and related documents that were sent to the Public Defenders Office by the Civil Rights Corps and the Institute for Constitutional Advocacy and Protection ("ICAP"), and the Southern Poverty Law Center between May 1, 2019 and the date of production, (3) documents which reflect or relate in any way to the working relationship between the public defenders employed by the Public Defenders Office and the Civil Rights Corps and ICAP between May 1, 2019 and the date of production, (4) employee handbooks and/or policies and procedures that relate in any way to the employment of assistant public defenders in the Public Defenders Office between May 1, 2019 and the date of production, and (5) all policies and/or procedures of the Public Defenders Office that relate in any way to the appointment of counsel, initial appearances, bail hearings, preliminary hearings, and modification of the conditions of release in the General Sessions Court and Criminal Court for Hamblen County, Tennessee between May 1, 2019 and the date of production. *See* Subpoena Duces Tecum [Doc. 142].

These documents are directly relevant to the claims and defenses raised by the parties in this action because they are likely to illustrate bias and undermine the credibility of witnesses that both sides intend to rely on in the prosecution and defense of this matter. It should also be

2

noted that the Defendants have now protectively requested similar records directly from the Plaintiffs based on the fact that the Plaintiffs have continued to resist production of its own records throughout discovery on their belief that they allegedly share a common interest privilege with the Public Defenders Office.[1]

On August 6, 2021, undersigned counsel received a "Rule 45 and Rule 26 Objection to Subpoena Duces Tecum" (the "Objection") that was sent by Attorney C. Berkeley Bell who had previously advised that he had been retained as counsel of record for the Public Defenders Office in this matter. A copy of the Objection is attached hereto as **Exhibit A** for the convenience of this Honorable Court. The Objection resists production on only the three (3) following arguments:

(1) The subpoenas [*sic.*] were [*sic.*] not served sufficiently in advance of the discovery deadlines of August 2, 2021, to allow a response prior to the deadline (Scheduling Order);

(2) The defendants had ample opportunity (6 months) to obtain the discovery sought by the subpoena duces tecum served approximately 178 days after entry of the scheduling order filed on February 3, 2021 (FRCP Rule 26 (b)(2)(c)(ii)), and;

(3) The subpoenas [*sic.*] are [*sic.*] overly broad and seek information that is not relevant to either party's claim or defense (FRCP Rule 26(b)(1)).

The first and second arguments are essentially moot with the Amended Scheduling Order [Doc. 146] which was entered by this Honorable Court on August 6, 2021. As this Court is aware, the discovery deadline has now been extended through September 10, 2021. *See* Amended Scheduling Order [Doc. 146]. As such, the time for the Public Defenders Office to

---

[1] The time for the Plaintiffs to respond to the Second Request for Production of Documents which were served on August 3, 2021 has not yet run as of the filing of this Motion. However, it is unlikely that Defendants' efforts to obtain this information directly from the Plaintiffs will be any more productive than their efforts to obtain the same from the Public Defenders Office considering the arguments raised by the Plaintiffs in their Response in Opposition to Defendants' Motion for Leave to Extend the Scheduling Order [Doc. 144]. *See* footnote 5 [PageID #2629] from the Plaintiffs' Response in Opposition to Defendants' Motion for Leave to Extend the Scheduling Order [Doc. 144]. Plaintiffs presumably do not have access or control of this information unless they do in fact share a common interest with the Public Defenders Office as alleged by the Plaintiffs throughout discovery.

respond to the Subpoena Duces Tecum (August 30, 2021[2]) is now well within the discovery cutoff of September 10, 2021.

As for the third argument, the Defendants would note that they were careful to limit the Subpoena Duces Tecum to the personnel files of just the public defender attorneys who practice (or have practiced within the applicable time) in Hamblen County who have been previously identified by the parties as witnesses with knowledge of this matter as opposed to all of the attorneys who are employed by the Public Defenders Office throughout the Third Judicial District. Moreover, the Defendants would note that the Plaintiffs have already filed two (2) declarations on behalf of one of these public defenders and identified all of the other attorneys from the Public Defenders Office as witnesses. As it relates to the training materials that would have been provided to the Public Defenders Office from Civil Rights Corps, ICAP and the Southern Poverty Law Center, it was the belief of undersigned counsel that Magistrate Judge Cynthia R. Wyrick directed counsel for the Plaintiffs to turn over all training outlines and materials provided to the Public Defenders Office at the hearing that was held on July 14, 2021. In what Defendants believe was a direct response to this directive, Plaintiffs eventually produced an outline entitled "Hamblen County Bail Training Outline" on July 26, 2021. A copy of this Outline is attached hereto as **Exhibit B** for the convenience of this Honorable Court. Unfortunately, Plaintiffs neglected to produce the training materials utilized by counsel for the Plaintiffs in a subsequent training seminar that was allegedly held with the Public Defenders Office and the Knox County Public Defenders Community Office in April or May, 2021. It should be noted that despite Magistrate Judge Wyrick's directive to produce these documents on July 14, 2021, these documents were not produced and they were not identified in any of the

---

[2] Certainly, the Defendants could have chosen a shorter time for the Public Defenders Office to have responded to the Subpoena Duces Tecum under the Rules but Defendants permitted the Public Defenders a full month to respond in light of their respect and concern for the caseload and work performed by the Public Defenders Office.

privilege logs that were produced to the Defendants prior July 28, 2021. Counsel for the Plaintiffs obviously didn't anticipate that Defendants would learn about this additional training session in which the Knox County Public Defenders Community Office were also invited to attend. It wasn't until the Defendants deposed former public defender Willie Santana on July 28, 2021, that they finally learned about this additional training session. During the deposition of Mr. Santana, undersigned counsel specifically demanded that the Plaintiffs produce these materials based on Rule 26 and Defendants' belief that this same material had already been directed by Magistrate Judge Wyrick to be produced during the hearing that was held on July 14, 2021.

Following the completion of Mr. Santana's deposition on July 28, 2021, Plaintiffs continued to refuse to produce the training materials related to the April or May, 2021 training session with the Public Defenders Office and Knox County Public Defenders Community Office. Plaintiffs refusal continued through July 30, 2021 when Defendants were forced to issue and serve the Subpoena Duces Tecum on the Public Defenders Office that is the subject of this Motion. In an even more curious move, Plaintiffs allegedly supplemented their discovery on August 2, 2021 without ever producing a copy of the supplemental training materials that were allegedly utilized in April or May, 2021 with the Public Defenders Office and Knox County Public Defenders Community Office. Moreover, these records were not referenced in any of the four (4) privilege logs which have now been produced by the Plaintiffs. No, it was only after Defendants moved to extend the discovery deadline, that the Plaintiffs finally produced a copy of what they now claim were the alleged training materials[3] that were utilized during the second

---

[3] It should be noted that Plaintiffs counsel continued to maintain that the training materials were privileged as attorney work-product when they were finally produced to the Court on August 3, 2021 even though these same training materials were never included in any of the four (4) privilege logs which were produced to the Defendants in this matter prior to the close of business on August 2, 2021. *See* Plaintiffs' Opposition to Defendants' Motion for

5

training session that occurred in April or May, 2021.  *See* Exhibit D to Plaintiffs' Response in Opposition to Defendants' Motion for Leave to Extend the Scheduling Order [Doc. 144-4], PageID #2660-2676].

## ARGUMENT

I. **The timeliness arguments advanced by the Public Defenders Office are moot now that the discovery deadline has been extended by this Court through September 10, 2021**

The Subpoena Duces Tecum requires the Public Defenders Office to produce the requested documents on or before August 30, 2021.  *See* Subpoena Duces Tecum [Doc. 142]. On August 6, 2021, this Court extended the discovery deadline from August 2, 2021 to September 10, 2021.  *See* Amended Scheduling Order [Doc. 146].  Thus, the Defendants are now free to conduct discovery through September 10, 2021.  Accordingly, it is respectfully submitted that the extension of the discovery deadline through September 10, 2021 moots any argument that could be raised by the Public Defenders Office as to the timeliness of a Subpoena Duces Tecum that requires the Public Defenders Office to produce the subject documents on or before August 30, 2021, or rather eleven (11) days before the close of discovery.

The same is true with regard to any argument that has been raised by the Public Defenders Office that Defendants have had "ample opportunity" to obtain the requested

---

Leave to Extend the Scheduling Order [Doc. 144], PageID # 2630 (noting that "Plaintiffs maintain that the 'training materials' requested are exempt from discovery, as they are clearly attorney work-product.").  Plaintiffs' attempt to justify this omission in footnote 6 by incorrectly alleging that they "are not required to log communications between Plaintiffs' counsel and Willie Santana because he is a consulting, non-testifying expert." *Id.*  The reality is that these materials were not limited and only sent to Mr. Santana; but rather this was a slideshow and outline that was sent and provided to every attorney in the Public Defenders Office as well as the Knox County Public Defenders Community Office who are not parties to this action and who have never been identified by the Plaintiffs as consulting, non-testifying experts in this matter.  Sharing these materials with every employee of the Public Defenders Office as well as employees of the Knox County Public Defenders Office as testified by Mr. Santana would surely operate as a waiver of any claim of privilege that the Plaintiffs may have held with respect to these training materials.

6

documents pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)(ii). As this Court is well aware, Federal Rule of Civil Procedure 26(b)(2)(C)(ii) provides in pertinent part that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."

First, Defendants would note that the Public Defenders Office has not presented sufficient support that there was ample opportunity for Defendants to obtain the requested information prior to service of the Subpoena Duces Tecum outside of boilerplate objections. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at development argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)).

Second, this Honorable Court is intimately aware of the thorough written discovery that Defendants served on Plaintiffs[4] throughout this matter as well as Plaintiffs' efforts to stymie Defendants with regard to alleged privileges which culminated in a motion to quash subpoenas duces tecum, *See* Motion to Quash Defendants' Subpoenas Duces Tecum [Doc. 119], that were previously served on the Public Defenders Office and its attorneys in May, 2021. That Motion to Quash Subpoenas Duces Tecum is pending before this Honorable Court and was the subject of a hearing that was held before Magistrate Judge Wyrick on July 14, 2021. In short, Defendants have previously attempted to obtain the training materials and various policies and procedures

---

[4] *See* Defendants' Response in Opposition to Plaintiffs' Motion to Quash Defendants' Subpoenas Duces Tecum, or, Alternatively, Motion to Compel Production of Document-By-Document Privilege Log, or, Alternatively, Motion for In Camera Review of the Documents Requested in Defendants' Subpoenas Duces Tecum [Doc. 128], PageID #2470-2540.

7

that would have been communicated by employees of the Public Defenders Office directly from the Plaintiffs. Prior to serving the Subpoena Duces Tecum at issue in this Motion, they had not received any such documents from the Plaintiffs. As noted above, it was only in Plaintiffs' Opposition to Defendants' Motion for Leave to Extend the Scheduling Order [Doc. 144-4] that the Plaintiffs finally produce on August 3, 2021 what it now claims are the training materials that were utilized in April or May of 2021 to train the Public Defenders Office and the Knox County Public Defenders Community Office.[5] Regardless, the extension of the discovery deadline running through September 10, 2021 respectfully moots any argument that could be advanced by the Public Defenders Office as to the timeliness of the documents requested in the Subpoena Duces Tecum that it was served with on July 30, 2021 considering that it was served forty-three (43) days prior to the close of discovery in this matter.

## II. The documents requested from the Public Defenders Office are relevant and proportional to the needs of the case

As this Court is aware, Federal Rule of Civil Procedure 26 governs the scope of discovery, unless otherwise limited by court order. *See* Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 26(b) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." *Id.*; *see also Jones v. Johnson*, 801 F. App'x 338, 351 (6th Cir. 2020) (finding that the 2015 amendments to Rule 26 "cement[ed] the need for district courts to consider relevance and proportionality

---

[5] The request that was directed to the Public Defenders Office was much more expansive in that it included "[a]ll training materials, documents, outlines, Microsoft PowerPoint slideshows, or memorandums sent to employees and assistant public defenders of the Third Judicial District Public Defenders Office by representatives or agents of the Civil Rights Corps, ICAP, and the Southern Poverty Law Center between May 1, 2019 and the date of production. Defendants suggest that your response to this request should include, and not be limited to, those training materials and outlines that were produced or provided to assistant public defenders employed by the Third Judicial District Public Defenders Office during the second training session conducted by Tara Mikkilineni and/or Civil Rights Corps that allegedly occurred in April or May, 2021." See Subpoena Duces Tecum [Doc. 142], PageID #2619-2620.

(rather than reasonable calculations regarding admissibility) as the touchstones in setting the scope of discovery"). "Relevance for discovery purposes is extremely broad." *Trimbur v. Norfolk S. Corp.*, No. 2:13-CV-0160, 2015 WL 235219, at *2 (S.D. Ohio Jan. 16, 2015) (citing *Lewis v. ACB Bus Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Moreover, relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

As it relates to the documents requested from the Public Defenders Office, Defendants would note that the personnel files of the public defender attorneys (Willie Santana, Ethel Rhodes, Greg W. Eichelman, Maggie Greenway, DeAnna M. Snyder, Brantley H. Stewart and R. Russell Mattocks) who have been identified by both parties in initial disclosures and written discovery as witnesses with knowledge who may testify at trial are highly relevant to the claims of both the Plaintiffs and Defendants. More specifically, the Plaintiffs have alleged that employees of the Public Defenders Office "are believed to knowledge of bail practices in the Hamblen County General Sessions Court and the conditions in the Hamblen County jail." *See* Doc. 128-3. That specific response is consistent with numerous filings made by the Plaintiffs in this action in which they have relied on and filed numerous declarations from attorney Ethel Rhodes who is, of course, an employee of the Public Defenders Office. *See e.g.*, Doc. 119, PageID #2351, n. 10; Doc. 6-8; Doc. 26-7; Doc. 70-2; Doc. 71-6. Throughout this entire litigation, the Plaintiffs have alleged that the attorneys of the Public Defenders Office will offer testimony in full support of the Plaintiffs' claims. The personnel files of these same witnesses are necessary to rebut Plaintiffs' proof and to show bias and undermine the credibility of these same witnesses with regard to discipline actions that may have occurred during their

9

employment with the Public Defenders Office. Moreover, at least two (2) of these employees (Willie Santana and Brantley H. Stewart) have left the employment of the Public Defenders Office since this lawsuit was filed by the Plaintiffs. Defendants reasonably believe that these resignation letters are highly relevant to the credibility (and potential bias) of these two witnesses considering that Mr. Santana testified in his deposition that Mr. Stewart gave conflicted information for his resignation from the Public Defenders Office. In short, it is respectfully submitted that the value of the information contained in the personnel files of these attorneys outweighs the privacy interests of the affected parties. Moreover, Defendants readily acknowledge and concede that these personnel files will be redacted to exclude personal identifiers and other information protected by statute. These redactions should sufficiently protect the privacy interests of these same employees. Further, these Defendants are willing to enter into an agreed order to protect the confidentiality of any such documents that are produced in response to these requests that would make clear that any use of these records should be limited solely to the prosecution or defense of this litigation only.

As for the requests for training materials, outlines, slideshows and memorandums sent to employees and assistant public defenders of the Public Defenders Office by representatives and agents of the Civil Rights Corps, ICAP and the Southern Poverty Law Center between May 1, 2019 and the date of production, Defendants would note that these training materials were referenced and discussed during the course of the hearing that was held before Magistrate Judge Wyrick on July 14, 2021. While the Order [Doc. 136] that was entered following that hearing did not reference the training materials, it was the belief and understanding of undersigned counsel that Magistrate Judge Wyrick directed counsel for the Plaintiffs to produce the training materials that had been created and sent to the Public Defenders Office by Civil Rights Corps.

10

This directive was mentioned during the course of the hearing when Plaintiffs were attempting to shield the Defendants from all communications that Plaintiffs counsel have had with former public defender Willie Santana who has apparently been serving as a non-testifying consulting expert since February, 2020. Defendants would note that the Plaintiffs eventually produced training materials from Civil Rights Corps initial training seminar with the Public Defenders Office on July 26, 2021 in response to this directive. See **Exhibit B**.

Unfortunately, Plaintiffs neglected to produce or reference the fact that they had conducted a second training session with the Public Defenders Office in April or May, 2021 in any resulting privilege log. It was not until, Defendants took the deposition of Willie Santana two days later on July 28, 2021 when they learned of a second training seminar that was conducted by counsel for the Plaintiffs, Tara Mikkilineni, in April or May, 2021. Even after Mr. Santana testified as to this second training session, Plaintiffs continued in their refusal to produce these documents. As a result, Defendants were forced to subpoena these same records from the Public Defenders Office on July 30, 2021. Any yet, it was only after the Plaintiffs believed discovery had been closed on August 2, 2021, that they finally saw fit to produce a slideshow of the training seminar to the Court. A copy of this alleged slideshow was produced by the Plaintiffs in their Response in Opposition to Defendants' Motion for Leave to Extend the Scheduling Order [Doc. 144-4], PageID #2660-2676. Plaintiffs' efforts to hide and prevent Defendants from obtaining these training materials leads one to wonder what else that the Plaintiffs could be hiding in this instance that might also be responsive to the request that was served on the Public Defenders Office on July 30, 2021. *See* Subpoena Duces Tecum [Doc. 142].

Further, any correspondence which reflects or relates to the working relationship between

the Public Defenders Office and Civil Rights Corps and ICAP between May 1, 2019 and the date of production would be relevant to the claims made by the parties that the employees in the Public Defenders Office have knowledge of the bail practices and jail conditions in Hamblen County. Further, any resulting agreement between the Public Defenders Office and Civil Rights Corps and ICAP would also show bias and undermine the credibility of any resulting testimony from the attorneys employed by the Public Defenders Office.

Similarly, policies and procedures that relate in any way to the employment of assistant public defenders in the Public Defenders Office, appointment of counsel, initial appearances, bail hearings, preliminary hearings and modification of the conditions of release are also relevant to the claims and defenses of the parties in this action. Obviously, if there are policies and procedures that were in place (or were put in place since this lawsuit was initiated) that limited the participation of appointed counsel in initial appearances, bail hearings, preliminary hearings and modification of conditions of release in Hamblen County, Tennessee, then that information would be highly relevant to the claims and defenses of the parties in this action.

Moreover, all of these requests are proportional to the needs of the parties in that the requests themselves have been narrowly tailored to the actual issues and defenses raised by the parties and limited to the witnesses who have been identified and will be relied upon at any resulting trial of this matter. As this Honorable Court is aware, the following factors are relevant to any consideration of whether the scope of discovery is proportional:

(1) The importance of the issues at stake in the action;

(2) The amount in controversy;

(3) The parties relative access to relevant information;

(4) The parties resources;

(5) The importance of the discovery in resolving the issues; and

(6) Whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Obviously, the personnel files of the central witnesses who have been identified by the parties who have and will continue to testify as to the bail practices and jail conditions in Hamblen County along with any resulting discipline and resignation of their employment are of utmost importance in demonstrating bias and undermining credibility. The same is true as it relates to the training materials provided to the Public Defenders Office and any resulting communications governing their relationship with Civil Rights Corps and ICAP. Moreover, the policies and procedures of Public Defenders Office would also be very important in demonstrating bias and undermining credibility of the testimony that will offered by the parties in this matter. While the Plaintiffs have not sought money damages, this case is of the utmost importance in terms of bail practices across the entire State of Tennessee. Further, the Defendants do not have access to this information from any other source. This discovery also has the potential to refine the issues involved in this matter in that it can eliminate the need to depose some of these public defenders. This production has been limited to items that should not be expensive or unduly burdensome for the Public Defenders Office to produce. Moreover, they were given thirty (30) days to produce the same. Rather than attempt to determine what they have that would be responsive to this request, they simply filed an objection and refused to produce the same on the basis of boilerplate objections that this Honorable Court should treat as no objection at all. *See Nissan N. Am., Inc., v. Johnson Elec. N. Am., Inc.*, No. 09-CV-11783, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court.").[6] As demonstrated

---

[6] A boilerplate objection has been described as an objection that

above, all of the requests that were directed to the Public Defenders Office are not only relevant but also proportional to the needs of this case.

## CONCLUSION

It is respectfully submitted that Defendants' Motion to Compel Compliance should be GRANTED, and the Public Defenders Office should be ordered to produce the records sought in the Subpoena Duces Tecum [Doc. 142] that was served on the Public Defenders Office on July 30, 2021.

RESPECTFULLY SUBMITTED this 9th day of August, 2021.

TAYLOR & KNIGHT, GP

*/s/ Jonathan Swann Taylor*
Arthur F. Knight, III, BPR # 016178
Jonathan Swann Taylor, BPR # 025094
Hilary L. Magacs, BPR # 036864
Caitlin C. Burchette, BPR # 037026
800 S. Gay Street, Suite 600
Knoxville, TN 37929
Phone: 865- 971-1701
Fax: 865-971-1705
amber@taylorknightlaw.com
*Attorneys for Defendants*

---

merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request. For example, a boilerplate objection might state that a discovery request is irrelevant or overly broad without taking the next step to explain why. These objections are taglines, completely devoid of any individualized factual analysis.

*Liguria Foods, Inc. v. Griffith Laboratories, Inc.*, 320 F.R.D. 168, 170-71 n.1 (N.D. Iowa 2017).

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 9, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served via regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

                                            */s/ Jonathan Swann Taylor*
                                            Jonathan Swann Taylor