# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

MICHELLE TORRES, *et al.*, on behalf of themselves and those similarly situated,

      Plaintiffs,

      v.

W. DOUGLAS COLLINS, in his official capacity as Hamblen County General Sessions Judge, *et al.*,

      Defendants.

Case No. 2:20-cv-00026-DCLC-CRW

(Class Action)

## REPORT OF THE SPECIAL MASTER

Pending before the Special Master (ECF 160) is Plaintiffs' motion to quash third-party subpoenas that Defendants issued to and had served upon the Third Judicial District Public Defenders Office ("PD Office") and attorneys Brantley Stewart, DeAnna Snyder, Ethel Rhodes, Greg Eichelman, Maggie Greenway, Russell Mattocks, and Willie Santana ("PD Attorneys") who work in the PD Office. (*See* ECF 120–27) (collectively "Subpoenas"). The Subpoenas generally seek communications between, on the one hand, the PD Office employees and PD Attorneys and, on the other hand, representatives of the Civil Rights Corps ("CRC") or of the Institute for Constitutional Advocacy ("ICAP"). After filing the motion to quash, the Plaintiffs ultimately produced for *in camera* review 300 documents containing 1,788 pages of communications and attachments to those communications ("Withheld Materials"). The Withheld Materials are responsive to the Defendants' subpoenas, but the Plaintiffs claim that the "common interest privilege" and/or the work-product doctrine otherwise shield them from discovery. The Plaintiffs

1

additionally claim that Federal Rule of Civil Procedure 26(b)(4)(D) protects from discovery CRC and ICAP's communications with PD Attorney Santana because Santana serves as a consulting, non-testifying expert. For the reasons set forth in this Report and after reviewing each of the Withheld Materials, the Special Master **GRANTS** the motion in part and **DENIES** the motion in part.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Michelle Torres, Robbie Johnson-Loveday, Amanda Cameron, and Bethany Edmond formally initiated this putative class-action lawsuit on February 16, 2020 against the Sheriff of Hamblen County, Tennessee; a Hamblen County General Sessions Court Judge; the Hamblen County Judicial Commissioners; and the Hamblen County Court Clerk of the General Sessions Court. (ECF 1).  The Plaintiffs, then-incarcerated in the Hamblen County Jail, generally allege on their behalf and on behalf of similarly situated individuals that the Defendants' pretrial retention and release policies and practices violate certain of their constitutional rights. (ECF 1, ¶¶ 10, 111–23).

### A.    Relevant Party Discovery and Objections

When discovery commenced, the Plaintiffs served their Federal Rule of Civil Procedure 26(a)(1) Initial Disclosures identifying Assistant Public Defender for Tennessee's Third Judicial District Ethel Rhodes, among other individuals, as a person likely to have discoverable information. (ECF 128-12, #2538, ¶ 6).  On January 26, 2021, the Defendants served Rule 33 interrogatories to the Plaintiffs (ECF 128-1) that included requests to identify persons with factual knowledge of their claims. (*Id.*, #2497, ¶ 3).  The Plaintiffs responded that employees of the Hamblen County Public Defender's office, among others, "have knowledge of bail practices in the Hamblen County General Sessions Court and the conditions of the Hamblen County Jail." (ECF

2

128-3, #2516, ¶ 11). The Defendants also asked the Plaintiffs to identify persons with whom they communicated regarding the Complaint's allegations. (ECF 128-1, #2497, ¶ 5). The Plaintiffs responded by asserting numerous blanket objections, including that the interrogatory sought information that the attorney–client privilege, common-interest privilege, and work-product doctrine protected from discovery. The Plaintiffs also asserted that the interrogatory sought information protected by Federal Rule of Civil Procedure 26(b)(4)(D). (ECF 128-4, #2518–19). Despite these objections, the Plaintiffs responded as follows:

> Plaintiff's attorneys have been in regular communication with employees of Hamblen County Public Defender's Office since May 15, 2019. Plaintiff's counsel Tara Mikkilineni was asked to consult with the Public Defender's office on conducting a training for the public defenders on issues related to bail. Since July 2019, plaintiffs' counsel have been in ongoing communication with employees of the Public Defenders' office and those communications have been in furtherance of litigation.

(*Id.*).

The Defendants also served the Plaintiffs with several Rule 34 document requests (ECF 128-1), to which the Plaintiffs responded on March 15, 2021 and March 25, 2021. (ECF 128-2, #2512–13). In response to Defendants' request for the Plaintiffs' communications with any person about their claims in this lawsuit, (ECF 128-1, #2503, ¶ 8), the Plaintiffs objected "to the extent" the request sought materials that the attorney–client privilege or the work-product doctrine protected from discovery but promised to produce "non-privileged responsive documents." (ECF 128-5, #2520). In response to Defendants' request for communications between the Plaintiffs or their agents and any witness with discoverable knowledge (ECF 128-1, #2503, ¶ 9), the Plaintiffs generally objected that the request sought documents that the attorney–client privilege, work-product doctrine, and common-interest privilege protect from discovery and indicated that they would interpret the request not to cover these allegedly protected—and unidentified—documents.

The Plaintiffs also objected because the request "seeks information protected by Federal Rule of Civil Procedure 26(b)(4)(D)." (ECF 128-6, #2521–22). And in response to Defendants' request for documents the Plaintiffs obtained from the Hamblen County Public Defender's office (ECF 128-1, #2504–05), the Plaintiffs asserted that the common-interest privilege, the work-product doctrine, and Rule 26(b)(4)(D) protected some unidentified information in their possession. (ECF 128-7, #2523–24, ¶ 14).

### B.     Privilege Logs and Third-Party Subpoenas

Despite asserting that certain discovery requests sought information protected by an evidentiary privilege or as trial-preparation material, the Plaintiffs did not describe at the time of their March 2021 discovery responses the withheld documents' nature as required by Federal Rule of Civil Procedure 26(b)(5)(A)(ii) to enable the Defendants to assess the protection claims. In April 2021, the Plaintiffs served Defendants with a Rule 26(b)(5)(A)(ii) privilege log identifying twenty (20) documents by a corresponding file or control number that they withheld pursuant to the common-interest privilege or the work-product doctrine but not pursuant to Rule 26(b)(4)(D). (ECF 128-8). The documents appear to house an unidentified number of emails and text messages between representatives of CRC and ICAP (entities with which the Plaintiffs' lawyers practice) and representatives of the PD Office that occurred between February 2020 and February 2021. (*Id.*).

After the Defendants complained about the Plaintiffs' inadequate privilege log, the Plaintiffs produced, on May 13, 2021, an updated log listing an additional ten (10) documents, again by file or control number, purportedly referencing communications that occurred between CRC or ICAP and the PD Office between February 2020 and April 2021. (ECF 128-10; 119-3). The updated log once more referenced discovery protections purportedly afforded by the common-

interest privilege and work-product doctrine without indicating that documents were withheld under Rule 26(b)(4)(B). (ECF 119-3, *passim*). The Plaintiffs later explained that they did not log the CRC or ICAP communications with PD Attorney Santana because he "is an expert consulted in preparation for trial, whom Plaintiffs do not plan to call as a witness" and, therefore, such communications "are exempt from discovery" under Rule 26(b)(4). (ECF 128-11, #2535).

Apparently because they had not received documents showing communications between CRC/ICAP and the PD Office, the Defendants issued the Subpoenas to the PD Office and six PD Attorneys on May 10, 2021; Defendants served the Subpoenas between May 10 and May 12, 2021. (ECF 120–27, *passim*). The Subpoenas generally sought all communications between, on the one hand, the CRC and ICAP and, on the other hand, PD Attorneys and other representatives of the PD Office. (*Id*.). With production requested on June 10, 2021, the Plaintiffs filed the instant motion to quash the Subpoenas. (ECF 119). As relevant here, the Plaintiffs assert that Rule 26(b)(4)(D) protects the CRC and ICAP communications with PD Attorney Santana; the common-interest privilege covers all communications after formation of the attorney–client relationship; and the work-product doctrine shields "many" of the communications. (*Id*.).

The Plaintiffs submitted the declaration of CRC Attorney Tara Mikkilineni in support of their argument that Rule 26(b)(4)(B) protects the CRC/ICAP communications with PD Attorney Santana. (ECF 119-12). Attorney Mikkilineni acknowledged that Santana's "observations, opinions, and conclusions" were essential to the Plaintiffs' attorneys' understanding of the General Sessions Court's bail processes and standards. (*Id*.). As to the CRC or ICAP communications with Santana, however, Attorney Mikkilineni asserted that she and other Plaintiffs' attorneys had communicated with Santana "[s]ince May 2019" "about the bail-setting norms and practices in General Sessions court." (*Id*., #2421, ¶ 4). Attorney Mikkilineni added that, once they decided the

5

necessity of federal litigation to address the General Session Court's bail practices, Santana "agreed to serve as an informal consulting expert to provide facts, opinions, and conclusions regarding the Hamblen County courts and Tennessee law to the Plaintiffs' litigation team." (*Id.*, ¶ 5). The declaration is unclear as to the date on which Santana "agreed to serve as a consulting expert." (*Id.*, *passim*). But what "Plaintiffs' counsel's declaration makes clear" is that Santana—

> provided factual information related to how bail is set by the Court Defendants before, at, and after initial appearances, and the conditions in the Hamblen County Jail—facts he was able to observe as a public defender appearing in General Sessions Court and regularly visiting the Jail.

(ECF 131, #2549).

### C. The Court's Discovery Orders and the Parties' Responses

The Court held a hearing on July 14, 2021 to address the Plaintiffs' motion to quash the Subpoenas. (ECF 135; 151). While Attorney Mikkilineni's declaration does not specify the date of PD Attorney Santana's agreement to serve as a consulting expert, Plaintiffs' counsel represented to the Court that there was no formal retention agreement but that "in terms of a specific date, there was an oral conversation in February of 2020 where . . . Mr. Santana agreed to be an informal consulting expert to Plaintiffs' counsel in this case." (ECF 151, #2723). Counsel later elaborated that the informal oral consulting agreement applied retroactively to encompass all communications with Santana prior to February 2020. (*Id.*, #2729). Attorney Mikkilineni's declaration, however, does not discuss the alleged retroactivity of the agreement (ECF 119-12, *passim*), and the record is otherwise devoid of any such evidence.

Regardless of the purported agreement's date, in response to the Court's question about whether PD Attorney Santana was acting as a legal consultant, Plaintiffs' counsel confirmed prior representations in their briefing (ECF 131, #2549) that Santana provided them with factual information:

> He is in the General Sessions Court everyday and sees what happens in the General Sessions Court, and he, he did that both as a prosecutor and as a, and as a defense attorney; and what Mr. Santana witnessed, again, gave Plaintiffs a window into the practices in Hamblen County, and it was indispensable because, otherwise, there would be none, no case here because there is no record of bail hearings in Hamblen County.

(ECF 151, #2732). The Court then ordered that the Plaintiffs update their privilege log to include all communications between the CRC and ICAP and the PD Office and PD Attorneys from May 2019 to February 2020. (*Id.*, #2744). This order specifically required the Plaintiffs to include communications related to the CRC's bail-related training provided to the PD Office. (*Id.*, #2747; *see also* ECF 136).

The Defendants, on August 9, 2021, filed a motion requesting that the Court compel the Plaintiffs to produce, among other items, training materials sent by CRC or ICAP to the PD Office on or after May 2019. (ECF 147; 148, #2685). The Plaintiffs responded, in part, by asserting that the requested documents "are subject to one or more claims of privilege." (ECF 152, #2760–61). At bottom, the Plaintiffs' protection-related objections to producing the training materials mimic their protection-related objections to producing non-training communications between the CRC or ICAP and the PD Office or PD Attorneys. (*Id.*)

On September 1, 2021, the Court issued an Order containing several rulings regarding the Plaintiffs' claims that certain evidentiary privileges and protection doctrines precluded discovery of the CRC and ICAP's communications with the PD Office and PD Attorneys. (ECF 154). *First*, the Court noted that, while its review of the record and arguments of counsel suggested that PD Attorney Santana was not serving as a consulting expert witness until at least February 2020, the Court would reserve judgment until conducting an *in camera* review of the putatively protected communications. (*Id.*, #2997–98). *Second*, although the CRC and ICAP lawyers and the PD Office had a common goal of ensuring that the Plaintiffs receive a constitutional bail-setting

7

process, the Court lacked information to determine whether the CRC and ICAP lawyers and the PD Office had an agreement to pursue a common goal. (*Id.*, #2999). And, unless an *in camera* review of the Plaintiffs' communications proved such an agreement, the common-interest doctrine would not provide discovery protection. (*Id.*). *Third*, the Court reserved ruling on Plaintiffs' assertions of the work-product doctrine until it could conduct an *in camera* review. (*Id.*, #2999–3000). The Court therefore ordered that the Plaintiffs provide it with the previously ordered privilege log, including the "specific legal basis" for withholding the documents and copies of the items identified on the log for *in camera* review. (*Id.*, #3000). And *fourth*, the Court ordered the Plaintiffs to produce an updated privilege log containing relevant communications between the CRC and ICAP and the PD Office related to training in April or May 2021. (*Id.*).

In response to the Court's September 1, 2021 Order, the Plaintiffs filed a notice attaching the declaration of PD Attorney Greg Eichelman representing that the PD Office and Plaintiffs' attorneys in this case reached an agreement in November 2019 to pursue a common goal that bail practices in the Hamblen County General Sessions Court met constitutional standards. (ECF 155; 155-1, #3008, ¶ 6). The notice confirmed that the Plaintiffs sent the Court an updated privilege log as previously ordered but, "[n]otably, the updated privilege log does not contain any documents pertaining to training in April or May 2021." (ECF 155, # 3003). The Plaintiffs represented that they previously disclosed the "relevant training slideshow" and that the "only potentially responsive communications pertaining to such training were with Plaintiffs' consulting expert Willie Santana and are privileged pursuant to Rule 26(b)(4)(D)." (*Id.*). And, despite the Court's specific directive to include these communications on an updated privilege log (ECF 154, #3000), Plaintiffs stated that they "have not logged communications with Mr. Santana that occurred after February 2020, and need not do so." (ECF 155, #3003).

### D. __Further Orders and Appointment of a Special Master__

The Court, having reviewed the Plaintiffs' notice issued an Order addressing the Plaintiffs' response on October 6, 2021. (ECF 160). The Court again ordered that "Plaintiffs **SHALL** provide the Court with an updated privilege log that include **all, meaning without exception,** allegedly privileged communications between Plaintiffs' counsel and [the PD Office and PD Attorneys] regardless of the date of the communication." (*Id.*, #3077–78) (emphasis by the Court). The Court also ordered that "Plaintiffs **SHALL** provide copies of all such communications not previously provided for in camera review." (*Id.*, #3078) (emphasis by the Court). The Court further found it "troubling" that, despite the multiple rounds of briefing and oral argument regarding the Plaintiffs' assertion of a common-interest protection, the Plaintiffs never mentioned a purported common-interest agreement. (*Id.*).

The Court appointed the Special Master to review documents submitted *in camera* by the Plaintiffs and make a Report determining whether "each document is, or is not, subject to the consulting expert privilege, the common interest privilege, attorney work product privilege or any other privilege protections claimed by Plaintiffs." (*Id.*, #3079). In accordance with the October 6, 2021 Order, the Plaintiffs produced materials and briefing in support of their position, including an "omnibus privilege log" and the Withheld Materials, to the Special Master. The Withheld Materials consist of 300 documents identified by a Control Number. Each document, or Control Number, may contain multiple pages identified by a Bates Numbering system of TORRESXXX. The Bates Numbered pages within the 300 documents total 1,788, with many pages containing multiple communications.

The Plaintiffs' privilege log and corresponding production of the Withheld Materials, however, was incomplete, disorganized, and partially inaccurate. The Plaintiffs redacted all or

portions of several pages. Upon a request that the Plaintiffs produce unredacted copies of these pages for the Special Master's review, the Plaintiffs refused to produce unredacted copies of the following pages on grounds that they reflect non-responsive internal communications between co-counsel and include no third parties.

| | | | |
|---|---|---|---|
| TORRES000766–68 | TORRES000776–78 | TORRES000780–81 | TORRES000785 |
| TORRES000794–814 | TORRES000816–18 | TORRES00820–21 | TORRES000828–29 |
| TORRES000831–36 | TORRES000840 | TORRES000849–53 | TORRES000859–61 |
| TORRES000880 | TORRES000890 | TORRES000920 | TORRES000923 |
| TORRES000925–26 | TORRES000929 | TORRES000936 | TORRES000938 |
| TORRES000940 | | | |

The Plaintiffs assert that the redacted information constitutes opinion work product to which courts apply heightened protection. While Federal Rule of Civil Procedure 26(b)(3)(B) does direct courts to "protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney," courts assess this protection after a requesting party proves a substantial need for work-product materials and cannot obtain them elsewhere without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii); *Mitchell v. Archer Daniels Midland Co.*, 329 F.R.D. 178, 182 (E.D. Tenn. 2019). Here, the issue presented is whether the work-product doctrine or other protections safeguard the materials from discovery in the first instance, a decision made long before deciding whether to override the protection because of a substantial need. The Plaintiffs cite *Dura Corp. v. Milwaukee Hydraulic Prods., Inc.*, 37 F.R.D. 470, 471 (E.D. Wis. 1965) for the proposition that protecting opinion work product from "unwarranted 'prying'" actually prevents the court from conducting an *in camera* review. But the *Dura Corp.* court simply held that the parties' briefing and description of the putatively privileged documents gave the court sufficient information to issue a ruling without reviewing the documents themselves. *Id.* Here, of

10

course, the Court has ordered an *in camera* inspection.

The Plaintiffs' refusal to produce unredacted versions hamstrings the ability to conduct a complete assessment of their protection claims. For example, the work-product doctrine analysis involves determining whether the party waived the protection by disclosing the putatively protected material to a third party. Some of the redacted pages appear to show that an email was forwarded; however, the redactions make identifying what information was forwarded and to whom virtually impossible. (*See* TORRES000777; TORRES000785). In addition to partial redactions, the Plaintiffs redacted other pages entirely, thereby prohibiting any type of review whatsoever. (*See* TORRES000796–97; TORRES000799; TORRES000801–12). This redacted information may very well be irrelevant and non-responsive, but without reviewing the documents in their entirety, making a final decision on a protection doctrine's application is impossible.

Organizational issues and inconsistencies in portions of the privilege log and the corresponding Withheld Materials unnecessarily prolonged the *in camera* review. Some dates on the privilege log did not match dates on the corresponding documents; some descriptions bore no relation to the corresponding document's content. Illustrative examples of these issues include:

- Plaintiffs describe TORRES000816–818 as "Discussion of case strategy and possible co-counsel," but the document, which consists of three heavily redacted pages, contains no case-strategy discussion.

- Plaintiffs describe the document identified as control number 38465 as a communication between five lawyers about data and criminal charges, but the document is actually a voicemail from one person to another simply asking for a return call.

- Plaintiffs did not consecutively paginate some of the email attachments with the parent email. TORRES000766 and TORRES001195–96; TORRES000819 and

11

TORRES001197–1217).

To be sure, "the preparation of privilege logs is tedious, and electronic discovery is the bane of many a lawyer's existence." *LaVeglia v. TD Bank, N.A.*, No. 2:19-cv-01917, 2020 WL 127745, *2 (E.D. Pa. Jan. 10, 2020). However, the misidentifications, redactions, and disorganization complicated and extended the *in camera* review.

## II.    LEGAL ANALYSIS

The primary motion presented for decision is Plaintiffs' motion to quash the Subpoenas. In their briefing on this motion, the parties recited the Defendants' discovery to the Plaintiffs and the Plaintiffs' protection-related objections. The Defendants have not filed a motion to compel the Plaintiffs to respond to this discovery, but the parties' briefing makes clear that the information the Defendants seek from the PD Office and the PD Attorneys is equivalent to the information the Defendants seek from the Plaintiffs. Whether requested via the Subpoenas or through discovery requests to the Plaintiffs, the documents at issue—the Withheld Materials—are communications between the CRC or ICAP and the PD Office or PD Attorneys. For this reason, this Report addresses the discoverability of the communications themselves, irrespective of the persons from whom they are sought.

The Plaintiffs assert that one or more of three protection doctrines preclude discovery of each of the 1,788 Withheld Materials: (1) communications between PD Attorney Santana and either the CRC or ICAP are non-discoverable under Federal Rule of Civil Procedure 26(b)(4)(D); (2) the "common interest privilege" protects some of the Withheld Materials from production because the CRC, ICAP, and the PD attorneys shared a common interest in ensuring that the Hamblen County General Sessions Court provides constitutionally proper bail practices; and (3) the work-product doctrine shields all of the Withheld Materials. Each protection doctrine is

addressed below.

### A.  Protections for Consulting Expert Witnesses

Federal Rule of Civil Procedure 26 generally prohibits discovery related to "an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" except upon a "showing of exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."  Fed. R. Civ. P. 26(b)(4)(D).  Exceptional circumstances mean that "the party cannot obtain equivalent information from another source."  *Scott v. Abernathy Motorcycle Sales, Inc.*, No. 118CV01077STAEGB, 2019 WL 12056315, at *2 (W.D. Tenn. Jan. 18, 2019) (quoting *Ferrell v. Liberty Mut. Grp., Inc.*, No. CIV.A. 7:12-112, 2014 WL 3587255, at *2 (E.D. Ky. July 18, 2014)).  Exceptional circumstances may also exist when "circumstances precluded all but one of the party's experts from gaining a first hand observation of the object of condition."  *See Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 190 (M.D. Tenn. 2014) (citation omitted).  This exception exists "to ensure that a party cannot freely benefit from expert legal information obtained at the expense of an adversarial party in anticipation of litigation."  *Scott*, 2019 WL 12056315, at *2 (quoting *Kingdom Auth. v. City of Rockford*, No. 09 C 50240, 2011 WL 245585, at *3 (N.D. Ill. Jan. 26, 2011)).  The burden of showing exceptional circumstances lies with the party seeking discovery of facts or opinions held by a non-testifying consulting expert.  *Genesco*, 302 F.R.D. at 189.

Rule 26 does not account for an expert whom a party informally consulted in preparation for the trial but never "retained or specially employed."  Thus, discovery related to an informal consulting expert is impermissible without exception.  *See* Fed. R. Civ. P. 26(b)(4) advisory committee's note to 1970 amendment (stating that subdivision (b)(4)(B) "precludes discovery

13

against experts who were informally consulted in preparation for trial, but not retained or specially employed"); *Toledo Edison Co. v. G. A. Techs., Inc.*, 847 F.2d 335, 340–41 (6th Cir. 1988) (finding that "[s]ubdivision (b)(4)(B) is concerned only with experts retained or specially consulted in relation to trial preparation"), *superseded on other grounds as recognized in Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006); *USM Corp. v. Am. Aerosols, Inc.*, 631 F.2d 420, 424–25 (6th Cir. 1980) ("Since discovery of expert information acquired in anticipation of litigation can only be had in accordance with Rule 26(b)(4), if no provision is made for experts consulted informally in anticipation of litigation, no discovery concerning them is permissible."); 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2033 (3d ed.) (stating that, although the introductory language—providing that discovery of expert information acquired in anticipation of litigation or for trial "may be obtained only" as set out in Rule 26(b)(4)—was deleted in the 1993 amendments, "there is no reason to believe that the Advisory Committee meant to change the treatment of this issue").

The Tenth Circuit analyzes the status of each expert on an "ad hoc basis" and utilizes a four-factor test to determine whether an expert was informally consulted:

> (1) the manner in which the consultation was initiated; (2) the nature, type and extent of information or material provided to, or determined by, the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and, (4) the terms of the consultation, if any (e. g. payment, confidentiality of test data or opinions, etc.)

*Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 501–02 (10th Cir. 1980). For example, while "an expert witness' lack of qualifications, unattractive demeanor, excessive fees, or adverse opinions may result in a party's decision not to use the expert at trial, nonetheless, there are situations where a witness is retained or specifically employed in anticipation of litigation prior to the discovery of such undesirable information or characteristics."

14

*Id.* However, "a telephonic inquiry to an expert's office in which only general information is provided may result in informal consultation, even if a fee is charged, provided there is no follow-up consultation." *Id.*

More importantly for this analysis, "Rule 26(b)(4) specifically and exclusively deals with the standards and methods of discovery of facts known and opinions held by experts acquired or developed *in anticipation of litigation* or for trial." *Toledo Edison Co.*, 847 F.2d at 340–41 (emphasis added) ("If it is shown that the facts or opinions of the expert were so acquired the standards and procedures of subdivision (b)(4) apply."). Indeed, "the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit." Fed. R. Civ. P. 26(b)(4) advisory committee's note to 1970 amendment (noting that "[s]uch an expert should be treated as an ordinary witness").

Thus, "courts have regularly directed discovery as to information possessed by experts but not developed in anticipation of litigation." Wright & Miller § 2033 (collecting cases); *see, e.g.*, *Barkwell v. Sturm Ruger Co., Inc.*, 79 F.R.D. 444, 446 (D. Alaska 1978) (holding that information acquired and opinions formed by an expert prior to his retention were discoverable and were not acquired or developed in anticipation of litigation); *Harasimowicz v. McAllister*, 78 F.R.D. 319, 320 (E.D. Pa. 1978) (finding that the expert-consulting protection "is not limitless, but applies only to experts who were consulted with an eye toward litigation"); *Norfin, Inc. v. Int'l Bus. Mach. Corp.*, 74 F.R.D. 529, 532 (D. Colo. 1977) (holding discoverable a mere actor or viewer's knowledge obtained as a participant in the relevant field of endeavor and emanating from prior experience, rather than developed in anticipation of litigation).

15

The Sixth Circuit has also recognized a distinction between an expert's capacity as an opinion witness and his role as a mere observer of factual occurrences that may be relevant to the opposing party's case. *See Pedigo, M.D. v. UNUM Life Ins. Co. of Am.*, 145 F.3d 804, 807–08 (6th Cir. 1998) (finding that, despite the expert's presence at the incident, "the actor/viewer exception [did] not apply because the witness would not be testifying from first-hand knowledge but, like other experts, only from information observed, gathered, and preserved by others"); *Cox v. Tennessee Valley Auth.*, 989 F.2d 499 (6th Cir. 1993) (holding that, while TVA employee had expertise about flooding, he was not an expert retained by TVA for the purposes of testifying at trial but rather a veteran TVA employee with substantial personal knowledge pertaining to the subject matter of the lawsuit); *Trepel v. Roadway Exp., Inc.*, 40 F. App'x 104, 109–10 (6th Cir. 2002) (finding the alleged "expert opinions" were largely no more than the expert's own perceptions and upholding the admission of deposition testimony into evidence where the court limited witness's testimony to only those matters observed by or rationally based upon the expert's perceptions).

These authorities lead to the conclusion that, in determining whether an individual that a party claims is an expert—whether formally retained or informally consulted—is subject to discovery, the first inquiry is whether the consultation concerned facts based on the individual's first-hand knowledge or information observed or gathered by others. Regardless of whether the individual is specially retained or consulted informally, Rule 26(b)(4)(D) renders her opinions non-discoverable only when the opinions *themselves* were developed for trial-preparation purposes. Opinions developed because the individual was "an actor or viewer" of the "occurrences that are part of the subject matter of the lawsuit" are not afforded the same protections. Fed. R. Civ. P. 26(b)(4)(D) advisory committee's note to 1970 amendment. As this Court recognized,

16

"the real question here is . . . whether Mr. Santana qualifies as such as expert under Fed. R. Civ. P. 26(b)(4)(D)."  (ECF 154, #2997).

The greater weight of the evidence in the record shows that Plaintiffs' counsel has not communicated with PD Attorney Santana to obtain his expert opinions or conclusions based on his review of information developed by others.  Rather, counsel's communications with him center on gathering information on bail-setting and related processes in the Hamblen County General Sessions Court—all information obtained because he is a viewer or actor of occurrences that are part of this lawsuit. Santana's opinions and conclusions, formed based on his first-hand observation of events, are therefore not the kind of opinions contemplated by the Rule. To hold otherwise would mean that interviewing any fact witness with a relevant specialized background would somehow transform that witness into an informally consulted expert.

The Plaintiffs submit the declaration of Attorney Mikkilineni to secure Rule 26(b)(4)(D)'s non-discoverable protections.  This submission, however, is largely conclusory and inadequate to substantiate counsel's supposed arrangement with PD Attorney Santana.  While Plaintiffs' lawyers and Santana "regularly communicated" beginning in May 2019, the declaration asserts that Santana "agreed to serve as an informal consulting expert" on an unknown date when counsel "determined federal litigation was necessary."  (ECF 119-12, #2421, ¶¶ 4, 5).  Counsel references this agreement to prove that Santana was retained in anticipation of litigation and that his opinions fall within the scope of Rule 26(b)(4)(D). (ECF 119, #2344–45). Therefore, counsel argues, the Defendants may obtain discovery only upon a showing of exceptional circumstances.  (*Id.*).  Yet, the declaration does not reveal the terms of the consultation and, at its core, conveys only that Santana provided information "about bail-setting norms and practices in General Sessions court." (ECF 119-12, #2421, ¶ 4).

17

Against this attempt to paint PD Attorney Santana as a Rule 26(b)(4)(D) expert is significant evidence that he provided CRC/ICAP information derived from his everyday law practice as a public defender in the Hamblen County General Sessions Court. The Plaintiffs disclosed PD Office employees—including Santana—as persons with knowledge of "bail practices in the Hamblen County General Sessions Court." (ECF 128-3, #2518, ¶ 11). The Plaintiffs also confirmed that their lawyers were "in regular communication" with PD Office employees—including Santana—since May 2019 regarding a bail-related training program. (ECF 128-1, #2497, ¶ 5). While the Plaintiffs also stated that counsel have been communicating with PD Office employees since July 2019 "in furtherance of litigation," (*id.*), counsel later confirmed that Santana in particular "provided factual information" regarding bail practices—"facts he was able to observe as a public defender appearing in General Sessions Court and regularly visiting the jail." (ECF 131, #2549). Santana appears in General Sessions Court "everyday" and "sees what happens" in that Court. (ECF 151, #2732). Clearly, what was "indispensable" to Plaintiffs' counsel was "what Mr. Santana witnessed." (*Id.*).

The Special Master's review of the Withheld Materials supports these admissions. It is clear from a review of the communications between PD Attorney Santana and lawyers with CRC and ICAP that he provided factual information. Nothing shows that CRC or ICAP lawyers provided him with information to assess and return with expert-level opinions and conclusions. Rather, Santana provided these lawyers with factual information that they used as part of their legal analysis and strategies. This is the exactly the type of factual information, based on personal observations, that courts have concluded are outside of the consulting experts non-discoverability rule. For these reasons, Rule 26(b)(4)(D) does not prevent the Defendants from obtaining the discovery they seek through the Subpoenas.

18

### B.     <u>Common Interest Doctrine</u>

Federal common law governs whether an evidentiary privilege protects certain information from discovery where, as here, the federal court exercises federal-question jurisdiction over the Plaintiffs' claims. Fed. R. Evid. 501; *Whiting v. Trew*, No. 3:20-CV-54-TRM-DCP, 2021 WL 2690504, at *7 (E.D. Tenn. June 30, 2021).  The Sixth Circuit recognizes the privilege-sharing concept in which parties, in strictly defined circumstances, may exchange certain protected information without waiving those protections.  This common-law principle is not an independent evidentiary privilege but rather a non-waiver doctrine that allows parties with a sufficiently common legal interest to share information protected by the attorney–client privilege or work-product doctrine in furtherance of a common legal strategy.  *Lucaj v. Fed. Bureau of Investigation*, 852 F.3d 541, 548 (6th Cir. 2017) (stating that the common-interest doctrine permits parties whose legal interests coincide to share privileged materials); *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998) (recognizing, in dicta, that the common-interest doctrine expands the attorney–client privilege where two or more clients represented by separate counsel agree to exchange information on a matter of common interest); *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (noting that courts have applied a "joint defense extension" of the attorney–client privilege to communications shared by co-defendants who are part of a common defense strategy).

Courts and lawyers label this concept with a variety of monikers, such as the joint-defense privilege, allied-lawyer doctrine, common-interest privilege, or pooled-information doctrine.  *See, e.g.*, *John B. v. Goetz*, 879 F. Supp. 2d 787, 897 (M.D. Tenn. 2010) (calling the concept a "joint defense privilege"); *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 219 (W.D. Ky. 2006) (identifying the concept as a "common interest privilege"); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 213 n.13 (Tenn. Ct. App. 2002) (identifying various monikers before deciding on

19

"common interest privilege"); Grace M. Giesel, *End the Experiment: The Attorney-Client Privilege Should Not Protect Communications in the Allied Lawyer Setting*, 95 MARQ. L. REV. 475, 477 (2012).  The most appropriate phrase, however, is "common-interest doctrine" because this privilege-sharing concept is a non-waiver doctrine that applies to parties sharing a common legal interest, regardless of their relationship.  Katharine Traylor Schaffzin, *An Uncertain Privilege: Why the Common Interest Doctrine Does Not Work and How Uniformity Can Fix It*, 15 B.U. PUB. INT. L.J. 49, 55 (2005) (explaining that courts and commentators have debated the "subtle nuances" of the various names and recommending the term "common-interest doctrine").

While the Sixth Circuit recognizes the common-interest doctrine, it has not overtly adopted specific requirements that the doctrine's proponent must prove to secure protection.  *See United States v. Suarez*, No. 5:13 CR 420, 2014 WL 1898582, at *6 (N.D. Ohio May 8, 2014) (observing that the Sixth Circuit "does not appear to have directly adopted the requirements of the common-interest doctrine"); *Dura Glob., Techs., Inc. v. Magna Donnelly Corp.*, No. 07-CV-10945-DT, 2008 WL 2217682, at *1 (E.D. Mich. May 27, 2008) (admitting that it had found no controlling Sixth Circuit authority), *objections overruled*, No. 07-10945, 2008 WL 2695668 (E.D. Mich. July 2, 2008); *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2006 WL 314435, at *6 n.5 (N.D. Ohio Feb. 9, 2006) (noting that Sixth Circuit law on the common-interest doctrine is "rather scant").

Intra-circuit courts and courts from other circuits, however, have agreed on certain elements of the common-interest doctrine.  First, the doctrine applies to two or more parties who are each represented by separate counsel. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 365 (3d Cir. 2007), *as amended* (Oct. 12, 2007).  Second, this non-waiver doctrine covers only information that the attorney–client privilege or work-product doctrine protects in first instance; it does not

shield all communications simply because the parties have sufficiently aligned interests. *In re Com. Money Ctr., Inc., Equip. Lease Litig.*, 248 F.R.D. 532, 536 (N.D. Ohio 2008) (ruling that the doctrine has no application unless the exchanged information "is . . . protected by the attorney–client privilege or work product doctrine"). Third, the information-sharing parties must have a common legal, as opposed to commercial, interest, *Harper v. Everson*, No. 3:15-CV-00575-JHM, 2016 WL 8201785, at *7 n.5 (W.D. Ky. June 27, 2016), and share the protected information for the purpose of pursuing a common legal strategy. *Moss*, 9 F.3d at 550 (stating that the doctrine's protection applies to communications shared as part of "an on-going and joint effort to set up a common defense strategy") (quoting *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 94 (3d Cir. 1992)); *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010) (noting that the doctrine applies where information is shared with an intent to further the common legal interest).

Courts strictly construe the doctrine to effectuate its non-waiver purpose, and the party seeking non-waiver protection bears the burden of establish the common-interest doctrine's elements. *Moss*, 9 F.3d at 550; *Burkhead & Scott, Inc. v. City of Hopkinsville*, No. 5:12-CV-00198-TBR, 2014 WL 6751205, at *4 (W.D. Ky. Dec. 1, 2014); *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 349 (N.D. Ohio 1999). The doctrine's proponent must specifically prove that the parties explicitly and clearly agreed to share protected information on a matter of common legal interest. *Cooey*, 269 F.R.D. at 652. While a written, executed agreement is not required to obtain the doctrine's protection, an information-sharing agreement of some sort must be in place; the doctrine will not protect disclosures made prior to the information-sharing agreement. *Elvis Presley Enters., Inc. v. City of Memphis*, No. 2:18-cv-02718, 2020 WL 4015476, at *8 (W.D. Tenn. July 16, 2020); *Cooey*, 269 F.R.D. at 652.

Based on a review of the parties' briefing, evidence submitted in support of the doctrine,

and the *in camera* review, the Special Master finds that the common-interest doctrine does not shield the Withheld Materials from discovery. The Plaintiffs asserted that 164 documents were protected under the common-interest doctrine and another protection, but with respect to approximately 44 documents, Plaintiffs asserted the common-interest doctrine as *the sole basis for protection*. The common-interest doctrine prevents waiver of protections when separate parties represented by separate lawyers share *independently protected information* in furtherance of a common legal strategy. But here, the information sharing is between lawyers for the same parties, and the Plaintiffs submitted insufficient evidence to demonstrate that the PD Office or PD Attorneys continued to represent any of the Plaintiffs in their criminal matters at the time they exchanged information with CRC/ICAP.

A review of these documents, moreover, revealed that CRC/ICAP and the PD Office or PD Attorneys did not share information that was presently protected by the attorney–client privilege or work-product doctrine. For example, the Plaintiffs claim that the common-interest doctrine protects the text-message exchange between an ICAP attorney and a PD Attorney at TORRES000746–TORRES000750. These exchanges, however, do not share protected information but rather discuss meeting for lunch and ongoing practices bail-setting episodes that do not appear to relate to client of the PD Office. Similarly, the Plaintiffs assert the common-interest doctrine over text messages between CRC/ICAP and a PD Attorney at TORRES000947–TORRES000754, but those messages do not exchange protected information; instead, they discuss what occurred in a public courtroom and what a criminal client's daughter told one of the attorneys. The Plaintiffs assert the common-interest doctrine over an email at TORRES000755 from a PD Attorney to a CRC attorney and a "co-counsel" that appears to be associated with a third-party organization. The email does not share protected information but rather reports on a fortuitous

encounter with an inmate.  Finally, the Plaintiffs claim that the doctrine covers an email (containing the wrong date) at TORRES002480 where one lawyer sends another an email address—nothing in this email shares protected information.  Such examples abound throughout the production—the PD Attorneys are communicating facts to the CRC/ICAP, not sharing information generated in the criminal cases that the privilege or work-product doctrine would otherwise protect.

Tellingly, although the common-interest doctrine only avoids waiver of privileged information, the Plaintiffs did not assert that the attorney–client privilege protected any of the Withheld Materials.  If the Withheld Materials are not subject to the attorney–client privilege in the first instance, then the common-interest doctrine by definition offers no protection.  And while the Plaintiffs claim that the work-product doctrine protects some, but not all, of the Withheld Materials, a review of the Withheld Materials shows that this work-product assertion applies to their communications about the class-action suit, not exchanging work product created in the underlying criminal matters.

The Special Master agrees with the Court's prior finding that the CRC, ICAP, and the PD Attorneys have a common goal of ensuring that the class plaintiffs receive a constitutionally appropriate bail-setting process.  (ECF 154, #2999).  The Withheld Materials, however, do not show that separate parties were pursuing a joint legal strategy in the same or separate cases; rather they show that lawyers for criminal defendants supplied information to the criminal defendants' civil attorneys to assist those attorneys in filing and prosecuting this class-action lawsuit.  And even if the CRC/ICAP and the PD Office reached an agreement to pursue their common goal,[1] a

_____

[1] Neither the Plaintiffs' Motion to Quash (ECF 119), their Reply Brief (ECF 131), their statements at oral argument (ECF 151), nor their Supplemental Brief (ECF 137) mentioned that the CRC/ICAP and the PD Office entered into a common-interest agreement.  It was much later, after the Court raised the issue (ECF 154, #2998–99), that the Plaintiffs submitted the declaration of PD Attorney Greg W. Eichelman attesting to this agreement.  (ECF 155-1).  In ruling on a motion, courts generally should not rely on new evidence submitted in a reply brief or "supplemental" brief

review of the Withheld Materials reveal that they simply communicated "about matters involving representation of the attorneys' respective"—yet same—"clients." (ECF 155-1, #3008). Strictly construing the non-waiver, common-interest doctrine, as courts must, *Moss*, 9 F.3d at 550, the common-interest doctrine does not protect the Withheld Materials from disclosure.

### C. <u>Work Product Doctrine</u>

The work-product doctrine protects trial-preparation materials from discovery "to preserve the integrity of the adversarial process." *In re Pros. Direct Ins.*, 578 F.3d 432, 438 (6th Cir. 2009). The doctrine's original rationale "was to permit an attorney to 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.'" *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). Federal Rule of Civil Procedure 26(b)(3) embodies the current formulation of the doctrine, *Mitchell v. Archer Daniels Midland Co.*, 329 F.R.D. 178, 180 (E.D. Tenn. 2019), and protects "(1) 'documents and tangible things'; (2) 'prepared in anticipation of litigation or for trial'; (3) 'by or for another party or its representative.'" *In re Pros. Direct Ins.*, 578 F.3d at 438 (quoting Fed. R. Civ. P. 26(b)(3)(A)).

The party asserting the work-product doctrine has the burden of establishing that it prepared the putatively protected trial-preparation materials "in anticipation of litigation."

---

without affording the non-moving party the opportunity to respond. *See, e.g.*, *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481–82 (6th Cir. 2003); *Tiger Lily LLC v. U.S. Dep't of Housing & Urban Dev.*, No. 2:20-cv-2692-MSN-atc, 2020 WL 7682546 (W.D. Tenn. Oct. 26, 2020). The Defendants, however, have not moved to strike PD Attorney Eichelman's declaration and courts differ whether they had an obligation to do so. *Compare Cadence Bank, N.A. v. Latting Rd. Partners, LLC*, 699 F. Supp. 2d 1041, 1043 (W.D. Tenn. 2010), *with McGruder v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:117-cv-01547, 2020 WL 4586171 (M.D. Tenn. Aug. 10, 2020). The Special Master will not address this issue because the common-interest doctrine is inapplicable to the Withheld Materials even if the CRC/ICAP and PD Attorney had a common-interest agreement. The Court may address this issue if it becomes relevant in future proceedings and briefing on this issue.

24

*Roxworthy*, 457 F.3d at 593; *Malibu Boats, LLC v. Natique Boat Co., Inc.*, No. 3:13-CV-656-TAV-HBG, 2015 WL 11018000, at *3 (E.D. Tenn. Jan. 26, 2015). Determining whether a party prepared a document in anticipation of litigation requires courts to engage in a subjective and objective inquiry. First, the court must assess whether the document was created because of a party's subjective anticipation of litigation, as opposed to another purpose. Second, the court must evaluate whether that subjective anticipation was objectively reasonable. *Roxworthy*, 457 F.2d at 594; *Malibu Boats, LLC*, 2015 WL 11018000, at *3.

The doctrine's proponent may prove the anticipation-of-litigation element as it would substantiate any other pretrial evidentiary issue—through affidavits, declarations, deposition testimony, interrogatory responses, and the like—with the opponent having an equivalent opportunity to submit countervailing evidence. *Roxworthy*, 457 F.2d at 596; *United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, No. 1:08-cv-251, 2015 WL 10987030, at *2 (E.D. Tenn. Apr. 29, 2015). While a document created for dual purposes—one because of anticipated litigation and one for a non-litigation reason—will not necessarily fall outside the scope of the doctrine's protection, the proponent must nevertheless establish that "anticipated litigation was the 'driving force behind the preparation of each requested document.'" *Malibu Boats, LLC*, 2015 WL 11018000, at *3 (quoting *Roxworthy*, 457 F.3d at 595). To meet this burden, supporting affidavits must be "specific and detailed to indicate that the documents were prepared in anticipation of litigation" and describe the circumstances surrounding the document's creation. *Roxworthy*, 457 F.3d at 597. Courts will reject work-product protection over a document where the proponent's only basis is an affidavit containing conclusory statements. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009) (quoting *Roxworthy*, 457 F.3d at 597).

If the doctrine's proponent establishes that the putatively protected document was prepared

25

in anticipation of litigation, then Rule 26(b)(3) provides that the "next stage of the analysis" is for "the court to determine whether a reason exists to override the general right that trial preparation materials are not discoverable." *Mitchell*, 329 F.R.D. at 181 (emphasis omitted). Assuming that the document is otherwise discoverable as required by Rule 26(b)(3)(A)(i), the party requesting the document must show that it has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain the substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *Mitchell*, 329 F.R.D. at 181; *Life Care Ctrs. of Am., Inc.*, 2015 WL 10987030, at *2. But even if the requesting party makes the requisite showing, the court must protect opinion work product contained in the document, meaning portions of the document that reflect attorney mental impressions, trial strategy, opinions, legal theories, and the like. Fed. R. Civ. P. 26(b)(3)(B); *Mitchell*, 329 F.R.D. at 182.

A party may waive the protection afforded by the work-product doctrine in various ways, including voluntary disclosure, inadvertent disclosure unremedied through efforts identified in Federal Rule of Evidence 502, and placement of the work product at issue in a lawsuit. *See generally* David M. Greenwald, et al., *Testimonial Privileges*, §§ 2:26–2:30 (Thomson Reuters 2019). Unlike the attorney–client privilege, a party's voluntary disclosure of work-product information to third parties waives the protection only if the third party is an adversary or the disclosure otherwise substantially increases the opportunity for potential adversaries to obtain the information. *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 306 (6th Cir. 2002); *Cox v. Franklin Cnty. Bd. of Comm'rs.*, No. 2:18-cv-1631, 2019 WL 6711388, at *4 (S.D. Ohio Dec. 10, 2019); *United States ex rel. Scott v. Humana, Inc.*, No. 3:18-CV-61-GNS-CHL, 2019 WL 7404032, at *6 (W.D. Ky. Sept. 24, 2019).

The Withheld Materials that Plaintiffs claim the work-product doctrine protects are clearly

documents or tangible things prepared by or for another party or the party's representative. The remaining question, therefore, is whether these Withheld Materials were prepared in anticipation of litigation, which invokes *Roxworthy*'s subjective and objective assessments. The Plaintiffs' testimonial evidence in this regard, however, is weak. They simply argue that it "is evident" that the communications were made in anticipation of litigation. (ECF 119, #2350). Attorney Mikkilneni's declaration largely pertains to the purported consulting-expert arrangement with PD Attorney Santana but states she determined in July 2019 that "further investigation in support of potential litigation was necessary." (ECF 119-12, #2421, ¶ 3). But stating simply that additional investigation is necessary falls short of the Sixth Circuit's dictate that supporting evidence be "specific and detailed," describe the circumstances surrounding the document's creation, and establish that anticipated litigation was the "driving force behind the preparation of each requested document." *Roxworthy*, 457 F.3d at 595–97. This evidence, therefore, is too conclusory to support a work-product objection. *Biegas*, 573 F.3d at 381.

So, we must turn to *in camera* review, as the Court directed, to ascertain whether the Withheld Materials were created because of anticipated litigation and, if so, when. The Withheld Materials begin with sporadic communications in July 2019. At this point, the CRC attorneys had visited the Hamblen County Jail and General Sessions Court and decided to conduct more investigation. In July and August 2019, the PD Office—primarily PD Attorney Santana—provided CRC and ICAP attorneys with a variety of jail- and bail-related factual information. Nothing in these communications, however, suggests with any specificity that any lawyer was contemplating litigation over Hamblen County's bail-related practices.

In late July 2019, one of the Plaintiffs' lawyers prepared and circulated to co-counsel and PD Attorney Santana a draft legal memorandum regarding Hamblen County's bail-related policies.

The stated purpose of the legal memorandum was to describe the claimed illegality of these policies for distribution to judicial policymakers who may be in a position to correct them. (TORRES000935). While the lawyers mentioned they would, in the future, discuss possible legal challenges, the stated purpose at that time, combined with subsequent distribution of the memorandum, show that the driving force of the memo and related communications was not the anticipation of litigation but rather accomplishing their objectives through non-litigation avenues. Certainly, without additional, evidence of context and the circumstances surrounding the memorandum and its distribution, *Roxworthy*, 457 F.3d at 597, one cannot determine that it was objectively reasonable to have a subjective anticipation of litigation at that point.

On September 4, 2019, however, communications in the Withheld Materials support a finding that the lawyers subjectively anticipated litigation because they began discussing a potential lawsuit and the development of legal options. (TORRES000870). While these communications are nonspecific on the legal options they were assessing, given the entire context of the developing circumstances, it is objectively reasonable that the lawyers subjectively anticipated litigation as of September 4, 2019.

Even though Plaintiffs' counsel anticipated litigation as of September 4, 2019, not every document in the Withheld Materials dated after this date warrants work-product protection because there is no evidence that every individual document was created for this same purpose. Upon a review of the Withheld Materials, the Special Master finds that the work-product doctrine protects from disclosure all documents dated on or after September 4, 2019 to which the Plaintiffs objected on work-product grounds except the documents identified in the Section III(A) below.

III.     **RULINGS ON WITHHELD DOCUMENTS**

Based on the reasons stated above, the Special Master renders the following findings and

28

conclusions:

A. The Plaintiffs did not follow the Court's orders to produce all communications, unredacted and including those related to bail-practices training. This failure prevented the Special Master from assessing the unproduced documents and their effect on the discoverability of those documents and some of the Withheld Materials.

B. Federal Rule of Civil Procedure 26(a)(4)(D) does not preclude discovery of communications between CRC/ICAP and PD Attorney Santana.

C. The common-interest doctrine does not prevent discovery of communications between CRC/ICAP and the PD Office or PD Attorneys.

D. The work-product doctrine protects from disclosure the CRC/ICAP communications with the PD Office or PD Attorneys, including PD Attorney Santana, created on or after CRC and ICAP reasonably anticipated litigation, which is September 4, 2019. The Plaintiffs shall produce the Withheld Materials over which they asserted only an objection based on Rule 26(a)(4)(D), the common-interest doctrine, or both. The Plaintiffs may withhold production of the Withheld Materials over which they asserted a work-product objection, except for the following documents that the Special Master finds were not exchanged in furtherance of litigation.

| TORRES000746 | TORRES002173–74 | TORRES002190 |
| TORRES001293–94 | TORRES001460 | TORRES001850 |
| TORRES001343–45 | TORRES001307–13 | TORRES001315–19 |
| TORRES001358–59 | TORRES001374–77 | TORRES001380–81 |
| TORRES001389–90 | TORRES001394–001406 | TORRES001418–28 |
| TORRES001440 | TORRES001446–47 | TORRES001455–57 |
| TORRES001460–62 | TORRES001467–69 | TORRES001504 |
| TORRES001508 | TORRES001511 | TORRES001514 |

| TORRES001638–52 | TORRES001727–28 | TORRES001803–36 |
|---|---|---|
| TORRES001850 | TORRES001851–001992 | TORRES002018–19 |
| TORRES002191–002219 | | |

 /s/ E. Todd Presnell
E. Todd Presnell
Special Master

BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37215
tpresnell@bradley.com

# CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of December, 2021, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Eastern District of Tennessee, using the electronic case filing system of the Court, and through that system served the following:

Ellora Israni
Tara Mikkilineni (D.C. Bar 997284)
(admitted *pro hac vice*)
Ellora Thadaney Israni (D.C. Bar 1740904)
(admitted *pro hac vice*)
Ryan Downer (D.C. Bar 1013470)
(admitted *pro hac vice*)
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Tel: 202-894-6124
tara@civilrightscorps.org
ellora@civilrightscorps.org

Seth Wayne (D.C. Bar 888273445)
(admitted *pro hac vice*)
Jonathan Backer (D.C. Bar 1613073)
(admitted *pro hac vice*)
Mary B. McCord (D.C. Bar 427563)
(admitted *pro hac vice*)
Institute for Constitutional Advocacy
and Protection (ICAP)
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
sw1098@georgetown.edu
jb2845@georgetown.edu

George T. Lewis, III (T.N. Bar 7018)
Matthew G. White (T.N. Bar 30857)
(admitted *pro hac vice*)
Baker Donelson
265 Brookview Centre Way, Suite 600
Knoxville, TN 37919
Tel: 865-549-7000
blewis@bakerdonelson.com
mwhite@bakerdonelson.com

Arthur F. Knight, III, BPR # 016178
Jonathan Swann Taylor, BPR # 025094
Hilary L. Magacs, BPR # 036864
Caitlin C. Burchette, BPR # 037026
TAYLOR & KNIGHT, GP
800 S. Gay Street, Suite 600
Knoxville, TN 37929
Phone: 865- 971-1701
Fax: 865-971-1705
amber@taylorknightlaw.com

*/s/ E. Todd Presnell*
E. Todd Presnell