IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

MICHELLE TORRES, *et al.*, on behalf of themselves and those similarly situated,

Plaintiffs,

v.

W. DOUGLAS COLLINS, in his official capacity as Hamblen County General Sessions Judge, *et al.*,

Defendants.

Case No. 2:20-cv-00026-DCLC-CRW

(Class Action)

## PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT

Plaintiffs respectfully submit the following objections to the Report of the Special Master (ECF No. 174) ("SM Report").

## BACKGROUND

Defendants issued a series of third-party subpoenas to the Third Judicial District Public Defenders Office ("PD Office") and its attorneys ("PDs," or singularly "PD"), seeking, among other things, communications between PDs and counsel for Plaintiffs. *See* ECF Nos. 120-127, 142. Plaintiffs filed a motion to quash Defendants' subpoenas, claiming three separate privileges over the requested documents: (1) communications with attorney Willie Santana are exempt from disclosure under Rule 26 because Santana is an expert consulted by Plaintiffs' counsel who they do not expect to call as a witness at trial; ECF No. 119 at 5; (2) communications are protected by the "common interest" privilege which expands underlying privileges, including attorney-client privilege, to communications amongst multiple persons who share a common interest in a matter

and agree to exchange information; *Id.* at 8; and (3) communications are protected by attorney work-product privilege. *Id.* at 11. Defendants filed a motion to compel compliance with one subpoena. ECF No. 147. On October 6, 2021, this Court issued an order requiring Plaintiffs to submit documents and a privilege log for *in camera* review and appointed Mr. Todd Presnell as Special Master to review the documents and produce a report. ECF No. 160. The Special Master filed his Report on December 10, 2021. ECF No. 174 ("SM Report").[1] The SM Report found that the consulting expert and common interest privileges do not protect any documents from disclosure, and that the work-product doctrine protects documents on and after September 4, 2019 for which it was claimed by Plaintiffs, other than a specifically enumerated list that the Special Master deemed were "not exchanged in furtherance of litigation." *Id.* at 29. Following a status conference, this Court ordered the parties to file any objections to the SM Report by December 22, 2021. Plaintiffs object to disclosing 42 pages of the over 400 pages of documents determined by the Special Master to be subject to disclosure.[2] Plaintiffs' objections are limited to communications between Plaintiffs' counsel and the PDs that are protected by attorney-client and attorney work-product privileges. In the interest of not unnecessarily extending this discovery dispute, Plaintiffs will not object to the Special Master's finding that certain non-relevant documents and all documents withheld solely pursuant to the consulting expert privilege should

---

[1] The Special Master filed a Supplemental Report on December 15, 2021, following a review of several materials that had originally been submitted partially redacted by Plaintiffs. ECF No. 178. As explained in Plaintiffs' December 17 Status Report, ECF No. 181, the Supplemental Report did not find any materials should be produced that had not already been addressed in the SM Report. Accordingly, Plaintiffs will not separately respond or object to the Supplemental Report.

[2] Plaintiffs would be happy to produce a file containing only these 42 pages *in camera* for the Court's convenience in considering these objections.

be disclosed. However, because the SM Report contains errors of facts and law, Plaintiffs also address the Special Master's findings on those points.

## OBJECTIONS

**(1) Common Interest Privilege**

Plaintiffs object to disclosing certain communications protected by the common interest privilege. As the Special Master acknowledged, the common interest privilege "allows parties with a sufficiently common legal interest to share information protected by the attorney-client privilege or work-product doctrine in furtherance of a common legal strategy."[3] SM Report, p. 19. The Special Master found that the PD Office and Plaintiffs' counsel possess a common interest in representing their clients. *Id.* at 23. The common-interest doctrine also requires that the parties have an information-sharing agreement to pursue their common legal ends; and as the Special Master acknowledges, "a written, executed agreement is not required to obtain the doctrine's protection[.]" *Id.* at 21.[4] However, the Special Master found that doctrine does not shield any

---

[3] Notably, with regard to work product, even in the absence of a common interest, waiver would not occur unless the material was disclosed to an "adversary." *Tenn. Laborers Health & Welfare Fund v. Columbia/Hca Healthcare Corp.*, 293 F.3d 289, 314 n.28 (6th Cir. 2002); SM Report at 26. Here, there is no suggestion that any materials were disclosed to adversaries.

[4] Although no formal agreement is necessary, here, Plaintiffs submitted an affidavit by the District Public Defender attesting to an agreement. ECF No. 155-1. While this Court found it noteworthy that the affidavit was only submitted after the issue of agreement was raised, Plaintiffs initially understood that the communications themselves support that Plaintiffs' counsel and PDs "agreed to take a joint approach in the matter at issue," ECF No. 119 at 10 (quoting *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010)), and believed it sufficient to allege the presence of an agreement. *See, e.g.*, TORRES000760-765 (text messages between Plaintiffs' counsel and PD sharing privileged information and coordinating strategy to prevent detention of mutual client). Plaintiffs only determined the affidavit was necessary after this Court stated that insufficient evidence had been presented about an agreement.

While the SM Report finds that the withheld materials "do not show the separate parties were pursuing a joint legal strategy in the same or separate cases," SM Report, p. 23, this is in error. The materials are replete with communications showing that Plaintiffs' counsel and PDs were sharing information to jointly pursue common goals advocating for overlapping clients.

materials from discovery regardless of the agreement. *Id.* at 22. The Special Master's finding relied on three bases: (1) "the information sharing is between lawyers for the same parties;" (2) there was insufficient evidence that the PDs continued to represent the Plaintiffs at the time they exchanged information with Plaintiffs' counsel; and (3) the materials are not protected by any underlying privilege. *Id.* The first and second points are incorrect as to the law, and the third is incorrect as to several of the communications protected by the common-interest doctrine.

*If Anything, Common Interest Privilege Has Greater Application Where the Same Client Has Different Attorneys*

The common-interest or community-of-interest privilege "permits persons who have common interests to coordinate their positions without destroying the privileged status of their communications with their lawyers." Restat. 3d of the Law Governing Lawyers, § 76, comment b. There is no law that this same rule does not apply where separate lawyers represent the *same client* in different matters that have common legal interests. Indeed, the rationale underlying this doctrine, if anything, carries *greater* weight where individual clients have separate counsel in parallel matters, as they inherently have the same legal interests. As the Southern District of Texas found, if the question is "[w]hether a criminal defense attorney's communication with potential counsel for his client in related civil litigation is privileged when confidential client information is provided . . . . the answer to this question must be yes." *Booth v. Galveston Cty.*, No. 3:18-CV-00104, 2018 U.S. Dist. LEXIS 181063, at *7 (S.D. Tex. Oct. 10, 2018); *see also, e.g.*, *Natta v. Zletz*, 418 F.2d 633, 637 n.3 (7th Cir. 1969) ("[I]nsofar as inter-attorney communications . . . contain information which would otherwise be privileged as communications to him from a client, that information should be entitled to the same degree of protection from disclosure."); *Brown v.*

---

*See, e.g.*, TORRES000760-765; TORRES000757 (text messages sharing attorney-client privileged material and coordinating strategy to prevent unjust detention of mutual client).

*Adams (In re Fort Worth Osteopathic Hosp., Inc.),* Nos. 05-41513-DML-7, 05-41503-DML-7, 07-04015-DML, 4:07-CV-206-Y, 2008 Bankr. LEXIS 3156, at *51 (Bankr. N.D. Tex. Nov. 14, 2008) ("[It would be] counter-intuitive to hold that attorneys for a company whose respective representations are for different matters would not be able to communicate among themselves and retain the privilege.").

Indeed, communications are undisputedly privileged where "multiple clients hire the same counsel to represent them on a matter of common interest," and "clients with separate attorneys share otherwise privileged information in order to coordinate their legal activities[.]" *Newmark Grp. v. Avison Young Can.*, No. 2:15-cv-00531-RFB-EJY, 2020 U.S. Dist. LEXIS 167997, at *48 (D. Nev. Sep. 14, 2020). The same is true "when two or more clients share a common legal . . . interest and . . . share legal advice with respect to that common interest." *Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 220 (W.D. Ky. 2006) (citation omitted). It would be a startling loophole if single clients with separate attorneys in different matters that pursue common legal goals would lose the protection of an underlying privilege when the attorneys share information. Indeed, that would mean that communications between attorneys for two separate parties would have greater protection than communications between attorneys for a single client. No law supports such an inequitable proposition.

Moreover, some of the communications are protected by underlying privileges related to representation of PD clients who are not Named Plaintiffs in this lawsuit, falling squarely within the "clients with separate attorneys" qualification for the common interest privilege. Accordingly, that public defenders and Plaintiffs' attorneys represent some of the same clients is no bar to finding their communications do not waive privilege.

*The Communications Show the Named Plaintiffs that Provided Privileged Information Have Had Ongoing Public Defender Representation*

It is an undisputed fact that each of the Named Plaintiffs was found indigent in their criminal cases and appointed public defender counsel. ECF No. 164-1 ¶¶ 81, 90, 97, 110. It is evident from the communications that the Named Plaintiffs continued to be represented by PDs in their underlying criminal matters. For example, TORRES000944 contains information demonstrating that in June 2021, Plaintiff Michelle Torres continued to be represented by PDs, as the communications show that she was represented by a PD in a state court proceeding contemporaneous with the communication. The communications in TORRES000759, 760, 764, and 765 show that through November 2020 and March 2021, Plaintiff Bethany Edmond continued to be represented by PDs, as the communications discuss Edmond's ongoing representation. Regardless, even if PD representation had ended at some point, the underlying privileges that form the basis for the common-interest privilege would persist. *See, e.g.*, *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992) ("Once the attorney-client privilege attaches to a communication, the communication retains the protection of the privilege even after the termination of the attorney-client relationship."). Accordingly, so long as the persons retain a common legal interest and the materials have an underlying privilege, they should remain protected by the common interest doctrine. And even if this Court were to find—contrary to this evidence—that public defender representation of the Named Plaintiffs ceased at some point, this would not affect communications related to other PD clients.

*Certain Communications Are Subject to an Underlying Privilege*

The Special Master erred in finding that Plaintiffs' attorneys and PDs "did not share information that was presently protected by the attorney-client privilege or work-product

doctrine."[5] SM Report, p. 22. Plaintiffs object to these findings, and maintain that many of the documents for which the common-interest privilege was claimed and that the SM Report found should be produced contain materials subject to an underlying privilege.

Attorney-Client Privilege

The following communications contain, in part, materials that are protected by attorney-client privilege:

TORRES000700, 701, 749, & 750 consist of (duplicated) text messages between Plaintiffs' counsel and a PD. They each contain an image of a privileged letter written by a PD client to the PD.

TORRES000757 consists of text messages between Plaintiffs' counsel and a PD. Several of the messages from Plaintiffs' counsel include privileged information communicated by a Named Plaintiff to counsel.

TORRES000760 consists of text messages between Plaintiffs' counsel and a PD. The fourth message conveys privileged information communicated by a Named Plaintiff to counsel.

TORRES000761 consists of text messages between Plaintiffs' counsel and a PD. The first message conveys privileged information communicated by a Named Plaintiff to counsel.

---

[5] The Special Master notes that Plaintiffs did not additionally assert the attorney-client or work-product privilege over several withheld materials for which the common-interest privilege is claimed. SM Report, p. 23. Given the muddled nature of the doctrine, Plaintiffs had a good faith-basis that claiming the common-interest privilege was sufficient for the purposes of a privilege log. *See State Farm Mut. Auto. Ins. Co. v. Hawkins,* No. 08-10367, 2010 U.S. Dist. LEXIS 55260, at *17 (E.D. Mich. June 4, 2010) ("The common law, federal and state, is replete with examples of opinions conflating distinct expansions of the standard attorney-client privilege, and in some cases courts have gone so far as to invent a new privilege rather than expanding the attorney-client privilege."). Indeed, a LexisNexis search reveals eighty-eight examples of cases in which federal courts within the Sixth Circuit used the term "common interest privilege." If this Court finds that claiming the common-interest privilege in a log is insufficient, Plaintiffs should have the opportunity to correct by updating the log to include underlying privileges.

TORRES000943 consists of text messages between Plaintiffs' counsel and a PD, and includes one message conveying privileged information conveyed by a Named Plaintiff to counsel.

TORRES000946 consists of text messages between Plaintiffs' counsel and a PD, and includes one message conveying privileged information communicated by a Named Plaintiff to counsel.

TORRES000951 consists of text messages between Plaintiffs' counsel and a PD, and includes one message conveying privileged information communicated by a Named Plaintiff to the PD.

TORRES000953 consists of text messages between Plaintiffs' counsel and a PD, and includes one message by the PD and two messages by Plaintiffs' counsel conveying privileged information communicated by a Named Plaintiff to each attorney.

<u>Work Product Doctrine</u>

Many of the materials identified in Plaintiffs' privilege log as subject to the common interest privilege are protected by the underlying work-product doctrine, both that of the PDs with respect to their clients' criminal cases, and Plaintiffs' counsel with respect to this litigation.[6] It is apparent from the communications that many include discussion of Named Plaintiffs' cases in criminal court, and because procedures in those cases also form the basis of this lawsuit, any discussion of those cases—particularly messages that reveal attorney mental impressions, opinions, and strategies—are work product for both sets of attorneys in their respective matters.[7]

---

[6] The Special Master notes that some materials claimed both work-product and common-interest protections, SM Report, p. 23, but the underlying privilege that forms the basis for the asserted common-interest privilege is also, in many cases, derived from work-product doctrine, even if not specifically listed. As explained *supra* n.6, Plaintiffs did not list the underlying privilege for every document that is subject to the common-interest privilege.

[7] If this Court disagrees with Plaintiffs' arguments about the materials listed below, the PD Office should have the opportunity to be heard before this Court about any materials

Work-product doctrine protects from discovery "inquiries into the activities of opposing counsel" that occur "in anticipation of litigation as well as during the course of litigation." *Hashim v. First Nat'l Bank*, No. 86 C 2696, 1991 U.S. Dist. LEXIS 4993, at *14 (N.D. Ill. Apr. 16, 1991). "The doctrine is designed to allow an attorney to assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests." *In Re Columbia/Hca Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (citation omitted). "Opinion work product"—including the mental impressions, opinions, and strategies of an attorney—"is entitled to near absolute immunity from disclosure[.]" *Hammett v. Am. Queen Steamboat Operating Co., LLC*, No. 14-cv-2540-SHL, 2015 U.S. Dist. LEXIS 191172, at *7 (W.D. Tenn. July 17, 2015). Here, the following documents ordered disclosed by the Special Master consist of materials that are attorney work product, many of which also contain attorneys' mental impressions, opinions, and/or strategies about their respective matters. They are therefore also protected by the common-interest privilege.

TORRES000698, 699, 747, & 748 consist of (duplicated) text messages between Plaintiffs' counsel and a PD about a Named Plaintiff mutual client, revealing the PD's mental impressions and opinions about the criminal case, and Plaintiffs' counsel's mental impressions and opinions about this litigation.

TORRES000755 consists of a message from a PD to Plaintiffs' counsel and another non-adversary lawyer including information about a PD client, revealing the mental impressions of the PD.

---

containing PD work product before they are disclosed, as there has been no waiver by disclosure to an adversary.

TORRES000757 consists primarily of text messages between Plaintiffs' counsel and a PD about a Named Plaintiff mutual client. The messages from Plaintiffs' counsel reveal that attorney's mental impressions and strategies for this litigation.

TORRES000758-60 & 763-765 consist of messages between Plaintiffs' counsel and PDs about a Named Plaintiff mutual client, revealing the attorneys' mental impressions and opinions about occurrences in the client's case.

TORRES000761 & 762 consist of messages discussing a privileged communication from a Named Plaintiff to Plaintiffs' counsel, including the mental impressions and strategies of counsel.

TORRES000942-954 consist of text messages between Plaintiffs' counsel and a PD about a Named Plaintiff mutual client which reveal the attorneys' mental impressions, opinions, and strategies.

TORRES000959-965 contains a draft motion prepared by a PD for a PD client.

TORRES001218-1220 consists of a communication by a PD about a client's case, including the attorney's mental impressions and opinions.

**(2) Attorney Work Product**

Plaintiffs do not object to the Special Master's finding that communications created before September 4, 2019, were not prepared in anticipation of this litigation. However, Plaintiffs object that one of the materials containing communications dated after that time and which the Special Master found should be disclosed is privileged because it constitutes opinion work product that is "absolutely immune" from disclosure. Specifically, TORRES001427 consists of emails that discuss case strategy in this litigation by Plaintiffs' counsel.

# OTHER DETERMINATIONS BY THE SPECIAL MASTER

In the interest of not further prolonging this discovery dispute, and to show good faith, Plaintiffs will produce documents in accord with the Special Master's finding that Plaintiffs should produce documents withheld pursuant to the consulting expert privilege (that are not subject to any other privilege) and certain documents that are irrelevant to this case. However, Plaintiffs address the Special Master's determinations on these points for this Court, as they bear on important issues of public interest that flow from this discovery dispute. Plaintiffs' counsel, and counsel for other civil rights organizations that litigate issues of constitutional rights in the criminal legal system, work with public defenders and other actors in court systems all over the country. The ability to freely consult with those actors is critical to investigating and litigating constitutional violations that occur in their courts. In this case, Plaintiffs have objected that Defendants have sought these communications not to uncover any information that is relevant to any defense or claim,[8] but to essentially retaliate against PDs for consulting with Plaintiffs' counsel to identify constitutional harms suffered by their clients and perpetrated by Defendants. Affirming Defendants' entitlement to such discovery will have—indeed, has already had—a chilling effect on public defenders and other public servants working to remedy constitutional problems in their courts. For that reason, notwithstanding their intent to produce documents in the following categories, Plaintiffs' counsel respectfully argues that the Special Master's findings were in error.

**(1) Consulting Expert Privilege**

First, Plaintiffs have claimed that communications with former Public Defender Willie Santana are privileged because he is an expert who was consulted, formally or informally, in

---

[8] Indeed, Plaintiffs moved for summary judgment several months ago, relying almost entirely on facts that were stipulated to by Defendants about their bail practices, and on Judge Corker's preliminary injunction order, which relied entirely on that stipulated record.

preparation for litigation. *See* Fed. R. Civ. P. 26(b)(4)(D). The Special Master concluded that the protections of Rule 26(b)(4)(D) do not apply where a person is primarily consulted about things of which they have first-hand knowledge, rather than information observed or gathered by others. SM Report at 16. However, in multiple communications between Plaintiffs' counsel and Mr. Santana, he provided information that was not personally observed by him, and about which he did not have first-hand knowledge. For example, in TORRES002082, Plaintiffs' counsel sent Mr. Santana a state statutory bail provision and asked Mr. Santana for his opinion about its application, which he provided in accordance with his expertise about state criminal practices. Mr. Santana's communications involved some things that he had personally observed, and some which he had not. Rule 26(b)(4)(D) explicitly prevents discovery of both "*facts known*" and "opinions held" by a non-testifying expert.

Mr. Santana has provided both facts and opinions to Plaintiffs to help prepare their case for trial. Courts evaluating whether a person may be treated as a lay witness or an expert typically look to the content of their *testimony* or anticipated testimony to determine which discovery rules apply, as shown by the cases cited by the Special Master. *See Pedigo v. UNUM Life Ins. Co. of Am.*, 145 F.3d 804, 807 (6th Cir. 1998) (witness was an expert because he sought to *testify* about a subject matter about which he did not have an "evidentiary advantage over any other witness"); *Cox v. Tenn. Valley Auth.*, No. 92-5641, 1993 U.S. App. LEXIS 5875, at *16 (6th Cir. Mar. 15, 1993) (slip opinion) (expert employee's affidavit did not constitute *expert testimony* because it conveyed "facts taken from official government records"); *Trepel v. Roadway Express, Inc.*, 40 F. App'x 104, 110 (6th Cir. 2002) (*testimony* was not expert because it disclosed "only those matters observed by the [witness]"); *see also, e.g.*, *Class Racing Stable, LLC v. Breeders' Cup, Ltd.*, Civil

Action No. 5: 16-200-DCR, 2018 U.S. Dist. LEXIS 15243 (E.D. Ky. Jan. 31, 2018) (finding that witness is an expert because his "anticipated *testimony* would offer his opinion").

But here, Plaintiffs have affirmed that they do *not* intend to use Mr. Santana's testimony for any purpose. The case law does not suggest that a *non-testifying* expert whose communications to attorneys contain a combination of opinions based on expertise and personal observations loses the protections of Rule 26(b)(4)(D), especially for those communications that do not involve first-hand knowledge. "Several courts have observed that non-testifying experts can wear two hats. One as a . . . non-testifying expert to aid a party preparing for litigation, and the other a normal fact witness." *Brasfield & Gorrie, LLC v. Hirschfeld Steel Grp. LP*, No. 2:20-cv-00984-LSC, 2021 U.S. Dist. LEXIS 224903, at *15 (N.D. Ala. Nov. 22, 2021) (citations omitted). When this is the case, "the scope of discovery under these circumstances is limited to facts known and opinions held prior to being specifically employed in anticipation of litigation." *Id.* Accordingly, nothing prevents Defendants from seeking discovery from Mr. Santana about his personal observations of the bail practices and other facts that form the basis for this lawsuit, and, indeed, they have. Defendants deposed Mr. Santana on July 28, 2021, at which time they were free to ask him about his observations, and did so. But Defendants should be prohibited from discovering communications *after* Mr. Santana was engaged by Plaintiffs to serve as a non-testifying expert, and which were specifically created within that role.

Plaintiffs' counsel have never intended to rely on Mr. Santana's factual knowledge or opinions communicated as part of his role as a non-testifying expert to prove that the bail practices in Hamblen County are unconstitutional. Indeed, Defendants' stipulations have eliminated any factual dispute about those bail practices. Thus, pursuant to Rule 26(b)(4)(D), Defendants should

have been prevented from discovering both the "facts known" and "opinions held" by Mr. Santana as they were communicated with Plaintiffs' counsel within his role as a non-testifying expert.

**(2) Non-Relevant Materials**

Finally, Plaintiffs note that several of the materials the Special Master found should be disclosed are not relevant to any claims or defenses in this lawsuit. *See* Fed. R. Civ. P. 26(b)(1). Some of these materials are of a personal or private nature. Again, however, Plaintiffs' counsel will produce these documents notwithstanding their irrelevance to any issue in this case.

For example, TORRES002176 includes seven messages discussing Mr. Santana's teenage son, unrelated to this litigation.

TORRES001504, 1508, 1511, & 1514 consist of messages between Mr. Santana and Plaintiffs' counsel about personal health matters, including Mr. Santana's health and the health of one of his clients unrelated to this litigation.

TORRES001293 & 1294 consist partially of a discussion about a personal blog post about Mr. Santana's mother unrelated to this litigation.

TORRES001428 consists of an email about a natural disaster unrelated to this litigation.

TORRES001318 & 1319 consist of messages between Plaintiffs' counsel and Mr. Santana discussing a legal opinion unrelated to this litigation.

TORRES002190 contains messages about Mr. Santana receiving an award unrelated to this litigation.

TORRES001398 & 1399 consist of an email sent by a different lawyer from a separate organization to Plaintiffs' counsel about a matter unrelated to this litigation.

## CONCLUSION

For the foregoing reasons, Plaintiffs' counsel objects to the Special Master's findings regarding disclosure of certain materials as stated above.

DATED: December 22, 2021

    Respectfully Submitted,

/s/ Tara Mikkilineni
Tara Mikkilineni (D.C. Bar 997284)
(admitted *pro hac vice*)
Ellora Thadaney Israni (D.C. Bar 1740904)
(admitted *pro hac vice*)
Ryan Downer (D.C. Bar 1013470)
(admitted *pro hac vice*)
Civil Rights Corps
1601 Connecticut Ave NW, Suite 800
Washington, DC 20009
Tel: 202-894-6124
Fax: 202-609-8030
Email: tara@civilrightscorps.org
       ellora@civilrightscorps.org

/s/ Seth Wayne
Seth Wayne (D.C. Bar 888273445)
(admitted *pro hac vice*)
Jonathan Backer (D.C. Bar 1613073)
(admitted *pro hac vice*)
Mary B. McCord (D.C. Bar 427563)
(admitted *pro hac vice*)
Institute for Constitutional Advocacy
and Protection (ICAP)
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
Tel: 202-662-9042
Email: sw1098@georgetown.edu
       jb2845@georgetown.edu

/s/ George T. Lewis
George T. Lewis, III (T.N. Bar 7018)
Matthew G. White (T.N. Bar 30857)
(admitted *pro hac vice*)
Baker Donelson
265 Brookview Centre Way, Suite 600
Knoxville, TN 37919
Tel: 865-549-7000
Email: blewis@bakerdonelson.com
       mwhite@bakerdonelson.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of December, 2021, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Eastern District of Tennessee, using the electronic case filing system of the Court. This filing will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Seth Wayne