UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

MICHELLE TORRES, *et al.*,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　)　　　　2:20-CV-00026-DCLC-CRW
　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
W. DOUGLAS COLLINS, *et al.*,　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　)
　　　　　　　　　　　　　　　　　)

**MEMORANDUM OPINION AND ORDER**

"The fundamental tradition in this country is that one charged with a crime is not, in ordinary circumstances, imprisoned until after a judgment of guilt." *Bandy v. United States*, 81 S. Ct. 197, 197 (1960). Yet, "[t]his traditional right to freedom . . . has to be squared with the possibility that the defendant may flee or hide himself." *Id.* "Bail, the pretrial release of a criminal defendant after security has been taken for [his] appearance at trial, has for centuries . . . act[ed] as a reconciling mechanism to accommodate both the defendant's interest in pretrial liberty and society's interest in assuring the defendant's appearance at trial." Donald B. Verrilli, Jr., *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum. L. Rev. 328, 329 (1982). The Eighth Amendment prohibits excessive bail. But what, if any, constitutional protections beyond this proscription exist for those who are admitted to bail but remain detained due to the inability to afford the set amount? In this action, Plaintiffs, a class of individuals arrested in Hamblen County, Tennessee, assert that the answer lies in the equal protection and due process clauses of the Fourteenth Amendment. Additionally, Plaintiffs argue the Sixth Amendment's right to counsel provision applies to bail hearings.

## I. THE PARTIES

Plaintiffs are a class of all individuals arrested on warrants out of Hamblen County General Sessions Court (save for capital offenses) (1) who are, or will be, in the custody of the Hamblen County Sheriff, Chad Mullins,[1]; (2) whose bail amount was set in an *ex parte* fashion by the Defendants authorized by law to set bail for cases pending in Hamblen County General Sessions Court; (3) who have not waived and have not received an individualized bail hearing within a reasonable period of time; and (4) who remain in custody for any amount of time [Doc. 116, pg. 14].

Defendants are a group of Hamblen County officials who operate and work with Hamblen County General Sessions Court in setting bail for arrestees [Doc. 216, ¶¶ 1–2]. Specifically, Defendant the Honorable W. Douglas Collins ("Judge Collins") serves as Hamblen County General Sessions Judge, Defendant Teresa West serves as Hamblen County General Sessions and Circuit Court Clerk ("Clerk West"), Defendants Katie West Moore, Nancy Phillips, and Kathy Robertson serve as Judicial Commissioners of Hamblen County General Sessions Court (collectively, "Judicial Commissioners"), and Chad Mullins serves as Hamblen County Sheriff and is in charge of the Hamblen County Jail.

## II. BACKGROUND[2]

When an arrest warrant is issued in Hamblen County, Judge Collins, Clerk West, or one of

---

[1]     When this suit was filed Esco Jarnagin was serving as the Sheriff of Hamblen County, Tennessee. Since that time, Chad A. Mullins has been elected Sheriff. Fed.R.Civ.P 25(d) provides that "[t]he officer's successor is automatically substituted as a party."

[2]     Defendants' bail practices before the Court's November 30, 2020 preliminary injunction are controlling for purposes of summary judgment because those practices were the focus of the Complaint [Doc. 1]. Moreover, Defendants did not voluntarily change their bail practices and they maintain that their pre-injunction practices were constitutional, showing that those practices continue to animate the dispute between the parties. *See Walling v. Helmerich & Payne*, 323 U.S. 37, 43 (1944); *LaPeer Cnty. Med. Care Facility v. Mich.*, No. 1:91-CV-333, 1992 WL 220917, at *6 (W.D. Mich. Feb. 4, 1992).

2

the Judicial Commissioners (collectively, "bail-setters") set bail by writing the specific form of bail on the arrest warrant [Doc. 78-1, ¶¶ 2, 4; 216, ¶¶ 2,4]]. Although bail-setters can issue recognizance releases or set non-financial conditions of release, they impose secured financial conditions of release ("money bail") for the majority of arrestees in Hamblen County [Doc. 78-1, ¶¶ 5, 6; Doc. 216, ¶ 5]. Bail-setters conduct this initial bail determination *ex parte*, outside the presence of the arrestee and before defense counsel is appointed [Doc. 78-1, at ¶ 3].

Bail-setters admittedly do not apply a particular burden of proof and do not follow any kind of schedule, rubric, or guidelines when determining the amount of money bail for a particular arrestee, and they do not know whether an arrestee will be able to pay [*Id*. at ¶¶ 7–9; Doc. 216, ¶¶ 9, 10]. They also do not make findings on the record regarding the amount of bail [Doc. 78-1, at ¶ 12; Doc. 216, ¶ 14]. Moreover, unless bail-setters are familiar with an arrestee because of prior run-ins with the Hamblen County General Sessions Court, bail is set solely based on the arrestee's charges and criminal history; bail-setters do not know the arrestee's employment status, financial condition, family ties and relationships, or ties to the community [Doc. 78-1, ¶¶ 10, 11; Doc. 216, ¶ 12].

There are four ways in which an arrestee can pay money bail: (1) personal surety; (2) real estate; (3) commercial surety; or (4) cash [Doc. 78-1, ¶ 14]. Although bonding companies are allowed by law to charge up to 10 percent of the bond amount, Judge Collins has been told that these companies sometimes accept a *de minimus* amount of the money bail that has been set [*Id*. at ¶¶ 15, 16]. Arrestees who can pay their bail are released, while those who cannot afford to pay remain in jail to await their initial appearance, which is held on the following Monday, Wednesday, or Friday, unless that day falls on a holiday [*Id*. at ¶¶ 18, 19; Doc. 216, ¶¶ 15-17].

Judge Collins or one of the Judicial Commissioners conducts the initial appearance via video conference between the jail and chambers [Doc. 78-1, ¶¶ 22, 23; Doc. 216, ¶ 19]. At the

3

initial appearance, the presiding judicial official advises the arrestee of his or her charges, bail, and preliminary hearing date, which is usually set up to 14 business days after the initial appearance [Doc. 78-1, ¶ 45; Doc. 216, ¶ 25]. The arrestee also fills out an affidavit of indigency if requesting court-appointed counsel [Doc. 78-1, ¶ 28; Doc. 216, ¶ 25]. However, counsel is rarely present at the initial appearance [Doc. 78-1, ¶ 55; Doc. 216, ¶ 24]. Similar to the initial bail determination, the presiding judicial official possesses limited information about an arrestee, such as the arrest warrant and information regarding their criminal history, and no findings are made on the record regarding the necessity of money bail [Doc. 78-1, ¶¶ 31, 33; Doc. 216, ¶¶ 26, 29-30]. Arrestees who cannot pay their money bail are detained until their preliminary hearing or until a motion for bond modification is granted and bail is modified or reduced to an amount they can afford [Doc. 78-1, ¶ 34].

Although Judge Collins will not consider requests for bond modification at an initial appearance for felony drug or theft charges, misdemeanor arrestees may informally request a modification of their bail, and Judge Collins sometimes uses the affidavit of indigency to adjust bond without being asked [*Id.* at ¶¶ 36, 37, 51; Doc. 216, ¶ 33]. The Judicial Commissioners, however, are not authorized to modify the initial bail amount and must forward the request to Judge Collins for review [Doc 78-1, ¶¶ 38, 39]. The request is typically forwarded immediately after the initial appearance, and Judge Collins evaluates it within a few minutes without an additional hearing and without findings on the record for his decision [*Id.* at ¶¶ 39, 40, 42; Doc. 216, ¶¶ 71, 73].

Public defenders or court-appointed counsel may file written motions to modify bail after they are notified of their appointment [Doc. 78-1, ¶ 58]. Similar to the process for informal requests, Judge Collins does not hold a hearing on written motions unless defense counsel requests that the Clerk put it on the docket [*Id.* at ¶ 59]. When considering written motions, Judge Collins

4

does not make findings on the record and does not require the state to show why an individual should be detained on a particular bail amount [*Id.* at ¶ 61]. He also has refused to consider bail modification requests from counsel when the prosecutor does not agree with the request [*Id.* at ¶ 60]. Judge Collins' denial of a motion for bond modification is appealable to the Hamblen County Criminal Court, which has jurisdiction to hear a bond motion before a preliminary hearing as a writ of certiorari or after a preliminary hearing and bind-over as a motion to reduce bond [Doc. 212, ¶ 44].

Each of the named Plaintiffs in this action were arrested and booked into Hamblen County Jail, had their bail initially set *ex parte*, did not receive an individualized determination regarding their conditions of release, and remained in custody because of their inability to afford the set bail amount until a third-party organization paid their bail [Doc. 78-1, ¶¶ 77–112; Doc. 216, ¶¶ 36-65]. Plaintiff Michelle Torres was arrested on felony drug charges, and Defendants set her bail at $75,000 [Doc. 78-1, ¶¶ 78–79]. Plaintiff Robbie Johnson-Loveday was arrested for driving under the influence, driving on a revoked license, and violation of implied consent and her bail was set at $6,000 with an additional requirement of an alcohol monitoring bracelet [*Id.* at ¶¶ 87–88]. Plaintiff Amanda Cameron was arrested on drug and theft charges and her bail was set at $32,000 [*Id.* at ¶¶ 94–95]. Plaintiff Bethany Edmond was arrested for drug possession and aggravated criminal littering and her bail was set at $1,500 [*Id.* at ¶¶ 107–108]. Plaintiffs Torres and Cameron informed Judge Collins during their initial appearance that they could not afford the money bail set in their case and requested a bond modification [Doc. 71-7, pgs. 8, 13]. Judge Collins refused to modify their conditions of release without providing reasons on the record for his decision [*Id.*]. Defendants admit that the proceedings for Plaintiffs Torres and Cameron "were typical of how Judge Collins conducts initial appearances." [Doc. 78-1, ¶ 36; Doc. 216, ¶ 66].

On February 16, 2020, Plaintiffs filed the instant action against Defendants seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 [Doc. 1]. Specifically, Plaintiffs sought a declaration that Defendants' bail practices violate their rights under the Fourteenth and Sixth Amendments [*Id.*]. Plaintiffs also sought preliminary and permanent injunctive relief against the Sheriff [*Id.*]. On November 30, 2020, the Court entered a preliminary injunction enjoining the Sheriff "from detaining any criminal defendant arrested on an arrest warrant who, after having bail set in an *ex parte* fashion . . . , [was] being detained without having had an individualized hearing within a reasonable period of time . . ." [Doc. 90, pgs. 29–30].

Currently before the Court are the parties' cross-motions for summary judgment. Plaintiffs persist in their entitlement to a declaratory judgment against Defendants on each of their Section 1983 claims and permanent injunctive relief [Doc. 200] and Defendants seek partial summary judgment on Plaintiffs' wealth-based detention claim [Doc. 203]. The motions are fully briefed and ripe for resolution.

## III.  LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

Once the movant has discharged this burden, the nonmoving party can no longer rest on the allegations in the pleadings and must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415,

6

424 (6th Cir. 2002). A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Based on the record, the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant. *Lansing Dairy*, *Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

## IV. DISCUSSION

Plaintiffs bring each of their claims pursuant to 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). To succeed under Section 1983, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).[3]

Here, Plaintiffs assert Defendants "routinely demand" that arrestees "pay a sum of money to be released" prior to trial, and they determine the amount to be paid "based on limited information, without the participation of the arrestee or the prosecution, and without providing counsel or any meaningful process until, typically, weeks after arrest" [Doc. 201-1, pg. 1]. These practices, Plaintiffs allege, result in impermissible wealth-based detention and deprivation of liberty without due process of law in violation of the Fourteenth Amendment. Additionally, due to the absence of counsel at hearings which result in pretrial detention, Plaintiffs allege Defendants' bail practices violate the Sixth Amendment's right to counsel provision [Doc. 201-1,

---

[3] Each of the Defendants in their official capacity as sheriff, general sessions judge, judicial commissioner, and circuit court clerk acted under the color of state law when conducting their respective duties in relation to setting and imposing bail. *See West v. Atkins*, 487 U.S. 42, 50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").

pg. 12]. Defendants defend the constitutionality of their bail practices, both procedurally and substantively, and assert they set bail with the goal of assuring that arrestees return to court.

### A. Wealth-Based Detention

Plaintiffs first contend Defendants' bail practices violate the "bedrock principle of equal justice" which prohibits imprisonment solely due to the inability to pay a sum of money [Doc. 201-1, pg. 13]. In terms of post-conviction fines, court costs, and restitution, the Supreme Court has held that although States are "not powerless to enforce judgments against those financially unable to pay[,]" *Williams v. Illinois*, 399 U.S. 235, 244 (1970), equal protection and due process principles prohibit "imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Tate v. Short*, 401 U.S. 395, 398 (1971). Principles of "fundamental fairness" require an inquiry into the reasons for the failure to pay and consideration of alternative measures of punishment if the defendant cannot afford to pay. *Bearden v. Georgia*, 461 U.S. 660, 672–73 (1983). "Only if the sentencing court determines that alternatives to imprisonment are not adequate in a particular situation to meet the State's interest in punishment and deterrence may the State imprison a [defendant] who has made sufficient bona fide efforts to pay." *Id*. at 672.

Relying on *Bearden* and its antecedents, Plaintiffs argue Defendants must inquire into an arrestee's ability to pay and consider alternative conditions of release prior to detaining arrestees who cannot afford to pay money bail [Doc. 201-1, pg. 14]. Because Defendants "reflexively impose financial conditions of release" without consideration of ability to pay or the existence of alternative conditions of release, Plaintiffs contend Defendants' bail practices result in pretrial detention solely due to indigency [*Id*.]. This, according to Plaintiffs, violates a combination of equal protection and due process known as fundamental fairness under the Fourteenth Amendment. Defendants argue Plaintiffs conflate money bail with post-conviction punishment

and claim that they set bail with the goal of assuring an arrestee's return to court and, in doing so, rely upon the arrestee's charges, criminal history, and any other relevant factors known at the time [Doc. 215, pgs. 19–20, 22].

Like the parties in *Bearden*, the parties here argue "the question primarily in terms of equal protection, and debate vigorously whether strict scrutiny or rational basis is the appropriate standard of review." 461 U.S. at 665. While "due process and equal protection principles converge" in most cases involving "the treatment of indigents in the criminal justice system," *id*. at 664–65, "the two concepts are not . . . coterminous." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988). "[T]he fairness of relations between the criminal defendant and the State" is analyzed under due process, while "the question of whether the State has invidiously denied one class of defendants a substantial benefit available to another class of defendants" is an equal protection issue. *Bearden*, 461 U.S. at 665. Although arrestees who cannot pay bail are detained and those who can pay are released, "indigency in this context is a relative term rather than a classification[.]" *Id*. at 666 n.8.[4] Therefore, "fitting 'the problem of this case into an equal protection framework is a task too Procrustean to be rationally accomplished[.]'" *Id*. "A due process approach has the advantage in this context of directly confronting the intertwined question of the role that a defendant's financial background can play" in imposing conditions of pretrial release. *Id*.

Following *Bearden*'s guidance, the question presented for purposes of due process is whether it is "fundamentally unfair or arbitrary" for the government to detain an individual prior

---

[4]     As Defendants point out, since the inception of this action, Plaintiffs have alleged Defendants detain arrestees "solely because of their poverty" [Doc. 1, ¶ 3], but they now clarify that they have used the "indigent" term "to broadly refer to anyone who has insufficient money to pay a sum determined by a court, not some objective measure of wealth." [Doc. 201-1, pg. 18, n.14]. Thus, an arrestee's "level of financial resources is a point on a spectrum rather than a classification." *Bearden*, 461 U.S. at 666 n.8.

to trial solely due to the inability to pay bail. *Id*. at 666. There is no uncertainty that individuals enjoy a "traditional right to freedom before conviction," *Stack v. Boyle*, 342 U.S. 1, 4 (1951), and "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Nonetheless, "[t]he right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty[,]" and bail serves as this assurance. *Stack*, 342 U.S. at 4–5.

The authority to detain an individual prior to trial due to the inability to pay bail, nevertheless, is not limitless. "[T]he government can deny a defendant pretrial release based on his failure to pay bail . . . only if the bail amount is not 'excessive[.]'" *Nashville Cmty. Bail Fund v. Gentry*, 496 F. Supp. 3d 1112, 1118 (M.D. Tenn. 2020) (quoting *Stack*, 342 U.S. at 5).[5] Put differently, it is unconstitutional to detain an individual prior to trial due to the inability to pay *excessive* bail. But bail is not excessive merely because the defendant is not "financially capable" of paying it, *United States v. Beaman*, 631 F.2d 85, 86 (6th Cir. 1980), and "the existence of a purportedly less restrictive [condition of release] does not bear on whether the conditions are excessive" in a particular case. *Holland v. Rosen*, 895 F.3d 272, 291 (3d Cir. 2018). Bail must simply not be "set at a figure higher than an amount reasonably calculated" to assure the presence of the accused. *Stack*, 342 U.S. at 5.

Because Plaintiffs do not challenge their bail as excessive, the Court must assume, without deciding, that the type and amount of bail Defendants chose to impose was constitutionally adequate, i.e., it was not more than that reasonably calculated to assure their appearance.

---

[5] Although never expressly incorporated by the Supreme Court, "the Eighth Amendment's proscription of excessive bail has been assumed to have application to the States through the Fourteenth Amendment." *Schilb v. Kuebel*, 404 U.S. 357, 365 (1971); *see McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010) (including the Eighth Amendment's prohibition against excessive bail in a list of incorporated Bill of Rights provisions).

10

Consequently, the inability to pay the set amount reflects a lack of ability to assure future appearance. Pretrial detention under such circumstances cannot be reasonably said to be fundamentally unfair.

While the Court sees this issue as one concerning due process, the result is no different under an equal protection analysis. In *Bearden* the Supreme Court recognized that "due process and equal protection principles converge" in most cases involving "the treatment of indigents in the criminal justice system." 461 U.S. at 664–65; *see also Johnson v. Bredesen*, 624 F.3d 742, 748–49 (6th Cir. 2010). And like the parties in *Bearden*, the parties here argue "the question primarily in terms of equal protection, and debate vigorously whether strict scrutiny or rational basis is the appropriate standard of review." 461 U.S. at 665. Plaintiffs argue that the Court must analyze Defendants' bail practices under heightened scrutiny, and Defendants contend that heightened scrutiny does not apply because wealth is not a suspect class for equal protection claims [Docs. 201-1, pg. 13; 204, pg. 13; 215, pg. 20].

Defendants are correct that "discrimination against the indigent, without more, does not implicate a suspect classification" and does not trigger heightened scrutiny. *Schultz v. Alabama*, 42 F.4th 1298, 1323 (11th Cir. 2022) (citing *Maher v. Roe*, 432 U.S. 464, 471 (1977)). But claims of wealth discrimination may be analyzed under heightened scrutiny in two contexts. *Id.* Specifically, the Court may apply heightened scrutiny in situations involving "setting the terms of carceral punishment and ensuring access to judicial proceedings." *Id.* Those two contexts alone, however, are not enough for the Court to apply heightened scrutiny to Plaintiffs' equal protection claim. "For heightened scrutiny to apply to a claim of wealth discrimination, then, . . . the indigent must suffer an absolute deprivation of a government benefit . . . due solely to their inability to pay for it[,]" and the claim must arise in one of the above well-defined contexts. *Id.* The question the

11

Court must consider now is whether Defendants' bail procedures cause an "absolute deprivation of a government benefit" solely because of Plaintiffs' inability to pay. *See id.*

On this record, the Court cannot find that Plaintiffs *absolutely* were deprived of their right to pretrial liberty by Defendants' bail practices. Although delayed, Plaintiffs eventually were able to request a reduction in bail because of their inability to pay [Docs. 78-1, ¶¶ 18, 19, 34; 216, ¶¶ 15-17]. Moreover, the record does not show that Defendants singled Plaintiffs out because of their inability to pay. The imposition of bail offers an arrestee the opportunity to prove that he will appear for his trial by making a concession of some sort—in this case a financial concession. *See id.* at 1325. Here, Defendants detained Plaintiffs because they could not offer the concession required to ensure that they would appear for trial. "In this way, [arrestees] who [did] not secure immediate release [were] not being discriminated against due to inability to pay—they [were] being discriminated against for failure to ensure . . . their future appearance at trial." *Id.*

Because Plaintiffs were not absolutely deprived of their pretrial liberty to justify heightened scrutiny under *Bearden*, the Court applies rational-basis review to Defendants' bail practices to determine whether their actions are rationally related to a legitimate government interest. *Id.* at 1330 (citing *Vance v. Bradley*, 440 U.S. 93, 97 (1979)). The Court will not find an equal protection violation in this context "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that [Defendants'] actions were irrational." *Vance*, 440 U.S. at 97. Defendants detain arrestees who are unable to pay the preset bail amount because, as noted above, those arrestees could not ensure that they would return for their trial date. Detained arrestees who could not pay their preset bail amounts remained in jail to await their initial appearance, which was held on the following Monday, Wednesday, or Friday, unless that day fell on a holiday [Docs. 78-1, ¶¶ 18, 19; 216, ¶¶ 15-17]. The Court agrees that Defendants have a compelling interest in ensuring that arrestees

12

return for trial and do not pose a risk of danger to their community while on release [Doc. 219, pg. 13]. *Schulz*, 42 F.4th at 1331. Thus, Defendants' bail practices are rationally related to that interest. *Id.*

Accordingly, Plaintiffs' Motion for Summary Judgment on their wealth-based detention claim is **DENIED** and Defendants' Motion for Partial Summary Judgment is **GRANTED**.

### B. Substantive Due Process

As an alternative to their wealth-based detention claim, Plaintiffs argue the imposition of "unattainable financial conditions of release" operates as a *de facto* detention order with substantive due process requiring such a detention decision to be narrowly tailored to serve a compelling government interest [Doc. 201-1, pg. 20]. Although the Court found at the preliminary injunction stage that Plaintiffs were likely to succeed on the merits of this claim, it is now clear that it fails as a matter of law for reasons similar to those stated above.

First, pretrial detention as a result of the unequivocal denial of bail is wholly distinct from pretrial detention due to the inability to pay bail. When bail is denied, an arrestee cannot attain pretrial release and, as a result, suffers a complete deprivation of liberty. In contrast, when an arrestee is admitted to bail, their release is merely conditioned on the provision of adequate assurance that they will not flee before trial. *Stack*, 342 U.S. at 4. While the former, if not appropriately related to a government interest, may amount to a substantive due process violation, the latter falls within the realm of the Eighth Amendment—the conditions placed on pretrial release must simply not be excessive.

This does not mean that the imposition of unattainable bail will never operate as a *de facto* detention order. It has been recognized that "because the Tennessee constitution guarantees a right to bail, the Tennessee courts appear to use unattainable bail amounts as a proxy for denying bail altogether." *Hill v. Hall*, No. 3:19-CV-00452, 2019 WL 4928915, at *19 (M.D. Tenn. Oct. 7,

13

2019).  Here, however, the parties have stipulated that Defendant bail-setters generally do not know whether an arrestee will be able to pay the set amount and that it is not Judge Collins' intent that arrestees remain in jail when he sets money bail [Doc. 78-1, ¶¶ 9, 13].  Without knowledge that an arrestee would not be able to afford the set amount of bail, it cannot be said that Defendants imposed financial conditions of release with the goal of denying bail altogether.

Even if the record reflected such an intent to use unaffordable bail as a proxy to deny bail, the Court is hesitant to hold that substantive due process would be the proper method of analysis. The Court must "exercise the utmost care" when "asked to break new ground in [the] field" of substantive due process. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).  Through selective incorporation, the Supreme Court has "substituted" the guarantees of various Bill of Rights provisions "for the more generalized language contained in the earlier cases construing the Fourteenth Amendment[,]" *Albright*, 510 U.S. at 273, and "the specific guarantees" of those provisions "are preferred over the, at times, more vague protections of the Due Process Clause." *Mitchell v. Doherty*, 37 F.4th 1277, 1283 (7th Cir. 2022).  Consequently, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [the] claims.'" *Albright*, 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

The intent of the Eighth Amendment's proscription of excessive bail has been said to "prevent the practical denial of bail by fixing the amount so unreasonably high that it cannot be given." *United States v. Motlow*, 10 F.2d 657, 659 (7th Cir. 1926).  Thus, "the Framers considered the matter" of using unaffordable bail as a proxy to deny bail "and drafted the [Eighth] Amendment to address it." *See Albright*, 510 U.S. at 274 (applying the same logic regarding the Fourth Amendment).  Because the Eighth Amendment "provides an explicit textual source of

14

constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. 386.

To accept Plaintiffs' argument that unattainable bail must survive strict scrutiny because it operates as the functional equivalent of an order of detention would, in effect, render the Eighth Amendment superfluous.[6] Plaintiffs' argument is, in reality, an excessive bail claim in substantive due process clothing. Because Plaintiffs do not assert a claim under the Eighth Amendment, the Court, again, expresses no view as to whether such claim would succeed. The Court simply declines to sidestep the Eighth Amendment and analyze Plaintiffs' claim under "the more generalized notion of 'substantive due process.'" *Graham*, 490 U.S. at 395. Accordingly, Plaintiffs' Motion for Summary Judgment on their substantive due process claim is **DENIED**.

### C. Procedural Due Process

Plaintiffs' final claim under the Fourteenth Amendment, the true underlying focus of their complaints, is that Defendants' bail practices violate procedural due process. Procedural due process, unlike its substantive counterpart, is "meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). A procedural due process analysis requires two steps. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the

---

[6]     Even accepting Plaintiffs' argument that unaffordable bail is equivalent to a detention order, the Court doubts that such detention would be subject to strict scrutiny. Plaintiffs rely on *Salerno* for that contention, but the Supreme Court there conducted a facial challenge of the Bail Reform Act's provisions authorizing the unequivocal denial of bail for certain dangerous individuals. In doing so, the Court adopted the test applied in *Schall v. Martin*, 467 U.S. 253 (1984), which upheld a law authorizing the detention of at-risk juveniles prior to the fact-finding proceeding. *Salerno*, 481 U.S. at 749. Both laws were upheld under facial due process attacks because (1) the preventative detention served a legitimate government objective and (2) the procedural safeguards contained in the laws were "adequate to authorize the pretrial detention of at least some [individuals] charged with crimes[.]" *Schall*, 467 U.S. at 264; *Salerno*, 481 U.S. at 751. This does not even closely resemble strict scrutiny.

15

procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (citations omitted).

The imposition of unaffordable money bail undoubtedly interferes with an arrestee's liberty interests. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Holland*, 895 F.3d at 297 ("Pretrial release and detention decisions implicate a liberty interest—conditional pretrial liberty—that is entitled to procedural due process protections."). Because the financial conditions imposed by Defendants resulted in the deprivation of Plaintiffs' liberty, the Court must determine whether the procedures attendant upon that deprivation were constitutionally sufficient.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The goal of procedural due process "is to minimize the risk of substantive error, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted). Thus, "some form of hearing is required" before an individual may be "condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction[.]" *Id.*

Under Defendants' practices, arrestees do not have a participatory role in the process of setting their conditions of release. Bail is initially set *ex parte* based upon an arrestee's charges and criminal history. Arrestees who can pay the set amount are released, but those who cannot remain detained. This procedure is similar to the use of a bond schedule. *See Fields v. Henry Cnty.*, 701 F.3d 180, 183 n.3 (6th Cir. 2012) ("Bail or bond schedules are procedural schemes that

16

provide officials with a standardized bail amount based on the charge the defendant faces."). To be sure, "there is nothing inherently wrong with bond schedules." *Id*. at 184. "Utilization of a master bond schedule provides speedy and convenient release for those who have no difficulty in meetings its requirements." *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978). However, the use of a bond schedule or a procedure in which bail is set solely based upon current charges and criminal history is only a sufficient procedure for those who can pay the set amount. For those who cannot, it acts as a barrier to release, and additional procedural safeguards must be provided "to minimize the risk of substantive error, to assure fairness in the decision-making process, and to assure that the [arrestee] has a participatory role in the process." *Howard*, 82 F.3d at 1349.

The most obvious procedural safeguards required are notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (1976). Here, an arrestee receives notice of the bail set in their case at the initial appearance, which takes place approximately 48 hours after arrest, or longer when holidays are involved [Doc. 201-1, pg. 20]. The timing of this hearing does not present an issue, considering an individual may be held within the same time period before a judicial determination of probable cause is even made. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). However, issues do arise with respect to an arrestee's opportunity to be heard regarding bail at this hearing. The only discussion of bail at the initial appearance occurs when the presiding judicial official informs the arrestee of the bail set in their case and inquires into whether they will be able to pay the set amount. Although, as Defendants point out, arrestees are not prevented from speaking during their initial appearances and may informally request a modification of their conditions of release, no meaningful inquiry as to the arrestee's individual circumstances or the necessity of any particular amount or type of bail is conducted when arrestees do speak up. If the request is denied, no reasons for the denial are provided. Even when an arrestee's attorney files a written motion to modify the conditions of

17

release, no additional hearing is conducted, and Judge Collins typically does not make factual findings as to the necessity of the initial bail amount when ruling on such motions.

Under these practices, arrestees are theoretically given an opportunity to speak on the matter of bail, but they are not provided an opportunity to be *heard* in a *meaningful* manner. Simply put, bail is set *ex parte* without participation of the arrestee and, thereafter, the arrestee's pleas for modification of that bail are decided without purposeful consideration. The initial bail amount is presumed to be appropriate regardless of whether it results in detention and without consideration of an arrestee's individual circumstances. "[T]he fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of *that* defendant." *Stack*, 342 U.S. at 5 (emphasis added). Thus, the opportunity for some form of bail hearing, whether standalone or consolidated with an initial appearance, must be provided to ensure that the bail set for a particular arrestee is appropriate, taking into account the arrestee's interest in liberty and the government's interest in assuring the arrestee's future appearance.[7]

This does not mean, of course, that every individual who passes through the Hamblen County criminal justice system must receive a bail hearing. Rather, only those arrestees for whom the initial *ex parte* bail setting acts as a barrier to release must be given the opportunity to be heard. Accordingly, when an arrestee requests a bail modification, either informally or in writing, due process requires a prompt and individualized hearing at which an arrestee is given the opportunity to show (1) that they cannot afford the bail amount initially set in their case and, as a result, it acts as a barrier to release, and (2) that the amount is not necessary to assure their appearance. Without this opportunity to be heard, there is a substantial risk that arrestees will be erroneously deprived of their pretrial liberty.

---

[7]     Although the protection of the community is also a relevant consideration when fixing bail, Defendants assert that they set bail solely with the goal of assuring an arrestee's return to court [Doc. 215, pg. 24].

In addition to notice and an opportunity to be heard, Plaintiffs assert bail hearings must also include a number of additional procedural safeguards, including disclosure of the evidence to be presented by the government, the right to confront and cross-examine adverse witnesses, and a neutral factfinder that makes findings on the record [Doc. 201-1, pgs. 23–24]. Plaintiffs also contend that bail hearings must be conducted within a reasonable time after arrest, must include application of a clear and convincing evidentiary standard, and require the presence of counsel [*Id.* at pg. 24]. "The formality and procedural requisites for [a] hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971). "[B]ail hearings, like probable cause and suppression hearings, are frequently hotly contested and require a court's careful consideration of a host of facts about the defendant and the crimes charged." *United States v. Abuhamra*, 389 F.3d 309, 323 (2d Cir. 2004). The majority of the procedures suggested by Plaintiffs are basic tenets of an adversarial hearing in our criminal justice system.

Indeed, the prevalence of these procedures underscores their efficacy in protecting the interests of all parties in a criminal proceeding. An arrestee who is on notice that he can contest his money bail, aware of the evidence that the State will present, and ready to put forth his own evidence for a lower bail amount is able to safeguard his pretrial liberty interest and hold the State to its burden, as is the case in all criminal proceedings. The rights to confront adverse witnesses and present evidence before a neutral factfinder creating a record of the proceedings are commensurate with an arrestee's ability to put forth his own case during a criminal proceeding and would allow an arrestee here to do the same during bail hearings. *See* U.S. Const. amend. VI. Plaintiffs' suggested practices will also help protect Defendants' interests in detaining properly only those arrestees whose specific circumstances warrant a pre-trial deprivation of liberty.

Additionally, the Court finds that a bail hearing is a "critical stage" of the criminal prosecution against an arrestee, requiring the presence of counsel. The Sixth Circuit has reasoned that whether a certain hearing is a critical stage "depends on whether there [is] a reasonable probability that [an arrestee's] case could suffer significant consequences from his total denial of counsel at [that] stage." *Van v. Jones*, 475 F.3d 292, 313 (6th Cir. 2007). Without the assistance of counsel at pretrial detention hearings, there is a reasonable probability that an arrestee's case can suffer significant consequences. Erroneous pretrial detention can negatively impact an arrestee's ability to meet with counsel, result in subjection to physical and psychological burdens that can obstruct trial preparation with counsel, and heighten the possibility that an arrestee will accept a plea agreement he would have otherwise rejected but for his erroneous pretrial detention.[8]

The Court does not find, however, that a heightened evidentiary standard is necessary to protect the parties' interests. Although federal courts employ a "clear and convincing" standard for pretrial detention hearings, Tennessee has chosen to use a "preponderance of the evidence" standard. *State v. Burgin*, 464 S.W.3d 298, 310 (Tenn. 2015). Plaintiffs do not cite any authority that requires a heightened evidentiary standard above a "preponderance of the evidence," and the Court cannot disturb a deliberate decision by Tennessee's legislature in the absence of controlling authority. *See id.*; Tenn. Code Ann. § 40-11-141(b); *see also Weatherspoon v. Oldham*, No. 17-CV-2535, 2018 WL 1053548, at *8 (W.D. Tenn. Feb. 26, 2018) (collecting state court cases that held a lower evidentiary standard than the clear and convincing standard did not offend due process rights). Accordingly, with the exception of Plaintiffs' request for a heightened evidentiary standard, Plaintiffs' motion for summary judgment is **GRANTED** in this respect.

---

[8]     Plaintiffs identify one instance after the entry of the Court's preliminary injunction where an arrestee agreed to plead guilty to an offense only because he wished to avoid pretrial detention, even though he still carried the presumption of innocence at that time [Doc. 202-33, pgs. 3-6; Doc. 216, ¶ 106].

**D.      Sixth Amendment**

Finally, Plaintiffs assert Defendants' practices violate the Sixth Amendment due to their failure to provide counsel at an individualized bail hearing within a reasonable amount of time after arrest [Doc. 201-1, pg. 28].  The Sixth Amendment of the Constitution, applicable to the State through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI; *Gideon v. Wainwright*, 372 U.S. 335, 339-45 (1963).  "The Sixth Amendment does not attach until a criminal prosecution is commenced, which in turn requires a formal charge, preliminary hearing, indictment, information, or arraignment."  *Gaetano v. United States*, 942 F.3d 727, 732 (6th Cir. 2019) (internal citations and quotations omitted).  The Supreme Court has explained that "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him *and his liberty is subject to restriction*, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel."  *Rothgery v. Gillespie Cnty, Tex.*, 554 U.S. 191, 213 (2008) (emphasis added).

Here, the parties do not dispute that an initial appearance where a judicial officer informs an arrestee of the charges against him and sets his money bail marks the start of a criminal prosecution that triggers the attachment of the arrestee's Sixth Amendment right to counsel.  [*See* Docs. 201-1, pgs. 28-29; 215, pgs. 32-34].  The dispute instead centers around the importance of that initial appearance and whether it constitutes a "critical stage" of the criminal process such that the Sixth Amendment requires the presence of counsel at that hearing—not just the appointment of counsel who will meet with an arrestee *after* money bail is set.

The Sixth Circuit has reasoned that whether a certain hearing is a critical stage "depends on whether there [is] a reasonable probability that [an arrestee's] case could suffer significant consequences from his total denial of counsel at [that] stage."  *Van v. Jones*, 475 F.3d 292, 313

21

(6th Cir. 2007). The Court finds that a bail hearing is a "critical stage" of the criminal prosecution against an arrestee, requiring the presence of counsel. *See Coleman v. Alabama*, 399 U.S. 1, 9 (1970) (reasoning that a preliminary hearing qualified as a critical stage because, among other things, the presence of "counsel can [] be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination *or bail*" (emphasis added)); *Higazy v. Templeton*, 505 F.3d 161, 172 (2d Cir. 2007) (holding that a "bail hearing is a critical stage of the State's criminal process at which the accused is as much entitled to such aid (of counsel) . . . as at the trial itself"); *Smith v. Lockhart*, 923 F.3d 1314, 1319 (8th Cir. 1991) (holding that omnibus pretrial hearings where a defendant contested his bail amount qualified as a "critical stage" for the Sixth Amendment right to counsel); *McKeldin v. State*, 516 S.W.2d 82, 85-86 (Tenn. 1974) (holding that a preliminary hearing in Tennessee criminal proceedings constituted a critical stage of the prosecution at which an arrestee possessed the right to have counsel present) *superseded by statute on other grounds*, Tenn. R. Crim. P. 12, *as recognized in State v. Sherman*, 266 S.W.3d 395, 402 (Tenn. 2008).

Without the assistance of counsel at pretrial detention hearings, an arrestee's case can suffer significant consequences because erroneous pretrial detention can negatively impact an arrestee's ability to meet with counsel, result in physical and psychological burdens that can obstruct trial preparation with counsel, and heighten the possibility that an arrestee will accept a plea agreement he would have otherwise rejected but for his erroneous pretrial detention.[9] And counsel's effective arguments at a bail hearing can persuade Defendants to lower their initial money bail determination or consider alternative conditions of release that are tailored to the

---

[9]    Plaintiffs identify one instance after the entry of the Court's preliminary injunction where an arrestee agreed to plead guilty to an offense only because he wished to avoid pretrial detention, even though he still carried the presumption of innocence at that time [Doc. 202-33, pgs. 3-6; Doc. 216, ¶ 106].

22

individual arrestee, furthering the goals the Court noted in its discussion of Plaintiffs' procedural due process claim.

To be clear, the Court does not find that all initial appearances are a "critical stage" of the criminal process. Only such hearings where a judicial officer will determine whether to detain an arrestee prior to trial constitute a "critical stage" for the reasons stated above. The Court is aware of no authority that requires Defendants to conduct their pretrial detention hearings concurrently with an initial appearance. But so long as Defendants conduct initial appearances in such a manner, those hearings will qualify as a "critical stage." Accordingly, Plaintiffs' Motion for Summary Judgment [Doc. 200] is **GRANTED** in this respect.

### E.    Permanent Injunctive Relief

Plaintiffs contend that they are entitled to permanent injunctive relief because they have suffered irreparable harm, their harm requires equitable relief, their harm outweighs any potential harm to Defendants, and a permanent injunction is in the public interest [Doc. 201-1, pgs. 29-31]. Importantly, Defendants do not argue that Plaintiffs have failed to carry their burden for permanent injunctive relief. However, the Court finds a request for permanent injunctive relief premature at the juncture. Because Plaintiffs' Fourteenth Amendment substantive due process and Sixth Amendment claims remain pending, final judgment is not appropriate at this time.[10] Accordingly, Plaintiffs' request for permanent injunctive relief is **DENIED WITHOUT PREJUDICE**.

### V.    CONCLUSION

Accordingly, for the reasons stated herein, Plaintiffs' Motion for Summary Judgment [Doc.

---

[10]    Despite the clear implication from the Court's analysis that these two claims fail as a matter of law, Defendants did not move for summary judgment on these claims. Although the Court may grant summary judgment in favor of a nonmovant or on grounds not raised by the parties, "notice and a reasonable time to respond" is required before doing so. Fed.R.Civ.P. 56(f). Moreover, the Sixth Circuit has made clear that "the granting of summary judgment *sua sponte* is 'a practice we discourage.'" *Emps. Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995) (quoting *Beaty v. United States*, 937 F.2d 288 (6th Cir. 1991)).

200] is **GRANTED IN PART AND DENIED IN PART** and Defendants' Motion for Partial Summary Judgment [Doc. 203] is **GRANTED**. Plaintiffs' wealth-based detention claim is **DISMISSED**.

       **SO ORDERED:**

s/ Clifton L. Corker
United States District Judge
