UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| MICHELLE TORRES, *et al.*, | )<br>) |
| Plaintiffs, | )<br>) 2:20-CV-00026-DCLC-CRW<br>) |
| v. | )<br>) |
| W. DOUGLAS COLLINS, *et al.*, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court to address Defendants' second Motion for Summary Judgment [Doc. 233]. On September 21, 2023, the Court ruled on Defendants' first motion for summary judgment [Doc. 229], and on October 19, 2023, the Court granted Defendants' request to file a second motion for summary judgment regarding pending claims and requests for declaratory and injunctive relief [Doc. 231, pg. 1]. These matters are ripe for resolution. For the reasons that follow, Defendant's Motion for Summary Judgment [Doc. 233] is **GRANTED IN PART AND DENIED IN PART.**

I. **THE PARTIES**

Plaintiffs are a class of all individuals arrested on warrants out of Hamblen County General Sessions Court (save for capital offenses) (1) who are, or will be, in the custody of the Hamblen County Sheriff, Chad Mullins; (2) whose bail amount was set in an *ex parte* fashion by the Defendants authorized by law to set bail for cases pending in Hamblen County General Sessions Court; (3) who have not waived and have not received an individualized bail hearing within a reasonable period of time; and (4) who remain in custody for any amount of time [Doc. 116, pg. 14].

Defendants are a group of Hamblen County officials who operate and work with Hamblen County General Sessions Court in setting bail for arrestees [Doc. 216, ¶¶ 1–2]. Specifically, Defendant the Honorable W. Douglas Collins ("Judge Collins") serves as Hamblen County General Sessions Judge, Defendant Teresa West serves as Hamblen County General Sessions and Circuit Court Clerk ("Clerk West"), Defendants Katie West Moore, Nancy Phillips, and Kathy Robertson serve as Judicial Commissioners of Hamblen County General Sessions Court (collectively, "Judicial Commissioners"), and Chad Mullins serves as Hamblen County Sheriff and is in charge of the Hamblen County Jail.

## II. BACKGROUND[1]

When an arrest warrant is issued in Hamblen County, Judge Collins, Clerk West, or one of the Judicial Commissioners (collectively, "bail-setters") set bail by writing the specific form of bail on the arrest warrant [Doc. 78-1, ¶¶ 2, 4; 216, ¶¶ 2,4]]. Although bail-setters can issue recognizance releases or set non-financial conditions of release, they impose secured financial conditions of release ("money bail") for the majority of arrestees in Hamblen County [Doc. 78-1, ¶¶ 5, 6; Doc. 216, ¶ 5]. Bail-setters conduct this initial bail determination *ex parte*, outside the presence of the arrestee and before defense counsel is appointed [Doc. 78-1, at ¶ 3].[2]

---

[1] Defendants' bail practices before the Court's November 30, 2020 preliminary injunction are controlling for purposes of summary judgment because those practices were the focus of the Complaint [Doc. 1]. Moreover, Defendants did not voluntarily change their bail practices and they maintain that their pre-injunction practices were constitutional, showing that those practices continue to animate the dispute between the parties. *See Walling v. Helmerich & Payne*, 323 U.S. 37, 43 (1944); *LaPeer Cnty. Med. Care Facility v. Mich.*, No. 1:91-CV-333, 1992 WL 220917, at *6 (W.D. Mich. Feb. 4, 1992).

[2] In a reply brief, Defendants assert that Court should adopt Defendants' statement of material facts filed with their second motion for summary judgment [Doc. 237, pg. 1-2], which includes primarily Defendants' post-injunction bail practices [*Id.* at pg. 2]. Plaintiffs argue that the operative facts set forth in Plaintiffs' Statement of Material Facts [Doc. 202]. For the reasons set out in footnote one, the Court agrees with Plaintiffs and will rely on undisputed facts set forth in this Court's previous opinion [Doc. 229, pgs. 2-6].

Bail-setters admittedly do not apply a particular burden of proof and do not follow any kind of schedule, rubric, or guidelines when determining the amount of money bail for a particular arrestee, and they do not know whether an arrestee will be able to pay [*Id*. at ¶¶ 7–9; Doc. 216, ¶¶ 9, 10]. They also do not make findings on the record regarding the amount of bail [Doc. 78-1, at ¶ 12; Doc. 216, ¶ 14]. Moreover, unless bail-setters are familiar with an arrestee because of prior run-ins with the Hamblen County General Sessions Court, bail is set solely based on the arrestee's charges and criminal history; bail-setters do not know the arrestee's employment status, financial condition, family ties and relationships, or ties to the community [Doc. 78-1, ¶¶ 10, 11; Doc. 216, ¶ 12].

There are four ways in which an arrestee can pay money bail: (1) personal surety; (2) real estate; (3) commercial surety; or (4) cash [Doc. 78-1, ¶ 14]. Although bonding companies are allowed by law to charge up to 10 percent of the bond amount, Judge Collins has been told that these companies sometimes accept a *de minimus* amount of the money bail that has been set [*Id*. at ¶¶ 15, 16]. Arrestees who can pay their bail are released, while those who cannot afford to pay remain in jail to await their initial appearance, which is held on the following Monday, Wednesday, or Friday, unless that day falls on a holiday [*Id*. at ¶¶ 18, 19; Doc. 216, ¶¶ 15-17].

Judge Collins or one of the Judicial Commissioners conducts the initial appearance via video conference between the jail and chambers [Doc. 78-1, ¶¶ 22, 23; Doc. 216, ¶ 19]. At the initial appearance, the presiding judicial official advises the arrestee of his or her charges, bail, and preliminary hearing date, which is usually set up to 14 business days after the initial appearance [Doc. 78-1, ¶ 45; Doc. 216, ¶ 25]. The arrestee also fills out an affidavit of indigency if requesting court-appointed counsel [Doc. 78-1, ¶ 28; Doc. 216, ¶ 25]. However, counsel is rarely present at the initial appearance [Doc. 78-1, ¶ 55; Doc. 216, ¶ 24]. Similar to the initial bail determination,

3

the presiding judicial official possesses limited information about an arrestee, such as the arrest warrant and information regarding their criminal history, and no findings are made on the record regarding the necessity of money bail [Doc. 78-1, ¶¶ 31, 33; Doc. 216, ¶¶ 26, 29-30]. Arrestees who cannot pay their money bail are detained until their preliminary hearing or until a motion for bond modification is granted and bail is modified or reduced to an amount they can afford [Doc. 78-1, ¶ 34].

Although Judge Collins will not consider requests for bond modification at an initial appearance for felony drug or theft charges, misdemeanor arrestees may informally request a modification of their bail, and Judge Collins sometimes uses the affidavit of indigency to adjust bond without being asked [*Id.* at ¶¶ 36, 37, 51; Doc. 216, ¶ 33]. The Judicial Commissioners, however, are not authorized to modify the initial bail amount and must forward the request to Judge Collins for review [Doc 78-1, ¶¶ 38, 39]. The request is typically forwarded immediately after the initial appearance, and Judge Collins evaluates it within a few minutes without an additional hearing and without findings on the record for his decision [*Id.* at ¶¶ 39, 40, 42; Doc. 216, ¶¶ 71, 73].

Public defenders or court-appointed counsel may file written motions to modify bail after they are notified of their appointment [Doc. 78-1, ¶ 58]. Similar to the process for informal requests, Judge Collins does not hold a hearing on written motions unless defense counsel requests that the Clerk put it on the docket [*Id.* at ¶ 59]. When considering written motions, Judge Collins does not make findings on the record and does not require the state to show why an individual should be detained on a particular bail amount [*Id.* at ¶ 61]. He also has refused to consider bail modification requests from counsel when the prosecutor does not agree with the request [*Id.* at ¶ 60]. Judge Collins' denial of a motion for bond modification is appealable to the Hamblen County

4

Criminal Court, which has jurisdiction to hear a bond motion before a preliminary hearing as a writ of certiorari or after a preliminary hearing and bind-over as a motion to reduce bond [Doc. 212, ¶ 44].

Each of the named Plaintiffs in this action were arrested and booked into Hamblen County Jail, had their bail initially set *ex parte*, did not receive an individualized determination regarding their conditions of release, and remained in custody because of their inability to afford the set bail amount until a third-party organization paid their bail [Doc. 78-1, ¶¶ 77–112; Doc. 216, ¶¶ 36-65]. Plaintiff Michelle Torres was arrested on felony drug charges, and Defendants set her bail at $75,000 [Doc. 78-1, ¶¶ 78–79]. Plaintiff Robbie Johnson-Loveday was arrested for driving under the influence, driving on a revoked license, and violation of implied consent and her bail was set at $6,000 with an additional requirement of an alcohol monitoring bracelet [*Id*. at ¶¶ 87–88]. Plaintiff Amanda Cameron was arrested on drug and theft charges and her bail was set at $32,000 [*Id*. at ¶¶ 94–95]. Plaintiff Bethany Edmond was arrested for drug possession and aggravated criminal littering and her bail was set at $1,500 [*Id*. at ¶¶ 107–108]. Plaintiffs Torres and Cameron informed Judge Collins during their initial appearance that they could not afford the money bail set in their case and requested a bond modification [Doc. 71-7, pgs. 8, 13]. Judge Collins refused to modify their conditions of release without providing reasons on the record for his decision [*Id*.]. Defendants admit that the proceedings for Plaintiffs Torres and Cameron "were typical of how Judge Collins conducts initial appearances." [Doc. 78-1, ¶ 36; Doc. 216, ¶ 66].

On February 16, 2020, Plaintiffs filed the instant action against Defendants seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 [Doc. 1]. Specifically, Plaintiffs sought a declaration that Defendants' bail practices violate their rights under the Fourteenth and Sixth Amendments [*Id*.]. Plaintiffs also sought preliminary and permanent injunctive relief against

5

the Sheriff [*Id.*]. On November 30, 2020, the Court entered a preliminary injunction enjoining the Sheriff "from detaining any criminal defendant arrested on an arrest warrant who, after having bail set in an *ex parte* fashion . . . , [was] being detained without having had an individualized hearing within a reasonable period of time . . ." [Doc. 90, pgs. 29–30].

Currently before the Court is Defendants' second motion for summary judgment [Doc. 233]. Defendants argue that there are no genuine disputes of material fact concerning the Fourteenth Amendment substantive due process claims or the Sixth Amendment right-to-counsel claims relating to initial appearances conducted separately from bail hearings alleged by named Plaintiffs [*Id.* at pg. 1]. Defendant also asserts that Plaintiffs are not entitled to declaratory and injunctive relief because they cannot show their injury is continuing and/or likely to happen again, nor can Plaintiffs show the other elements for a permanent injunction [Doc. 234, pg. 2].

Plaintiffs persist in their entitlement to declaratory and injunctive relief against Defendants on their procedural due process claims [Doc. 236, pg. 1]; however, Plaintiffs state that they are not asserting a Sixth Amendment right-to-counsel claim related to initial appearances conducted separately from bail hearings [*Id.* at pg. 14]. The motion is fully briefed and ripe for resolution.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The moving party bears the initial burden of demonstrating

that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001). The nonmoving party "may not rest upon mere allegations or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).

## IV. ANALYSIS

### A. Substantive Due Process

Defendants argue that they are entitled to summary judgment on Plaintiffs' substantive due process claim [Doc. 234, pg. 5]. They argue that for the same reasons the Court denied Petitioners' request for summary judgment as it relates to substantive due process, the Court should grant Defendants' motion for summary judgment on this issue [*Id.*, at pg. 6]. Plaintiffs argue the imposition of "unattainable financial conditions of release" operates as a *de facto* detention order with substantive due process requiring such a detention decision to be narrowly tailored to serve a compelling government interest [Doc. 236, pgs. 1-2]. Although the Court found at the preliminary injunction stage that Plaintiffs were likely to succeed on the merits of this claim, it is now clear that it fails as a matter of law. The Court agrees with Defendants on this issue and will rely on the analysis of this Court's previous opinion [Doc. 229, pgs. 13-15].

First, pretrial detention as a result of the unequivocal denial of bail is wholly distinct from pretrial detention due to the inability to pay bail. When bail is denied, an arrestee cannot attain pretrial release and, as a result, suffers a complete deprivation of liberty. In contrast, when an

7

arrestee is admitted to bail, their release is merely conditioned on the provision of adequate assurance that they will not flee before trial. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). While the former, if not appropriately related to a government interest, may amount to a substantive due process violation, the latter falls within the realm of the Eighth Amendment—the conditions placed on pretrial release must simply not be excessive.

This does not mean that the imposition of unattainable bail will never operate as a *de facto* detention order. It has been recognized that "because the Tennessee constitution guarantees a right to bail, the Tennessee courts appear to use unattainable bail amounts as a proxy for denying bail altogether." *Hill v. Hall*, No. 3:19-CV-00452, 2019 WL 4928915, at *19 (M.D. Tenn. Oct. 7, 2019). Here, however, the parties have stipulated that Defendant bail-setters generally do not know whether an arrestee will be able to pay the set amount and that it is not Judge Collins' intent that arrestees remain in jail when he sets money bail [Doc. 78-1, ¶¶ 9, 13]. Without knowledge that an arrestee would not be able to afford the set amount of bail, it cannot be said that Defendants imposed financial conditions of release with the goal of denying bail altogether.

Even if the record reflected such an intent to use unaffordable bail as a proxy to deny bail, the Court is hesitant to hold that substantive due process would be the proper method of analysis. The Court must "exercise the utmost care" when "asked to break new ground in [the] field" of substantive due process. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Through selective incorporation, the Supreme Court has "substituted" the guarantees of various Bill of Rights provisions "for the more generalized language contained in the earlier cases construing the Fourteenth Amendment[,]" *Albright v. Oliver*, 510 U.S. 266, 273 (1994), and "the specific guarantees" of those provisions "are preferred over the, at times, more vague protections of the Due Process Clause." *Mitchell v. Doherty*, 37 F.4th 1277, 1283 (7th Cir. 2022). Consequently,

8

"[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [the] claims.'" *Albright*, 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

The intent of the Eighth Amendment's proscription of excessive bail has been said to "prevent the practical denial of bail by fixing the amount so unreasonably high that it cannot be given." *United States v. Motlow*, 10 F.2d 657, 659 (7th Cir. 1926). Thus, "the Framers considered the matter" of using unaffordable bail as a proxy to deny bail "and drafted the [Eighth] Amendment to address it." *See Albright*, 510 U.S. at 274 (applying the same logic regarding the Fourth Amendment). Because the Eighth Amendment "provides an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. 386.

Plaintiffs argue that unattainable bail must survive heightened scrutiny because it operates as the functional equivalent of an order of detention and Defendants do not have a compelling reason to do so [Doc. 236, pgs. 12-13]. However, in effect, this would render the Eighth Amendment superfluous. Plaintiffs' argument is, in reality, an excessive bail claim in substantive due process clothing. Because Plaintiffs do not assert a claim under the Eighth Amendment, the Court, again, expresses no view as to whether such claim would succeed. The Court simply declines to sidestep the Eighth Amendment and analyze Plaintiffs' claim under "the more generalized notion of 'substantive due process.'" *Graham*, 490 U.S. at 395. Accordingly, Defendants' Second Motion for Summary Judgment is **GRANTED**, and Plaintiffs' substantive due process claim is **DISMISSED.**

9

### B. Sixth Amendment

Defendants argue they are entitled to summary judgment where initial appearances are held separately from bail hearings [Doc. 234, pg. 2]. However, Plaintiffs specifically assert that "Defendants violate the Sixth Amendment by conducting critical *pretrial release and detention proceedings* without providing counsel" [Doc. 1 ¶ 123] (emphasis added). This Court agreed and granted summary judgment upon finding that "hearings where a judicial officer will determine whether to detain an arrestee prior to trial constitute a 'critical stage'" implicating the right to counsel [Doc. 229 at pg. 23]. The Court found that so long as Defendants conduct initial appearances in such a manner, those hearings will qualify as a "critical stage" [*Id.*]. In their response to Defendants' second motion for summary judgment, Plaintiffs "do not claim that they are entitled to counsel at initial appearance proceedings that do not affect pretrial detention or conditions of release" [Doc. 236, pg. 15]. Accordingly, Defendants are not entitled to relief regarding this issue because it is **MOOT.**

### C. Permanent Injunctive Relief

Plaintiffs contend that they are entitled to permanent injunctive relief because they have suffered irreparable harm, their harm requires equitable relief, their harm outweighs any potential harm to Defendants, and a permanent injunction is in the public interest [Doc. 201-1, pgs. 29-31]. In their second motion for summary judgment, Defendants argue that Plaintiffs have failed to carry their burden for permanent injunctive relief [Doc. 234, pg. 13]. In support, Defendants rely on Judge Collins' declaration regarding modified courtroom practices [Doc. 215-3]]. Plaintiffs question the veracity of his "self-serving" declaration and argue that Defendants are relying on their compliance with this Court's preliminary injunction order [Doc. 236, pg. 3]. Plaintiffs

contend that even if Defendants have modified their practices, compliance with a preliminary injunction is not reason to deny permanent relief [Doc. 236, pg. 2].

Because Plaintiffs' Fourteenth Amendment substantive due process claim is resolved and there is no pending Sixth Amendment claim, final judgment is now appropriate. Accordingly, the Court will consider whether Plaintiffs have met their burden entitling them to injunctive relief. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *see Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (per curiam) (applying this standard in the abortion context). To obtain a permanent injunction, plaintiffs must "establish that" they have "suffered a constitutional violation and will suffer 'continuing irreparable injury' for which there is no adequate remedy at law." *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998)). It is not sufficient for plaintiffs to show a "possibility" of a constitutional violation or even a "likelihood" of one; to obtain permanent injunctive relief, the plaintiffs must make a clear showing that the challenged provisions "actual[ly]" violate their patients' constitutional rights. *See Winter*, 555 U.S. at 21, 32 (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). If they succeed in demonstrating an actual constitutional violation and continuing irreparable injury, the plaintiffs must also show "that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

Here, Plaintiffs have established an actual constitutional violation. This Court has previously determined that Defendants' bail practices violate Plaintiffs' procedural due process

rights under the Fourteenth Amendment and Sixth Amendment right to counsel. *See* [Doc. 229]. "When constitutional rights are threatened or impaired, irreparable injury is presumed. *Michigan State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 669 (6th Cir. 2016). And courts have found that unconstitutional detention cannot be remedied after the fact. *See e.g., United States v. Bogle*, 855 F.2d 707, 710-11 (11th Cir. 1988) ("[U]nnecessary deprivation of liberty clearly constitutes irreparable harm."); *Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) ("[L]oss of liberty ... is perhaps the best example of irreparable harm"); *Cole v. City of Memphis*, 108 F. Supp. 3d 593, 607 (W.D. Tenn. 2015) ("[B]ecause there is an ongoing risk of the deprivation of class members' fundamental rights, Plaintiffs have shown that legal remedies by themselves are inadequate to resolve the City's constitutional violations."). Finally, "the public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004). Accordingly, Plaintiffs' request for a permanent injunction regarding Defendants' bail practices is **GRANTED**.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Second Motion for Summary Judgment [Doc. 233] is **GRANTED IN PART AND DENIED IN PART**. It is further **ORDERED** that Defendants are **PERMANENTLY ENJOINED** from bail practices which violate Plaintiffs' procedural due process rights under the Fourteenth Amendment and their Sixth Amendment right to counsel consistent with this Court's previous memorandum opinion and order [Doc. 229]. A separate judgment shall enter.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge