UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

|  |  |  |
|---|---|---|
| MICHELLE TORRES, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **2:20-CV-26** |
| W. DOUGLAS COLLINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Plaintiffs have filed a Motion for Attorneys' Fees and Nontaxable Expenses and accompanying Memorandum [Docs. 250, 251] in this matter. Defendants filed a Response in Opposition [Doc. 257], to which Plaintiffs then filed a Reply [Doc. 260]. This matter has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Order of Referral [Doc. 253] and is now ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Attorneys' Fees and Nontaxable Expenses [Doc. 250] be **GRANTED in part and DENIED in part**.

### I.    BACKGROUND

On February 16, 2020, Plaintiffs Michelle Torres, Robbie Johnson-Loveday, Amanda Cameron, and Bethany Edmond filed a Complaint [Doc. 1] on behalf of themselves and those similarly situated, against W. Douglas Collins, in his official capacity as Hamblen County General Sessions Judge; Teresa West, in her official capacity as Hamblen County General Sessions and Circuit Court Clerk; Katie West Moore, Nancy Phillips, and Kathy Robertson, in their official capacities as Judicial

Commissioners of Hamblen County General Sessions Court; and Esco R. Jarnagin, in his official capacity as Hamblen County Sheriff (collectively, the "Defendants").

Throughout the course of this litigation, Plaintiffs were represented by Civil Rights Corps ("CRC") and the Institute for Constitutional Advocacy ("ICAP"), two non-profit organizations based in Washington, D.C. ("D.C."). According to the Complaint, CRC and ICAP "have experience in litigating complex civil rights matters in federal court" and possess the "resources, expertise, and experience to prosecute this action." [Doc. 1]. CRC and ICAP were made aware of potential constitutional deficiencies in Hamblen County's bail proceedings by Willie Santana, a former assistant public defender for the Third Judicial District of Tennessee. [Doc. 251-3]. Mr. Santana was initially connected with CRC by George T. "Buck" Lewis, a shareholder at the Baker Donelson law firm who has participated as local counsel in this matter, and Doug Blaze, who was the Dean of the University of Tennessee College of Law at the time the litigation was initiated. *Id*. CRC then introduced Mr. Santana to ICAP. *Id*.

Plaintiffs' counsel began conducting an initial investigation into the bail-setting practices in Hamblen County in July 2019. [Doc. 251, p. 10]. The investigation involved several trips by attorneys from CRC and ICAP to Hamblen County to observe courtroom proceedings, in addition to significant consultation with members of the Public Defender's Office in Tennessee's Third Judicial District. *Id*. Following the investigation, Plaintiffs filed a Complaint against Defendants alleging Fourteenth Amendment Equal Protection and Substantive and Procedural Due Process claims along with Sixth Amendment right to counsel claims. [Doc. 1]. Plaintiffs sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. More specifically, Plaintiffs sought a declaration that Defendants' bail practices violated their rights under the Fourteenth and Sixth Amendments when Plaintiffs were

subject to pretrial detention at the Hamblen County Jail pending payment of money bail. *Id*.[1] [Doc. 1]. According to Plaintiffs, Defendants' pretrial detention practices also resulted in inhumane overcrowding and unsanitary conditions at the Hamblen County Jail. Plaintiffs alleged that Defendants' pretrial detention practices were tantamount to stripping "people of their fundamental constitutional rights to pretrial liberty and to freedom from being jailed solely because of their poverty." *Id*. at 2.

Plaintiffs also filed a Motion for Preliminary Injunction, seeking injunctive relief as to each of their claims. [Doc. 5]. Thereafter, the District Court found that Plaintiffs were unlikely to succeed on their Equal Protection Clause claim. [Doc. 90, p. 11-15]. However, the District Court found that Plaintiffs were likely to succeed on the merits on their Substantive and Procedural Due Process claims, along with their Sixth Amendment right to counsel claims, and granted a preliminary injunction based upon those claims. *Id*. at 16-29. The preliminary injunction enjoined the Sheriff "from detaining any criminal defendant arrested on an arrest warrant who, after having bail set in an *ex parte* fashion…, [was] being detained without having had an individualized hearing within a reasonable period of time…" [Doc. 90, pgs. 29–30]. Concurrently with the Complaint and Motion for Preliminary Injunction, Plaintiffs filed a Motion to Certify Class [Doc. 2], which the District Court also granted [Doc. 116]. Following the resolution of Plaintiffs' motion for a preliminary injunction, the parties began the discovery phase of litigation.

This phase of the litigation entailed a significant discovery dispute, which required litigating a Motion to Quash Third Party Subpoenas [Doc. 119], and the subsequent appointment of a Special Master to conduct a review of voluminous communications which Plaintiffs contended were not

---

[1] A detailed description of the pre-trial detention process for Hamblen County that formed the basis of this action can be found in the District Court's Memorandum Opinion and Order on Plaintiffs' Motion for Summary Judgment [Doc. 229] and the District Court's Memorandum on Defendants' Second Motion for Summary Judgment [Doc. 241]. Because Defendants do not dispute that Plaintiffs are the prevailing party for purposes of the Motion for Attorney Fees, it is not necessary to reiterate the detention process here.

subject to disclosure. In the process of appointing the Special Master, Plaintiffs were unambiguously instructed to "provide the Court with an updated privilege log that includes **all, meaning without exception**, allegedly privileged communications between Plaintiffs' counsel and Willie Santana, Greg Eichelman, and/or the other members of the Office of the Hamblen County Public Defender regardless of the date of the communication" so they could then be provided to the Special Master for review. [Doc. 160] (emphasis contained in original Order).[2] On December 10, 2021, the Special Master filed his initial report [Doc. 174] which was followed by a supplement on December 15, 2021. [Doc. 178]. The supplement was necessary because Plaintiffs redacted certain communications in contravention of this court's order, which prohibited the Special Master from conducting the necessary review of them. [Doc. 174]. The supplement required Plaintiff to produce a portion of the redacted documents at issue because the Special Master found that they were not privileged. [Doc. 178, p. 4]. After briefing and oral argument, the undersigned entered an Order overruling Plaintiffs' objections to the Reports and accepting and adopting the Special Master's Report and Recommendation. [Doc. 187].

This court Ordered Plaintiffs and their counsel to be jointly liable for 60% of the fees for the initial report, and 100% of the fees for the supplement, and Defendants to bear the remaining 40% of the Special Master's fee generated in relation to his initial report.[3] [Doc. 222]. Plaintiffs objected to this Order, and following briefing from both parties, the District Court entered an Order [Doc. 227] vacating the allocation of the Special Master's fees for the report and supplement, finding that Plaintiff's counsel would not be jointly responsible for such portion of the Special Master's fees

---

[2] This court appointed Todd Presnell of the law firm Bradley Arant Boult Cummings LLP to serve as special master. [Doc. 160].

[3] The Special Master issued a bill for his work on the matter, which resulted in additional briefing between the parties to determine who was responsible for the cost. [Doc. 191]. While this court had initially determined that the "cost and expenses of the Special Master's law firm… shall be divided equally between the parties…," it reserved the right to "reallocate the costs and expenses of the Special Master." [Doc. 160]. The Special Master's bill, after being reduced, stands at $30,000.00. The Special Master maintained separate billing records for his initial report and the supplement. This court's order would have required that Plaintiffs and their counsel be responsible for approximately $19,600.00 of the $30,000.00 bill.

4

which may ultimately be allocated to Plaintiffs, and reserving ruling on the issue of allocation pending further briefing and oral argument by the parties.[4]

After five years of litigation, Plaintiffs prevailed on two of their four claims. The District Court denied Plaintiffs' wealth-based detention claim and Substantive Due Process claim but granted summary judgment as to their Procedural Due Process claim and Sixth Amendment claims. [Docs. 229, 241]. The District Court also granted Plaintiffs' request for declaratory relief, laying out procedural safeguards for arrestees, including representation by counsel at "any proceeding in which a judicial officer will determine whether to detain an arrestee prior to trial." [Doc. 247].

Plaintiffs' counsel has now filed a Motion for Attorneys' Fees and Nontaxable Expenses and accompanying Memorandum, in which they seek compensation for 1,682.5 hours of attorney and litigation assistant time. They seek compensation for the attorney hours at rates ranging from $450 per hour to $900 per hour, and for the litigation assistant hours at a rate at $250 per hour. [Docs. 250, 251]. Including the time spent in preparation of their Reply related to the instant motion, Plaintiffs are seeking total compensation of $1,111,130.07 in attorneys' fees and $7,121.13 in nontaxable expenses.[5] Defendants do not dispute that Plaintiffs are the "prevailing party" for purposes of being awarded attorney fees, however, they vigorously dispute that Plaintiffs are entitled to be compensated at the rates and for the total number of hours requested. [Doc. 257, p. 2]. Defendants specifically claim that it was unnecessary for Plaintiffs to retain out-of-state counsel and assert that a significant number of the hours for which Plaintiffs seek compensation should be disallowed.

---

[4] The determination of how the Special Master fees will be allocated between the parties is still pending the District Court's determination. [Docs. 227, 231].
[5] Plaintiffs' counsel assert that they spent 28 hours on the Reply, bringing the total hours for which they are seeking compensation to 1,710.5 hours. [Doc. 260].

5

## II.    ANALYSIS

### a.  Plaintiffs Entitlement to a Fee Award

Pursuant to 42 U.S.C. § 1988, in an action brought under 42 U.S.C. § 1983, a court has discretion to award "a reasonable attorney's fee" to a prevailing party. 42 U.S.C. § 1988(b). A party seeking to recover attorney fees under § 1988 must demonstrate only that they were successful in prosecuting "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Here, Plaintiffs prevailed on two of the four claims they asserted. [Doc. 257] (citing Doc. 229). While their wealth-based detention and substantive due process claims were disposed of via summary judgment, Plaintiffs prevailed on their Fourteenth Amendment Procedural Due Process claim and their Sixth Amendment right to counsel claim and were granted their requested declaratory relief. [Doc. 247]. Without question, the two claims on which Plaintiffs prevailed provided meaningful, permanent, and important relief from certain unlawful bail practices that Defendants had utilized. Further, Defendants do not dispute that Plaintiffs are the "prevailing party" for purposes of an award of attorney fees. [Doc. 257, p. 2].[6] Accordingly, the Court finds that Plaintiffs are prevailing parties pursuant to 42 U.S.C. § 1988, and the real question before the Court is not whether Plaintiffs are entitled to an award of attorney fees but, rather, what is the proper amount of the fee to be awarded. *See Hensley*, 461 U.S. at 433 (citation omitted); *see, e.g., Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir.1995).

### b.  Plaintiff's Fee Request

Once the prevailing party is determined, the next step is for the Court to determine whether the fee request is reasonable. *Vanderhoef v. Dixon*, No. 3:16-CV-508-TAV-DCP, 2020 WL 6864543 at *3 (E.D. Tenn. May 4, 2020) (citing *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir.

---

[6] However, Defendants point out that Plaintiffs prevailed on only two of their four claims and assert that Plaintiffs' failure to succeed on all claims should be considered when determining the total fees awarded. [Doc. 257] (citing Doc. 229).

6

1994)). Here, Plaintiffs have requested compensation for their attorneys at varying hourly rates, but all are in keeping with what they contend is the prevailing market rate for Washington, D.C. Their request for compensation is summarized in the chart below:

| CRC Attorneys and Staff | | | |
|---|---|---|---|
| | **Hours** | **Rate** | **Fee** |
| Alec Karakatsanis | 63.1 | $900 | $56,790.00 |
| Ryan Downer | 93.3 | $900 | $83,970.00 |
| Tara Mikkilineni | 557 | $800 | $445,600.00 |
| Imeime Umana | 62.3 | $450 | $28,035.00 |
| Ellora Israni | 309.8 | $450 | $139,410.00 |
| Coleman Powell | 127 | $250 | $31,750.00 |
| CRC TOTAL | 1212.5 | | $785,555.00 |
| ICAP Attorneys | | | |
| | **Hours** | **Rate** | **Fee** |
| Seth Wayne | 210 | $800 | $168,000.00 |
| Jonathan Backer | 260 | $550 | $143,000.00 |
| ICAP TOTAL | 459.3 | | $311,000.00 |
| **TOTAL REQUEST** | **1682.5** | | **$1,096,555.00** |

c. **Determining a Reasonable Fee for Plaintiffs' Counsel**

A reasonable attorney fee is calculated using the lodestar method, which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *The Northeast Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016) (citing *Hensley v.*

7

*Eckerhart*, 461 U.S. 424, 433 (1983)). A reasonable hourly rate is generally "the prevailing market rate, or the rate that lawyers of comparable skill and experience can reasonably expect to command in a court's jurisdiction or venue." *Herring v. SCI Tennessee Funeral Servs., LLC*, No. 2:15-CV-00280, 2018 WL 2406008, at *5 (E.D. Tenn. May 4, 2018), *report and recommendation adopted*, No. 2:15-CV-00280, 2018 WL 2407192 (E.D. Tenn. May 24, 2018) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). The fee applicant bears the burden of proving their fee is reasonable, documenting hours expended and demonstrating that appropriate billing judgment has been exercised. *Hensley*, 461 U.S. 436. In establishing a reasonable fee, the goal is to identify a rate "that is 'adequate to attract competent counsel, but ... [does] not produce windfalls to attorneys.'" *Hadix*, 65 F.3d at 534 (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). The following factors should be considered in determining the reasonableness of an hourly rate:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Vanderhoef v. Dixon*, 2020 WL 6864543 at *3 (citing *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005)). "There is a strong presumption that the amount of fees determined by the lodestar method is reasonable." *Id.* at *8 (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). "After determining the lodestar, a district court may enhance, or adjust, the fee when the lodestar 'does not adequately take into account a factor that may be properly considered in determining a reasonable fee.'" *S.B. by & through M.B. v. Lee*, No. 3:21-CV-00317-JRG-DCP, 2023 WL 6160615, at *9 (E.D. Tenn. Sept. 21, 2023) (citing *Lavin v. Husted*, 764 F.3d 646, 649 (6th Cir. 2014) and quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010))

8

(internal citations omitted). "[A] reduction in [the lodestar] is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005). Similarly, an enhancement of the lodestar may be appropriate in "rare and exceptional circumstances[,]" but Plaintiffs are not requesting an enhancement in this case. *S.B.*, 2023 WL 6160615, at *9 (citing *Perdue*, 559 U.S. at 552).

### d. Plaintiffs' Retention of Out-of-Town Specialists

As noted above, Plaintiffs contend that their counsel should be compensated as out-of-town specialists at the prevailing market rate in D.C., where their offices are located, rather than at the prevailing market rate in this district. Plaintiffs assert that the D.C. market rates should apply because competent counsel was not available to handle this matter within the Eastern District of Tennessee. As such, they contend that the case required "out-of-town specialists" with the necessary expertise to litigate the issues raised in this case. *Husted*, 831 F.3d at 719. Defendants do not dispute that the rates Plaintiffs seek for their counsel are the prevailing market rates for D.C. legal work but argue instead that Plaintiffs' counsel should be compensated at prevailing local market rates.

Where, as here, fees are sought for an out-of-town specialist, there is an additional analysis which must be performed. A fee-seeking party must make a specific showing that it was both reasonable **and** necessary to hire the out-of-town specialist before fees may be recovered at a rate higher than the prevailing local market rate. *Ne. Ohio Coal. for the Homeless*, 831 F.3d at 716 (citing *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)). As such, a court must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and if so, (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation. *Hadix*, 65 F.3d at 535. A corollary of this rule is that judges will generally find it unreasonable to approve an out-of-town attorney's higher hourly billing rate if there is reason

9

to believe that competent counsel was readily available locally at a lower charge or rate. *Id.* (citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir.1982)).

Although the Sixth Circuit has advised that out-of-town specialists should not be compensated at higher market rates where suitable local counsel was available and have specifically denied those higher rates as unreasonable and unnecessary when no investigation was undertaken as to the availability of local counsel, it has not weighed in on the breadth of the investigation that is required. *See Haddix,* 65 F.3d at 535. For example, Plaintiffs rely heavily on *Brian A. v. Hattaway,* 83 F. App'x 692, 695 (6th Cir. 2003), where the Sixth Circuit affirmed a Tennessee district court's finding that plaintiffs' counsel was entitled to be compensated at their out-of-town rates despite plaintiffs having made no effort to secure local counsel before retaining out-of-state specialists. In affirming the district court's determination, the Sixth Circuit placed significant emphasis on the discretion afforded to district courts in determining whether a specialist was necessary and appeared to signal that but for that significant discretion, the court might have come down differently on the issue. *Id.* (observing that "[w]hile an independent review of this record would lead to some disagreement among members of this panel as to whether it was reasonable to hire out-of-state lawyers at more than double the local rate," under the deferential standard to be applied the district court did not abuse its discretion in finding it reasonable for plaintiffs to retain out-of-town counsel.).

At the same time, subsequent rulings by district courts within the Sixth Circuit have varied significantly, and those in Tennessee have tended to require a more robust investigation before being willing to award higher than local market rates for out-of-town counsel. *See Ward v. Shelby County*, Case No. 2:20-cv-02407-JPM-cgc, 2023 WL 6050229, at *3 (W.D. Tenn. Sept. 15, 2023) (finding that hiring out-of-town counsel was both reasonable and necessary where the plaintiff's sister, who is an attorney in Memphis, heavily canvassed the Memphis legal market but was unable to identify qualified local counsel); *Gathering Spot, LLC v. Gathering Spot at Burlington Village, LLC*, No. 3:22-

CV-7-TRM-JEM, 2023 WL 3612399, at *5 (E.D. Tenn. May 1, 2023) (finding no basis to invoke the exception to the community market rule where the plaintiff failed to demonstrate or otherwise persuade the court that counsel with the requisite expertise was unavailable in the market); *Grier v. Goetz*, Case No. 3:79-3107, 2009 WL 10729589 at *2 (M.D. Tenn. August 13, 2009) (approving higher than local rates for out-of-town counsel because the plaintiffs' submissions to the court demonstrated that the plaintiffs had investigated the availability of competent counsel prior to resorting to out-of-town counsel, but were rebuffed by multiple local attorneys due to conflicts of interest or fear of alienating their health law clients and negatively impacting their practices); *Deal ex rel Deal v. Hamilton County Dept. of Educ.*, No. 1:01-cv-295, 2006 WL 2854463, at *12 (E.D. Tenn. 2006) (rejecting an award of above-market rates after finding that while the plaintiffs had consulted with three local attorneys who declined to represent them, they sought an unnecessarily narrow subgroup of attorneys and, in doing so, failed to meet their burden of demonstrating that qualified local counsel was unavailable).

While Plaintiffs do not contend that they met with local attorneys before retaining their out-of-town specialists, they assert that they did investigate the local legal market through the efforts of Willie Santana, a public defender involved in the case. Mr. Santana reached out to local attorney Buck Lewis and former University of Tennessee College of Law Dean Doug Blaze, who then connected him with CRC. In turn, CRC connected Mr. Santana with ICAP.[7] Plaintiffs provide declarations from Mr. Santana and Dean Blaze. Of note, Dean Blaze is not only Dean Emeritus of the University of Tennessee College of Law but is also the former chair of the Tennessee Supreme Court Access to Justice Commission, providing him with additional relevant information about the local legal market for civil rights counsel. [Doc. 251-4, p. 2]. Both Mr. Santana and Dean Blaze attest

---

[7] While both Mr. Lewis and Dean Blaze are accomplished attorneys and are generally familiar with the bar in the Eastern District of Tennessee, neither regularly litigate civil rights matters in this district.

that there are "no local firms or attorneys based in the Eastern District of Tennessee that advocate for systemic reform of the criminal legal system through civil litigation." [Docs. 251-3, 251-4].

At the same time, the Court observes that Plaintiffs do not provide affidavits from attorneys who regularly handle civil rights claims within the Eastern District of Tennessee, nor do they suggest that they attempted to meet with local attorneys who regularly handle civil rights claims to determine whether any possessed the necessary qualifications and willingness to take on the case. Instead, Plaintiffs appear to have skipped over the step of attempting to find competent local counsel and jumped straight to trying to find counsel they believed to have the best national reputation for handling the types of claims they sought to litigate.[8] "Section 1988 does not guarantee civil rights plaintiffs the best counsel in the country; it guarantees them competent counsel. Proof that [counsel] has a national reputation for expertise in this kind of litigation does not constitute proof that [their] expertise was necessary." *Hadix*, 65 F.3d at 535.

In supporting their request for out-of-town counsel rates, Plaintiffs also try to distinguish cases decided by the Sixth Circuit where higher fees were denied. They contend that *Hadix* and *Husted*, two seminal Sixth Circuit cases where retention of out-of-town specialists was found to be unreasonable, are inapplicable. *Hadix*, 65 F.3d at 535; *Husted*, 831 F.3d at 719. Plaintiffs assert that *Hadix* is different because it did not involve "complex institutional litigation, where the time commitment and uncertainty of payment often discourage economically rational private attorneys from becoming involved," nor did it involve a novel civil rights issue with an "ephemeral promise" of a fee award. 65 F.3d at 535. Plaintiffs assert that *Husted* is distinguishable because there the

---

[8] In their Reply, Plaintiffs cite to *Landino v. McLaren Health Care Corp.*, No. 21-cv-11431, 2023 WL 3634266, at *2 (E.D. Mich. May 24, 2023), in support of their contention that courts within the Sixth Circuit have found that awarding out-of-town counsel a higher than local market rate is appropriate based solely on counsel's expertise. That case is readily distinguishable from the one at hand because the court found that the rate sought by out-of-town counsel was consistent with the high-end rates in the state. *Id.* Here, counsel is seeking more than double what the court finds below to be the prevailing local market rate.

plaintiffs had not argued that local counsel with the necessary expertise was unavailable but instead asserted that the California attorneys retained had "a national reputation for expertise in election law litigation." *Husted,* 831 F.3d at 719. Essentially, Plaintiffs assert that the affidavits provided by Mr. Santana and Dean Blaze cure the defect identified in the plaintiffs' filings in *Husted*. Boiled down, Plaintiffs assert that their legal team included "no local attorneys with expertise in bringing constitutional challenges to pretrial detention practices or other aspects of the criminal legal system [because] *no attorneys with such expertise are based in the Eastern District of Tennessee.*" [Doc. 251, p. 17] (emphasis added).

In response to Plaintiffs' arguments, Defendants primarily contend that the hourly rates requested by their counsel are unreasonable because it was unnecessary to obtain out-of-town specialists at a higher than prevailing local market rate, although they also take issue with counsel being compensated for certain services, which will be addressed below. In considering Defendants' arguments, the Court starts with the proposition that typically, the reasonable hourly rate used by the Court is the prevailing market rate in the community or venue in which the dispute is litigated. *Blum,* 465 U.S. at 895. At the same time, "[w]here local counsel with requisite skills are not available, then fee awards may be awarded based on the fees for the location where suitable counsel may be found." *Deal ex rel Deal v. Hamilton Cnty. Dept. of Educ.*, No. 1:01–cv–295. 2006 WL 2854463, at *12 (E.D. Tenn. Aug. 1, 2006) (*citing Sun Pub. Co., Inc. v. Mecklenburg News, Inc*., 594 F. Supp. 1512, 1518 (E.D. Va. 1984)).

While Plaintiffs argue vehemently that the rates they request are reasonable because local counsel with the necessary expertise was unavailable, Defendants assert that local attorneys were readily available and note that Plaintiffs' counsel are requesting more than double the prevailing market rate for attorneys practicing in this district. [Doc. 257, p. 5-10]. Defendants have provided affidavits from five (5) local attorneys "who have decades of experience litigating complex

13

constitutional claims in this jurisdiction and who state that they or other attorneys based in this jurisdiction could have competently litigated the claims brought in this lawsuit had Plaintiffs approached them about the same, and at much lower rates." [Doc. 257, p.7]. Richard E. Collins, a graduate of the University of Memphis School of Law who has practiced law for twenty years, provided one of those affidavits. [Doc. 257-1, p. 2]. Since 2012, his practice has been based in Knoxville, Tennessee and has encompassed numerous federal civil rights cases, including at least one involving pretrial detention. *Id*. at 3. Mr. Collins attested that due to the poverty in this region, as well as the ongoing impacts of the opioid epidemic, "pretrial detention cases are probably the most routine of all civil rights cases filed in this district, and there are plenty of local attorneys competently handling those cases for plaintiffs." *Id*. at 4. Lance Baker, another of the attorneys providing an affidavit, stated that he is a graduate of Lincoln Memorial Law School who has been practicing for eleven years, primarily in the areas of criminal defense and complex civil rights litigation. [Doc. 257-2, p. 2]. He contends that within the Eastern District of Tennessee "there are a number of experienced law firms and lawyers that are fully capable of competently bringing and successfully litigating civil rights lawsuits, including those involving pretrial detention practices…." *Id.* Attorney Arthur F. Knight, III provided a similar affidavit. [Doc. 257-3, p. 2].

Although Mr. Santana sought advice from well-respected members of the legal community who possess significant knowledge about the local civil rights bar based upon their professional experience in the access to justice community, which was an excellent starting point, that act alone was insufficient to demonstrate that there were no local attorneys available who possessed the necessary qualifications and willingness to take on the instant litigation. Certainly, Plaintiffs' counsel check many of the boxes necessary to demonstrate that the unique and specialized skills they possessed when hired were necessary and greatly benefitted this litigation. However, without proof that Plaintiffs first investigated the local market by seeking the services of civil rights practitioners

in the district before hiring CRC and ICAP, especially given the affidavits provided by Defendants asserting that competent counsel was available, the Court cannot find that Plaintiffs have met their burden of proof to show that it was necessary to retain out-of-town specialists.

### e.  Establishing the Specific Hourly Rates for Plaintiffs' Counsel

Having determined that Plaintiffs have failed to demonstrate that it was necessary for them to retain out-of-town specialists, the Court now turns to the task of determining the local market rates at which Plaintiffs' counsel should be compensated. Plaintiffs wisely acknowledged in their briefing that the court might determine it was not appropriate to utilize D.C. market rates in calculating the fees to be awarded to their counsel, and in doing so, made an alternate fee request. [Doc. 251]. Defendants argue that even the alternate hourly rates requested exceed the prevailing market rate. [Doc. 257, p. 15]. The chart below sets out the alternate hourly rates requested by Plaintiffs for all members of their legal team as well as the hourly rates that Defendants contend constitute the prevailing market rate.

| Litigation Team Member | Plaintiffs' Alternate Hourly Rate | Defendant's Proposed Hourly Rate |
|---|---|---|
| Alec Karakatsanis | $400 | $350 |
| Ryan Downer | $400 | $350 |
| Tara Mikkilineni | $400 | $350 |
| Imeime Umana | $350 | $150-$250 |
| Ellora Israni | $350 | $150-$250 |
| Coleman Powell | $125 | $61-$100 |
| Seth Wayne | $400 | $350 |
| Jonathan Backer | $350 | $150-$250 |

As support for these rates, Plaintiffs have attached the declaration of Jonathan D. Cooper, the Knoxville Bar Association ("KBA") President, who asserts that $400 per hour is the market rate for civil rights practice in federal court in the Eastern District of Tennessee, noting that the rate has been previously approved as reasonable in the district. [Doc. 251-7]. Because Mr. Cooper is a criminal defense practitioner, this opinion is based on a poll of "trusted colleagues who practice civil rights law before the U.S. District Court for the Eastern District of Tennessee." *Id.* While as KBA President Mr. Cooper would have ready access to colleagues practicing in this area to obtain their opinions, his affidavit is still somewhat lacking because he does not say how many colleagues he spoke with, nor does he provide information about how long those colleagues have been engaging in federal civil rights practice.

In asserting that even the "backup rates" requested by Plaintiffs exceed prevailing local market rates, Defendants have provided affidavits from several local practitioners. [Doc. 257, p. 10-16]. Arthur F. Knight, III, opines in his affidavit that the hourly rates for experienced civil rights counsel would be $325, for associates it would be $225, and for certified paralegals it would be $75. [Doc. 257-3, p. 3-4]. Gary M. Price, who has over 43 years of experience with handling civil rights matters, asserts in his affidavit that $250-$350 would be a reasonable hourly rate range for competent civil rights attorneys practicing in this district, and $75 per hour would be reasonable for paralegals. [Doc. 257-4, p. 2-3]. In his affidavit Dan Pilkington, who has practiced civil rights litigation in this district for approximately twenty years, says that an hourly rate for civil rights counsel of $250-$400 would be appropriate for those with experience of fifteen or more years, $250-$350 for those with seven or more, an unspecified lesser rate for those with less than seven years, and $75 per hour for paralegal services. [Doc. 257-5, p. 1, 3-5].

Defendants also rely on the 2023 KBA's Economics and Law Practice Management Survey in support of their proposed market rates. [Doc. 257-6]. This survey reflects that only 3% of the

Knoxville market bills at more than $350 per hour, but as noted by Defendants that 3% is comprised of one attorney. [Doc. 257-6, p. 2]. In other words, only about 34 attorneys responded to the survey. Because there are more than 1,900 members of the KBA, albeit some are judges and law students, this extremely limited participation in the survey renders it statistically insignificant. [Doc. 251-7, p. 1].

In addition to the information that the parties have supplied addressing the prevailing local market rate, the Court may rely on "awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Knox County, Tennessee v. M.Q*, 3:20-CV-00173-DCLC-JEM, 2022 WL 946285, at *2 (E.D. Tenn. March 29, 2022) (citing *Van Horn v. Nationwide Prop. & Cas. Ins. Co*., 436 F. App'x 496, 499 (6th Cir. 2011)). The Court will also consider the 12 factors set forth above which the Sixth Circuit has identified to assist in determining the reasonableness of an hourly rate. *See Vanderhoef v. Dixon*, 2020 WL 6864543 at *3.

Before undertaking these tasks, a brief summary of the education and experience possessed by the various members of Plaintiffs' legal team at the time they were retained is necessary. Alec Karakatsantis served as one of Plaintiffs' two lead attorneys and is a 2008 graduate of Harvard Law School. [Doc. 251-1, p. 2]. When retained, he had approximately 12 years of relevant legal experience. *Id.* He is the founder and executive director of CRC, as well as co-founder of Equal Justice Under Law, which was founded with a grant from Harvard Law School. *Id.* Mr. Karakatsantis also previously served as an attorney in the special litigation division of the public defender service for the District of Columbia where he litigated constitutional civil rights claims. *Id.* at p. 4. Prior to being retained by Plaintiffs, Mr. Karakatsanis had brought multiple class action cases addressing the issue of pretrial detention across the United States. *Id.* at p. 2.

Ryan Downer served as Plaintiffs' co-managing attorney, had 11 years of relevant experience, is a graduate of New York University Law School ("NYU Law"), and had litigated "dozens of class

17

action lawsuits and other complex litigation challenging inequality in the criminal legal system."
[Doc. 251-1, p. 4]. Seth Wayne had nine years of relevant experience, is a graduate of Yale Law
School, has worked for the Civil Rights Division of the United States Department of Justice, and had
spent most of his time working on "cases like this one" since joining CRC. [Doc. 251-2, p. 2]. Tara
Mikkilineni had 12 years of relevant experience, graduated from NYU Law, and had experience
working as enforcement counsel at the Consumer Financial Protection Bureau and as counsel in
habeas corpus matters. [Doc. 251-1, p. 4]. She had worked on similar cases challenging pretrial
detention and bail practices. *Id.* at p. 5. Jonathan Backer had five years of relevant legal experience,
graduated from the University of Michigan Law School, and had worked on numerous complex civil
rights cases with ICAP. [Doc. 251-2, p. 3]. Ellora Israni had one year of relevant legal experience,
graduated from Harvard Law School, and had litigated civil rights cases, including constitutional
claims under § 1983 and class actions. [Doc. 251-1, p. 6]. ImeIme Umana had two years of relevant
legal experience, is also a graduate of Harvard Law School, and had civil rights litigation experience.
*Id.* Finally, Coleman Powell served as a litigation support staff member, was an "Investigative
Fellow" at CRC during the pendency of this litigation and was a student at New York University
School of Law.[9] [Doc. 251, p. 22; Doc. 251-1, p. 7].

Through affidavits and citations to the KBA's survey, Defendants have made a valiant effort
to establish a prevailing market rate in this venue that is significantly lower than even the backup
rate requested by Plaintiffs. At the same time, in addition to Mr. Cooper's affidavit, Plaintiffs point
to several cases where courts in this district have awarded fees in keeping with their backup fee rate
request. *See L.H. v. Hamilton Cnty. Dep't of Educ.*, 356 F. Supp. 3d 713, 724 (E.D. Ten. 2019) (using
a $400 per hour rate to calculate an attorney's lodestar); *Benton v. BlueCross BlueShield of Tenn.,*

---

[9] In Plaintiffs' Reply, responding to Defendants' arguments that work done by Mr. Powell was non-compensable clerical
work, Plaintiffs modified the number of hours for which they sought compensation for Mr. Powell's services, but not the
hourly rate they were requesting.

*Inc.,* No. 1:22-cv-118, 2025 WL 366632, at *10 (E.D. Tenn. Jan. 31, 2025) (approving an hourly rate of $450 for an attorney and $125 per hour for a paralegal); *S.B. ex rel. M.B. v. Lee*, No. 3:21-cv-317, 2023 WL 6160615, at *12 (E.D. Tenn. Sept. 21, 2023) (approving hourly rates of $500 and $400 for counsel as in keeping with the prevailing market rate); *Knox County v. M.Q.*, No. 3:20-cv-173, 2022 WL 946285, at *3 (E.D. Tenn. Mar. 29, 2022) (approving a $425 per hour rate as a local market rate); *D.S. ex rel. R.S. v. Knox County*, No. 3:20-cv-240, 2022 WL 885851, at *10 (E.D. Tenn. Mar. 25, 2022) (finding a $425 per hour rate in keeping with prevailing market rates in the district). While as Defendants rightly note, the examples provided by Plaintiff may not be on all fours with this case because they are not based in § 1983 litigation, those cases were nevertheless litigated by attorneys specializing in complex civil rights practice in federal court and are sufficiently analogous to provide the court with guidance.

The court also finds that the twelve factors to be considered as part of determining the prevailing market rate strongly favor an award to Plaintiffs' counsel on the higher end of the prevailing market rate. The case presented at least one novel legal issue which was very time-sensitive in nature. Counsel obtained an extraordinary legal result, first by obtaining a preliminary injunction, and ultimately a permanent one, after five years of time-intensive litigation. All members of Plaintiffs' legal team were well-credentialed and most had significant relevant legal experience. Counsel's skill and ability are borne out by the results they obtained on behalf of their clients. The cases cited above also reflect that the fee award requested by Plaintiffs appears to be in keeping with similar cases. Additionally, Plaintiffs retained their counsel on a purely contingent basis and counsel advanced significant costs on Plaintiffs' behalf. Courts have taken note that it is particularly important to consider whether the hourly rate established fairly captures the risk Plaintiffs' counsel incurred in taking on a case, i.e., that they would expend countless hours and significant financial resources and might never receive compensation. *See Ibarra v. Barrett*, No. 3:05–0971, 2008 WL

19

2414800, at \*2 n. 4 (M.D. Tenn. June 12, 2008) (noting that plaintiff's attorneys in civil rights cases may charge a higher rate than defense attorneys practicing in the same field because defense attorneys are guaranteed payment where plaintiff's counsel might never be paid).

Turning now the hourly rate which should be utilized for specific members of Plaintiffs' legal team, the court will begin with Attorneys Karakatsanis, Downer, Wayne, and Mikkilineni. These seasoned members of Plaintiffs' legal team have fairly demonstrated that in addition to being highly educated and credentialed, they possessed specialized knowledge and experience, and the degree of skill required to litigate this difficult case to a fruitful conclusion. In considering the $400 per hour "backup rate" requested by these attorneys, the court notes that over six years ago, a court in this district awarded a local attorney an hourly rate of $400 in a single-plaintiff IDEA case, where counsel had specialized knowledge in the field, was addressing a novel issue, and represented the plaintiff on a purely contingent fee basis. *See L.H. v. Hamilton Cnty. Dep't of Educ.,* 356 F.Supp.3d 713, 721 (E.D. Tenn. 2019). That hourly rate was awarded despite Defendant's counsel in the action, who had twenty-four years of experience, submitting an affidavit in which he advised that his customary hourly rate was $170 per hour and his highest hourly rate was $195. *Id.* In finding that the $400 per hour rate sought was reasonable, the court distinguished defense counsel's rate by noting that defense counsel can depend upon receiving payment on an hourly rate basis where plaintiff's counsel took a serious risk in representing the plaintiff by advancing a large sum for costs and having no guarantee that he would ever be reimbursed for those costs or receive payment for his services. *Id.* (citing *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 438 (6th Cir. 1999) and noting that the reasonable hourly rated may be adjusted upward to account for the risk undertaken by counsel where a case is handled on a contingency fee basis). More recently, another court in this district found a $400 hourly rate appropriate for the same attorney where he again represented a single plaintiff in an IDEA case under a contingency fee contract, even where there was no novel issue of law involved. *See Knox*

20

*Cnty., Tennessee v. M.Q.,* No. 3:20-CV-00173, 2022 WL 946285, * 2 (E.D. Tenn. March 29, 2022). In another case decided four years ago in this division of the district, *S.B. by and through M.B. v. Lee,* the district court found that the prevailing local market rates for the two lead Tennessee attorneys handling the case were $500 and $400 per hour respectively. No. 3:21-CV-00317*, 2023 WL 6160615, at *12 (E.D. Tenn. 2021). In light of the guidance provided by these recent decisions, the court finds that the prevailing local market rate for Attorneys Karakatsanis, Downer, Wayne, and Mikkilineni is $400 per hour, and will recommend that they receive compensation for their reasonable hours worked at that rate.[10]

At the same time, the court finds that given the significantly more limited experience of Attorneys Backer, Umana and Israni, it is appropriate for them to be compensated at the rate of $250 per hour. Although Defendants suggest that $250 per hour is the high end of market rates for lawyers with the limited years of experience possessed by Attorneys Backer, Umana and Israni, in the court's own experience the $250 per hour rate is consistent with the base per hour prevailing market rate for most legal matters in this district, regardless of years of experience.

As to Mr. Powell, the court observes that although he was not yet a practicing lawyer, his legal training to that point equipped him with litigation skills which likely exceeded that of a paralegal. Recent decisions by courts in this district have found a rate of $125 per hour for paralegal work to be in keeping with the prevailing local market rate. *See Benton*, 2025 WL 366632 at *10; *AGCS Marine Ins., Co. v. AT Trucking Corp.,* 2023 WL 9290680 at * 6 (E.D. Tenn. Dec. 20, 2023); *Jordan v. Reliance Standard Life Ins. Co.,* 2023WL 2945315, at * 10 (E.D. Tenn. March 11, 2023).

---

[10] The court acknowledges that this case has spanned a total of five years and rates would be expected to have changed over that period. However, given that courts in this district awarded a $400 per hour rate in a similar case over six years ago and again three years ago, the court finds the $400 per hour rate to be appropriate for the full five-year period over which counsel represented Plaintiffs in this action. *See Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617-18 (6th Cir. 2007); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (finding that a court has the discretion to use current market rates for the full course of litigation to account for the delay in payment to a prevailing plaintiff's counsel).

21

As such, this court finds that Plaintiffs' "backup rate" request of $125 per hour for Mr. Powell's services is what should be utilized.

### f. Number of Compensable Hours

Having determined a reasonable hourly rate for each member of Plaintiffs' legal team, the court now must determine whether the hours for which Plaintiffs' counsel have requested compensation are reasonable. Hours which are "excessive, redundant, or otherwise unnecessary" are not reasonably expended. *Hensley*, 461 U.S. at 430. In determining reasonable hours expended, "[t]here is no precise rule or formula[.]" *Hensley*, 461 U.S. at 436. The most critical factor here is the "degree of success obtained." *Id*. Although, as Defendants noted, Plaintiffs were only successful on half of their claims, the Court has already found that success to have provided meaningful, permanent, and important relief from certain unlawful bail practices being employed by Defendants. Further, the claims upon which Plaintiffs were successful shared a common core of facts with those upon which they were unsuccessful. As such, the court's focus should be on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. Viewing the case through this lens, Plaintiffs achieved a high degree of success.

Additionally, attorneys seeking fees have an obligation to maintain billing records which permit the courts to meaningfully review the reasonableness of the hours expended on the case. *Imwalle v. Reliance Med. Prods., Inc*., 515 F.3d 531, 552 (6th Cir. 2008). However, courts need not achieve auditing perfection and may "take into account their overall sense of the suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Plaintiffs argue that the 1700.5 hours[11] are reasonable given the litigation's duration, scope, complexity, and the extraordinary result. [Doc. 251, p. 7]. Additionally, Plaintiffs note that they have

---

[11] This includes the 28 hours spent preparing Plaintiffs' Reply brief addressing the issue of fees. [Doc. 260, p. 18]

already exercised significant billing discretion. *Id*. at p. 14-15. They are not seeking fees for certain individuals who worked on the case, including ICAP Executive Director Mary McCord, attorney Elizabeth Cruikshank, former attorney Robert Friedman, or local counsel Buck Lewis. *Id*. at 14. Further, they do not seek fees for attorneys or litigation support staff for CRC who worked less than 60 hours total on the case. *Id*. at 15. Plaintiffs state they reduced their hours by 16.7%, i.e., by approximately 337 hours, before submitting their request for fees, and only seek fees for one attorney per deposition, even where more than one was present.

Defendants assert that Plaintiffs should not be compensated for numerous time entries. More specifically, Defendants argue that Mr. Wayne should not be compensated for any of his time that he failed to contemporaneously log, or that was improperly block-billed or reflects secretarial duties, even though it was contemporaneously logged. [Doc. 257, p. 17-19]. Defendants further object to Plaintiffs being compensated for time spent preparing privilege logs and responding to the Special Master appointed in this case which they contend could have been avoided if Plaintiffs had complied with their discovery obligations. *Id.* at p. 21. Defendants also challenge the reasonableness of the hours contained in the fee petition on the grounds that there was significant duplication of effort given that Plaintiffs hired not one, but two, non-profit entities to work on the case. *Id.* at 19.

As an initial matter, the Court cannot find that having seven attorneys participate in this five-year-long complex litigation, is unreasonable, especially given the results achieved, *Ne. Ohio Coal. for the Homeless*, 831 F.3d at 704 (holding that "[m]ultiple-lawyer litigation is common and not inherently unreasonable."). Further, the Court notes that the defense team in this case was made up of five lawyers, only two less than Plaintiffs' team.

The court next turns to Defendants' argument that Mr. Wayne should not be compensated for time he did not contemporaneously log from October 11, 2019, to March 23, 2020. Of the 210 hours for which Mr. Wayne seeks compensation, only 60.5 hours were billed during this timeframe. [Doc.

23

251-2]. Mr. Wayne states that he reconstructed these hours using calendar entries and email, and that his estimate for time during this period was "highly conservative." In an analogous case, the district court found that there was "no reason to doubt" entries which were retroactively constructed at the conclusion of the litigation. *Herring, v. SCI Tennessee Funeral Services, LLC*, No. 2:15-cv-280, 2018 WL 2406008 (E.D. Tenn. May 4, 2018) *report and recommendation adopted*, No. 2:15-CV-00280, 2018 WL 2407192 (E.D. Tenn. May 24, 2018). The Court finds the same to be true here, especially given that the 60.5 hours requested cover a span of only five months.

Defendants also contest billing entries by both attorneys and litigation support staff that they argue reflect time spent on secretarial duties and block billing, taking issue with 42.3 hours they claim fall into these categories. [Doc. 257-7]. Defendants ask that these hours either be stricken altogether or that a 15% "across-the-board" reduction be applied. [Doc. 257, p. 19]. In Plaintiffs' reply to Defendants' response to their fee request, Plaintiffs agreed that it was appropriate to subtract 12.7 hours from those requested for Coleman Powell, a litigation support specialist, to account for tasks he performed that might be considered secretarial in nature but continued to assert that the other hours he billed are compensable. [Doc. 260, p. 9-10]. "Clerical work involves tasks that do not require legal knowledge, such as filing motions, preparing or reviewing summons, and receiving and filing correspondence." *Schlosser v. VRHabilis, LLC*, No. 3:20-CV-190-TRM-JEM, 2024 WL 1600671, at *5 (E.D. Tenn. Feb. 1, 2024) *report and recommendation adopted*, No. 3:20-CV-190, 2024 WL 1071871 (E.D. Tenn. Mar. 12, 2024) (citing *Lay v. Astrue*, No. 10–346–DLB, 2012 WL 5988822, at *5 (E.D. Ky. Nov. 29, 2012)). However, reasonable attorney fees may be sought to compensate non-attorneys for work that does involve legal skill or knowledge. *See id.* at *5-6 (explaining that while clerical work is not recoverable via a motion for attorney fees, reasonable attorney fees "should compensate the work of paralegals and law clerks, in addition to the work of attorneys.") (citing *Villegas v. Metro. Gov't of Davidson Cnty./Nashville-Davidson Cnty. Sheriff's*

24

*Off.*, No. 3:09-0219, 2012 WL 4329235, at *13 (M.D. Tenn. Sept. 20, 2012). Furthermore, the Sixth Circuit has held that electronic filing cannot be considered purely clerical, because it "requires legal knowledge, and because the court permits only attorneys to serve as registered users of the ECF system and attorneys are liable for any electronic filings done using their credentials." *NLRB v. Bannum, Inc.*, 102 F.4th 538, 367 (6th Cir. 2024). Of the 42.3 hours identified by Defendants, a portion do reflect time spent making ECF filings, but under applicable precedent, they are clearly compensable. [Doc. 257-7]. There are roughly 11 identified hours which appear to specifically relate to organizing documents utilizing discovery software and coordinating production (e.g. "coding documents," "uploading docs," "coordinating production," "producing production"), which is a slightly murkier area. [Doc. 257-7]. However, almost all of these hours were billed by Mr. Powell. Given Defendants' lack of specificity as to which particular entries reflected secretarial work, and with Plaintiffs removing, by agreement, 12.7 hours of Mr. Powell's billing from their compensation request, the court finds that any entries contained in Document 257-7 that may reflect time spent performing non-compensable secretarial duties have been fully accounted for with the reduction.

As to Defendant's challenges to Plaintiffs' block-billed entries set forth in Document 257-7, the Sixth Circuit "has held that so long as the description of the work performed is adequate, block-billing can be sufficient." *Smith v. Service Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014). The Court has found in its review that the descriptions in Plaintiffs' block billing records are adequate to permit the court to evaluate whether the time spent appears to have been reasonable. After a careful review of all time entries contained in Document 257-7, the court recommends that Plaintiffs be compensated for all time billed, except the 12.7 hours Plaintiffs have agreed to remove.

Defendants have also identified 337.25 hours which they contend are vague and duplicative and ask the Court to strike them altogether or at least significantly reduce them. [Doc. 257-8]. They specifically identify time entries which contain internal communications amongst attorneys, billing

entries for "litigation team meetings," or where multiple attorneys edited or revised documents. [Doc. 257, p. 21]. The entries identified by Defendants account for more than 20% of the total hours for which Plaintiffs seek compensation. [Doc. 260, p. 10]. Plaintiffs assert that they were sensitive to this issue and took measures to reduce excessive or redundant hour as well as exercising significant billing discretion. Plaintiffs' counsel note that they only billed for the attorney either taking or defending a deposition, even where more than one was present. [Doc. 251-1, p. 7; Doc.251-2, p. 4]. Additionally, each organization only seeks compensation for the time of one attorney at team meetings or court hearings. *Id*. Furthermore, Plaintiffs assert that CRC and ICAP voluntarily reduced their request for fees by 337 hours before submitting a request to be compensated for a total of 1682.5 hours in attorney and support staff hours. [Doc. 251, p. 15].

In considering Defendants' contention, the court observes that "[t]here is no hard-and-fast rule as to how many lawyers can be at a meeting or how many hours lawyers can spend discussing a project." *Ne. Ohio Coal. for the Homeless*, 831 F.3d at 706 (quoting *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007)). However, while having multiple counsel can be productive, there is also "the danger of duplication, a waste of resources which is difficult to measure." *Coulter v. State of Tenn.*, 805 F.2d 416, 152 (6th Cir. 1986). In reviewing the entries at issue for unnecessary duplication, the court has concluded that Plaintiffs have been diligent in self-regulating the time for which they are requesting compensation in relation to projects where multiple attorneys were collaborating. Moreover, Defendants have not provided any specific examples of how the billing entries contained in Document 257-8 reflect duplication. Instead, they provide a laundry list of billing entries, leaving it to the court to try to determine why Defendants assert that there is unreasonable duplication. After a careful review of these entries, the court does not find it appropriate or necessary to further adjust the hours for which Plaintiffs' counsel should be compensated based upon vagueness or duplicity.

26

Defendants next take issue with ICAP's use of quarter-hour billing. [Doc. 257, p. 23 (citing Doc. 251-2)]. There is no fixed rule against quarter-hour billing. "Whether quarter-hour billing is reasonable is a matter within the discretion of the district court." *Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 4372350, at *5 (E.D. Tenn. 2022) (quoting *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013)). However, courts may impose reductions where the quarter-hour billing entries appear suspect or fee enhancing. *Id*. (citing *King v. Whitmer*, No. CV 20-13134, 2021 WL 5711102, at *8 (E.D. Mich. Dec. 2, 2021)) (other citations omitted) (quotations removed). The court reviewed the quarter-hour billing entries prepared by Mr. Wayne and found them to be both descriptive and reasonable. As one example, on March 24, 2020, Mr. Wayne billed .75 hour for a "Hamblen team call." [Doc. 251-2, p. 16]. A corresponding entry in CRS's billing records shows 1 hour billed for "[w]eekly team meeting with ICAP." [Doc. 251-1, p. 45]. Of note, there were no quarter-hour billing entries for things such as reviewing an email or other tasks which might have raised an eyebrow. If anything, the Court's review demonstrated that the quarter-hour billing reflected a conservative estimate of Mr. Wayne's time. As such, no reduction is appropriate based upon the quarter-hour billing utilized by Mr. Wayne.

The court now turns to Defendants' final request for a reduction in the hours for which Plaintiffs seek compensation, and that request relates to the significant discovery dispute which arose in this matter. While the hours for which Plaintiffs seek compensation are mostly reasonable for complex constitutional litigation spanning five years, the court must agree with Defendants that it would be inappropriate to award Plaintiffs compensation for time spent on an otherwise avoidable discovery dispute. Defendants specifically ask that the court strike all time entries related to the work by Plaintiffs' counsel on privilege log issues after May 14, 2021, "including time spent drafting additional privilege logs, the motion to quash subpoenas duces tecum issued by Defendants as a result of Plaintiffs' deficient privilege logs, communications with the Special Master, and production of

documents following the Special Master's report." [Doc. 257, p. 22-23]. Per Defendants' calculation, this Court should strike 370.6 hours of Plaintiffs' requested time. In response, Plaintiffs claim that the hours incurred during this dispute were due to Defendants' "overbroad, unprincipled, and purposeless discovery requests that had no likelihood of producing meaningfully relevant evidence." [Doc. 260, p. 12]. Additionally, Plaintiffs argue that the District Court found they were asserting "good faith arguments" during the discovery dispute, pointing out that time spent responding to discovery requests is compensable.[12] *Id.* at p. 13. Plaintiffs also argue that during the dispute they attempted to stay discovery pending resolution of the motion for summary judgment. *Id*. at p. 14 (citing Doc. 170). Plaintiffs' arguments ignore the court's earlier determination that they failed to produce a proper privilege log in response to Defendants' discovery requests. Without question, it was primarily this failure that required the court to utilize the services of a Special Master. The fact that Plaintiffs acted in good faith in asserting privileges does not negate the fact that Plaintiffs failed to produce a complete and accurate privilege log at the outset, which significantly contributed to, if not directly caused, the protracted discovery dispute.[13] [Doc. 160, p. 2]. It would be inappropriate to compensate Plaintiffs for time spent addressing discovery issues that they primarily created. *Long v. Proctor & Gamble Manufacturing Company*, No. 03-1097-T-An, 2008 WL 11409452, at *4 (W.D. Tenn. April 16, 2008); *see also Hisel v. City of Clarksville*, No. 3:04-0924, 2007 WL 2822031 (M.D. Tenn. Sept. 26, 2007) ("Quite obviously, it would not be proper to make the Defendant pay for problems which were the fault of Plaintiff."). Still, Defendants' request for striking hours related to the discovery issue is overly broad.

---

[12] The Court notes that in making the determination that Plaintiffs' privilege arguments were asserted in good faith, the District Court was assessing Plaintiffs' counsel's conduct against the standard of bad faith required to impose sanctions under the court's inherent authority. [Doc. 227, p. 5, 7-8]. In making this finding, the District Court did not find that the conduct of Plaintiffs did not directly contribute to the existence, or extent, of the discovery dispute.

[13] Plaintiffs state that it is unclear what they could have done to meaningfully reduce the number of hours spent responding to Defendant's discovery requests "short of unethically waiving potentially applicable privileges." [Doc. 260, p. 13]. However, producing a fully complete privilege log at the outset would not have required Plaintiffs to waive any privileges.

28

In determining what hours to reasonably exclude related to the discovery dispute, the court may either identify specific hours to eliminate or may rely on its overall sense of the suit and use estimates. *Hensley*, 461 U.S. at 436. The court is not "required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply do 'rough justice.'" *EPAC Technologies, Inc. v. Harpercollins Christian Publishing, Inc.*, Case No. 3:12-cv-00463, 2022 WL 989103, at *6 (M.D. Tenn. March 31, 2022) (citing *Husted*, 831 F.3d at 703 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Either way, the court must explain "why the rejected hours were not reasonable." *Freed v. Thomas*, 137 F.4th 552, 561 (6th Cir. 2025) (citing *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 884 (6th Cir. 2016)).

In determining what reduction might be appropriate, the court observes that the Special Master appointed in this case found that Plaintiffs' counsel had failed to meet their obligations in relation to the privilege log they produced. [Doc. 174]. Because Plaintiffs improperly redacted certain materials submitted to the Special Master, in violation of the orders of the court, the Special Master was then required to submit a Supplemental Report. [Doc. 178]. The undersigned adopted the Special Master's report over Plaintiffs' objections and ordered Plaintiffs' counsel to be responsible for 60% of the Special Master's fee related to his initial report and all fees related to the supplement because it was Plaintiffs' improper conduct which necessitated the supplement. The court further ordered Plaintiffs' counsel to be jointly responsible with their clients for the Special Master's fees. Plaintiffs objected to the allocation and to their counsel being held jointly responsible for the portion of the Special Master's fee for which Plaintiffs were to be responsible. The District Court sustained Plaintiffs' objection to their counsel being held jointly responsible for their clients' portion of the Special Master's fees and reserved ruling on the objection as to the allocation. Given Plaintiffs' success in objecting to the order, it is certainly reasonable that they be compensated for the hours they spent preparing their objection.

29

As with their other objections, Defendants have once again merely provided a list of billing entries and have made a general argument that they should all be excluded without addressing any of the entries specifically. Further, they included the billing by Plaintiffs' counsel for the time they spent successfully objecting to the fee allocation issue. On the other hand, Plaintiffs simply argue that there should be no reduction and do not identify any billing entries included in Exhibit I to Defendant's Response to their motion for attorney fees [Doc. 257-9] which they claim are unrelated to the discovery dispute. As best the court can determine without any assistance from the parties, roughly 51.4 hours were expended by Plaintiffs' counsel from July 20, 2022 through March 31, 2023 in relation to Plaintiffs' successful objection to this court's order. Of those hours, it appears that roughly 16 hours were billed by Mr. Downer and roughly 35 hours were billed by Ms. Israni, and the court will recommend that those hours not be stricken.

Of the remaining hours listed, the following are the court's calculations, in round numbers, of the remaining time spent by Plaintiffs' counsel on the discovery dispute: Mr. Downer expended 27 hours, Ms. Mikkilineni expended 144 hours, Ms. Israni expended 118 hours, and Mr. Powell expended 6 hours. The court finds it necessary to recommend a significant reduction in these hours to account for Plaintiffs' multiple failures to produce a proper privilege log and the fact that it was Plaintiffs' conduct which necessitated the retention of a Special Master and their failure to comply with the court's order which required the Special Master to supplemental his original report. Despite Defendants' failure to fully develop their argument as to Plaintiffs' discovery-related billing, justice simply would not be done if Defendants were required to fully compensate Plaintiffs for the hours expended addressing the discovery dispute which was significantly of their own making. A reduction of 40% in the hours expended by Plaintiffs' counsel in addressing this dispute does "rough justice" because is it sufficient to recognize that once Plaintiffs finally provided a proper privilege log, it did contain certain documents not subject to production but at the same time recognizing that they had

30

also improperly withheld documents. After reducing these hours by 40%, and working in round numbers, the court recommends the following reduction for each of these attorneys: Mr. Downer by 11 hours, Ms. Mikkilineni by 58 hours, Ms. Israni by 47 hours, and Mr. Powell by 2 hours.

Having now determined the reasonable hourly rate for each member of Plaintiffs' litigation team and the reasonable hours for which they should be compensated, the undersigned recommends compensation be awarded to each attorney as reflected in the table below:

| | Recommended Hourly Rates | Number of Hours Originally Requested | Number of Hours Recommended | Total Compensation Recommended |
|---|---|---|---|---|
| Alec Karakatsanis | $400 | 63.1 | 63.1 | $25,240 |
| Ryan Downer | $400 | 93.3 | 82.3 | $32,920 |
| Tara Mikkilineni | $400 | 557 | 499 | $199,600 |
| Imeime Umana | $250 | 62.3 | 62.3 | $15,575 |
| Ellora Israni | $250 | 309.8 | 262.8 | $65,700 |
| Coleman Powell | $125 | 127 | 112.3 | $14,037.50 |
| Seth Wayne | $400 | 210 | 210 | $84,000 |
| Jonathan Backer | $250 | 260 | 260 | $65,000 |
| Total Attorney Fee/Support Staff Award Recommended | | | | $502,072.50 |

### g. Plaintiff's Request for Nontaxable Expenses

Plaintiffs also seek to recover costs and expenses that fall into two categories: (1) expenses recoverable under 42 U.S.C. § 1988 and (2) costs recoverable under 28 U.S.C. § 1920.[14] Those

---

[14] As the Sixth Circuit has explained, there are two separate sources of authority which permit an award of out-of-pocket expenses. Some are considered incidental and necessary expenses to be considered in conjunction with an award of attorney's fees because incurring them was necessary to furnishing effective and competent representation, meaning they are authorized by Section 1988. For example, these types of expenses would include reasonable photocopying charges. Other costs which cannot reasonably be considered attorney's fees, such as docket fees and investigation and deposition expenses, are generally recoverable pursuant to 28 U.S.C. §1920. *Sigley v. Kuhn*, 205 F.3d 1341 (Table),

31

addressed herein are nontaxable expenses sought pursuant to § 1988, and Plaintiffs seek to recover a total of $7,121.13 of those expenses.[15] [Doc. 251]. These costs and expenses include travel costs (hotels, flights, rental cars, and gas) and costs for documents (including shipping costs for medical records and a printer). 42 U.S.C. § 1988 permits a district court, in its best judgment as to what is reasonable and necessary, to award "incidental and necessary expenses incurred in furnishing effective and competent representation as part of the award of attorney fees." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (citing *Sigley v. Kuhn*, 205 F.3d 1341 (table), 2000 WL 145187, at *9 (6th Cir.2000)) (internal quotation marks and citations omitted). For fees under §1988, this includes those which would normally be charged to a fee-paying client. *Waldo*, 726 F.3d at 827. "Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of section 1988." *Sigley*, 205 F.3d at *9. Both CRC and ICAP submitted well-documented billing entries and receipts for these expenses they seek to collect. *See* [Docs. 251-1, 251-2].

Defendants spend only one paragraph addressing the nontaxable expenses requested by Plaintiffs. Defendants perfunctorily assert that all requested expense reimbursement should be denied because Plaintiffs' request reflects "expensive travel, including internation travel to Knoxville, Tennessee, as well as reimbursement for high-end accommodation and needless purchases." Defendants provide little specific support for these assertions. [Doc. 257, p. 24]. Nevertheless, the court has performed a thorough review of the nontaxable cost reimbursement request made by Plaintiffs.

---

2000 WL 145187, at *9 (6th Cir. 2000).

[15] Plaintiffs have filed a separate Bill of Costs [Doc. 252] in which they seek to recoup from Defendants certain litigation expenses pursuant to 28 U.S.C. § 1920. Defendants then filed an Objection [Doc. 256] to the Bill of Costs, and on August 5, 2025, Findings of the Clerk [Doc. 262] were entered wherein the Clerk declined to tax costs as requested because Plaintiffs' request was not timely filed. Thereafter, Plaintiffs filed a Motion [Doc. 263] and a Memorandum in Support [Doc. 264], seeking authority to late-file their Bill of Costs, to which Defendants have now filed a Response in Opposition [Doc. 265]. That issue will be addressed via separate order.

### i. Travel Expenses

While Defendants were not particularly thorough in addressing Plaintiffs' request for nontaxable costs, having concluded that the retention of only one out-of-state expert was necessary, the court will be especially careful in addressing whether the travel and lodging expenses incurred by Plaintiffs' counsel should be considered "reasonable and necessary" costs. In conducting this analysis, the court first notes that applicable law makes it clear that Plaintiffs' counsel may recover expenses reasonably incurred for meals and lodging. *See Bridgeport Music, Inc. v. Lorenzo*, 255 F. Supp. 2d 795, 802 (M.D. Tenn. 2003) (allowing the recovery of reasonable hotel and meal expenses). In other words, the question is not whether these costs are recoverable, but whether those for which Plaintiffs' counsel seeks reimbursement were **reasonably** incurred. In considering broadly the question of whether Plaintiffs' counsel reasonably incurred travel expenses, the court notes that even when "local" or in-state counsel is retained, travel is often required for attorneys appearing in the Northeastern Division of the Eastern District of Tennessee, given that Greeneville, the city where the courthouse is located, is somewhat remote from some of the larger legal hubs in the state.

As to Plaintiff's airfare costs, which comprises more than half of the expenses for which reimbursement is requested, the court does not find any significant issues.[16] While Defendants object to excessive travel expenses, including international travel, Plaintiffs explain that the international travel was necessary because Mr. Wayne's home is located in Toronto, Canada. [Doc. 260, p. 18]. While Mr. Wayne's flight cost of $782.15 for his travel on December 3, 2023 is significant, it is not an excessive charge. [Doc. 251-2, p. 22]. Based on the court's own experience with airline travel, the cost can be high even with trips of shorter distances, planned well in advance. In finding that the airfare for which Plaintiffs' counsel seeks reimbursement is not unreasonable, the court has not

---

[16] Plaintiffs' counsel are requesting $3,773.17 in compensation for airfare.

overlooked the fact that counsel frequently booked flights a week or less in advance of travel and in one instance, on the same day of travel. At the same time, the court observes that some of counsel's travel occurred during the COVID-19 pandemic, making the need for last minute travel understandable. [See Docs. 251-1, p. 67; 251-2, p. 58]. Further, the court finds that the hectic schedules frequently attendant to the practice of law do not always permit the type of advance travel planning that is preferable, and even where these last-minute flights were taken, the cost falls within a reasonable range. Finally, counsel has not sought reimbursement for airfare for more than two travelers, even when the whole litigation team traveled to Tennessee. For example, on February 16, 2020, counsel is asking to be reimbursed for a lodging rental for the full litigation team, however, they only request airfare for two attorneys for this trip. [Doc. 251-2, p. 21].[17]

The court will now turn to the lodging portion of counsels' request for travel reimbursement. In reviewing these lodging requests, it appears that Plaintiffs' counsel has been sensitive to the costs being incurred. For instance, counsel incurred lodging charges of only $452.00 to house their full litigation team. Knowing that the full team would be traveling, counsel arranged to rent a house rather than incurring the cost for several hotel rooms. Including this charge, Plaintiffs' counsel requests only $1,905.29 for lodging over the course of this litigation, which has spanned five (5) years and involved seven (7) attorneys. [Docs. 251-1, p. 60; 251-2, pgs. 21-22]. Although counsel did not select the cheapest hotels available in Hamblen County, their chosen hotels were not extravagant choices, and the cost associated with them was quite reasonable.

In considering the other travel-related expenses for which Plaintiffs' counsel seeks reimbursement, this court is mindful that others in the Eastern District of Tennessee have

---

[17] The court is mindful that the request for Mr. Wayne's travel on this occasion totals $898.80, which is more than the court would typically approve. However, Mr. Wayne booked each way of his travel as one-way, indicating to the court that given the nature of the travel, Mr. Wayne could not be sure when he would be able to return. Because this is the only travel booked in this manner the court will recommend that it be approved without requiring further explanation.

specifically held that a fee award under §1988 does not afford counsel the luxury of eating extravagant or expensive meals. *Doherty v. City of Maryville, Tenn.*, No. 3:07–CV–157, 2010 WL 3619958 at *2-3 (E.D. Tenn. August 19, 2010), *report and recommendation adopted*, No. No. 3:07–CV–157, 2010 WL 3619962, (E.D. Tenn. Sept. 13. 2010) (finding that meals for $34, $59, $26, and $52.28 for one attorney depicted a "pattern that the Court can only describe as indulgent" and partially justified a reduction of travel expenses by 50%). In the case at hand, Ms. Mikkilineni's hotel bill for the period from March 17 through 19, 2021 does include a charge for an $84.89 rooftop meal. [Doc. 251-1, p. 65]. At the same time, the Court notes that rather than evidencing a pattern of indulgence as the court observed in *Doherty*, this is the only food cost for which Ms. Mikkilineni seeks reimbursement over her entire three-day trip, and in that context, the Court cannot find it unreasonable to permit counsel to be reimbursed for this meal. Plaintiffs also seek reimbursement for a $308.00 per diem for Jonathan Backer [Doc. 251-2, p. 21]. Mr. Backer traveled to the Eastern District of Tennessee on February 13, 2020, and did not return home until February 18, a total of six days. As such, his per diem request is for roughly $50 per day, which the court finds to be a very conservative request. Defendants further take issue with certain valet parking charges incurred by Plaintiffs' counsel. However, while charges such as these have been found to be excessive by courts in this district before and this court would often be inclined to reach the same conclusion, given that the use of valet services here totals only $70.00 [Doc. 251-2, p. 78] and counsel in cases of this size must often travel with significant litigation-related materials, the court will not find these charges to be excessive.

### ii. *Postage and Printer*

Reasonable photocopying and postage/shipping expenses are recoverable under §1988. *See Doherty v. City of Maryville, Tenn.*, No. 3:07–CV–157, 2010 WL 3619958 at *4 (E.D. Tenn. August 19, 2010), *report and recommendation adopted*, No. No. 3:07–CV–157, 2010 WL 3619962, (E.D.

Tenn. Sept. 13. 2010). Plaintiffs' counsel request $23.29 in mailing and shipping expenses, $83.00 to obtain records (including both medical records and court records for Plaintiffs), and $72.96 to obtain a printer and supplies, for a total of $179.25 expenses in this category. While Defendants do not take issue with the expenses for shipping and obtaining records, they object to Plaintiffs' counsel seeking compensation for purchasing a printer. [Doc. 257, p. 24]. Plaintiffs' counsel argues that printing at FedEx would have been both more costly and an inefficient use of time. [Doc. 260, p. 18]. The expense report specifically notes that the printer was purchased "for printing large quantities of lawsuit filings for lawsuit prep… in lieu of more expensive and time-consuming printing at FedEx."[18] [Doc. 251-2, p. 36]. None of these expenses, including the printer, appear to the Court to be unreasonable, or display an excess of spending on the part of Plaintiffs' counsel. The Court agrees with Plaintiffs that, given the nominal purchase price for the printer, it would have been far more expensive to use a copy service for printing.

In reviewing the request by Plaintiffs' counsel for reimbursement of travel, postage and printer expenses, the court finds that they have been quite judicious, overall, in making their request. *See Doherty v. City of Maryville, Tenn.*, No. 3:07–CV–157, 2010 WL 3619958 at *2 (reflecting that Plaintiffs' counsel requested travel expenses alone in the amount of $14,989.11 in a case which is now fifteen years old).

## III.    CONCLUSION

For the reasons state herein, the undersigned **RECOMMENDS** that the hourly rates and number of hours set forth for each of Plaintiffs' counsel and their support staff member contained in the chart prepared by the court above be used to calculate the total compensation due to Plaintiffs' counsel for their services. Further, the undersigned **RECOMMENDS** that the full amount of

---

[18] The printer was 50% off at the time of purchase and only accounted for approximately $50.00 of the office supply receipt. [Doc. 251-2, p. 51].

nontaxable costs requested by Plaintiffs be awarded. *See* [Docs. 251-1; 251-2]. In summary, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Attorneys' Fees and Nontaxable Expenses [Doc. 250] be **GRANTED in part** and **DENIED in part**. The court recommends that Plaintiffs be awarded $502,072.50 in compensation for attorney and support staff time expended and $7,121.13 in nontaxable expenses, for a total award of $509,193.63.[19]

  Respectfully submitted,

           /s/Cynthia Richardson Wyrick
           United States Magistrate Judge

---

[19] Objections to this Report and Recommendation must be filed within 14 days after service of this recommended disposition on the objecting party. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Fed. R. Civ. P. 72(b). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987). Additionally, failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140 (1985).