UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| MICHELLE TORRES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:20-CV-00026-DCLC-CRW |
| | ) | |
| W. DOUGLAS COLLINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court to consider the Report and Recommendation ("R&R") of the United States Magistrate Judge [Doc. 267]. The R&R recommends that Plaintiffs' Motion for Attorneys' Fees and Nontaxable Expenses [Doc. 250] be granted in part and denied in part. Plaintiffs object only to the R&R's finding that Plaintiffs failed to show it was reasonable to retain out-of-town specialists and denying Plaintiffs' request to calculate their attorneys' fees in accordance with counsel's out-of-market rates. [Doc. 272]. Defendants filed a response. [Doc. 278]. For the reasons that follow, the Court **SUSTAINS** Plaintiffs' objection [Doc. 272], **REJECTS** the recommendation regarding Plaintiffs' request for out-of-market rates for attorneys' fees, and **ADOPTS** the recommendations regarding the number of compensable hours for attorneys' fees and the amount of nontaxable expenses.

**I.     BACKGROUND**

On February 16, 2020, Plaintiffs, individuals arrested on warrants out of Hamblen County General Sessions Court, filed a class action against Defendants, Hamblen County officials involved with the General Sessions Court in setting bail for arrestees. Each of the named Plaintiffs were arrested and booked into Hamblen County Jail, had their bail set *ex parte*, did not receive an
Case 2:20-cv-00026-DCLC-CRW     Document 280     Filed 02/24/26     Page 1 of 11
PageID #: 6319

individualized determination regarding their conditions of release, and remained in custody because of their inability to afford the set bail amount until a third-party organization paid their bail. Plaintiffs alleged that Defendants' bail practices violated their Fourteenth Amendment rights to equal protection and due process and Sixth Amendment right to counsel. Plaintiffs sought declaratory and injunctive relief under 42 U.S.C. § 1983.

After five years of litigation, the Court denied Plaintiffs' wealth-based detention and substantive due-process claims but granted summary judgment as to their procedural due-process and Sixth Amendment claims. [Docs. 229, 241]. The Court also granted Plaintiffs' declaratory relief, setting forth the required procedural safeguards under the Fourteenth Amendment for an arrestee when bail is set *ex parte* and the arrestee cannot afford to pay the set amount. [Doc. 247].

Plaintiffs initially requested a total of $1,111,130.07 in attorneys' fees and $7,121.13 in nontaxable expenses for the work of attorneys at Civil Rights Corps ("CRC") and the Institute for Constitutional Advocacy ("ICAP"), two non-profit organizations based in Washington, D.C. [Docs. 251, 260]. They seek compensation at rates ranging from $450 to $900 per hour, and $250 per hour for the litigation assistant. [Doc. 251]. Defendants objected to the requested sum arguing that Plaintiffs should not be compensated at the hourly rates for attorneys in D.C. and that the number of hours billed was unreasonable. [Doc. 257].

The R&R recommends that Plaintiffs' motion be granted in part and denied it in part. [Doc. 267]. The R&R first recommends that the Court deny Plaintiffs' request for attorneys' fees at D.C. market rates because the magistrate judge found that Plaintiffs failed to show it was necessary to retain out-of-town specialists. *Id.* at 14–15. It then determines Plaintiffs should be compensated at local market rates ranging from $250 to $400 per hour and $125 for the litigation assistant. *Id.* at 31. The magistrate judge also considered the parties' arguments regarding the total number of

2

hours for which Plaintiffs should be compensated and calculated that the total fee award should be $502,072.50.  *Id.*  Finally, the R&R recommends that Plaintiffs should be compensated for the full amount of nontaxable expenses requested at $7,121.13 in total.  *Id.* at 31–36.

Plaintiffs raise an objection only to the magistrate judge's finding that they failed to prove it was necessary to retain out-of-town specialists and request that the Court recalculate Plaintiffs' fee award by using the out-of-market rates.  [Doc. 272].  Defendants responded in opposition.  [Doc. 278].  The Court will consider the R&R and the parties' arguments.

## II. STANDARD OF REVIEW

District courts must conduct a de novo review of a magistrate judge's R&R on a dispositive issue.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  A magistrate judge's R&R on a motion for attorney's fees is dispositive in nature.  *See* Fed. R. Civ. P. 54(d)(2)(D); *see also McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005) ("A Magistrate Judge is not permitted to determine costs or fees, but may make a report and recommendation to the district court on such issues. After being presented with the Magistrate Judge's report and recommendation, the district court must then conduct a de novo review of the findings and issue an order as it sees fit.") (citation omitted).

A de novo review requires the district court to reach "the ultimate determination of the matter" through its own review and discretion.  *United States v. Raddatz*, 447 U.S. 667, 675 (1980).  After its review, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

Plaintiffs object to the R&R on the grounds that it denied their request to calculate attorneys' fees in accordance with counsel's out-of-market rates because Plaintiffs failed to show it was reasonable to obtain out-of-town specialists.  [Doc. 272, pg. 1].

The Court, in its discretion, may award reasonable attorneys' fees to the prevailing party under 42 U.S.C. § 1988 in an action brought under 42 U.S.C. § 1983. 42 U.S.C. § 1988(b). There is no question that Plaintiffs are the prevailing party, and Defendants do not dispute as much. [Doc. 267, pg. 6]. Once the prevailing party is determined, the Court must assess whether the fee requested is reasonable. "A reasonable fee is one that is adequate to attract competent counsel, but ... [does] not produce windfalls for attorneys." *Hadix v. Johnson,* 65 F.3d 532, 535 (6th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Courts calculate a reasonable attorney fee through the applicant's "lodestar" which is the number of hours reasonably expended multiplied by the reasonable hourly rate. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The reasonable hourly rate is typically calculated by looking to the "prevailing market rate in the relevant community." *Id.* at 350 (quoting *Blum*, 465 U.S. at 895). However, a court may "award a higher hourly rate for an out-of-town specialist if (1) hiring the out-of-town specialist was reasonable in the first instance, and (2) if the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Brian A. v. Hattaway*, 83 F. App'x 692, 694 (6th Cir. 2003) (citing *Hadix*, 65 F.3d at 535). "A corollary of this rule is that judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate." *Hadix*, 65 F.3d at 535.

Plaintiffs contend that it was necessary to hire out-of-town specialists because CRC and ICAP "are two of the few legal practices in the country, much less in the Eastern District of Tennessee, with the expertise and capacity to litigate the novel, labor intensive, and financially uncertain injunctive claims at issue in this lawsuit." [Doc. 272, pg. 1]. The Court agrees with Plaintiffs and finds that they have satisfied their burden in establishing that there was "no local

4

attorney or coalition of local attorneys who had the resources, expertise, or willingness to bring the instant suit." *Brian A.*, 83 F. App'x at 695.

This matter was originally brought to Plaintiffs' counsel by Willie Santana. [Doc. 251-3, ¶ 2]. Mr. Santana is now an assistant federal defender with the Federal Defender Services of Eastern Tennessee and before that he was a visiting professor at Lincoln Memorial University's Duncan School of Law. *Id.* ¶ 1. At the time this action was initiated, Mr. Santana was an assistant public defender for the Third Judicial District of Tennessee, where he represented indigent clients in criminal matters, including bail proceedings in Hamblen County. *Id.* Mr. Santana first contacted local counsel George T. "Buck" Lewis, a shareholder at Baker Donelson, and Douglas Blaze, Dean Emeritus of the University of Tennessee-Knoxville College of Law, about the deficiencies he had witnessed with the Hamblen County bail system. *Id.* ¶ 2. Attorneys at Baker Donelson connected him with CRC, which then contacted ICAP. *Id.* Mr. Santana declared that currently, and at the time he was discussing the potential litigation with CRC and ICAP, he is not aware of any local groups or firms in Eastern Tennessee with the expertise and resources to bring such an action. *Id.* ¶¶ 3, 6. Mr. Santana is familiar with the law firms and attorneys in this district through his "work, personal and professional networks, and volunteering activities" and further stated that he is not aware of any "that advocate[] for systemic reform of the criminal legal system through civil litigation." *Id.* ¶¶ 5, 6.

Dean Blaze also submitted a declaration in support of Plaintiffs' original motion. [Doc. 251-4]. Dean Blaze has served on the faculty of the University of Tennessee-Knoxville College of Law faculty since 1993. *Id.* ¶ 1. His research and work have "focused on promoting pro bono legal representation and access to justice in Eastern Tennessee" and he chaired the Tennessee Supreme Court Access to Justice Commission, where he "worked to assess legal needs among

low-income Tennesseans and to increase access to legal representation, with a particular focus on gaps in service for rural Tennesseans." *Id.* ¶ 4. He is therefore "generally familiar with the legal services that are locally available to low-income individuals in Eastern Tennessee." *Id.* ¶ 6. He attested that he is not "aware of any law firms or attorneys based in the Eastern District of Tennessee that have the resources, expertise, and willingness to bring a case of this sort, particularly on a contingency basis" nor is he aware "of any law firms or attorneys based in the Eastern District of Tennessee that advocate for systemic reform of the criminal legal system." *Id.* ¶ 8. Dean Blaze further asserted that "the Plaintiff class would not have been able to bring this suit and achieve the resulting success on their claims challenging unconstitutional pretrial detention without the assistance of CRC and ICAP." *Id.* ¶ 11.

The R&R reasoned that these declarations from Mr. Santana and Dean Blaze were insufficient to demonstrate that there were no local attorneys available to take on the instant litigation. [Doc. 267, pg. 14]. The magistrate judge stated further proof is needed that Plaintiffs "investigated the local market by seeking the services of civil rights practitioners in the district before hiring CRC and ICAP" particularly in consideration of the affidavits provided by Defendants which claim that local counsel was available. *Id.* at 14–15. The magistrate judge asserts that courts "in Tennessee have tended to require a more robust investigation before being willing to award higher than local market rates for out-of-town counsel." *Id.* at 10.

The Sixth Circuit, however, has not defined the breadth of investigation required before plaintiffs are permitted to retain out-of-town specialists, though its reasoning in *Brian A. v. Hattaway* is instructive. 83 F. App'x 692 (6th Cir. 2003). The plaintiffs in *Brian A.* brought a class action on behalf of children in custody of Tennessee's foster care system. *Id.* The record included declarations from the defendants by prior Tennessee Attorneys General "referring to four

complex civil rights class actions brought by Tennessee attorneys" and declarations from the plaintiffs by "Tennessee experts in child and family law, who were familiar with the issues involved in the case and opined that there was no local attorney or coalition of local attorneys who had the resources, expertise, or willingness to bring the instant suit." *Id.* at 695. The Sixth Circuit held that based on this record, the plaintiffs provided sufficient evidence that it was reasonable to hire out-of-state lawyers at New York billing rates more than double the local rate. *Id.* The Sixth Circuit found that, under its deferential standard, the "the district court did not abuse its discretion in finding that the plaintiffs' decision to hire out-of-town specialists was reasonable." *Id.*

Like the plaintiffs in *Brian A.*, here, Plaintiffs submitted declarations from attorneys familiar with the issues in this case and with the Eastern District of Tennessee's local bar—Mr. Santana, the former Third Judicial District public defender, and Dean Blaze, an expert in the field of pro bono legal representation and access to justice for low-income Tennesseans. *Id.*; [Docs. 251-3, 251-4]. Both "opined," as the affiants did in *Brian A.*, based on their experience, that there is no law firm or attorney in the Eastern District of Tennessee with the resources, expertise, and willingness to bring this type of case nor are there any that advocate for systemic reform of the criminal legal system through civil litigation. 83 F. App'x at 695; [Docs. 251-3, 251-4].

For this reason, this case is similarly distinguishable from the Sixth Circuit's holding in *Hadix*, in which it denied the plaintiffs' request for out-of-town market rates. 65 F.3d at 535. It found that "[t]he record [was] devoid of any suggestion that local counsel made *any attempt* to investigate the availability of competent counsel in the local market." *Id.* (emphasis added). That is not the case here. Mr. Santana consulted both Dean Blaze and Mr. Lewis, a shareholder at Baker Donelson, a prominent corporate law firm with a local office, who both recommended that he attempt to retain CRC due to the complex and fundamentally risky nature of this matter. This case

is the type of litigation that the Sixth Circuit recognized in *Hadix* "where the time commitment and uncertainty of payment often discourage economically rational private attorneys from becoming involved." *Id.* Unlike *Hadix*, where the Sixth Circuit found a guaranteed stream of income made the litigation economically attractive to local counsel, this case involved substantial uncertainty and risk. *See id.*

The R&R also considered the five affidavits of local attorneys Defendants provided as part of its reasoning that Plaintiffs did not meet their burden of proof to show it was necessary to retain out-of-town specialists. [Doc. 267, pgs. 14–15]. The Court, however, does not find that these affidavits credibly support Defendants' assertion that there were "multiple competent attorneys willing to handle this matter." [Doc. 278, pg. 4]. The affidavits do not demonstrate that local counsel with comparable experience in systemic constitutional class actions was available at the time this suit was filed. The record reveals that none of the local counsel assert that they have ever handled or worked on a federal class action lawsuit. *See Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, No. 1:98-CV-479, 2008 WL 906031, at *6 (W.D. Mich. Mar. 31, 2008) (finding that an affidavit provided to counter the assertion that no competent Michigan attorneys were available to lead the case was insufficient because he had never worked on a class action case and "[t]here is a significant chance that [he] could not have even jumped through an initial hurdle of the case-being appointed as class counsel pursuant to Federal Rule of Civil Procedure 23(g)").

The declarants' examples of why they would have been ready, willing, and able to serve as counsel for Plaintiffs further demonstrates their unfamiliarity with the issues in this litigation. The declarants state that they, and other local attorneys in the district, regularly handle complex civil litigation, civil rights claims, and pretrial detention matters. *See* [Doc. 257-1, ¶¶ 6, 8]; [Doc. 257-2, ¶ 6]; [Doc. 257-3, ¶¶ 3, 5]; [Doc. 257-4, ¶ 8]; [Doc. 257-5, ¶ 5]. To be sure, this was a

8

Case 2:20-cv-00026-DCLC-CRW    Document 280    Filed 02/24/26    Page 8 of 11
PageID #: 6326

novel and complex constitutional challenge to systemic bail practices. *See* [Doc. 272, pg. 14]. The Court does not state that the declarants are incapable of handling complex civil litigation, nor does it mean to discredit their practice, but only that it was reasonable, based on the nuanced issues in this case, for Plaintiffs to retain out-of-town specialists. Defendants' provided affidavits did not sufficiently counter that position.

Plaintiffs assert that a vast majority of systemic challenges to pretrial detention practices under the Sixth and Fourteenth Amendments, such as the case here, have been led by national non-profits, often including CRC and/or IRDC, and are often supported by large law firms on a *pro bono* basis. *Id.* at 7 (collecting cases); *see, e.g.*, *Edwards v. Cofield*, No. 3:17-cv-321, 2025 WL 511065 (M.D. Ala. Feb. 14, 2025). Although the Court is aware that "Section 1988 does not guarantee civil rights plaintiffs the best counsel in the country; it guarantees them competent counsel." *Hadix*, 65 F.3d at 535. Neither Plaintiffs nor Defendants provided examples in the Eastern District, or anywhere else in the country, of local counsel exclusively handling a federal constitutional challenge to a county-wide bail system. *See Gathering Spot, LLC v. Gathering Spot at Burlington Vill. LLC*, No. 3:22-cv-7-TRM-JEM, 2023 WL 3612399, at *4–5 (E.D. Tenn. May 1, 2023) (denying out-of-market rates where the plaintiff "d[id] not present any evidence that federal trademark infringement cases are so specialized that employing out-of-town counsel is reasonable" and "in recent years, the Court has heard a number of trademark infringement actions where local counsel represented one or more parties"). Under these circumstances, the Court finds that it was reasonable for Plaintiffs to retain out-of-town specialists to bring this action. *See Haddix*, 65 F.3d at 535; *see also Tyson v. Sterling Rental, Inc.*, No. 13-cv-13490, 2019 WL 3554713, at *9 (E.D. Mich. Apr. 17, 2019) (holding that it was reasonable to retain an out-of-town

specialist to handle an appeal because "very few qualified appellate specialists in the nation handle appeals on a contingency basis … at least not within the field of federal consumer protection law").

The Court's conclusion that it was reasonable to retain out-of-town specialists does not end the inquiry. The Court must also determine whether the hourly rates sought are reasonable for attorneys of comparable skill, experience, and reputation in the Washington, D.C. market. *See Brian A.*, 83 F. App'x at 694. Although Defendants challenged the use of out-of-market rates, they have not meaningfully addressed whether the specific rates requested are reasonable within the D.C. legal market for attorneys of similar qualifications. The present record therefore does not permit the Court to resolve that issue conclusively.

Accordingly, the Court will require supplemental briefing limited to the reasonableness of the requested D.C. hourly rates. Plaintiffs shall file a supplemental memorandum, not to exceed 15 pages, **by March 6, 2026** addressing the prevailing market rates in Washington, D.C. for attorneys of comparable skill and experience. Defendants may file a response, not to exceed 15 pages, addressing the same issue **by March 20, 2026**. No reply shall be filed absent leave of Court.

## IV. CONCLUSION

The R&R [Doc. 267] is **ADOPTED IN PART** and **REJECTED IN PART** as set forth below. The Court **ORDERS** as follows:

1. The Court **REJECTS** the R&R's recommendation denying Plaintiffs' request to apply out-of-town market rates. The Court finds that it was reasonable under the circumstances for Plaintiffs to retain out-of-town specialists.

2. The Court **ADOPTS** the R&R's recommended number of compensable hours for each attorney, as set forth in the chart at [Doc. 267, pg. 31]. Those hours shall be used in calculating the final fee award.

3. The Court **ADOPTS** the R&R's recommendation regarding nontaxable expenses and **AWARDS** Plaintiffs $7,121.13 in nontaxable costs.

4. The issue of reasonable Washington, D.C. market rates remains unresolved. The parties shall file supplemental briefing as provided for in this Order.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge
